# EXHIBIT A

# YALE UNIVERSITY RETIREMENT ACCOUNT PLAN

**Amended and Restated effective as of July 1, 2015**

# TABLE OF CONTENTS

PAGE

ARTICLE I
DECLARATION ..................................................................................................................1

1.1    Establishment of Plan .............................................................................................1
1.2    2015 Amendment and Restatement of Plan ...........................................................1
1.3    Applicability ...........................................................................................................1

ARTICLE II
DEFINITIONS ...................................................................................................................2

2.1     Account ...................................................................................................................2
2.2     Affiliated Employer ................................................................................................2
2.3     Alternate Payee .......................................................................................................2
2.4     Annuity Starting Date .............................................................................................2
2.5     Basic Compensation ...............................................................................................2
2.6     Beneficiary ..............................................................................................................3
2.7     Code ........................................................................................................................3
2.8     Contract ...................................................................................................................3
2.9     Corporation .............................................................................................................3
2.10    Date of Employment or Date of Reemployment ....................................................3
2.11    Direct Rollover ........................................................................................................4
2.12    Effective Date .........................................................................................................4
2.13    Eligible Employee ...................................................................................................4
2.14    Eligible Retirement Plan .........................................................................................5
2.15    Eligible Rollover Distribution ................................................................................6
2.16    Employee .................................................................................................................6
2.17    ERISA .....................................................................................................................7
2.18    Excluded Employee .................................................................................................7
2.19    Gross Compensation ...............................................................................................7
2.20    Hour of Service .......................................................................................................7
2.21    Investment Funds ....................................................................................................7
2.22    Leave of Absence or Leave .....................................................................................7
2.23    Normal Retirement Age ..........................................................................................8
2.24    Participant ...............................................................................................................8
2.25    Participant Contributions ........................................................................................8
2.26    Participation Election ..............................................................................................8
2.27    Plan ..........................................................................................................................8
2.28    Plan Administrator ..................................................................................................8
2.29    Plan Contributions ..................................................................................................8
2.30    Plan Year .................................................................................................................8
2.31    Pre-Tax Contributions .............................................................................................8
2.32    Qualified Domestic Relations Order .......................................................................8
2.33    Recordkeeper ...........................................................................................................8
2.34    Rollover Contributions ............................................................................................8
2.35    Roth Contributions ..................................................................................................8
2.36    Salary Continuation Pay .........................................................................................9

TABLE OF CONTENTS

PAGE

2.37    Salary Reduction Election..................................................................................9
2.38    Severance Date.................................................................................................9
2.39    Social Security Wage Base................................................................................9
2.40    University.........................................................................................................9
2.41    University Contributions...................................................................................9
2.42    University Core Contributions...........................................................................9
2.43    University Match Contributions ........................................................................9

ARTICLE III
PARTICIPATION ...........................................................................................................10

3.1     Participation Requirements..............................................................................10
3.2     Participation Election.......................................................................................10
3.3     Termination of Active Participation .................................................................11

ARTICLE IV
PLAN CONTRIBUTIONS................................................................................................12

4.1     University Core Contributions.........................................................................12
4.2     University Match Contributions ......................................................................12
4.3     Participant Contributions.................................................................................13
4.4     Rollover Contributions....................................................................................15
4.5     Contributions During Leave of Absence ..........................................................16
4.6     Contributions During Long-Term Disability ....................................................17
4.7     Contributions for Former Employees ...............................................................17
4.8     Contributions Upon Return From Qualified Military Service ...........................18
4.9     When Contributions Are Made.........................................................................18
4.10    Application of Contributions ...........................................................................18
4.11    Contributions by Mistake of Fact ....................................................................18
4.12    Vesting of Plan Contributions.........................................................................19
4.13    Limitations on Plan Contributions...................................................................19

ARTICLE V
CONTRIBUTION LIMITATIONS....................................................................................20

5.1     415 Contribution Limitation ...........................................................................20
5.2     Limitations on Participant Contributions..........................................................22

ARTICLE VI
PLAN FUNDING.............................................................................................................24

6.1     Contracts ........................................................................................................24
6.2     Investment of Contributions and Accounts.......................................................24
6.3     Plan-to-Plan Transfers ....................................................................................26
6.4     Records and Reporting.....................................................................................26
6.5     Contracts - Incorporation by Reference............................................................26

TABLE OF CONTENTS

ARTICLE VII
DISTRIBUTIONS FROM ACCOUNTS .................................................................27

7.1   Withdrawals During Employment .................................................................27
7.2   Distribution after Severance Date .................................................................27
7.3   Hardship Withdrawals .................................................................27
7.4   Required Form of Payment .................................................................29
7.5   Optional Forms of Payment .................................................................29
7.6   Qualified Election .................................................................30
7.7   Minimum Distribution Requirements .................................................................32
7.8   Distributions Pursuant to Qualified Domestic Relations Orders .......................................32
7.9   Lapsed Benefits.................................................................32

ARTICLE VIII
DEATH BENEFITS .................................................................34

8.1   Amount of Death Benefit .................................................................34
8.2   Designation of Beneficiary .................................................................35
8.3   Minimum Distribution Requirements .................................................................36

ARTICLE IX
MINIMUM DISTRIBUTION REQUIREMENTS.................................................................37

9.1   Minimum Distribution Requirements .................................................................37
9.2   Distributions Before Death – Account Balances .................................................................37
9.3   Distributions Before Death – Annuities .................................................................38
9.4   Distributions After Death – Account Balances.................................................................38
9.5   Distributions After Death – Annuities .................................................................40
9.6   Special Rule for pre-1987 Accumulations.................................................................41
9.7   Elections under TEFRA Section 242(b)(2).................................................................41
9.8   2009 Waiver of Required Minimum Distributions .................................................................41

ARTICLE X
PARTICIPANT LOAN PROGRAM.................................................................43

ARTICLE XI
CLAIMS AND APPEALS PROCEDURES .................................................................44

11.1   Claims for Benefits .................................................................44
11.2   Appeals Procedures.................................................................44
11.3   Qualified Domestic Relations Orders .................................................................46
11.4   Bar on Civil Action.................................................................47

TABLE OF CONTENTS

PAGE

ARTICLE XII
PLAN ADMINISTRATION ................................................................................48

12.1   Plan Administrator.................................................................................48
12.2   Administrative Responsibilities............................................................48
12.3   Management and Control of Plan Assets...............................................49
12.4   Establishment of Committees ...............................................................49
12.5   Committee Action..................................................................................50
12.6   Payment of Expenses ............................................................................50
12.7   Limit on Fiduciary Liability..................................................................51
12.8   Indemnification by University ..............................................................51

ARTICLE XIII
AMENDMENT AND TERMINATION .............................................................52

13.1   Amendment of Plan ...............................................................................52
13.2   Termination of Plan ..............................................................................52
13.3   Merger, Consolidation or Transfer of Assets.......................................52

ARTICLE XIV
GENERAL PROVISIONS ..................................................................................53

14.1   No Right of Employment.......................................................................53
14.2   Inalienability of Benefits.......................................................................53
14.3   Construction and Headings....................................................................53
14.4   Facility of Payment ...............................................................................53
14.5   Law Applicable......................................................................................53

APPENDIX A ............................................................... COMPENSATION  SCHEDULE

APPENDIX B ................................................. TARGETED INCOME REPLACEMENT RATIO

iv

## ARTICLE I
## DECLARATION

1.1     Establishment of Plan.  Yale University (hereinafter called the "University"), a corporation organized and existing under the laws of the State of Connecticut, previously established the Yale University Retirement Account Plan (hereinafter called the "Plan") for the exclusive benefit of Eligible Employees and their Beneficiaries effective July 1, 1976.  The Plan is an employee benefit plan that is intended to meet the requirements of Code Section 403(b) and its purpose is to provide retirement income benefits to Eligible Employees of the University and their Beneficiaries.  The Plan has been amended from time to time since its establishment to reflect changes in the Plan's operations and applicable law and was most recently amended and restated as of July 1, 2014 ("2014 Plan Restatement").

1.2     2015 Amendment and Restatement of Plan.  This Plan document, made and entered into by the University, evidences the terms of the Plan effective July 1, 2015 and, among other things, incorporates the First Amendment to the 2014 Plan Restatement and amends the Plan to add a Roth Contribution feature.  It is intended that this Plan document meet the written plan requirement of Treasury Regulation § 1.403(b)-3(b)(3) and it is to be construed in accordance with Code Section 403(b) and the Treasury Regulations and any guidance issued thereunder.  The Plan document is also intended to reflect all law changes made by the Pension Protection Act of 2006 (PPA '06), the U.S. Troop Readiness, Veterans' Care, Katrina Recovery and Iraq Accountability Appropriations Act, 2007, the Heroes Earnings Assistance and Relief Tax Act of 2008 (HEART Act), the Worker, Retiree, and Employer Recovery Act of 2008 (WRERA), the Small Business Jobs Act of 2010 (SBJA), the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010 (PRA 2010), the Moving Ahead for Progress in the 21st Century Act (MAP-21), the American Taxpayer Relief Act of 2012 (ATRA), the Highway and Transportation Funding Act of 2014 (HATFA), and the Cooperative and Small Employer Charity Pension Flexibility Act (CSEC Act).

1.3     Applicability.  The provisions of this Plan document apply only to Employees and Participants who have completed at least one (1) Hour of Service for the University on or after July 1, 2015.  The rights and benefits, if any, of Employees or Participants whose employment with the University terminated prior to July 1, 2015 or their Beneficiaries (unless he or she is later reemployed by the University) shall be determined in accordance with the provisions of the Plan then in effect.

ARTICLE II
DEFINITIONS

As used in the Plan, the following terms shall have the meanings set forth below:

2.1     "Account" means, collectively, the separate subaccounts established for each Participant by the Recordkeeper to record a Participant's total interest in the Plan.  The current value of a Participant's Account includes all Plan Contributions, less expense charges, and credited investment experience.

2.2     "Affiliated Employer" means any employer, presently or in the future existing, that is a member of (i) a controlled group of corporations as defined in Code Section 414(b), a group of commonly controlled trades or businesses as defined in Code Section 414(c), or an affiliated service group as defined in Code Section 414(m) which includes the University but only during the period such employer is a member of the foregoing groups and (ii) any other entity required or permitted to be aggregated with the University pursuant to Code Section 414(o) or Treasury Regulation § 1.414(c)-5 but only during the period the employer is required or permitted to be so aggregated with the University.

2.3     "Alternate Payee" means any spouse, former spouse, child, or other dependent of a Participant who is recognized by a Qualified Domestic Relations Order as having a right to receive all or a portion of such Participant's Account.

2.4     "Annuity Starting Date" means the first day of the first period for which an amount is payable as an annuity or any other form and not the actual date of payment.

2.5     "Basic Compensation" means the compensation described in the attached Appendix A paid by the University to a Participant during a Plan Year.  Basic Compensation generally includes basic earnings and excludes imputed earnings and other forms of additional or supplementary earnings, subject to the following:

(a)     *Military Service.*  Basic Compensation shall include any differential wage payments (as defined in Code Section 3401(h)(2)) paid to a Participant during qualified military service (as defined in Code Section 414(u)).

(b)     *Post-Severance Payments.*  Basic Compensation paid after a Participant's Severance Date shall not be treated as Basic Compensation unless the amount is paid by the later of 2½ months after the Participant's Severance Date or the end of the Limitation Year that includes the Participant's Severance Date and such amounts represent payment for:

(i)     *Regular Pay.*  Basic Compensation that is payment for regular compensation within the meaning of Treasury Regulation § 1.415(c)-2(e)(3)(ii) for services performed during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (such as overtime or shift differential), or other similar payments but only if such payment would have been paid to the Participant if his or her employment had continued

2

and such payment would have been included in Basic Compensation had the payment been made prior to the Participant's Severance Date.

   (ii) *Leave Cashouts.*  Basic Compensation that is payment for unused accrued bona fide sick, vacation, or other leave within the meaning of Treasury Regulation § 1.415(c)-2(e)(3)(iii)(A) but only if the Participant would have been able to use the leave if his or her employment had continued and such payment would have been included in Basic Compensation had the payment been made prior to the Participant's Severance Date.

   (c) *Dollar Limitation.*  Basic Compensation for a Plan Year shall not include amounts in excess of the compensation limit of Code Section 401(a)(17) as adjusted annually by the Secretary of the Treasury for cost of living increases under Code Section 401(a)(17)(B).  For this purpose, the compensation limit in effect for the calendar year in which the Plan Year begins shall be the compensation limit for that Plan Year. Notwithstanding the foregoing, a Participant may make Participant Contributions with respect to Basic Compensation that exceeds the compensation limitation described herein; provided, that such Participant Contributions otherwise satisfy the elective deferral limit of Code Section 402(g) as described in Section 5.2(a) and any other applicable contribution limitation.  In applying any contribution limitation on the amount of Matching Contributions or any Plan limit on Participant Contributions which are subject to Matching Contributions, where such limits are expressed as a percentage of Basic Compensation, the Plan will apply the compensation limitation described herein annually, even if the Matching Contribution formula is applied on a per pay period basis or is applied over any other time interval which is less than the full Plan Year.

  2.6 "Beneficiary" means the individual, institution, trustee, or estate designated by the Participant to receive the Participant's Account at his or her death.

  2.7 "Code" means the Internal Revenue Code of 1986, as amended from time to time. "Treasury Regulations" means the regulations issued under the Code by the Secretary of Treasury.  All references to any section of the Code or Treasury Regulation shall be deemed to refer not only to such section but also to any amendment thereof and any successor statutory or regulatory provision.

  2.8 "Contract" means (i) any non-transferable annuity contract as defined in Code Sections 403(b)(1) and 401(g) that is approved by the Plan Administrator and issued to a Participant or the Plan and (ii) any group or individual custodial account or accounts as defined in Code Section 403(b)(7) that is approved by the Plan Administrator and established for a Participant or the Plan.

  2.9 "Corporation" means the governing board of the University, or a duly appointed committee thereof, as each may from time to time be constituted.

  2.10 "Date of Employment" or "Date of Reemployment" means the first day on which an Employee completes an Hour of Service for the University or any Affiliated Employer or the

first day on which an Employee completes an Hour of Service following a Severance Date for the University or any Affiliated Employer.

2.11    Direct Rollover" means an Eligible Rollover Distribution payable by the Plan to an Eligible Retirement Plan.

2.12    "Effective Date" means July 1, 2015 for purposes of this amended and restated Plan document.

2.13    "Eligible Employee" means any United States payroll-based Employee on the regular payroll of the University, other than an Excluded Employee, who is a:

(a)     *Tenured or Ladder Faculty Member*.  An Employee who holds a primary faculty appointment of at least half time or greater as a "Tenured Faculty Member" or "Ladder Faculty Member."

(b)     *Research Faculty Member*.  An Employee who is employed at least half time or greater and holds the rank of associate research scientist/scholar, research scientist/scholar, or senior research scientist/scholar.

(c)     *Non-Tenure Ladder or Non-Ladder Faculty Member*.  An Employee who holds (i) a primary faculty appointment of at least half time or greater as a "Non-Tenure Ladder Faculty Member" or "Non-Ladder Faculty Member" and (ii) an Employee who holds a visiting or convertible appointment of at least half time or greater.  A Non-Tenure Ladder Faculty Member or Non-Ladder Faculty Member shall not include an Employee who holds a student position of instruction such as Assistant in Instruction or Teaching Fellow.

(d)     *Managerial and Professional Staff Member*.  An Employee who is regularly scheduled to work at least 20 hours per week as a "Managerial and Professional Staff Member" and whose employment is not subject to a collective bargaining agreement other than an Employee described in subsection (e) below.

(e)     *Grandfathered Officer, Senior Administrator, Managerial and Professional Staff Member*.  An Employee who is a (i) "Grandfathered Managerial and Professional Staff Member," (ii) "Cedarhurst Professional Staff Member" as described in the Yale University Retirement Plan for Staff Employees, or (iii) "Police Supervisor" as described in the Yale University Retirement Plan for Staff Employees and, who in each case, makes a Participation Election.  A Grandfathered Managerial and Professional Staff Member is:

(i)     An Employee, as determined on June 30, 2014, (1) who was classified as a "Managerial and Professional Staff Member," (2) who was regularly scheduled to work at least 20 hours per week, (3) whose employment was not subject to a collective bargaining agreement, and (4) who had not elected to participate in this Plan; provided, that such Employee shall cease to be a Grandfathered Managerial and Professional Staff Member under this paragraph (i) if at any time on or after July 1, 2014, he or she ceases to satisfy one or more of

4

the qualification requirements described in the foregoing clauses (1) through (4) or upon his or her Severance Date;

(ii)    An Employee who (1) is regularly scheduled to work at least 20 hours per week and (2) becomes a "Managerial and Professional Staff Member" while he or she is eligible to participate in the Yale University Matching Retirement Plan; provided, that such Employee shall cease to be a Grandfathered Managerial and Professional Staff Member under this paragraph (ii) if at any time upon becoming a Grandfathered Managerial and Professional Staff Member, he or she ceases to satisfy one or more of the qualification requirements described in clauses (1) through (4) of paragraph (i) above or upon his or her Severance Date; or

(iii)    An Employee who ceases to be a Grandfathered Managerial and Professional Staff Member described in paragraphs (i) or (ii) upon his or her Severance Date but who is rehired by the Employer as a Managerial and Professional Staff Member while receiving payments which have been designated as salary continuation pay under the payroll records maintained by the Employer; provided, that such Employee shall cease to be a Grandfathered Managerial and Professional Staff Member under this paragraph (iii) if at any time after his or her rehire date, he or she ceases to satisfy one or more of the qualification requirements described in clauses (1) through (4) in paragraph (i) above or, except as provided in this subparagraph (iii), upon his or her Severance Date.

(f)    *Other Employees*.  An Employee who is not described in subsections (a) through (e) above but upon invitation by the University to participate in the Plan makes a Participation Election.

An Employee's tenure or non-tenured status, member status, primary or secondary appointment status, rank, work schedule or classification shall be determined by the payroll or personnel records maintained by the University, including the Employee's appointment letter, shall be binding and conclusive for all purposes of the Plan.  Moreover, no judicial or administrative reclassification or reclassification by the University of an individual as an Employee will be applied to grant any individual retroactive status as an Eligible Employee under the Plan.

2.14    "Eligible Retirement Plan" means (i) an individual retirement account or annuity described in Code Section 408(a) or (b), (ii) a Roth individual retirement account or annuity described in Code Section 408A, (iii) an annuity contract described in Code Section 403(b), (iv) a qualified retirement plan or an annuity plan described in Code Section 401(a) or 403(a), respectively, and (v) an eligible plan described in Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state that agrees to separately account for amounts distributed from this Plan.  A contract or plan described in clause (iii), (iv), or (v) shall be an Eligible Retirement Plan only if such contract or plan accepts Eligible Rollover Distributions.  Notwithstanding the foregoing, in the case of (i) a non-spouse Beneficiary, an Eligible Retirement Plan means an individual retirement account or annuity described in Code Sections 408(a) or 408(b) that is treated as an

inherited IRA pursuant to the provisions of Code Section 402(c)(11) and (ii) an Eligible Rollover Distribution consisting of Roth Contributions, an Eligible Retirement Plan means a Roth individual retirement account or annuity described in Code Section 408A or a "designated Roth account" established for the Participant under an annuity contract described in Code Section 403(b) or a qualified retirement plan or an annuity plan described in Code Section 401(a) or 403(a), respectively; provided, such contract or plan accepts Eligible Rollover Distributions consisting of Roth Contributions.

2.15   "Eligible Rollover Distribution" means any distribution of all or any portion of the balance to the credit of a Distributee under the Plan; provided, that:

(a)   An Eligible Rollover Distribution shall not include: (i) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; (ii) any distribution to the extent such distribution is required under Code Section 401(a)(9); (iii) any amount that is distributed from the Plan or any other plan on account of hardship; and (iv) any distribution(s) that is reasonably expected to total less than $200 during the calendar year or any lower minimum amounts specified by the Recordkeeper.  In applying the $200 minimum described in clause (iv), an Eligible Rollover Distribution from that portion of a Participant's Account consisting of Pre-Tax Contributions shall be considered separately from an Eligible Rollover Distribution from that portion of a Participant's Account consisting of Roth Contributions.

(b)   A portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of after tax employee contributions; provided, that in the case of a rollover to an annuity contract described in Code Section 403(b) or a qualified retirement plan described in Code Section 401(a) or 403(a), (i) the rollover is accomplished by a Direct Rollover and (ii) the contract or plan separately accounts for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(c)   A portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of Roth Contributions; provided, that in the case of a rollover of a qualified distribution described in Code Section 402A to an annuity contract described in Code Section 403(b), a qualified retirement plan described in Code Section 401(a) or 403(a), or a governmental plan described in Code Section 457(b), the rollover is accomplished by a Direct Rollover.

For purposes of this Section, "Distributee" means a Participant, and such Participant's surviving spouse, spouse or former spouse who is an Alternate Payee under a Qualified Domestic Relations Order, and/or non-spouse Beneficiary receiving a distribution from the Plan.

2.16   "Employee" means any individual who is a common-law employee of the University or an Affiliated Employer and specifically excluding any individual who is classified

or paid as an independent contractor or a post-doctoral fellow as determined by the payroll or personnel records maintained by the University or an Affiliated Employer at the time the services are performed.

2.17    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.  "Department of Labor Regulations" means the regulations issued ERISA by the Secretary of the Department of Labor.  All references to any section of ERISA or Labor Regulations shall be deemed to refer not only to such section but also to any amendment thereof and any successor statutory or regulatory provision.

2.18    "Excluded Employee" means:

(a)    Any Employee classified as a Post-Doctoral Associate;

(b)    Any Employee described in the attached Appendix B, "Targeted Income Replacement Ratio:"

(c)    Any Employee of an Affiliated Employer;

(d)    Any Employee whose services are performed pursuant to an agreement between the University and the Employee that provides that such Employee shall not be an Eligible Employee under the Plan or provides that such Employee shall participate in a retirement plan other than the Plan; or

(e)    Any Employee whose retirement benefits under a retirement plan not maintained by the University would be adversely affected by his or her participation in the Plan

An Employee's status or classification as an Excluded Employee shall be determined by the payroll or personnel records maintained by the University, and shall be binding and conclusive for all purposes of the Plan.

2.19    "Gross Compensation" means Basic Compensation paid by the University to a Participant during a Plan Year plus additional or supplementary earnings, as described in the attached Appendix A.  For purposes of this Section, the provisions of subsections (a) through (e) of Section 2.5 shall be applied by substituting "Gross Compensation" for "Basic Compensation" in each place it appears.

2.20    "Hour of Service" means an hour for which an Employee is directly paid or entitled to payment by the University.

2.21    "Investment Funds" means the investment funds that are approved by the Plan Administrator as investment options under the Plan.

2.22    "Leave of Absence or Leave" means any paid or unpaid leave from active employment duly authorized by the University under its leave of absence policy as amended from time to time.

7

2.23    "Normal Retirement Age" means age 70.

2.24    "Participant" means (i) any Eligible Employee who satisfies the participation requirements of Article III and (ii) any Employee or former Employee on whose behalf an Account is maintained under the Plan.  An "Active Participant" means any Participant who has not ceased to be an Eligible Employee.

2.25    "Participant Contributions" means Pre-Tax Contributions and/or Roth Contributions made by a Participant to the Plan.

2.26    "Participation Election" means an irrevocable election by an Eligible Employee to participate in this Plan and, as applicable, an irrevocable election to cease benefit accruals under or to waive participation in the Yale University Retirement Plan for Staff Employees as described in Section 3.2.

2.27    "Plan" means the Yale University Retirement Account Plan.

2.28    "Plan Administrator" means the person or entity appointed under the provisions of Section 12.1 to administer the Plan.

2.29    "Plan Contributions" means, collectively, University Contributions, Participant Contributions, and Rollover Contributions.

2.30    "Plan Year" means a 12-consecutive month period beginning each July 1.

2.31    "Pre-Tax Contributions" means contributions made by a Participant to the Plan in accordance with Section 4.3 that are excludable from the Participant's gross income and intended to satisfy the requirements of Code Section 402 and which have not been irrevocably designated as Roth Contributions by the Participant.

2.32    "Qualified Domestic Relations Order" means a Domestic Relations Order that has been determined to meet the requirements of Code Section 414(p) and ERISA Section 206(d)(3) in accordance with Section 10.3.  A "Domestic Relations Order" means a judgment, decree, or order (including approval of a property settlement agreement) that relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a Participant and is made pursuant to a State domestic relations law (including a community property law).

2.33    "Recordkeeper" means the entity approved by the Plan Administrator to perform recordkeeping service for the Plan.

2.34    "Rollover Contributions" means the contributions made by a Participant to the Plan in accordance with Section 4.4.

2.35    "Roth Contributions means contributions made by a Participant to the Plan in accordance with Section 4.3 that are (i) not excludable from the Participant's gross income, (ii) intended to satisfy the requirements of Code Section 402A, and (iii) irrevocably designated by the Participant as Roth Contributions in his or her Salary Reduction Election.

2.36    "Salary Continuation Pay" means compensation which is designated as salary continuation pay for purposes of the Plan under the payroll records maintained by the University and paid to a Participant following his or her Severance Date; provided, that Salary Continuation Pay shall not include (i) Salary Continuation Pay paid during any month not included within Participant's Limitation Year (as defined in Section 5.1(b)(iv)) which contains his or her Severance Date and the next five Limitation Years or (ii) Salary Continuation Pay when added to Basic Compensation paid previously during the Plan Year that is in excess of the compensation limit of Code Section 401(a)(17) as adjusted annually by the Secretary of the Treasury for cost of living increases under Code Section 401(a)(17)(B).  For the purpose of clause (ii), the compensation limit in effect for the calendar year in which the Plan Year begins shall be the compensation limit for that Plan Year.

2.37    "Salary Reduction Election" means an election by a Participant to reduce his or her Gross Compensation by a fixed dollar amount or percentage of Gross Compensation and have such amount contributed to the Plan as Pre-Tax Contributions, Roth Contributions, or a combination of both.

2.38    "Severance Date" means the day on which an Employee's employment with the University is terminated by reason of such Employee's discharge, resignation, retirement or death; provided, that a Leave of Absence shall not constitute a discharge, retirement , or retirement.  If an Employee is entitled to a subsequent payment of compensation after his or her Severance Date for reasons other than future services (*e.g.*, as back pay for past services rendered or as payments in the nature of severance pay), the Severance Date of such Employee shall be as of the effective date of the severance event (*e.g.*, effective date of a discharge, resignation, retirement, or the date of his or her death), and the subsequent payment of the aforementioned type of post-severance compensation shall not operate to postpone the timing of the Severance Date for purposes of the Plan.

2.39    "Social Security Wage Base" means the amount of a Participant's Basic Compensation which is subject to the tax imposed for old age, survivors and disability insurance on the University by the Federal Insurance Contributions Act, as amended.

2.40    "University" means Yale University.

2.41    "University Contributions" means both University Core Contributions and University Match Contributions.

2.42    "University Core Contributions" means the contributions made by the University on behalf of each Participant in accordance with Section 4.1.

2.43    "University Match Contributions" means the contributions made by the University on behalf of each Participant in accordance with Section 4.2.

ARTICLE III
PARTICIPATION

3.1     <u>Participation Requirements</u>.  An Eligible Employee who was a Participant in the Plan on June 30, 2015 shall continue as a Participant as of July 1, 2015.  Any other Eligible Employee shall become a Participant in the Plan as follows:

(a)     *Tenured or Ladder Faculty Member, Non-Tenure Ladder Faculty Member, or Research Faculty Member.*  An Eligible Employee who is a Tenured or Ladder Faculty Member, Non-Tenure Ladder Faculty Member, or Research Faculty Member, as described in Section 2.13(a), (b), and (c), shall become a Participant on the first day of the month in which his or her appointment or rank becomes effective.

(b)     *Managerial and Professional Staff Member.*  An Eligible Employee who is a Managerial and Professional Staff Member as described in Section 2.13(d) shall become a Participant on the first day of the month in which his or her Date of Employment or Date of Reemployment occurs.

(c)     *Grandfathered Managerial and Professional Staff Member.*  An Eligible Employee who is a grandfathered Eligible Employee as described in Section 2.13(e) shall become a Participant as of (i) the first day of the month in which he or she submits a Participation Election if the Participation Election is submitted before the election processing date (as established by the University) for such month or (ii) the first day of the month following the month in which he or she submits a Participation Election if the Participation Election is submitted after the election processing date (as established by the University) for such month.

(d)     *Other Eligible Employee*:  An Eligible Employee described in Section 2.13(f) may elect to become a Participant on such date as the University may determine by making a Participation Election in accordance with Section 3.2.

3.2     <u>Participation Election</u>.  An Eligible Employee described in Section 3.1(c) shall make a Participation Election by making an irrevocable election to participate in this Plan and, as applicable, an irrevocable election to cease future benefit accruals under or to waive participation in the Yale University Retirement Plan for Staff Employees.  A Participation Election shall be made in such form and in such manner as prescribed by the Plan Administrator subject to the following:

(a)     *University Core Contributions.*  A Participant shall be eligible to receive University Core Contributions as of (i) the first day of the month in which he or she submits a Participation Election if the Participation Election is submitted before the election processing date (as established by the University) for such month or (ii) the first day of the month following the month in which he or she submits a Participation Election if the Participation Election is submitted after the election processing date (as established by the University) for such month.

10

(b)      *Participant Contributions and University Match Contributions.*  A Participant shall be eligible to make Participant Contributions from Gross Compensation (and to receive corresponding University Match Contributions) as of (i) the first day of the month in which he or she submits a Participation Election if the Participation Election is submitted before the election processing date (as established by the University) for such month or (ii) the first day of the month following the month in which he or she submits a Participation Election if the Participation Election is submitted after the election processing date (as established by the University) for such month.

(c)      *Cessation of Benefit Accruals.*  A Participant shall cease to accrue Benefit Years as provided under the terms of the Yale University Retirement Plan for Staff Employees as of (i) the first day of the month in which he or she submits a Participation Election if the Participation Election is submitted before the election processing date (as established by the University) for such month or (ii) the first day of the month following the month in which he or she submits a Participation Election if the Participation Election is submitted after the election processing date (as established by the University) for such month.

(d)      *Special Participation Elections.*  Notwithstanding the subsections above, the Plan Administrator may, in its discretion, establish different terms and conditions as to commencement of participation and, subject to subsection (b) above, the time of making contributions.  If such special Participation Election includes a provision for retroactive University Core Contributions, such Participation Election shall contain a provision, if applicable, that such Participant shall cease to accrue Benefit Years as provided under the terms of the Yale University Retirement Plan for Staff Employees as of the date used in calculating University Core Contributions.  The provisions of any special Participation Election are hereby incorporated by this reference to the Plan and shall be attached as an appendix to the Plan.

(e)      *Termination of Participation Election.*  A Participation Election shall terminate on the earlier of:  (i) a Participant's Severance Date or, if later, the date on which his or her Salary Continuation Pay ends or (ii) on the date a Participant becomes an Employee who is not an Eligible Employee.  In the case of a Participant who is "Cedarhurst Professional Staff Member" or a "Police Supervisor" as each are described in the Yale University Retirement Plan for Staff Employees, he or she shall again be eligible to make or not make a Participation Election if he or she is subsequently rehired as a Cedarhurst Professional Staff Member or a Police Supervisor or again becomes a Cedarhurst Professional Staff Member or a Police Supervisor.

3.3      <u>Termination of Active Participation</u>.  An Active Participant shall continue as an Active Participant until (i) he or she ceases to be an Eligible Employee or (ii) the Plan is terminated.

ARTICLE IV
PLAN CONTRIBUTIONS

4.1     University Core Contributions.  For each pay period during which a Participant is an Eligible Employee, University Core Contributions shall be made as percentage of his or her Basic Compensation as follows:

Basic Compensation below the Social Security Wage Base ......................5.0%
Basic Compensation above the Social Security Wage Base......................7.5%

The Social Security Wage Base means for the Plan Year, the Social Security Wage Base in effect at the beginning of the Plan Year and shall be adjusted, as necessary, as of the beginning of each Plan Year.  In the event, a portion of a Participant's Basic Compensation is above the Social Security Wage Base, the increased contribution rate of 7.5% shall apply only to that portion above the Social Security Wage Base.

4.2     University Match Contributions.  For each month during which a Participant is an Eligible Employee, University Match Contributions shall be made in an amount equal to his or her Participant Contributions for that month that do not exceed five percent (5%) of his or her Basic Compensation.  Participant Contributions in excess of 5% of Basic Compensation may be made by such Participant but shall not be eligible to share in University Match Contributions except as provided in subsection (c) below.  For purposes of this Section:

(a)     *ACP Safe Harbor*.  University Match Contributions are intended to satisfy the actual contribution percentage (ACP) safe harbor provisions of Code Section 401(m)(11); provided, that the University reserves the right to amend the Plan to reduce or suspend University Match Contributions on future Participant Contributions during a Plan Year or for any future Plan Year.  Such right may not be exercised unless (i) Participants are provided with a supplemental notice of reduction or suspension that satisfies the requirements of Treasury Regulation § 1.401(k)-3(g)(2), (ii) the reduction or suspension of University Matching Contributions is effective no earlier than the later of 30 days after Participants are provided the notice of reduction or suspension or the date the amendment is adopted; (iii) Participants are given a reasonable opportunity (including a reasonable period after receipt of the supplemental notice of reduction or suspension described in clause (ii)) to change their automatic contributions elections (as described in Section 4.3(a) below) or Salary Reduction Elections; (iv) the Plan is amended to provide that the ACP test will be satisfied for the entire Plan Year in which the reduction or suspension occurs using the current year testing method described Treasury Regulation § 1.401(m)-2(a)(1)(ii); and (v) the Plan satisfies the requirements of Code Section 401(m)(11) with respect to amounts deferred through the effective date of the amendment.

(b)     *Procedures and Notice Requirement*.  The Plan Administrator shall establish uniform and nondiscriminatory procedures designed to ensure that a Participant is provided an effective opportunity to modify an automatic contribution election (as described in Section 4.3(a) below) or make or modify a Salary Reduction Election.  An Eligible Employee or Participant shall be deemed to have such effective opportunity if he

12

or she may modify an automatic contribution election or make or modify a Salary Reduction Election during the 30-day period (or such other period as may be established under Treasury Regulations or other applicable guidance) immediately following receipt of the notice described herein. These procedures include, but are not limited to, that such Participant be given timely notice (in writing or in such other form as may be permitted under the Code and ERISA and any guidance issued thereunder and in such manner as calculated to be understood by the average Participant) of his or her rights and obligations under the Plan's matching contribution features. The notice shall contain the provisions set forth in Treasury Regulation § 1.401(k)-3(d)(2)(ii) to the extent applicable. Notice is deemed to be timely if at least 30 days (and no more than 90 days) before the beginning of each Plan Year or, in the case of an Eligible Employee who becomes eligible to participate in the Plan after the 90th day before the beginning of the Plan Year, notice is given no more than 90 days before the Eligible Employee becomes eligible to participate in the Plan but not later than the date the Eligible Employee becomes eligible to participate in the Plan as determined under Article III.

(c)     *True-Up Feature*.  For each Plan Year during which a Participant is an Eligible Employee, the amount of his or her University Match Contributions shall be calculated on a Plan Year basis disregarding Basic Compensation earned while he or she is not an Eligible Employee.  If the aggregate amount of such Participant's University Match Contributions for the Plan Year is less than the amount of his or her University Match Contributions when calculated on a Plan Year basis, the difference shall be contributed as additional University Match Contributions no later than the last day of the following Plan Year.  The Plan Administrator shall establish uniform procedures for applying the provisions of this subsection (c).

4.3     Participant Contributions.  For each month during which a Participant is an Eligible Employee, Participant Contributions shall be made as follows:

(a)     *Automatic Contribution Election*.  The Plan Administrator shall establish procedures to implement automatic enrollment elections as described below:

(i)     *Eligible Employees*.  An Eligible Employee's Gross Compensation shall automatically be reduced by five percent (5%) upon becoming a Participant and such amounts shall be contributed to the Plan as Pre-Tax Contributions unless the Participant terminates the automatic contribution election within the time period prescribed by the Plan Administrator.  An automatic contribution election shall remain in effect for the Plan Year unless terminated by the Participant.  In the case of a grandfathered Eligible Employee described in Section 2.13(e), this paragraph (i) shall not apply and his or her initial contribution rate shall be the rate he or she elects under his or her Participation Election.

(ii)    *Participants*.  A Participant's Gross Compensation shall automatically be reduced by five percent (5%) as of each July 1st and such amounts shall be contributed to the Plan as Pre-Tax Contributions unless his or her contribution rate, determined as of the immediately preceding business day, is five percent (5%) or greater or the Participant terminates the automatic

contribution election within the time period prescribed by the Plan Administrator. An automatic contribution election shall remain in effect for the Plan Year unless terminated by the Participant.

(b)     *Participant Directed Contribution Rate.*  The Plan Administrator shall establish procedures pursuant to which a Participant may reduce his or her Gross Compensation pursuant to a Salary Reduction Election and have such amounts contributed to the Plan as Pre-Tax Contributions, Roth Contributions, or a combination of both, change or terminate his or her Salary Reduction Election, or re-designate his or her contributions as Pre-Tax Contributions or Roth Contributions with respect to amounts not yet paid.  Such procedures may include limitations on the salary reduction amount (*e.g.*, any amount from 0% to 75% of Gross Compensation for each pay period) and the number and frequency of any modifications during any Plan Year; provided, however, that a Participant shall be permitted to modify his or her Salary Reduction Election at least once each Plan Year or terminate his or her Salary Reduction Election at any time.

(c)     *Automatic Escalation Election.*  The Plan Administrator shall establish procedures pursuant to which a Participant's Gross Compensation shall automatically be reduced as of each July 1st (commencing with the Plan Year beginning on July 1, 2010) by the lesser of (i) the Participant's contribution rate (determined as of the immediately preceding business day) plus one percent (1%) or (ii) ten percent (10%) and such amounts, as determined by the Plan Administrator, shall be contributed to the Plan as Pre-Tax Contributions, Roth Contributions, or a combination of both, unless his or her contribution rate, determined as of the immediately preceding business day, is less than five percent (5%) or greater than 10% or the Participant terminates the automatic escalation election within the time period prescribed by the Plan Administrator.  An automatic escalation election shall remain in effect for the Plan Year unless terminated by the Participant.

(d)     *Application of Automatic Elections following Hardship Withdrawal.*  In the event an Eligible Employee or Participant is suspended from making Participant Contributions as a result of a hardship withdrawal from this Plan or any other Code Section 403(b) plan maintained by the University and such Eligible Employee becomes a Participant during the six-month suspension period or such Participant's six-month suspension period includes July 1st, the automatic contribution elections described in subsection (a) and the automatic escalation election described in subsection (c) shall be applied immediately following the end of the six-month suspension period and, where applicable, taking into account his or her contribution rate determined as of the business day immediately prior to the six-month suspension period.

(e)     *Notice Requirement.*  In the case of procedures established for automatic contribution election and the automatic escalation election, such procedures shall also include uniform and nondiscriminatory procedures designed to ensure that a Participant subject to the automatic contribution election and/or automatic escalation election is provided an effective opportunity to modify or terminate an automatic contribution election or automatic escalation election.  These procedures include, but are not limited to, that such Participant be given timely notice (in writing or in such other form as may be

14

permitted under the Code and ERISA and any guidance issued thereunder and in such manner calculated as to be understood by the average Participant) of his or her rights and obligations under the Plan's automatic contribution and escalation arrangements. The notice shall contain the provisions set forth in Treasury Regulation § 1.401(k)-3(d)(2)(ii) to the extent applicable and shall inform the Participant of (i) the effective date of the automatic contribution election and automatic escalation election, (ii) the automatic contribution and automatic escalation percentage, (iii) the Investment Fund in which such Participant Contributions will be invested, and (iv) his or her right to modify or terminate the automatic contribution election and/or automatic escalation election as well as the procedures for exercising such right and the timing for implementing such modification or termination. Notice is deemed to be timely if at least 30 days (and no more than 90 days) before the beginning of each Plan Year, the notice is given to each Participant subject to the automatic contribution election or automatic escalation arrangement. In the case of an Eligible Employee who does not receive the notice within the period described in the previous sentence because he or she becomes eligible to participate in the Plan (or becomes covered under the automatic contribution arrangement as a result of a change in employment status) after the 90th day before the beginning of the plan year, the timing requirement is deemed to be satisfied if the notice is provided no more than 90 days before the Eligible Employee becomes eligible to participate in the Plan (or becomes covered under the automatic contribution arrangement as a result of a change in employment status), and no later than the date that affords the Eligible Employee a reasonable period of time after receipt of the notice to modify or terminate the automatic contribution election and/or automatic escalation election.

4.4     Rollover Contributions. To the extent accepted by the Recordkeeper and, in accordance with procedures established by the Recordkeeper, a Participant who is entitled to receive or received an eligible rollover distribution as defined in Code Section 402(c)(4) and Treasury Regulations issued thereunder, including an eligible rollover distribution received by such Participant as a surviving spouse or as a spouse or former spouse who is an alternate payee under a Qualified Domestic Relations Order may elect to contribute all or any portion of such distribution by a "direct rollover" from such eligible retirement plan to the Plan or by a "60-day rollover" if the Participant deposits all or any portion of such distribution with the Recordkeeper within 60 days of his or her receipt of such distribution. The 60-day rollover requirement shall not apply if the Participant substantiates that the 60-day rollover requirement has been waived by the Secretary of the Treasury. Notwithstanding the foregoing:

(a)     The Recordkeeper may accept as Rollover Contributions, amounts consisting of after-tax employee contributions (other than distributions of Roth contributions as defined in Code Section 402A) distributed from an annuity contract described in Code Section 403(b) or a qualified retirement plan described in Code Section 401(a) or 403(a); only if (i) the rollover is accomplished by a direct rollover and (ii) the Recordkeeper agrees to separately account for such amounts, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(b)     The Recordkeeper may accept as Rollover Contributions, amounts consisting of Roth contributions as defined in Code Section 402A distributed from a

designated Roth account (an account held under an annuity contract described in Code Section 403(b) or a qualified retirement plan or an annuity plan described in Code Section 401(a) or 403(a), respectively) subject to the following:

(i)     *Qualified Distributions.*  In the case of a qualified distribution, the rollover must be accomplished by a direct rollover from the distributing plan to the Plan.  A qualified distribution is a distribution from a designated Roth account made after the Participant's attainment of age 59½ (or disability) and after the date the designated Roth account was in the distributing plan for a 5-year taxable period.

(ii)     *Non-Qualified Distributions - Direct Rollover.*  In the case of a distribution that is not a qualified distribution as defined in paragraph (i), the Recordkeeper must agree to separately account for such amounts, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.  The Recordkeeper shall be entitled to rely on a statement from the distributing plan identifying (i) the Participant's basis in the rolled over amounts and (ii) the date on which the Participant's 5-taxable-year period of participation (as required under Code Section 402A(d)(2) for qualified distributions) started under the distributing plan; provided, that the rollover is accomplished by a direct rollover from the distributing plan to the Plan.  If the 5-taxable-year period of participation under the distributing plan would end sooner than the Participant's 5- taxable-year period of participation under the Plan, the 5-taxable-year period of participation applicable under the distributing plan shall continue to apply with respect to the Rollover Contribution.

(iii)     *Non-Qualified Distributions - 60-Day Rollover.*  In the case of a distribution that is not a qualified distribution as defined in paragraph (i), the Recordkeeper may accept only that portion of the distribution that is attributable to earnings and must agree to separately account for such amounts, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.  In addition, the 5-taxable-year period of participation under the distributing plan is not taken into account and the Participant's 5- taxable-year period of participation under the Plan will commence in the taxable year in which the rollover to the Plan occurs.

(c)     The Recordkeeper may not accept as Rollover Contributions, amounts distributed from (i) an individual retirement account or annuity described in Code Sections 408(a) or (b) consisting of after-tax employee contributions or nondeductible individual retirement account or annuity contributions, or (ii) a Roth individual retirement account or annuity described in Code Section 408A.

4.5     <u>Contributions During Leave of Absence</u>.  University Contributions and Participant Contributions shall continue or cease during a Leave of Absence as follows:

(a)     *Leave With Salary.*  During a Leave with salary, University Contributions and Participant Contributions shall continue to be made for a Participant on the basis of his or her Basic Compensation and Gross Compensation, respectively, then being paid by the University so long as he or she remains an Eligible Employee throughout such Leave.

(b)     *Leave Without Salary.*  During a Leave without salary, University Contributions and Participant Contributions shall cease and upon the Participant's return from such Leave, his or her University Contributions shall automatically resume and Participant Contributions shall automatically resume at the rate last in effect; provided, that he or she returns as an Eligible Employee.

4.6     <u>Contributions During Long-Term Disability</u>.  For each month during which a Participant is permanently and totally disabled (as defined in Code Section 22(e)(3)), University Core Contributions shall continue to be made based on the Participant's Basic Compensation in effect at the time the disability occurred ("Deemed Basic Compensation") as determined, generally, under the following schedule:

Deemed Basic Compensation
  below the Social Security Wage Base ....................................................10.0%
Deemed Basic Compensation
  above the Social Security Wage Base....................................................12.5%

Notwithstanding the foregoing, (i) the amount of University Core Contributions made under this Section shall be determined under the terms of the University's long-term disability plan as amended from time to time, the terms of which are incorporated herein by this reference and (ii) this Section shall not apply to any Participant who is a highly compensated employee as defined in Code Section 414(q) if, under the terms of the University's long-term disability plan, University Core Contributions are not continued for all Participants who become permanently and totally disabled.  University Core Contributions shall cease under this Section when the Participant is no longer permanently and totally disabled, becomes ineligible to receive benefit payments under the University's long-term disability program, or contributions under this Section are terminated under the terms of the University's long-term disability plan whichever is the earliest to occur.

4.7     <u>Contributions for Former Employees</u>.  For each month during which a Participant is receiving Salary Continuation Pay, University Core Contributions shall be equal to the lesser of (i) 100% of 1/12th of his or her Participant's Includible Compensation (as defined in Section 5.1(b)(iii) for his or her most recent year of service as defined in Code Section 403(b) and Treasury Regulations thereunder) or (ii) such amount as determined under the following schedule:

Salary Continuation Pay below the Social Security Wage Base ...............10.0%
Salary Continuation Pay above the Social Security Wage Base................12.5%

The Social Security Wage Base means for the Plan Year, the Social Security Wage Base in effect at the beginning of the Plan Year and shall be adjusted, as necessary, as of the beginning of each Plan Year.  In the event, a portion of a Participant's Salary Continuation Pay is above the

Social Security Wage Base taking into account any Basic Compensation paid previously during the Plan Year, the increased contribution rate of 12.5% shall apply only to that portion above the Social Security Wage Base.  The provisions of this Section are intended to meet the requirements of Code Section 403(b) and Treasury Regulation § 1.403(b)-4(d).  University Core Contributions shall cease under this Section at such times and in such manner as provided under the University's severance policy, the terms of which are incorporated by this reference.

4.8     Contributions Upon Return From Qualified Military Service.  A Participant who returns from a qualified military service (as defined in Code Section 414(u)) shall be eligible to receive retroactive University Core Contributions to the extent required under Code Section 414(u) and shall be permitted to make retroactive Participant Contributions (and to receive corresponding University Match Contributions) to the extent permitted under Code Section 414(u).

4.9     When Contributions Are Made.  Contributions shall be made as follows:

(a)     University Core Contributions shall be forwarded to the Recordkeeper by the University monthly or at such other interval, but at least annually, as determined by the University.

(b)     University Match Contributions shall be forwarded to the Recordkeeper by the University monthly or at such other interval, but in no event later than the last day of the Plan Year quarter immediately following the Plan Year quarter in which the Participant Contributions that gave rise to the University Match Contribution were made except as provided in Section 4.2(c), or at such other times as may be permitted under Treasury Regulations or other applicable guidance.

(c)     Participant Contributions shall be forwarded to the Recordkeeper by the University as soon as the amount can reasonably be identified and separated from the University's other assets, but in no event later than the 15th business day of the month following the month in which such amounts would otherwise be payable to the Participant, or at such other times as may be permitted under Labor Regulations or other applicable guidance.

(d)     Rollover Contributions shall be forwarded to the Recordkeeper directly by Participants.

4.10     Application of Contributions.  The Recordkeeper shall credit Plan Contributions to the Account of each Participant.  Each Account shall consist of such subaccounts as may be needed for each Participant for the proper administration of the Plan.  The Recordkeeper shall maintain separate accounts if required by Treasury Regulations under Code Section 403(b) including a separate account for Excess Annual Additions to the extent required under Section 5.1.

4.11     Contributions by Mistake of Fact.  In the event the University makes any contribution to the Plan by a mistake of fact, the University may withdraw such contributions from the Plan at any time within one (1) year after the payment of the contribution.  The

foregoing shall not limit the University's right to reallocate contributions or earnings allocated incorrectly to any Account.

4.12    Vesting of Plan Contributions.  A Participant's interest in his or her Plan Contributions and the earnings thereon shall be at all times non-forfeitable.  The foregoing shall in no way limit the deduction from a Participant's Account of such fees and charges as may be imposed by the Recordkeeper, such other Plan expense charges which may be charged to the Account under applicable law, the removal of Plan Contributions made under a mistake of fact pursuant to Section 4.11, or the University's right to reallocate contributions or earnings allocated incorrectly to any Account.

4.13    Limitations on Plan Contributions.  Notwithstanding anything in this Article to the contrary, Plan Contributions shall not exceed the applicable dollar amounts of Code Sections 402(g) and 415 as set forth in Article V.

ARTICLE V
CONTRIBUTION LIMITATIONS

5.1     415 Contribution Limitation.

(a)     *Contribution Limit.*  For each Limitation Year, Annual Additions credited to a Participant's Account under this Plan shall not exceed the limits of Code Section 415 (the "415 Limit").  A Participant's 415 Limit for a Limitation Year shall be the lesser of:

(i)      The applicable dollar limit in effect for the Limitation Year under Code Section 415(c)(1) as adjusted from time to time for cost-of-living increases in accordance with Code Section 415(d).

(ii)     100 percent of the Participant's Includible Compensation for the Limitation Year.

(b)     *Definitions.*  For purposes of this Section, the following capitalized terms shall have the respective meanings set forth below:

(i)      "Annual Additions" means the sum of the following amounts allocated to a Participant's Account for the Limitation Year under this Plan and under any other annuity contract or custodial account described in Code Section 403(b) or defined contribution plan which is deemed to be maintained by the Participant under subsection (d):  (1) employer contributions, (2) employee contributions including elective deferrals (within the meaning of Code Section 402(g)(3)), Roth contributions (within the meaning of Code Section 402A), and after-tax employee contributions but excluding age 50+ catch-up contributions (within the meaning of Code Section 414(v)), (3) forfeitures, and (4) any other amounts required by Code Section 415, Treasury Regulations and other guidance issued thereunder which are hereby incorporated by reference.

(ii)     "Excess Annual Additions" means Annual Additions that exceed the limits of Code Section 415 for a Limitation Year.

(iii)     "Includible Compensation" means the amount of compensation from the University or an Affiliated Employer that is includable in the Participant's gross income for Federal income tax purposes (computed without regard to the exclusion allowed by Code Section 911) for the most recent period that constitutes a "year of service" as defined in Code Section 403(b) and Treasury Regulations thereunder.  Includible Compensation shall include (1) elective deferrals within the meaning of Code Section 402(g)(3) and any amount which is contributed or deferred by the University or an Affiliated Employer at the election of the Participant and which is not includable in the gross income of the Participant by reason of Code Sections 125, 132(f), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b) and (2) any salary continuation payments, including any differential wage payments (as defined in Code Section 3401(h)(2)), paid to a Participant during qualified military service (as defined in Code

Section 414(u)) but only to the extent such payments do not exceed the amount the Participant would have received if he or she had continued to perform services for the University or an Affiliated Employer rather than entering qualified military service but shall exclude (1) any compensation received during a period when the University or an Affiliated Employer is not an eligible employer within the meaning of Code Section 403(b) and (2) any compensation in excess of the compensation limit of Code Section 401(a)(17) as adjusted annually by the Secretary of the Treasury for cost of living increases under Code Section 401(a)(17)(B).  A Participant who is permanently and totally disabled as defined in Code Section 22(e)(3) shall be deemed to have Includible Compensation for a Limitation Year equal to the amount of compensation such Participant would have received for the Limitation Year if the Participant had been paid at the rate of compensation paid immediately before becoming permanently and totally disabled.  A former Eligible Employee shall be deemed to have Includible Compensation for the period through the end of the Limitation Year which includes his or her Severance Date and through the end of next five Limitation Years equal to one-twelfth (1/12) of such Participant's Includible Compensation during his or her most recent "year of service" as defined in Code Section 403(b) and Treasury Regulations thereunder.

(iv)   "Limitation Year" means, with respect to a Participant who is not in control of any employer within the meaning of Treasury Regulation § 1.415(f)-1(f)(2), the calendar year.  If a Participant is not in control of any employer, the Participant may elect to change his or her Limitation Year to another 12-consecutive month period by attaching a statement to his or her income tax return filed for the taxable year in which the change is made; provided, the change in limitation year complies with Treasury Regulation § 1.415(j)-1(e) and the Participant notifies the University in writing.  If a Participant is in control of an employer within the meaning of Treasury Regulation § 1.415(f)-1(f)(2), the Limitation Year is the limitation year of the defined contribution plan controlled by the Participant.

(c)   *Aggregation of Code Section 403(b) Contracts*.  Annual Additions credited to a Participant's Account under this Plan shall be aggregated with Annual Additions credited to a Participant under any other annuity contract or custodial account described in Code Section 403(b) issued or established under any other plan maintained by the University or an Affiliated Employer.  For purposes of this Section, an Affiliated Employer includes any employer that is a member of a controlled group of corporations as defined in Code Section 414(b) as modified by Code Section 415(h) or a group of commonly controlled trades or businesses as defined in Code Section 414(c) as modified by Code Section 415(h) which includes the University.

(d)   *Aggregation where Participant is in Control of an Employer*.  If a Participant is in control of any other employer (determined under Code Section 414(b) and 414(c) as each are modified by Code Section 415(h)) for a Limitation Year, the Account maintained for the Participant under this Plan is aggregated with all defined contribution plans maintained by employers controlled by the Participant and the 415

21

Limit is applied in the aggregate to all Annual Additions allocated to the Participant under this Plan and all defined contribution plans of the employers controlled by the Participant. If the Plan Administrator receives sufficient information from the Participant concerning his or her participation in a defined contribution plan maintained by an employer that is controlled by the Participant, the Annual Additions allocated to a Participant under this Plan for the Limitation Year shall not exceed the 415 Limit reduced by the Annual Additions allocated to the Participant under any defined contribution plans maintained by an employer that is controlled by the Participant.

(e)     *Excess Annual Additions*. Excess Annual Additions shall be deemed to consist of the Annual Additions last allocated except that Annual Additions to a defined contribution plan maintained by an employer controlled by the Participant shall be deemed to have been allocated first. Excess Annual Additions shall be included in the Participant's gross income and the Recordkeeper shall maintain a separate account for such Excess Annual Additions for the year of the excess and for each year thereafter. In the case where a Participant is in control of an employer and the Excess Annual Additions need to be maintained in a separate account under this Plan, the Recordkeeper shall only be required to establish such separate account if the Plan Administrator receives sufficient information from the Participant concerning his or her participation in such other defined contribution plan controlled by the Participant. Alternatively, the Plan Administrator may apply any method available under the Employee Plans Compliance Resolution System ("EPCRS") or any successor program to EPCRS for correcting Code Section 415 errors under the Plan. The Plan Administrator may direct that Excess Annual Additions be distributed by the Recordkeeper pursuant to Treasury Regulation § 1.403(b)-4(f).

(f)     *Incorporation by Reference*. Notwithstanding the foregoing, Code Section 415 and the Treasury Regulations issued thereunder are hereby incorporated by reference and to the extent there is an inconsistency between this Section and Code Section 415 and the Treasury Regulations issued thereunder, the latter shall control. In addition, it is intended that this Section shall be construed in accordance with Code Section 415, Treasury Regulations and other guidance issued thereunder.

5.2     Limitations on Participant Contributions. For each calendar year, a Participant's Participant Contributions when added to his or her elective deferrals (within the meaning of Code Section 402(g)(3)) and Roth contributions (within the meaning of Code Section 402A) made to any other employer plan shall be subject to the following contribution limits:

(a)     *Contribution Limit*. For each calendar year, a Participant's Participant Contributions shall not exceed the greater of:

(i)     *Participant Contribution Limit- Code Section 402(g)(1)(B)*. The applicable dollar limit in effect for the calendar year under Code Section 402(g)(1)(B) as adjusted from time to time for cost-of-living increases in accordance with Code Section 402(g)(4); or

(ii)     *Age 50+ Catch-Up Limit - Code Section 414(v)*.  In the case of a Participant who has attained or will attain age 50 before the close of the calendar year, the applicable dollar limit under paragraph (i) as increased by the applicable dollar limit under Code Section 414(v)(2)(B) in effect for the calendar year as adjusted from time to time for cost-of-living increases in accordance with Code Section 414(v)(2)(C).

(b)     *Excess Participant Contributions*.  In the event a Participant's Participant Contributions when added to elective deferrals (within the meaning of Code Section 402(g)(3)) and Roth contributions (within the meaning of Code Section 402A) made to any other employer plan on his or her behalf exceed the contribution limitation described in subsection (a):

(i)     The Participant may designate such excess as an "Excess Pre-Tax Contribution" or "Excess Roth Contribution" by notifying the Plan Administrator in writing by March 1 of the following calendar year of the amount of the Excess Pre-Tax Contribution and/or Excess Roth Contribution.  A Participant shall be deemed to have notified the Plan Administrator of any Excess Pre-Tax Contributions and/or Excess Roth Contribution that arises for a calendar year made to the Plan and any other plan maintained by the University or an Affiliated Employer.

(ii)     The Recordkeeper shall distribute to the Participant the amount designated as an Excess Pre-Tax Contributions and/or Excess Roth Contribution pursuant to subsection (a) above and any income or loss allocable through the end of the taxable year (determined in accordance with Code Section 402(g) and the Treasury Regulations thereunder) no later than the April 15 of the following calendar year.  An Excess Pre-Tax Contributions and/or Excess Roth Contribution shall be treated as an Annual Addition under Section 5.1 if not distributed by April 15 of the following calendar year.

ARTICLE VI
PLAN FUNDING

6.1     Contracts.  All benefits under the Plan are provided solely through the Contracts issued or established by the Recordkeeper.  The Plan Administrator shall from time to time select the number of Contracts and the underlying Investment Funds in which Plan Contributions may be invested and has the right to establish alternative Contracts or offer alternative Investment Funds or, to the extent permitted under the Contract, eliminate any previously established Contract or previously offered Investment Fund by transferring amounts held thereunder to a successor Contract or Investment Fund.  The Plan Administrator shall from time to time select the Recordkeeper and retains the right to select an alternative Recordkeeper or eliminate or cease forwarding future Plan Contributions to any previously selected Recordkeeper.  If a Recordkeeper ceases to be eligible to receive Plan Contributions after December 31, 2008, the Plan Administrator shall enter into an information sharing agreement with such Recordkeeper to the extent another agreement with the Recordkeeper does not provide for the exchange of information as required by Code Section 403(b) and the Treasury Regulations thereunder.  The Recordkeeper has the exclusive responsibility for investing Plan Contributions as directed by Participants, Beneficiaries, and Alternate Payees.  Benefits under the Plan are not insured or guaranteed by the Pension Benefit Guaranty Corporation, the University, or by any other person or corporation.

6.2     Investment of Contributions and Accounts.  Subject to the administrative rules of the Plan Administrator and such conditions as may reasonably be imposed by the Recordkeeper, a Participant (or Beneficiary or Alternate Payee) has the sole responsibility to direct the investment of his or her Plan Contributions and Account among the Investment Funds as the Participant shall elect as provided below:

(a)     Upon enrollment in the Plan, a Participant shall designate the Investment Fund(s) in which his or her Plan Contributions are to be invested.  A Participant may change his or her election of designated Investment Funds with regard to future Plan Contributions in such manner, at such time and with such effective date as permitted by the Plan Administrator.

(b)     A Participant may reallocate the balance of his or her Account among the Investment Funds by transferring all or part of his or her Account from one Investment Fund to another Investment Fund; provided, that:

(i)     Such transfers shall be made in such manner, at such time and with such effective date as permitted by the Recordkeeper including setting minimum or maximum amounts that may be transferred and when transfers are permitted.

(ii)    Any transfer shall be subject to such charges, including but not limited to market value adjustments, as established from time to time by the Recordkeeper with regard to the applicable Investment Fund.

(iii)   To the extent a reallocation results in a contract exchange as defined in Treasury Regulation § 1.403(b)-10(b)(1), such contract exchange shall

24

be permitted only to the extent the contract exchange occurs between Recordkeepers selected by the Plan Administrator for the Plan and the exchange meets the requirements of Treasury Regulation § 1.403(b)-10(b)(2).

(c)     If an Investment Fund is closed, the Participant shall redirect the investment of amounts held in a closing Investment Fund to a new or remaining Investment Fund. If a Participant does not provide timely affirmative investment instructions, the Plan Administrator may (i) direct that amounts held in a closing Investment Fund be invested in a "qualified default investment alternative" as described in subsection (d) below or (ii) establish procedures in accordance with ERISA Section 404(c)(4) under which amounts invested in a closing Investment Fund shall be transferred to a new or remaining Investment Fund. The procedures described in clause (ii) shall be subject to the following:

(i)     Amounts invested in a closing Investment Fund shall be transferred to a new or remaining Investment Fund with the characteristics, including characteristics relating to risk and rate of return, that are reasonably similar to the characteristics of the closing Investment Fund; and

(ii)     At least 30 days and no more than 60 days prior to the effective date of the change, Participants shall be provided with written notice of the change and information comparing the existing and new Investment Funds and the new or remaining Investment Fund to which amounts invested in the closing Investment Fund will be transferred (in the absence of affirmative investment instructions from the Participant to the contrary).

(d)     If a Participant fails to direct the investment of his or her Plan Contributions and, in the case of Participant Contributions made pursuant to Section 4.3 pertaining to automatic elections, such Plan Contributions shall be invested in an Investment Fund selected by the Plan Administrator until superseded by a subsequent election by the Participant. It is intended that the Investment Fund selected by the Plan Administrator shall be a "qualified default investment alternative" as described in ERISA Section 404(c)(5) and Labor Regulations issued thereunder. The Plan Administrator shall make reasonable efforts to ensure that Participants on whose behalf an investment in the default Investment Fund may be made shall be notified at least 30 days in advance of the first such investment and shall be notified at least 30 days in advance of each subsequent Plan Year. Any material relating to the Participant's investment in the default Investment Fund (*e.g.*, account statements, prospectuses) shall be provided to such Participants.

The University intends that the Plan allow all Participants and their Beneficiaries and Alternate Payees to direct investment of all contributions to the Plan in a manner that conforms to ERISA Section 404(c) and the Labor Regulations issued thereunder. It is further intended that this Section be construed and that the Plan be operated and administered in accordance with its provisions. Neither the Plan Administrator nor the University (including the Corporation and Employees) shall be under any duty to question any direction of a Participant, Beneficiary, or Alternate Payee or shall be responsible or liable for any loss or the lack of gains that may arise

from or result from compliance with any directions from the Participant, Beneficiary, or Alternate Payee.

      6.3    <u>Plan-to-Plan Transfers</u>.  On or after July 1, 2009, if a Participant in this Plan was eligible to participate in another University-sponsored plan described in Code Section 403(b), he or she may elect to transfer the value of his or her account in that plan to this Plan; provided, the plan-to-plan transfer meets the requirements of Treasury Regulation § 1.403(b)-10(b)(3).  On or after July 1, 2009, if a Participant in this Plan becomes eligible to participate in another University-sponsored plan described in Code Section 403(b), he or she may elect to transfer the value of his or her Account to that plan; provided, the plan-to-plan transfer meets the requirements of Treasury Regulation § 1.403(b)-10(b)(3).  A plan-to-plan transfer shall not be permitted unless, in each case, (i) the Participant whose assets are being transferred has an accumulated benefit immediately after the transfer that is at least equal to the accumulated benefit of the Participant immediately before the transfer and (ii) the Recordkeeper under this Plan or the recordkeeper under the transferee plan agrees, to the extent necessary, to separately account for any amount transferred so that this Plan or the transferee plan can impose the same restrictions on distributions to the Participant or his or her Beneficiary that are no less stringent than those imposed under this Plan or the transferor plan as the case may be.

      6.4    <u>Records and Reporting</u>.  The Recordkeeper shall maintain records on the basis of the Plan Year and Limitation Year (as defined in Article V) with respect to each Participant in accordance with its customary practices and as required by ERISA.  The Recordkeeper shall periodically (at least as frequently as required by ERISA) distribute or cause to be distributed to each Participant or his or her Beneficiary a report summarizing the status of his or her Account which shall be prepared in accordance with the Recordkeeper's customary practices and shall contain any information required to be furnished by ERISA.  Similar reports or illustrations may be obtained by a Participant upon termination of employment or at any other time by writing directly to the Recordkeeper.

      6.5    <u>Contracts - Incorporation by Reference</u>.  The terms of each Contract are a part of the Plan as if fully set forth in the plan document and the provisions of each are incorporated by reference into the Plan; provided, however, if there is any inconsistency or ambiguity between the terms of the Plan and the terms of the Contracts, the terms of the Plan shall control unless such terms would violate any applicable requirements under the Code or ERISA or unless the terms of the Contracts shall control as specifically provided herein.

ARTICLE VII
DISTRIBUTIONS FROM ACCOUNTS

7.1     <u>Withdrawals During Employment</u>.  A Participant may, upon making a Qualified Election in accordance with Section 7.6, withdraw all or a portion of his or her Account while employed by the University as follows:

    (a)     A Participant may elect to withdraw all or a portion of his or her Participant Contributions and Rollover Contributions, and the earnings thereon at any time on or after attaining age 59½.

    (b)     A Participant may elect to withdraw all or a portion of his or her Participant Contributions and any earnings thereon if, by reason of being a member of a reserve component (as defined in Section 101 of Title 37, United States Code), he or she is ordered or called to active duty for a period in excess of 179 days or for an indefinite period; provided, that such withdrawal is made during the period beginning on the date of such order or call and ending at the close of the active duty period.  A withdrawal made under this subsection (d) shall be treated as "qualified reservist distribution" within the meaning of Code Section 72(t).

    (c)     A Participant may elect to withdraw all or a portion of his or her Participant Contributions and Rollover Contributions on account of hardship to the extent provided in Section 7.3.

Except as provided in this Section, a Participant may not request a withdrawal from his or her Account prior to his or her Severance Date for any other reason unless the Participant has a contractual right under a specific Contract to do so.  A Participant shall initiate a withdrawal pursuant to this Section by requesting a withdrawal form from the Recordkeeper and completing and returning such form to the Recordkeeper and furnishing to the Recordkeeper such other information as the Recordkeeper deems necessary.

7.2     <u>Distribution after Severance Date</u>.  A Participant may, by making a Qualified Election as described in Section 7.6, request a distribution of all or portion of his or her Account, at any time following his or her Severance Date but in no event later than his or her Required Beginning Date as defined in Article IX (relating to required minimum distributions).  To the extent a Participant's Account is comprised of multiple Contracts, he or she may elect to commence payment at different times and under such optional forms of benefit payment as permitted under the different Contracts.  A Participant shall initiate distributions from all or a portion of his or her Account by requesting distribution forms from the Recordkeeper and completing and returning such forms to the Recordkeeper and furnishing to the Recordkeeper such other information as the Recordkeeper deems necessary.

7.3     <u>Hardship Withdrawals</u>.  The Plan Administrator or its delegate shall administer hardship withdrawals in accordance with the "safe harbor" rules of Treasury Regulation § 1.401(k)-1(d)(3).  A hardship withdrawal shall be subject to the rule of subsection (a) below and a hardship withdrawal shall be made to a Participant only if the Plan Administrator or its delegate determines that the Participant has an immediate and heavy financial need and that a

withdrawal from the Plan is necessary to satisfy such need as set forth in subsections (b) and (c) below.

(a)     The maximum amount that may be withdrawn under Section 7.1(c) is that amount which is equal to the sum of the Participant's (i) Participant Contributions as of the date of withdrawal as decreased by the amount of any previous withdrawals of his or her Participant Contributions and increased for any earnings thereon credited through December 31, 1988 and (ii) Rollover Contributions, subject to any distribution restrictions imposed by the Participant's Investment Funds.

(b)     A Participant shall be deemed to have a hardship (an immediate and heavy financial need), if and only if, it is determined that the requested withdrawal is on the account of:

(i)     The purchase (excluding mortgage payments) of a principal residence for the Participant only;

(ii)     The need to prevent the eviction of the Participant from his or her principal residence or foreclosure on the mortgage of the Participant's principal residence;

(iii)     The payment of medical expenses described in Code Section 213(d) incurred by the Participant or the Participant's spouse, primary beneficiary, or dependents;

(iv)     The payment of tuition, related educational fees, and room and board expenses, for the next twelve (12) months of post-secondary education for the Participant or the Participant's spouse, primary beneficiary, children, or dependents;

(v)     The payment of burial or funeral expenses for the Participant's parents, spouse, primary beneficiary, children, or dependents;

(vi)     The payment of expenses to repair damage to the Participant's principal residence that qualify as a casualty loss under Code Section 165 (determined without regard to whether the loss exceeds 10% of the Participant's adjusted gross income); or

(vii)     Any other situation deemed an immediate and heavy financial need by the Internal Revenue Service through the publication of revenue rulings, notices, and other documents of general applicability.

For purposes of this subsection, (i) a "primary beneficiary" is an individual who is named as a Beneficiary and has an unconditional right to all or a portion of the Participant's Account upon the death of the Participant and (ii) a "dependent" for purposes of clause (iii) and (iv) above is an individual who meets the requirements of Code Section 152 without regard to Code Section 152(b)(1), (b)(2), and (d)(1)(B) and for

28

purposes of clause (v) above is an individual who meets the requirements of Code Section 152 without regard to Code Section 152(d)(1)(B).

(c)     A hardship withdrawal shall be authorized only if it is determined that all of the following conditions are or will be satisfied:

(i)     The amount of the withdrawal is not in excess of the amount required to relieve the financial need (including amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the withdrawal);

(ii)     The Participant has obtained all distributions and withdrawals, other than hardship withdrawals, and all nontaxable (at the time of the loan) loans from the Plan or any other plan maintained by the University or an Affiliated Employer unless, to the extent approved by the Plan Administrator, the effect of such loans would be to increase the amount of the need; and

(iii)     The Participant is prohibited during the 6-month period beginning as soon as administratively feasible following the date of a hardship withdrawal from the Plan from making Participant Contributions to this Plan and voluntary contributions to any other qualified or non-qualified plan maintained by the University (excluding salary reduction contributions to any University health or welfare benefit plan).

(d)     The Participant's spouse, if applicable, consents to the hardship withdrawal as provided in Section 7.6.

7.4     <u>Required Form of Payment</u>.  The Account of a Participant who is not married shall be paid in the form of a Qualified Single Life Annuity and the Account of a Participant who is married shall be paid in the form of a Qualified Joint and Survivor Annuity (as each of the foregoing terms are described below) unless he or she elects an optional form of payment described in Section 7.5.

(a)     "Qualified Single Life Annuity" means an immediate annuity that provides payments at regular intervals for the life of the Participant with payments ceasing upon the Participant's death.  The amount of the annuity shall be equal to the annuity that can be purchased with the Participant's Account.

(b)     "Qualified Joint and Survivor Annuity" means an immediate annuity that provides payments at regular intervals for the life of the Participant and upon the Participant's death, if his or her spouse is then living, provides payments at regular intervals for the life of the spouse that are equal to 50% of the amount paid to the Participant during his or her lifetime.  The amount of the annuity shall be equal to the annuity that can be purchased with the Participant's Account.

7.5     <u>Optional Forms of Payment</u>.  A Participant may, upon making a Qualified Election in accordance with Section 7.6, choose that his or her Account be paid under any of the optional forms of benefit payment permitted under his or her Investment Funds.  The optional

forms of payment available to Participants under the Plan are the benefit forms offered under the Investment Funds, the terms of which are incorporated by reference into the Plan, and include: (i) single life annuities with or without periods certain, (ii) joint and survivor annuities (including an annuity that provides payments at regular intervals for the life of a spouse that are equal to 75% of the amount paid to the Participant during his or her lifetime) with or without periods certain, (iii) installment payments, (iv) minimum distribution payments, and (iv) lump sum payments. A Participant may elect a lump sum distribution only to the extent permitted under an Investment Fund and, in the case of certain Investment Fund, subject to the requirement that a lump sum distribution election be made within 120 days following his or her Severance Date. A Participant may also elect to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan; provided, that the Recordkeeper is permitted to require that, if a Participant elects to have only a portion of an Eligible Rollover Distribution paid to an Eligible Retirement Plan, that such portion be equal to at least $500 (or any greater amount as prescribed by the Commissioner in revenue rulings, notices, and other guidance published in the Internal Revenue Bulletin) or any lower minimum amounts specified by the Recordkeeper. In applying the $500 minimum, an Eligible Rollover Distribution from that portion of a Participant's Account consisting of Pre-Tax Contributions shall be considered separately from an Eligible Rollover Distribution from that portion of a Participant's Account consisting of Roth Contributions.

7.6   Qualified Election. A Participant and, if applicable, his or her spouse must make a qualified election (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) not more than 180 days prior to the Annuity Starting Date to consent to the distribution or commencement of distributions and, if applicable, to waive a required form of payment described in Section 7.4 in accordance with the rules of this Section.

(a)   *Participant Consent to Distribution.* A Participant must consent (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) to the distribution or commencement of distributions from his or her Account. If the Participant is married and the value of his or her Account is more than $5,000, his or her spouse must also consent (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) to the distribution or commencement of distributions from the Participant's Account as provided under subsection (d). Consent under this subsection (a) shall not be effective unless the Participant has received the explanation described in subsection (c) below. Notwithstanding anything in the Plan to the contrary, (i) spousal consent is not required if the distribution from the Participant's Account is in the form of a Qualified Joint and Survivor Annuity and (ii) neither Participant consent nor spousal consent shall be required for a distribution of "Excess Annual Additions" that are not separately accounted for in accordance with Section 5.1 or of "Excess Pre-Tax Contributions" or "Excess Roth Contributions" in accordance with Section 5.2. If a Participant does not make a Qualified Election prior to commence distributions prior to the later of the 60th day after the end the Plan Year (i) in which the Participant attains age 65, (ii) in which the Participant completes his or her tenth (10th) anniversary of Plan participation, or (iii) which contains the Participant's Severance Date, whichever Plan Year is latest, the failure of a Participant to commence distributions on or after the Participant's Severance Date shall be deemed to be an

30

election to defer distribution but in no event later than his or her Required Beginning Date as defined in Article IX.

(b)     *Waiver of Required Form of Payment.*  A Participant must waive (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) the required form of payment to elect an optional form of payment.  If the Participant is married and the value of his or her Account is more than $5,000, his or her spouse must also waive the required form of payment as provided under subsection (d). A waiver under this subsection (b) shall not be effective unless the Participant has received the explanation described in subsection (c) below.

(c)     *Explanation of Required Form of Payment and Right to Defer Distributions.*  The Recordkeeper shall provide each Participant, no less than 30 days and no more than 180 days before the Annuity Starting Date, an explanation (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) of:  (i) the terms and conditions of the required form of payment; (ii) the Participant's right to make, and the effect of, an election to waive the required form of payment; (iii) the rights of the Participant's spouse to refuse to consent to a distribution from the Participant's Account or to the Participant's waiver of the required form of payment; (iv) the right to make, and the effect of, a revocation of a previous election to waive the required form of payment; (v) a general description of the material features and an explanation of the relative values of the available optional forms of benefit payment under the Plan; and (vi) a statement that the Participant has the right to defer the payment of his or her Account subject to the minimum distribution requirements of Code Section 401(a)(9).  The explanation may be furnished to the Participant less than 30 days prior to the Participant's Annuity Starting Date if:  (i) the Participant affirmatively elects and, if applicable, his or her spouse consents to a distribution payable in a form other than the required form of payment after receiving an explanation that clearly indicates that the Participant has at least 30 days to consider whether to waive the required form of payment, and to elect, with spousal consent if applicable, an optional form of payment; (ii) the Participant is permitted to revoke any affirmative distribution election at least until the Annuity Starting Date or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation is provided to the Participant; (iii) the Annuity Starting Date is a date after the date on which the explanation is provided to the Participant; and (iv) distribution does not commence before the expiration of the 7-day period that begins the day after the explanation is provided to the Participant.

(d)     *Spousal Consent.*  Consent by a spouse shall not be effective unless (i) the consent is in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder, (ii) the Participant's waiver of a required form of payment designates a specific form of payment that may not be changed without spousal consent (unless the spouse expressly permits designations by the Participant without any further spousal consent), (iii) the Participant's election, if applicable, designates a specific Beneficiary(ies), including any class of Beneficiaries or any contingent Beneficiaries, that may not be changed without spousal consent (unless the spouse expressly permits designations by the Participant without any further spousal consent); (iv) the spouse acknowledges the effect of the Participant's elections; and (v) the spouse's consent is

31

witnessed by a notary public.  If the spouse permits designations by the Participant without any further spousal consent, the spouse must acknowledge that he or she has the right to limit a Participant's designation to a specific form of payment or to a specific Beneficiary(ies) and that the spouse voluntarily elects to relinquish either or both of such rights.  Any consent by a spouse (i) shall be irrevocable; provided, however, a Participant may revoke an election made hereunder without the consent of the spouse at any time before distribution is made or distributions commence and (ii) shall be effective only with respect to that spouse.

(e)     *Waiver of Spousal Consent.*  If the Participant establishes to the satisfaction of the Plan representative that (i) he or she has no spouse or that his or her spouse cannot be located, (ii) he or she is legally separated or has been abandoned (within the meaning of local law) and the Participant has a court order to such effect unless a Qualified Domestic Relations Order requires otherwise, or (iii) such other circumstances as may be permitted under applicable law, a waiver of the required form of benefit payment or consent to the payment or commencement of distributions by the Participant shall be deemed a Qualified Election.  In the event a Participant's spouse is legally incompetent, the spouse's legal guardian, even if the guardian is the Participant, may give consent on the spouse's behalf.  The establishment that the consent of a spouse may not be obtained shall be effective only with respect to such spouse.

7.7     Minimum Distribution Requirements.  Notwithstanding anything in the Plan to the contrary, the distributions under the Plan shall be made in accordance with Code Section 401(a)(9) and Treasury Regulations thereunder and the provisions of Article IX shall override any distribution option in the Plan inconsistent with Code Section 401(a)(9).

7.8     Distributions Pursuant to Qualified Domestic Relations Orders.  Notwithstanding anything in this Plan to the contrary, it shall be permissible for the Plan to pay an Alternate Payee's benefit as determined under the terms of a Qualified Domestic Relations Order as soon as administratively feasible and prior to the Participant's Severance Date.  The process by which the amount awarded is paid to the Alternate Payee shall be determined by the Recordkeeper including, but not limited to, the issuance or establishment of separate Contracts on behalf the Alternate Payee.

7.9     Lapsed Benefits.  If a Participant fails to file a claim for the distribution of his or her Account on or after his or her Normal Retirement Age and, after reasonable efforts by the Plan Administrator or its delegate, the Participant cannot be located, the Participant shall be presumed dead and the Plan Administrator shall use reasonable efforts to locate the Participant's surviving spouse and/or Beneficiary, as applicable.  If, after reasonable efforts by the Plan Administrator or its delegate, the surviving spouse and/or Beneficiary cannot be located then the surviving spouse and/or Beneficiary shall be presumed to have predeceased the Participant and the Participant's Account shall be forfeited, to the extent permitted by the Contract, subject to the following:

(a)     Amounts forfeited under this Section shall first be used to restore any Account reinstated under subsection (b) and then, as determined by the Plan Administrator, may be allocated as University Contributions under Article IV or used to pay plan expenses

in accordance with Section 12.6 and shall not be used to increase the benefits otherwise payable to Participants or Beneficiaries.  If amounts forfeited under this Section are insufficient to restore a reinstated Account, the University shall be obligated to contribute to the Plan any amounts necessary to restore any reinstated Account after it has been forfeited pursuant to the provisions of this Section.

(b)     If, after such a forfeiture, the Participant or his or her surviving spouse or Beneficiary (the "claimant") claims the forfeited Account, the amount forfeited shall be reinstated, unadjusted for earnings and losses, and paid to the claimant as soon as practical following the claimant's production of reasonable proof of his or her identity and entitlement to the Account (determined pursuant to the Plan's claims and appeals procedures as described in Article XI).

(c)     For purposes of this Section, the Plan Administrator or its delegate may use any reasonable measures to locate a Participant or his or her surviving spouse or Beneficiary, including using certified mail or internet search tools or commercial locator services, and may consider the cost of the measures relative to the benefit when determining which measures to use.

ARTICLE VIII
DEATH BENEFITS

8.1     <u>Amount of Death Benefit</u>.  Upon the death of a Participant, all or the remaining portion of his or her Account shall be paid as provided below:

(a)     *Married Participants*.  If a Participant is married at the time of his or her death, 50% of all or the remaining portion of the Participant's Account shall be payable to his or her surviving spouse in the form of a Qualified Preretirement Survivor Annuity unless the surviving spouse waives the Qualified Preretirement Survivor Annuity and elects an optional form of payment in accordance with Section 7.5 and makes such election in accordance with the provisions of Section 7.6.  A "Qualified Preretirement Survivor Annuity" means an immediate annuity that provides payments at regular intervals for the life of the surviving spouse with payments ceasing upon the surviving spouse's death.  The amount of the annuity shall be equal to the annuity that can be purchased with 50% of all or the remaining portion of a Participant's Account.  The remainder of the Participant's Account shall be distributed in accordance with subsection (c) below.  If the Participant, prior to his or her death, waives the Qualified Preretirement Survivor Annuity and designates another Beneficiary in accordance with Section 8.2 to receive that portion of his or her Account that would otherwise be payable to his or her surviving spouse, all or the remaining portion of a Participant's Account shall be distributed to such Beneficiary in accordance with subsection (c) below.

(b)     *Unmarried Participants*.  If a Participant is not married at the time of his or her death, all or the remaining portion of a Participant's Account shall be distributed to the Beneficiary or Beneficiaries of the Participant in accordance with subsection (c) below.

(c)     *Beneficiaries*.  Any distributions made pursuant to this subsection (c) shall be made to the Beneficiary or Beneficiaries of the Participant in such proportions as designated by the Participant.  Distribution to each such Beneficiary shall be payable under any optional form of payment offered under Section 7.5 as elected by the Beneficiary; provided, that the elected form of payment is permitted by law and permitted under the terms of the applicable Contract.  The foregoing shall not apply if the Participant, prior to his or her death, designated the form of payment (or limited the forms of payment that may be elected by the Beneficiary) in accordance with the provisions of the applicable Contract and in a manner acceptable to the Recordkeeper.  If a Beneficiary dies after the Participant but before receiving his or her entire interest in the Participant's Account or before commencing distributions under an optional form of payment, the remaining interest shall be paid to the beneficiary or beneficiaries designated by the Beneficiary or if no proper designation is made by the Beneficiary, to the Beneficiary's estate.  The foregoing shall not apply if the Participant, prior to his or her death, designated a contingent Beneficiary in accordance with the provisions of the applicable Contract and in a manner acceptable to the Recordkeeper.

A surviving spouse or Beneficiary shall initiate the distribution of death benefits by requesting distribution forms from the Recordkeeper and completing and returning them to the

Recordkeeper and furnishing to the Recordkeeper such other data as the Recordkeeper deems necessary.

      8.2    <u>Designation of Beneficiary</u>.  A Participant shall designate a Beneficiary to receive all or the remaining portion of his or her Account upon his or her death by executing and filing with the Recordkeeper a designation of beneficiary in such form and in such manner as may be prescribed by the Recordkeeper and shall have the right to change a designated Beneficiary at any time by executing and filing with the Recordkeeper a new designation of beneficiary in such form and in such manner as may be prescribed by the Recordkeeper subject to the following:

      (a)    *Failure to Designate Beneficiary*.  If a Participant who is married fails to designate a Beneficiary, improperly designates a Beneficiary, or if no Beneficiary survives the Participant, all or the remaining portion of the Participant's Account shall be distributed to the Participant's surviving spouse.  If a Participant who is not married fails to designate a Beneficiary, improperly designates a Beneficiary, or if no Beneficiary survives the Participant, all or the remaining portion of the Participant's Account shall be distributed to his or her estate unless the Plan Administrator determines and the underlying Contract so permit that the Participant's Account be distributed to the Participant's heirs at law (determined in accordance with the laws of the State of Connecticut as they existed at the date of the Participant's death) in lieu of making payment to a Participant's estate.  If a representative of the Participant's estate or heirs at law (if so determined by the Plan Administrator) cannot be located after reasonable efforts, then the Participant's benefit shall be forfeited in accordance with Section 7.9.

      (b)    *Designation of Non-Spouse Beneficiary*.  A Participant may designate a Beneficiary other than his or her spouse to receive that portion of his or her Account that would otherwise be payable to his or her surviving spouse only if the conditions of this subsection (b) are satisfied.

      (i)    *Waiver of Qualified Preretirement Survivor Annuity*.  A Participant may designate a Beneficiary other than his or her spouse only if the Participant's spouse (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) (1) waives the Qualified Preretirement Survivor Annuity described in Section 8.1, (2) consents to the Beneficiary including any class of Beneficiaries or any contingent Beneficiaries (which Beneficiary may not be changed, *e.g.*, the Beneficiary predeceases the Participant without spousal consent unless the spouse expressly consents to a designation by the Participant without any requirement of further consent by such spouse), and (3) acknowledges the effect of such designation.  A waiver that permits a Participant to designate another Beneficiary without any requirement of further consent by such spouse must acknowledge that the spouse has the right to limit consent to a specific Beneficiary and that the spouse voluntarily elects to relinquish such rights.  Notwithstanding the foregoing, a designation without spousal consent shall be effective if the Plan Administrator determines if there is no spouse, the spouse cannot be located, or because of such other circumstances as ERISA or other applicable guidance may prescribe.  To be valid, the designation and spousal consent must be made within the election period described in

paragraph (iii) and the spouse's consent must be witnessed by a notary public or by a Plan representative. Any consent by the spouse (or establishment that the consent of a spouse may not be obtained) under this paragraph shall be effective only with respect to such spouse. If a Participant subsequently marries following his or her designation of a Beneficiary other than his or her spouse, such designation shall be invalid unless the spousal consent requirements of this paragraph are satisfied with respect to such spouse subject, however, to the provisions of a Qualified Domestic Relations Order.

(ii)     *Required Explanation.* The Recordkeeper shall provide each Participant with an explanation (in writing or in such other form as may be permitted under ERISA and any guidance issued thereunder) of the (1) the terms and conditions of the Qualified Preretirement Survivor Annuity, (2) the spouse's rights to the Qualified Preretirement Survivor Annuity, (3) the Participant's right to have the Qualified Preretirement Survivor Annuity paid to a beneficiary other than his or her spouse, and (4) the right to make, and the effect of, a revocation of a previous election to designate a beneficiary other than his or her spouse within the election period described in paragraph (iii) below.

(iii)     *Election Period.* A Participant may elect, or revoke a prior election, to designate a non-spouse Beneficiary, at any time within the election period that begins on the day the Participant first becomes a Participant and ends on the date of the Participant's death. If a Participant designates a non-spouse Beneficiary prior to the Plan Year in which he or she attains age 35, such designation shall not be treated as an effective designation (but shall otherwise be an effective designation with regard to amounts not required to be payable to such spouse) as of the first day of the Plan Year in which the Participant attains age 35. In order for such designation to be effective, the Participant must again designate the non-spouse Beneficiary on or after the first day of the Plan Year in which he or she attains age 35. Notwithstanding the foregoing, if the Participant designates a non-spouse Beneficiary prior to the Plan Year in which he or she attains age 35 and incurs a Termination of Employment prior to the first day of the Plan Year in which he or she attains age 35, such designation shall be treated as an effective designation.

8.3     <u>Minimum Distribution Requirements</u>. Notwithstanding anything in the Plan to the contrary, distributions to a surviving spouse or Beneficiary shall be made in accordance with Code Section 401(a)(9) and Treasury Regulations thereunder and the provisions of Article IX shall override any distribution option in the Plan or Contracts inconsistent with Code Section 401(a)(9).

ARTICLE IX
MINIMUM DISTRIBUTION REQUIREMENTS

9.1 <u>Minimum Distribution Requirements</u>. Subject to a Participant's right to elect to apply the aggregation rules as described in Treasury Regulation §1.403(b)-6(e)(7) and Treasury Regulation §1.408-8 for purposes of satisfying his or her minimum distribution requirement, all distributions under the Plan shall be made in accordance with Code Section 401(a)(9) and the Treasury Regulations promulgated thereunder as modified by Treasury Regulation §1.403(b)-6(e) and the provisions of this Article IX shall override any distribution option in the Plan or Contracts inconsistent with Code Section 401(a)(9) and Treasury Regulations.

9.2 <u>Distributions Before Death – Account Balances</u>. A Participant's entire interest in his or her Account Balance shall commence to be distributed no later than the Participant's Required Beginning Date over the life of such Participant or the lives of such Participant and his or her designated Beneficiary. For purposes of this Section, the minimum amount that shall be distributed for each Distribution Calendar Year shall not be less than the quotient obtained by dividing the value of the Participant's Account Balance, taking into account outstanding contributions, rollovers, or transfers, as of the end of the preceding calendar year by the distribution period in the Uniform Lifetime Table in Q&A-2 of Treasury Regulation §1.401(a)(9)-9, using the Participant's age as of his or her birthday in the Distribution Calendar Year. However, if the Participant's sole designated Beneficiary is his or her surviving spouse and such spouse is more than 10 years younger than the Participant, then the distribution period shall be determined under the Joint and Last Survivor Table in Q&A-3 of Treasury Regulation §1.401(a)(9)-9, using the ages as of the Participant's and spouse's birthdays in the Distribution Calendar Year. For purposes of this Section:

(a) "Required Beginning Date" means, with respect to a Participant, April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70½, or (ii) the calendar year in which the Participant's Severance Date occurs.

(b) "Distribution Calendar Year" means a calendar year for which a minimum distribution is required. The first Distribution Calendar Year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date and the last Distribution Calendar Year is the calendar year that contains the Participant's date of death. The required minimum distribution for the Participant's first Distribution Calendar Year shall be made on or before the Participant's Required Beginning Date. The required minimum distribution for other Distribution Calendar Years, including the required minimum distribution for the Distribution Calendar Year in which the Participant's Required Beginning Date occurs, shall be made on or before December 31 of that Distribution Calendar Year.

(c) "Account Balance" means that portion of a Participant's Account that the Participant has not elected to be paid in the form of an annuity but excluding the undistributed portion of a Participant's Account Balance valued as of December 31, 1986, exclusive of subsequent earning, if such amounts are accounted for separately.

37

9.3     Distributions Before Death – Annuities.  A Participant's entire interest in a Contract shall commence to be distributed no later than the Participant's Required Beginning Date (as defined in Section 9.2(a) above) over (i) the life of such Participant or the lives of such Participant and his or her designated Beneficiary or (ii) a period certain not extending beyond the life expectancy of such Participant or the joint and last survivor expectancy of such Participant and his designated Beneficiary.  Payments shall be made in periodic payments at intervals of no longer than one year and shall be either non-increasing or may increase only as provided in Q&A-1 and Q&A-4 of Treasury Regulation §1.401(a)(9)-6.  In addition, any distribution shall satisfy the incidental benefit requirements specified in Q&A-2 of Treasury Regulation §1.401(a)(9)-6.  For purposes of this Section:

(a)     "Contract" means, for purposes of this Article, that portion of a Participant's Account that the Participant has elected to be paid in the form of an annuity.

(b)     The distribution periods described in this Section 9.3 shall not exceed the periods specified in Treasury Regulation §1.401(a)(9)-6.

(c)     The first required payment may be made as late as the Required Beginning Date and must be the payment that is required for one payment interval.  The second payment need not be made until the end of the next payment interval.

9.4     Distributions After Death – Account Balances.

(a)     *Death On or After Required Beginning Date*.  If a Participant dies on or after his or her Required Beginning Date (as defined in Section 9.2(a) above), the remaining portion of his or her Account Balance (as defined in Section 9.2(c) above), taking into account outstanding rollovers, or transfers, shall be distributed at least as rapidly as follows:

(i)     If the designated Beneficiary is someone other than the Participant's surviving spouse, the remaining interest shall be distributed over the remaining life expectancy of the designated Beneficiary, with such life expectancy determined using the Beneficiary's age as of his or her birthday in the year following the year of the Participant's death, or over the period described in paragraph (ii) below if longer.

(ii)     If the Participant's sole designated Beneficiary is the Participant's surviving spouse, the remaining interest shall be distributed over such spouse's life or over the period described in paragraph (iii) below if longer.  Any interest remaining after such spouse's death shall be distributed over such spouse's remaining life expectancy determined using the spouse's age as of his or her birthday in the year of the spouse's death, or, if the distributions are being made over the period described in paragraph (iii) below, over such period.

(iii)     If there is no designated Beneficiary, or if applicable by operation of paragraph (i) or (ii) above, the remaining interest shall be distributed over the

Participant's remaining life expectancy determined in the year of the Participant's death.

(iv)    The amount to be distributed each year under paragraph (i), (ii), or (iii), beginning with the calendar year following the calendar year of the Participant's death, shall not be less than the quotient obtained by dividing the value of the Participant's Account Balance as of the end of the preceding year by the remaining life expectancy specified in such subparagraph.  Life expectancy shall be determined using the Single Life Table in Q&A-1 of Treasury Regulation §1.401(a)(9)-9.  If distributions are being made to a surviving spouse as the sole designated Beneficiary, such spouse's remaining life expectancy for a year shall be the number in the Single Life Table corresponding to such spouse's age in the year.  In all other cases, remaining life expectancy for a year shall be the number in the Single Life Table corresponding to the Beneficiary's or Participant's age in the year specified in paragraph (i), (ii), or (iii) and reduced by one for each subsequent year.

(b)     *Death Before Required Beginning Date*.  If a Participant dies before his or her Required Beginning Date, the entire interest of his or her Account Balance, taking into account outstanding rollovers, or transfers, shall be distributed at least as rapidly as follows:

(i)     If the designated Beneficiary is someone other than the Participant's surviving spouse, the entire interest shall be distributed, starting by the end of the calendar year following the calendar year of the Participant's death, over the remaining life expectancy of the designated Beneficiary, with such life expectancy determined using the age of the Beneficiary as of his birthday in the year following the year of the Participant's death, or, if elected, in accordance with paragraph (iii) below.

(ii)    If the Participant's sole designated Beneficiary is the Participant's surviving spouse, the entire interest shall be distributed, starting by the end of the calendar year following the calendar year of the Participant's death (or by the end of the calendar year in which the Participant would have attained age 70½, if later), over such spouse's life, or, if elected, in accordance with paragraph (iii) below.  If the surviving spouse dies before distributions are required to begin, the remaining interest shall be distributed, starting by the end of the calendar year following the calendar year of the spouse's death, over the spouse's designated beneficiary's remaining life expectancy determined using such beneficiary's age as of his birthday in the year following the death of the spouse, or, if elected, shall be distributed in accordance with paragraph (iii) below.  If the surviving spouse dies after distributions are required to begin, any remaining interest shall be distributed over the spouse's remaining life expectancy determined using the spouse's age as of his or her birthday in the year of the spouse's death.

(iii)   If there is no designated Beneficiary, or if applicable by operation of paragraph (i) or (ii) above, the entire interest shall be distributed by the end of

the calendar year containing the fifth anniversary of the Participant's death (or of the spouse's death in the case of the surviving spouse's death before distributions are required to begin under paragraph (ii) above).

(iv)     The amount to be distributed each year under paragraph (i) or (ii) shall be the quotient obtained by dividing the value of the Account Balance as of the end of the preceding year by the remaining life expectancy specified in such subparagraph. Life expectancy shall be determined using the Single Life Table in Q&A-1 of Treasury Regulation §1.401(a)(9)-9. If distributions are being made to a surviving spouse as the sole designated Beneficiary, such spouse's remaining life expectancy for a year shall be the number in the Single Life Table corresponding to such spouse's age in such year. In all other cases, remaining life expectancy for a year shall be the number in the Single Life Table corresponding to the Beneficiary's age in the year specified in paragraph (i) or (ii) and reduced by one for each subsequent year.

9.5     Distributions After Death – Annuities.

(a)     *Death On or After Required Distributions Commence*.  If a Participant dies on or after required distributions commence, the remaining portion of his or her Contract (as defined in Section 9.3(a) above) shall continue to be distributed under the annuity option chosen.

(b)     *Death Before Required Distributions Commence*.  If a Participant dies before required distributions commence, the entire interest in his or her Contract shall be distributed at least as rapidly as follows:

(i)     If the designated Beneficiary is someone other than the Participant's surviving spouse, the entire interest shall be distributed, starting by the end of the calendar year following the calendar year of the Participant's death, over the remaining life expectancy of the designated Beneficiary, with such life expectancy determined using the age of the Beneficiary as of his or her birthday in the year following the year of the individual's death, or, if elected, in accordance with paragraph (iii) below.

(ii)     If the Participant's sole designated Beneficiary is the Participant's surviving spouse, the entire interest shall be distributed, starting by the end of the calendar year following the calendar year of the Participant's death (or by the end of the calendar year in which the Participant would have attained age 70½, if later), over such spouse's life, or, if elected, in accordance with paragraph (iii) below. If the surviving spouse dies before required distributions commence to him or her, the entire interest shall be distributed, starting by the end of the calendar year following the calendar year of the spouse's death, over the spouse's designated beneficiary's remaining life expectancy determined using such beneficiary's age as of his or her birthday in the year following the death of the spouse, or, if elected, shall be distributed in accordance with paragraph (iii) below. If the surviving spouse dies after required distributions commence to him

40

or her, any remaining interest shall continue to be distributed under the annuity option chosen.

(iii)     If there is no designated Beneficiary, or if applicable by operation of paragraph (i) or (ii) above, the entire interest shall be distributed by the end of the calendar year containing the fifth anniversary of the Participant's death (or of the spouse's death in the case of the surviving spouse's death before distributions are required to begin under paragraph (ii) above).

(iv)     Life expectancy shall be determined using the Single Life Table in Q&A-1 of Treasury Regulation §1.401(a)(9)-9.  If distributions are being made to a surviving spouse as the sole designated Beneficiary, such spouse's remaining life expectancy for a year shall be the number in the Single Life Table corresponding to such spouse's age in such year.  In all other cases, remaining life expectancy for a year shall be the number in the Single Life Table corresponding to the Beneficiary's age in the year specified in paragraph (i) or (ii) and reduced by one for each subsequent year.

(c)     The "interest" in a Contract shall include the amount of any outstanding rollover and transfer and the actuarial value of any other benefits provided under the annuity such as guaranteed death benefits.

(d)     For purposes of subsections (a) and (b) above, required distributions are considered to commence on the Participant's Required Beginning Date (as defined in Section 9.2(a) above) or, if applicable, on the date distributions are required to begin to the surviving spouse under subsection (b)(ii) above.  However, if distributions start prior to the applicable date in the preceding sentence, on an irrevocable basis (except for acceleration) under a Contract meeting the requirements of Treasury Regulation §1.401(a)(9)-6, then required distributions shall be considered to commence on the annuity starting date.

9.6     <u>Special Rule for pre-1987 Accumulations</u>.  If accounted for separately, the undistributed portion of a Participant's Account Balance (as defined in Section 9.2(c) above) valued as of December 31, 1986, exclusive of subsequent earnings, shall not be subject to the required minimum distribution rules of this Section but instead shall be distributed in accordance with Treasury Regulation §1.403(b)-6(e)(6), the provisions of which are incorporated by reference and, include among other things, that distribution of pre-1987 accumulations shall be distributed in accordance with the incidental benefit requirements of Treasury Regulation §1.401-1(b)(i).

9.7     <u>Elections under TEFRA Section 242(b)(2)</u>.  Distributions may be made under a designation made before January 1, 1984 in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act.

9.8     <u>2009 Waiver of Required Minimum Distributions</u>.  Notwithstanding anything in the Plan to the contrary, a Participant or Beneficiary who would have been required to receive required minimum distributions for 2009 but for the enactment of Code Section 401(a)(9)(H)

("2009 RMDs"), and who would have satisfied that requirement by receiving distributions that are (i) equal to the 2009 RMDs or (ii) one or more payments in a series of substantially equal distributions (that include the 2009 RMDs) made at least annually and expected to last for the life (or life expectancy) of the Participant, the joint lives (or joint life expectancy) of the Participant and the Participant's designated Beneficiary, or for a period of at least 10 years ("Extended 2009 RMDs"), shall receive distributions as follows:

      (a)    A Participant or Beneficiary who, on or before December 31, 2008, reached his or her Required Beginning Date (as defined in Section 9.2(a) above) and initiated automatic payment of required minimum distributions, shall receive his or her 2009 RMD for 2009 unless the Participant or Beneficiary elects otherwise.

      (b)    A Participant or Beneficiary, other than a Participant or Beneficiary described in subsection (a) above, shall not receive his or her 2009 RMD for 2009 unless the Participant or Beneficiary elects otherwise.

Participants and Beneficiaries shall be given the opportunity to elect to stop or to receive their 2009 RMDs.  In addition, notwithstanding anything in the Plan to the contrary, and solely for purposes of applying the direct rollover provisions of the Plan, a Direct Rollover shall be offered only for distributions that are Eligible Rollover Distributions without regard to Code Section 401(a)(9)(H).

ARTICLE X
PARTICIPANT LOAN PROGRAM

The Plan shall permit participant loans in accordance with the Plan's Participant Loan Program, the terms of which shall be governed by Participants' Contracts and are incorporated in their entirety by this reference.  The Plan's Participant Loan Program shall be administered by the Recordkeeper under rules and procedures approved by the Plan Administrator.  Such rules and procedures shall include, but shall not be limited to, (i) the maximum loan limit, as determined under Code Section 72(p) or such lower limit that may be established under the Plan's Participant Loan Program, shall be based only on the value of a Participant's Participant Contributions and Rollover Contributions and earnings thereon, (ii) any fees or charges associated with such loan and imposed by the Recordkeeper shall be charged directly to the Participant's Account unless the Recordkeeper permits and the Participant pays any such fees or charges directly to the Recordkeeper, (iii) loans shall be evidenced in written form or in any other form permitted under the Code, ERISA and any guidance issued thereunder, and (iv) the tax treatment of that portion of any defaulted loan that is secured by a Participant's Roth Contributions shall be determined in accordance with Code Section 402A and guidance issued thereunder.

ARTICLE XI
CLAIMS AND APPEALS PROCEDURES

11.1    Claims for Benefits.  A Participant, Alternate Payee, or Beneficiary, or in each case, his or her authorized representative (the "Claimant") shall file a claim for benefits under procedures established by the Plan Administrator subject to the following:

(a)    A claim shall be filed with the Plan Administrator or, if so designated by the Plan Administrator, with the Recordkeeper, (the "Claims Administrator") in the manner prescribed by the Claims Administrator.

(b)    If the claim is denied in whole or in part, the Claims Administrator shall furnish the Claimant with written or electronic notice of denial with respect to a claim within 90 days following receipt by the Claims Administrator of a claim and all necessary documents and information.  The 90-day period may be extended should special circumstances require an extension of time for processing the claim.  The Claims Administrator or its delegate shall furnish the Claimant with written or electronic notice of the extension prior to the expiration of the initial period or extension period.  The notice shall indicate the special circumstances requiring an extension of time and the date by which a final decision is expected to be rendered.

(c)    A written or electronic notice of denial shall be mailed or delivered to the Claimant, specifically (i) setting forth the reasons for the denial, (ii) citing the relevant provisions of the Plan upon which the denial is based, (iii) if appropriate, describing any additional information or material necessary for perfection of the claim (together with an explanation why such material or information is necessary), (iv) explaining the Plan's appeals procedures, and (v) informing the Claimant of his or her right to bring a civil action under Section 502(a) of ERISA if his or her claim is denied upon review.

(d)    In the case of a denial of a claim, in whole or in part, a Claimant who wishes to appeal the decision must follow the administrative procedures for an appeal as set forth in Section 11.2 below.

The claims procedures set forth in this Section 11.1 are intended to comply with Labor Regulation § 2560.503-1 and shall be construed in accordance with such regulation.  In no event shall it be interpreted as expanding the rights of Claimants beyond what is required by Labor Regulation § 2560.503-1.

11.2    Appeals Procedures.  In the event a Claimant's claim for benefits is denied in whole or in part under Section 11.1, the Claimant shall file an appeal under the procedures set forth below:

(a)    In order to appeal a decision rendered with respect to his or her claim for benefits, a Claimant must file such appeal with the Plan Administrator in writing within 60 days after the date of notice of the decision with respect to the claim.

(b)    The Claimant may request that his or her appeal be given a full and fair review by the Plan Administrator (or a committee established by the Plan Administrator)

taking into account all claim related comments, documents, records, and other information submitted by the Claimant without regard to whether such information was submitted or considered under the initial determination. The Claimant may submit written comments, documents, records, and other information relating to his or her claim. The Claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relating to his or her claims for benefits.

(c)     The Plan Administrator (or a committee established by the Plan Administrator) shall notify a Claimant of its decision within the following timeframe whichever is applicable:

(i)     The Plan Administrator or if a committee established by the Plan Administrator to review appeals does not hold regularly scheduled meetings at least quarterly, the Plan Administrator or such committee shall notify a Claimant of its decision within 60 days following receipt by the Plan Administrator or its designee of an appeal and all necessary documents and information. The Plan Administrator or its designee shall furnish the Claimant with written or electronic notice of the decision rendered with respect to such claim. Should special circumstances require an extension of time for processing, written or electronic notice of the extension shall be furnished to the Claimant prior to the expiration of the initial 60-day period. The notice shall indicate the special circumstances requiring an extension of time and the date by which a final decision is expected to be rendered. In no event shall the period of the extension exceed 60 days from the end of the initial 60-day period.

(ii)     If a committee established by the Plan Administrator to review appeals holds regularly scheduled meetings at least quarterly, the committee shall render its decision on an appeal, no later than the date of its meeting immediately following receipt of the appeal and all necessary documents and information unless the appeal and all necessary documents and information is filed within 30 days preceding the date of such meeting. In such case, the committee shall render its decision no later than the date of its second meeting following receipt of the appeal. Should special circumstances require an extension of time for processing, the committee shall render its decision no later than the date of its third meeting following receipt of the appeal. Written or electronic notice of the extension shall be furnished to the Claimant prior to the commencement of the extension and shall indicate the special circumstances requiring an extension of time and the date by which a decision is expected to be rendered. Within five (5) days after its decision is rendered, the committee shall furnish the Claimant with written or electronic notice of the decision rendered with respect to such appeal.

(d)     In the case of a denial of an appeal, the written or electronic notice of such denial shall set forth (i) the specific reasons for the denial, (ii) references to the Plan provisions upon which the denial is based, (iii) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relating to his or her claims for benefits, and

45

(iv) a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA.

(e)     All interpretations, determinations and decisions of the Plan Administrator or a committee established by the Plan Administrator with respect to the appeal of any claim, shall be made by the Plan Administrator in his or her sole discretion or a committee established by the Plan Administrator in its sole discretion, based on the Plan and comments, documents, records, and other information presented to it, and shall be final, conclusive and binding.  Any decision made hereunder by the Plan Administrator or a committee established by the Plan Administrator shall be final, conclusive and binding upon the Claimant and the University, and the Plan Administrator shall take appropriate action to carry out such decision.  Such decision shall be given deference, if it is subject to judicial review, and shall be overturned only if it is arbitrary or capricious.

The appeals procedures set forth in this Section 11.2 are intended to comply with Labor Regulation § 2560.503-1 and shall be construed in accordance with such regulation.  In no event shall it be interpreted as expanding the rights of Claimants beyond what is required by Labor Regulation § 2560.503-1.

11.3     Qualified Domestic Relations Orders.  The Plan Administrator (or a committee established by the Plan Administrator) shall establish procedures to review and determine the qualified status of Domestic Relations Orders.  Such procedures, as amended from time to time, shall be subject to the following:

(a)     A Domestic Relations Order shall be a Qualified Domestic Relations Order (QDRO) only if it clearly specifies (i) the name and last known mailing address of the Participant and the name, mailing address, and social security number of each Alternate Payee covered by the order (if the University does not have reason to know such information independently of the order), (ii) the amount or percentage of the Participant's Account to be paid to each Alternate Payee, or the manner in which the amount or percentage is to be determined, (iii) the number of payments or period to which the order applies, and (iv) each plan to which the order applies.

(b)     A Domestic Relations Order shall be a QDRO only if it does not require the Plan to (i) provide any type or form of benefit, or any option, not otherwise provided under the Plan, (ii) provide increased benefits, or (iii) pay benefits to an Alternate Payee that are required to be paid to another Alternate Payee under a previous QDRO.

(c)     A Domestic Relations Order shall not fail to be considered a QDRO or fail to satisfy the requirements of subsection (b) above with respect to any payment made before a Participant's Severance solely because the order requires that payment of benefits be made to an Alternate Payee (i) on or after the date on which the Participant attains (or would have first attained) his or her earliest retirement age (as defined in Code Section 414(p)(4)(B) and ERISA Section 206(d)(3)(E)(ii)), (ii) as if the Participant had retired on the date on which such payment is to begin under such order, and (iii) in any form in which such benefits may be paid under the Plan to the Participant (other than in

46

the form of a joint and survivor annuity with respect to the Alternate Payee and his or her subsequent spouse).

(d)    A Domestic Relations Order shall be treated as a QDRO if the Plan was paying benefits pursuant to that order on or before January 1, 1985 and the Administrator may, in its discretion, treat any other Domestic Relations Order entered before January 1, 1985 as a QDRO even if such order does not meet the requirements of Code Section 414(p)(4)(B) and ERISA Section 206(d)(3).

11.4    <u>Bar on Civil Action</u>.  A Participant, Beneficiary, or Alternate Payee may not commence a civil action pursuant to ERISA Section 502(a)(1) with respect to a benefit under the Plan after the earlier of:

(a)    Three (3) years after the occurrence of the facts or circumstances that give rise to, or form the basis for, such action; or

(b)    One (1) year from the date a Participant, Beneficiary, or Alternate Payee had actual knowledge of the facts or circumstances that give rise to, or form the basis for, such action.

Notwithstanding the foregoing, in the case of fraud or concealment, such action may be commenced not later than three (3) years after the date of discovery of the facts or circumstances that give rise to, or form the basis for, such action.

ARTICLE XII
PLAN ADMINISTRATION

12.1     Plan Administrator.  The University is hereby designated the Plan Administrator of the Plan and shall be responsible for the management of the Plan.  The University shall also be the "named fiduciary" with respect to the control or management of the assets of the Plan within the meaning of ERISA Section 402(a)(2).  Notwithstanding the foregoing, the University, through action by the Corporation, may delegate in whole or in part any of its responsibilities to an officer of the University or to a committee (described in Section 12.4 below) as set forth herein.

12.2     Administrative Responsibilities.  The University, acting through the Vice President for Human Resources and Administration ("Vice President") or such other officer who assumes the functions and responsibilities of the Vice President for Human Resources and Administration, has all discretionary authority and powers necessary to administer the Plan (other than discretionary authority and powers to control and manage the assets of the Plan), including, without limitation, the discretionary authority and power to:

(a)     Determine all questions involving the construction and interpretation of the terms of the Plan (including any uncertain terms) and to coordinate the provisions of the various documents that comprise the written plan document in a manner consistent with Code Section 403(b) subject to such general rules and interpretations of the Plan as may be made by the University or, if so authorized, a committee, and to the extent applicable, the terms of the Contracts;

(b)     Resolve all questions regarding the administration of the Plan, including all questions concerning eligibility to participate in the Plan, the amounts of Plan Contributions due under the Plan and whether Plan Contributions comply with applicable limitations, and whether the requirements of Code Section 403(b) are properly applied in the administration of the Plan and, as he or she deems necessary to carry out the terms of the Plan, to establish uniform and nondiscriminatory administrative rules and procedures for the Plan, including administrative procedures to permit or facilitate the investment of Plan Contributions in a manner consistent with ERISA Section 404(c) and Department of Labor Regulations thereunder, all in accordance with such general rules for administration as may be promulgated by the University or, if so authorized, a committee;

(c)     Maintain all necessary records for the administration of the Plan other than those maintained by other Employees of the University or the Recordkeeper and to prepare, and file or distribute, such reports and descriptive information concerning the Plan as shall be required by ERISA;

(d)     Give such instructions and notices, provide such information and make such certifications to the Recordkeeper as shall be necessary or appropriate in the administration of the Plan;

48

(e)      Approve, from time to time, the list of individuals or entities authorized to carry out administrative procedures established hereunder by the Vice President and to perform administrative functions requested by the Vice President and to monitor, from time to time, the effectiveness of established general administrative procedures and the effectiveness of those authorized to carry out plan administration to ensure that they are performing the requested administrative functions in accordance with Plan provisions and as directed by the Vice President;

(f)      Review and approve contracts or other documents that relate to the administration of the Plan and to execute such contracts or other documents (or authorize the execution of such contracts or other documents) on behalf of the University or the Plan;

(g)      Appoint, employ or change, when appropriate, legal, accounting, clerical, or other consultants to assist in carrying out the administration of the Plan;

(h)      To correct any defect, supply any omission, or reconcile any inconsistency in such manner and to such extent as he or she deems necessary or advisable to carry out the purpose of the Plan; and

(i)      To review and resolve all claims for benefits under the Plan in a manner consistent with Article XI.

Any action taken or any determination made in good faith by the University or the Vice President in the exercise of authority conferred upon it or him or her by the Plan shall be final, conclusive and binding upon all parties, the University, the Participants, and all other persons concerned.  Any exercise of discretionary authority by the University or the Vice President shall be given deference, if it is subject to judicial review, and shall be overturned only if it is arbitrary or capricious.

12.3    <u>Management and Control of Plan Assets</u>.  Except as to such discretionary authority and powers as are expressly reserved to the Recordkeeper, under the Contracts, or delegated to a committee as described in Section 12.4 below, the University shall have all discretionary authority and powers necessary to control and manage the assets of the Plan, including, without limitation, the discretionary authority and power to carry out its duties and responsibilities as set forth in Article VI and elsewhere in the Plan.  Any action taken or any determination made in good faith by the University in the exercise of authority conferred upon it by the Plan shall be final, conclusive and binding upon all parties, the University, the Participants, and all other persons concerned.  Any exercise of discretionary authority by the University under this Section 12.3 shall be given deference, if it is subject to judicial review, and shall be overturned only if it is arbitrary or capricious.

12.4    <u>Establishment of Committees</u>.  The Corporation has delegated to the Vice President for Human Resources and Administration ("Vice President") or to such other officer who assumes the functions and responsibilities of the Vice President for Human Resources and Administration the authority to establish a committee that will monitor the Investment Funds offered under the Plan and oversee the continued compliance of the Plan under ERISA Section

404(c) as provided in Article VI and, the authority to establish, as he or she deems necessary, one or more committees to establish rules and procedures for the administration of the Plan. Under the authority granted by the Corporation, the Vice President may, in his or her discretion, delegate all or a portion of his or her duty and responsibility to adjudicate claims for benefits as described in Section 12.2(i). The Vice President shall appoint the members of a committee (who shall be officers of the University or other senior personnel); the number of members, to be determined by the Vice President. The Vice President may delegate, in writing, any duties and responsibilities, including fiduciary and non-fiduciary duties and responsibilities, to the committee as he or she deems reasonable, appropriate, and within his or her authority granted by the Corporation, and the committee shall be granted such discretionary authority and powers to perform such duties or to carry out such responsibilities. The Vice President may designate a member of a committee to be its chairperson or may authorize the committee to select its own chairperson. The Vice President may remove any member of any committee at any time and may disband a committee at any time. Vacancies occurring on any committee may be filled by the Vice President.

     12.5   <u>Committee Action</u>. A committee may adopt such bylaws and regulations as it deems desirable for the conduct of its affairs. A committee shall appoint one of its members or another Employee of the University to serve as its secretary (the "Secretary"), to record its proceedings and to maintain a file of all records and documents pertaining to matters submitted to or considered by the committee and to forward all necessary communications to the Vice President. A committee shall meet upon the call of its chairperson and at such other times as the committee may designate. Any action of the committee shall be pursuant to a majority vote taken at a meeting, or pursuant to the written consent of a majority of its members without a meeting, and such action shall constitute the action of the committee and be binding in the same manner as if all members of the committee had joined therein. Any other person dealing with the committee may conclusively rely upon any certificate or other written instrument signed by the Secretary or any two or more other members of the committee which purports to have been duly authorized by the committee. A majority of the members of the committee shall constitute a quorum. The members of a committee shall serve without compensation for their services hereunder. It is intended that the University shall furnish any committee with such administrative, professional, clerical, and other assistance as is necessary in the performance of its duties. A member of a committee may resign by delivering a written notice of resignation to the Vice President, and such resignation shall be effective on the date specified in such notice. Any action taken or any determination made in good faith by a committee in the exercise of authority conferred upon it by the Vice President shall be final, conclusive and binding upon all parties, the University, the Participants, and all other persons concerned. Any exercise of discretionary authority by a committee shall be given deference, if it is subject to judicial review, and shall be overturned only if it is arbitrary or capricious.

     12.6   <u>Payment of Expenses</u>. All expenses of administration shall be paid by the Plan unless the University pays such expenses without expectation of reimbursement by the Plan. All expenses of administration or any loans or extensions of credit within the meaning of Prohibited Transaction Exemption 80-26 or any successor ruling, (the proceeds of which were used to pay expenses of administration) shall constitute a liability of the Plan until paid. The University may reimburse the Plan for any administration expense incurred and any administration expense paid to the Plan as a reimbursement shall not be considered a University contribution.

12.7   <u>Limit on Fiduciary Liability</u>.  No fiduciary of the Plan shall be liable:

(a)   For his or her own act, or failure to act, except as he or she has thereby occasioned actual loss to the Plan or a Participant or his or her beneficiary by failing properly to discharge a duty or responsibility expressly imposed upon him or her both by the Plan and by law:

(b)   For the act, or failure to act, of another fiduciary of the Plan except as he or she may commit one or more of the following breaches of his or her fiduciary responsibilities:  (i) if he or she participates knowingly in, or knowingly undertakes to conceal an act or omission of another fiduciary, knowing such act or omission is a breach; (ii) if, by his or her failure to observe applicable standards in the administration of his or her specific responsibilities which give rise to his or her status as a fiduciary, he or she has enabled such other fiduciary to commit a breach; or (iii) if he or she has knowledge of a breach by such other fiduciary and fails to make reasonable efforts under the circumstances to remedy the breach.

12.8   <u>Indemnification by University</u>.  In addition to whatever rights of indemnification any member of the Corporation or Employee of the University may be entitled to under the governing instruments of the University (or under any provision of law or any other agreements), the University shall satisfy any liability actually and reasonably incurred by any such person, including expenses, attorneys' fees, judgment, fines, and amounts paid in settlement, in connection with any threatened, pending, or completed action, suit, or proceeding which is related to the exercise or failure to exercise by the person of any of the powers, authority, responsibilities, or discretion provided under the Plan, or reasonably believed by the person to be provided thereunder, or any action taken by the person in connection with it.

ARTICLE XIII
AMENDMENT AND TERMINATION

13.1    Amendment of Plan.  The University reserves the right to amend at any time or times and for any or no reason to amend, or modify, to any extent the provisions of the Plan by:

(a)    Action of the Corporation; or

(b)    Action of the Vice President for Human Resources and Administration (or his or her successor) in order to comply with changes in law or regulations applicable to the Plan.

Notwithstanding the foregoing, no amendment shall (i) have the effect of reverting to the University the whole or any part of the assets of the Plan or of the Contracts, or of diverting any part of such assets to purposes other than for the exclusive benefit of Participants and Beneficiaries and the payment of Plan expenses at any time prior to the satisfaction of all the liabilities under the Plan with respect to such persons, (ii) adversely affect the rights of any Participant or Beneficiary with respect to any contributions made by him or her prior to the date of such amendment to the extent prohibited by applicable law, or (iii) eliminate or restrict an optional form of benefit to the extent prohibited by ERISA Section 204(g)(2).

13.2    Termination of Plan.  The Plan is purely voluntary on the part of the University, and the University reserves the right to terminate the Plan and discontinue contributions completely at any time by action of the Corporation.  The University also reserves the right to distribute, upon termination of the Plan, the balance of Participants' Accounts in a lump sum, if permitted under the terms of the Contracts, or by delivery of a fully paid annuity contract as permitted under Treasury Regulation § 1.403(b)-10(a).  However, in the case of Contracts that are custodial accounts satisfying the requirements of Code Section 403(b)(7) or that hold Participant Contributions, distribution of balances is permitted only if the University (including any Affiliated Employer as determined on the date of the termination) does not make contributions to any annuity contract or custodial account described in Code Section 403(b) that is not part of the Plan during the period beginning on the date of Plan termination and ending 12 months after distribution of all assets from the Plan.

13.3    Merger, Consolidation or Transfer of Assets.  In the event of any merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to, any other employee benefit plan, each Participant shall (if such other plan had then terminated) be entitled to receive a benefit immediately after such merger, consolidation or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

ARTICLE XIV
GENERAL PROVISIONS

14.1    No Right of Employment.  Nothing contained herein shall be deemed to give any Employee the right to be retained in employment or to interfere with the rights of the University to discharge him or her at any time.

14.2    Inalienability of Benefits.  The rights or interests of any person under the Plan may not be assigned or alienated, and, to the extent permitted by law, no benefit payments under the Plan shall be subject to legal process or attachment for the payment of any claims against any person entitled to receive the same.  The foregoing shall not apply to judgment, order, decree, or settlement agreement described in ERISA Section 206(d)(4) or to a Qualified Domestic Relations Order.

14.3    Construction and Headings.  Where appropriate, words used in the singular include the plural and the plural includes the singular.  The words "hereof," "herein," "hereunder" and other similar compounds of the word "here" shall mean and refer to this entire Plan, not to any particular provision or section.  The headings of the Plan are inserted for convenience of reference only and shall have no effect upon the meaning of the provisions hereof.

14.4    Facility of Payment.  If the Plan Administrator deems any person incapable of receiving benefits to which he or she is entitled by reason of minority, illness, infirmity, or other incapacity, the Plan Administrator may direct that payment be made to the legal guardian or custodian, or if none, to a parent or a responsible adult with whom a minor maintains his or her residence, if such is permitted by the laws of the state in which such person resides.  Such a payment to the legal guardian, custodian or parent of a minor shall fully discharge the University and Plan from further liability on account thereof.  Notwithstanding the foregoing, if there is a conflict between this Section and the contractual terms of a Contract, the terms of the Contract shall control.

14.5    Law Applicable.  The Plan shall be governed and construed in accordance with the laws of the Connecticut except as such laws may be superseded by ERISA or the Code.  Anything in the Plan or any amendment hereof to the contrary notwithstanding, no provision of the Plan shall be construed so as to violate the requirements of ERISA, the Code, or any other applicable law.

IN WITNESS WHEREOF, the University has caused this instrument to be executed on this 29 day of June, 2015.


YALE UNIVERSITY


By: _____
     Michael A. Peel
     Vice President for Human Resources and Administration

Yale University Retirement Account Plan
Appendix A

| Element Name | Classification Name | CORE and Match | Participant contributions |
|---|---|---|---|
| Bonus Vacation | Earnings | Yes | Yes |
| Fac Phased Ret Plan | Earnings | Yes | Yes |
| FAS Chair Supplement | Earnings | Yes | Yes |
| FAS Masters Supplement | Earnings | Yes | Yes |
| Holiday Pay | Earnings | Yes | Yes |
| MP Salary Continuation | Earnings | Yes | No |
| Payroll Earnings Adjust | Earnings | Yes | Yes |
| Recess Pay | Earnings | Yes | Yes |
| Regular Salary | Earnings | Yes | Yes |
| Regular Wages | Earnings | Yes | Yes |
| Retiree Sick Pay | Earnings | Yes | Yes |
| Salary Recovery | Earnings | Yes | Yes |
| Salary Vacation Pay | Earnings | Yes | Yes |
| Summer Comp One Time | Earnings | Yes | Yes |
| Summer Compensation | Earnings | Yes | Yes |
| Summer Programs Pay | Earnings | Yes | Yes |
| Time Entry Wage | Earnings | Yes | Yes |
| Vacation Pay | Earnings | Yes | Yes |
| On Going Extra Comp | Supplemental Earnings | No | Yes |
| One Time Extra Comp | Supplemental Earnings | No | Yes |
| Preauth Monthly Overtime | Supplemental Earnings | No | Yes |
| YSM FAC Incntv | Supplemental Earnings | No | Yes |
|  |  |  |  |

YALE UNIVERSITY RETIREMENT ACCOUNT PLAN

APPENDIX B
TARGETED INCOME REPLACEMENT RATIO

B-1     Excluded Employees under Appendix B.  A Participant shall cease to be an Eligible Employee as of the July 1 following the end of the second consecutive calendar year during which the Total Adjusted Value of the Contribution Units of the Participant under the Plan exceeds the Targeted Income Replacement Ratio for such Participant.  For purposes of applying this rule, the following shall apply:

（a)     The Total Adjusted Value of the Contribution Units and the Targeted Income Replacement Ratio for the Participant shall be calculated by the University as of the end of each calendar year in the manner set forth in B-2 below.

(b)     A Participant shall not cease to be an Eligible Employee pursuant to this Appendix B at a time (i) prior to the end of the Plan Year in which Normal Retirement Age is reached for any Participant who has completed 15 Years of Employment with the University on July 1, 1993; or (ii) prior to the end of the Plan Year in which the Participant completes 20 Years of Employment.

(c)     If a Participant ceases to be an Eligible Employee pursuant to the application of this Appendix B, and if in a calendar year the Total Adjusted Value of the Contribution Units becomes exceeded by the Targeted Income Replacement Ratio for such Participant, then the Participant shall again become an Eligible Employee on July 1 of the next calendar year.

B-2     Targeted Income Replacement Ratio.  The method for calculating for a Participant's Total Adjusted Value of the Contribution Units and his or her Targeted Income Replacement Ratio is as follows:

(a)     A Participant's "Total Adjusted Value of the Contribution Units" shall be calculated at the end of each calendar year and shall be equal to the value of a Contribution Unit times (X) the number of his or her Years of Employment with the product adjusted by an Annuity Purchase Rate Factor.  The value of a "Contribution Unit" for a calendar year shall be determined by the following steps:

(i)     Calculate the assumed retirement accumulation under the Plan for a hypothetical individual who, in the year of calculation, has (1) completed 35 Years of Employment during which he or she participated in the Plan, (2) has reached Normal Retirement Age, (3) has invested his or her University Contributions and Participant Contributions 50% in TIAA and 50% in CREF, and (4) whose salary history is based on two factors applied by the Administrator -- the history of average salaries reported to the AAUP Salary Survey and the average relationship between salary and years of service;

(ii)     Calculate the income replacement ratio that the hypothetical individual has achieved with his or assumed retirement accumulation, plus estimated social security benefits, when compared to final academic year salary; and

(iii)     Divide the income replacement ratio by 43 (equal to 35 years plus an allowance of 8 for social security benefits).

The Annuity Purchase Rate Factor for a Participant shall be the percentage increase or decrease of the difference between (1) the purchase rate for an annuity (based upon the CREF 4% single life annuity purchase rate table) for the Participant at his or her actual age and (2) the purchase rate of the annuity at Normal Retirement Age.

(b)     A Participant's "Targeted Income Replacement Ratio" shall be equal to 40% increased by 1% for each Year of Employment completed by the Participant but not to exceed 70%.

B-3     Year of Employment.  For purposes of this Appendix B, a Participant shall be credited with $1/365.25^{th}$ of a Year of Employment for each day he or she is eligible to accrue a benefit or receive employer contributions under a retirement plan maintained by the University.