## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI, NANCY S. LOWERS, JAN M. TASCHNER, AND JAMES MANCINI, individually and as representatives of a class of participants and beneficiaries on behalf of the Yale University Retirement Account Plan,<br><br>*Plaintiffs*,<br><br>v.<br><br>YALE UNIVERSITY, MICHAEL A. PEEL, AND THE RETIREMENT PLAN FIDUCIARY COMMITTEE,<br><br>*Defendants*. | Civil Action No. 3:16-cv-01345-AWT<br><br><br>Hon. Alvin W. Thompson |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE CERTAIN DOCUMENTS AND EXHIBITS RELIED ON IN MOTION TO DISMISS**

**CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ...................................................................................................................... 3
    A. The Court Should Exclude Yale's Documents Which Are Not Referenced Or Relied Upon In The Amended Complaint And That Are Not Properly Subject to Judicial Notice. ................................................... 3
    B. Documents Sufficiently Relied Upon in the Amended Complaint So As To Be Incorporated by Reference Can be Considered for Their Contents, But Not For the Truth Thereof. ...................................................... 11
    C. Documents Filed with the SEC or DOL Should Not Be Judicially Noticed for the Truth of Their Contents. ........................................................ 12
III. CONCLUSION ................................................................................................................ 13

I.      INTRODUCTION

In support of their motion to dismiss (Doc. 62), Yale University, Michael A. Peel, and the Retirement Plan Fiduciary Committee (collectively "Yale" or "Defendants") have submitted ten documents as exhibits totaling *389* pages,[1] the vast majority of which are not referenced in or attached to Plaintiffs' Amended Complaint, nor were these documents integral to the Amended Complaint or relied upon by Plaintiffs in drafting the pleadings. In fact, of the ten documents attached as exhibits, only *two* are even referenced in the Complaint at all: Defendants' Exhibits B and D.[2] Moreover, in addition to these extraneous exhibits, the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Defendants' MIS")(Doc. 62-1) repeatedly relies upon a substantial number of internet source materials that are also not referenced in the Complaint, nor integral to Plaintiffs' claims. Outside of the few materials Yale relies on that were either filed with the Securities and Exchange Commission ("SEC") or the Department of Labor ("DOL"), none of Yale's extraneous materials are of the type whose accuracy cannot reasonably be questioned and thus are not properly the subject of judicial notice pursuant to Fed. R. Evid. 201(b)(2).

Accordingly, under Rule 12(d) of the Federal Rules of Civil Procedure, Plaintiffs hereby move to exclude all documents, materials, or other sources that have not been referenced in or relied upon in the Amended Complaint and that are not otherwise subject to judicial notice. All references to such materials in Defendants' MIS should be ignored by the Court altogether when deciding the pending motion to dismiss.

---

[1] *See* Exhibits A–J. Docs 62-3 through 62-12.
[2] Exhibit I (the Plan's 2009 Form 5500) falls outside of the Plan's 2010–2015 Form 5500 filings referenced in and relied upon by Plaintiffs in drafting the amended complaint. *See* AC ¶¶105, 134.

1

Additionally, even for those documents that are properly subject to judicial notice, Yale uses these documents to support arguments which depend on the Court accepting these documents for the truth of the matters asserted therein in order to resolve contested factual issues. This is wholly improper. *Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007)(district court "improperly considered the representations in defendants' filings for the truth of their assertions" where the representations "raised issues of fact that should not have been determined at the pleading stage."); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Rashad Ahmad Refaat El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 258 n.10 (D. Conn. 2008) ("Although a court may take judicial notice of public records such as judicial decisions, it may only take notice of the *existence* of statements contained in the records, as distinguished from the *truth* of those statements.")(emphasis original). Consequently, Plaintiffs additionally move to exclude Yale's arguments that rely on the truth of the matters asserted in any of the extra-pleading materials, including those that may otherwise be properly subject to judicial notice.

If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). As a result, a district court presented with outside matters has two options: exclude the extrinsic documents, or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). The conversion requirement is "strictly enforce[d]" and "mandatory." *Global Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).

## II. ARGUMENT

### A. The Court Should Exclude Yale's Documents Which Are Not Referenced Or Relied Upon In The Amended Complaint And That Are Not Properly Subject to Judicial Notice.

When ruling on a Rule 12(b)(6) motion to dismiss, a district court typically must confine itself to the four corners of the complaint. *Kramer*, 937 F.2d at 773; *Ryder Energy Distribution Corp., v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)("[T]he district court must limit itself to a consideration of the facts that appear on the face of the complaint."). Matters outside of the pleadings may not be considered by a court on a motion to dismiss. *Chambers*, 282 F.3d at 154; *Mangiafico v. Blumenthal*, 358 F. Supp. 2d 6, 9 (D. Conn. 2005)(in deciding a Rule 12(b)(6) motion, a court must "limit itself to the facts stated in the complaint, the documents attached to the complaint as exhibits and documents incorporated by reference in the complaint" but may also consider "matters of which judicial notice may be taken[.]")(citations omitted).

There are two exceptions to the strict rule limiting a court to only the four corners of the complaint. First, a court may consider documents properly submitted as a part of the complaint or incorporated in the complaint by reference, *i.e.*, documents upon which the complaint necessarily relies or which are integral to allegations of the complaint. *Global Network*, 458 F.3d at 155. "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y 2010)(internal quotation marks omitted). Moreover, for a document to be considered integral to a complaint "a necessary prerequisite . . . is that the 'plaintiff[] rel[y] on the terms and effect of [the] document in drafting the complaint . . . mere notice or possession is not enough."

3

*Global Network*, 458 F.3d at156 (quoting *Chambers*, 282 F.3d at 153). "In most instances … the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls," but which the plaintiff declined to cite because it would have undermined his claim. *Id*. "[L]imited quotation" of outside materials is not "incorporation by reference." *Id*. (citation omitted). "Clearly, not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." *Id*. (citation omitted).

Second, under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of a fact only when the fact is "outside reasonable controversy"; "[a] high degree of indisputability is the essential prerequisite." *McCormack v. Cheers*, 818 F.Supp.584, 597 n. 14 (S.D.N.Y 1993)(quoting Fed.R.Evid. 201(a) advisory committee's note). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201[]." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A. Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). Accordingly, Rule 201(b) contains two tests of indisputability: facts that are (1) "usually common knowledge," or (2) "derived from an unimpeachable source." *Id*.

In some circumstances, certain public disclosure documents such as SEC or DOL fillings may be considered integral to a complaint or subject to judicial notice. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Under either method, these documents "may properly be considered only for 'what' they contain, 'not to prove the truth' of their contents." *Id*. at 511 (citation omitted); *see also Logicon Inclusive, Inc. v. W.P. Stewart & Co.*, 2004 U.S. Dist. LEXIS 15668, AT *11-12 (S.D.N.Y. Aug. 9, 2004)("Courts may take notice of the 'contents of

relevant public disclosure documents . . . required by law to be filed' and '*are relevant not to prove the truth of their contents* but only to determine what the documents stated.'")(quoting *Kramer*, 937 F.2d at 774)(emphasis added). In most cases, these documents are properly considered with respect to claims involving allegations of fraud or misrepresentation, because "the documents are the very documents that are alleged to contain the various misrepresentations or omissions," and there can be no reasonable dispute about "what statements [they] contained." *Kramer*, 937 F.2d at 774; *Roth*, 489 F.3d at 509. When the gravamen of the complaint is not fraud or misrepresentation, that reasoning is inapplicable. *See Roth*, 489 F.3d at 510 (SEC filings "presented material that was inappropriate for consideration" where complaint "contained no allegation of a failure to disclose or of a factual misrepresentation."). Even when such documents are properly considered at this stage, a defendant's statements regarding its own conduct cannot be used to prove the truth of those statements. *See id.* at 510–11 (reversing where district court granted Rule 12(b)(6) motion based on view that "the Defendants' statements, which have been submitted to a government agency and made public, should not be contradicted or taken as perjurious simply because the Plaintiff, without evidence, says they are.").

      Yale entirely disregards these well-settled standards, urging the Court to improperly draw inferences in its favor from materials outside of the complaint and to rely on these extraneous materials to resolve disputed issues of fact.

      1. Exhibits A, C, E, F, G, H, and J Are Not Referenced or Relied Upon in the Complaint Nor Integral to Plaintiffs' Claims and Should Be Excluded Unless They Can Be Judicially Noticed

      Yale improperly submits documents entirely outside of the Complaint, and in so doing, improperly attempts to broaden the scope of the Court's review on the pending motion to dismiss. These documents should not be considered at all. *Chambers*, 282 F.3d at 153.

Exhibits A, C, E, F, G, H, and J are not referenced in nor necessarily relied upon anywhere in the Complaint. Yale simply attempts to interpose this extraneous "evidence" to resolve factual disputes and argue inferences. For example, Yale proffers Exhibits E, F, G & H to support the (improper) factual assertion that Yale's process was prudent based on these documents purporting to show that the certain share class changes were made to Plan investment options during the class period. Doc. 62-1 at 32–33 & n.43. However, nowhere does the Complaint reference or cite to or rely on these documents. And, moreover, Plaintiffs vehemently dispute the factual inference that Yale asks the Court to draw from these materials. *See* Part III of Pls.' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls.' MIO"). Yale's use of these extraneous documents in an effort to conclusively establish Yale's prudent process is fundamentally at odds with the detailed factual allegations set forth in Plaintiffs' Amended Complaint (AC ¶¶45, 103, 105, 139–49), and would require the Court to draw an inference squarely contrary to the requirement that when deciding a Rule 12(b)(6) motion "the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the favor of the pleader." *Taylor v. United Techs. Corp.*, No. 3:06cv1494 (WWE), 2007 U.S. Dist. LEXIS 57807, at *6 (D. Conn. Aug. 9, 2007).

Similarly, Yale improperly proffers certain unauthenticated TIAA Annuity Contracts. Exhibits A and J. Although Yale suggests that these TIAA Annuity Contracts are cited in two separate paragraphs in the complaint so as to be incorporated by reference, Doc. 62-1 at 47 n. 63 (citing AC ¶¶ 106, 114), neither of these cited paragraphs (nor any other paragraph in the Complaint) actually reference or in any way rely on these specific contracts that Yale would have the Court rely upon in connection with its motion to dismiss. Notably, the contracts in Exhibits A and J, which Yale contends apply to two of the named Plaintiffs, are *unsigned* by

6

Plaintiffs, *unauthenticated*, and nothing in the record reflects the circumstances as to whether and how these Plaintiffs were notified of or assented to the terms of the annuities at issue. Yale asks the Court to rely on these extraneous materials to conclude, at the pleadings stage, that Plaintiffs' claims under Count I are time-barred because they were brought greater than three years after Plaintiffs had "actual knowledge" of the fiduciary breach alleged. Doc. 62-1 at 46–47. Once again, Yale's use of materials outside of the complaint would have the Court rely on such materials to impermissibly resolve issues of fact that are plainly in dispute. Specifically, Plaintiffs contend that all of the documents Yale attaches or relies on (including even the extra-pleading materials such as Exhibits A and J) fail to support the contention that Plaintiffs had actual knowledge of the *process*-based claims at issue. *See* Part VII of Pls.' MIO.

Also, as the issue of contract formation is often fact-intensive, it would be improper for the Court to rely on these proffered contracts to resolve disputed issues of fact regarding what if any knowledge Plaintiffs actually had regarding Yale's inability to remove certain options from the Plan. This is even more relevant here where nothing in the record provides any indication as to the circumstances under which Plaintiffs received the contracts contained in Exhibits A and J and in what manner they were apprised of modifications or amendments thereto. Indeed, the language of these unauthenticated contracts actually underscores Plaintiffs' argument that it is Yale (as the Plan fiduciary) that is the party in *sole* possession of actual knowledge of the details regarding the process it employed (if any) in managing the Plan's investments. *See* Part VII of Pls.' MIO. Specifically, these contracts provide that "Yale University" is the "Contractholder," that TIAA issued the contract to Plaintiffs' "employer, the contractholder," and that the "contract may be amended by agreement of TIAA and the contractholder without consent of any other person[.]" *See e.g.*, Doc,. 62-3 at 4, 6, 17. Such language in these TIAA contracts wholly

7

undermines any notion that these contracts provided Plaintiffs with "actual knowledge" of Yale's imprudent *process* regarding the Plan's arrangement with TIAA-CREF giving rise to the allegations in Counts I and II. *See* AC ¶¶208–211, 216–218.

Moreover, the Second Circuit's decision in *Chambers* also forecloses consideration of these contracts when ruling on Yale's motion to dismiss. In *Chambers*, the Second Circuit vacated the district court's dismissal of an action because it found that the district court had impermissibly relied on certain materials including unsigned "Codes" that defendants had submitted in support of their motion to dismiss and even though these "Codes" were not referenced in the complaint, plaintiffs did not rely on them in drafting the complaint, and the "Codes" lacked plaintiffs signatures. 282 F. 3d at 154. The Second Circuit found these unsigned documents to be extraneous materials that the court should not have relied upon without converting the motion to one for summary judgment and allowing the parties an opportunity to conduct appropriate discovery. *Id*. Just like the extraneous documents in *Chambers*, the TIAA contracts contained in Yale's Exhibits A and J are not referenced in the pleadings nor were these specific contracts relied on by Plaintiffs in drafting the complaint; and just like in *Chambers*, the TIAA contracts are both unauthenticated and lack any of the Plaintiffs' signatures. *Cf. Chambers*, 282 F. 3d at 154. Finally, Plaintiffs would be prejudiced if the Court were to consider these unsigned and unauthenticated contracts, referenced nowhere in Plaintiffs' Complaint, that do not even contain Plaintiffs' signatures on them. *Id*. at 153 (reiterating that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.")(emphasis in original).

    2.   Non-SEC and DOL Filings Should Not Be Judicially Noticed

Documents not incorporated by reference or integral to the complaint can only be considered by a court on a Rule 12(b)(6) motion if they are of the type that can be judicially noticed. Yale attempts to introduce documents, exhibits, and internet source materials that fall well short of the requirements of Fed. R. Evid. 201(b) since these documents' contents are neither "usually common knowledge" nor "derived from an unimpeachable source." *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70; Fed. R. Evid. 201(b). The longstanding and well-recognized rule has been that the power to judicially notice facts "is to be exercised by courts with caution . . . Every reasonable doubt upon the subject should be resolved promptly in the negative." *Brown v. Piper*, 91 U.S. 37, 42–43 (1875); *see also Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70.

As such, the following documents and exhibits, and any references thereto in the record or in Defendants' MIS, should be excluded entirely:

| Source | Description |
|---|---|
| Ex. A | TIAA Annuity Contract (Pl. Vellali) |
| Ex. E | October 14, 2011 Plan Notice |
| Ex. F | June 2013 Plan Notice |
| Ex. G | August 2014 Plan Notice |
| Ex. H | July 22, 2016 Plan Notice |
| Ex. J | TIAA Annuity Contract (Pl. Taschner) |
| Internet Source, cited Doc. 62-1 at 9 n.1 | N.Y. Times Article |
| Internet Source, cited Doc. 62-1 at 10 n.2 | TIAA's Company History |
| Internet Source, cited Doc. 62-1 at 10–12 nn.3, 9–12 | ERISA Compliance for 403(b) Plans |
| Internet Source, cited Doc. 62-1 at 11 n.5 | Pension & Investments Article |

| | |
|---|---|
| Internet Source, cited Doc. 62-1 at 13 n.15 | TIAA "Stats" Sheet |
| Internet Source, cited Doc. 62-1 at 14 n.16 | TIAA Organizational Info |
| Internet Source, cited Doc. 62-1 at 14, 21–22 nn.17, 28 | TIAA's Restated Charter |
| Internet Source, cited Doc. 62-1 at 14 nn.19–20 | Vanguard Why Ownership Matters Page |
| Internet Source, cited Doc. 62-1 at 15 n.21 | Morningstar 2015 Fee Study |
| Internet Source, cited Doc. 62-1 at 15 n.22 | Yale Financial Wellness Page |
| Internet Source, cited Doc. 62-1 at 25 n.32 | Digest of Education Stats |
| Internet Source, cited Doc. 62-1 at 38 n.52 | Var. Annuities: What You Should Know |
| Internet Source, cited Doc. 62-1 at 39 n.54 | CREF Stock R3 Document |
| Internet Source, cited Doc. 62-1 at 41 n.60 | Morningstar Performance Comparison |
| Internet Source, cited Doc. 62-1 at 44 n.62 | CREF Notice of Application |

First, *none* of the above materials are referenced in nor necessarily relied upon in the Complaint and therefore should not be considered by the Court when ruling on a motion to dismiss. *Chambers*, 282 F.3d at 153; *Global Network*, 458 F.3d at156. Notably, for those internet materials and sources that Yale relies on and which *are* referenced in the Amended Complaint, Yale indicates the Amended Complaint paragraph where such material is referenced. *See e.g.*, Doc. 62-1 at 24–26, nn.29–31, 33, 35. However, for the above materials Yale fails to provide a single cross-reference to a Complaint paragraph indicating where any of the materials appear—nor could it. These materials are all entirely outside the pleadings. Because none of these documents were required by law to be filed with a government agency such as the DOL or SEC, these documents do not have a high degree of indisputability necessary for judicial notice. *McCormack v. Cheers*, 818 F.Supp. at 597 n.14.

Indeed, many of these documents are simply self-serving corporate publications and other internet materials that are plainly not the type of documents appropriate for judicial notice. The impropriety of judicial notice is clear both from the nature of these documents themselves and based on Yale's plainly improper use of them. For example, Yale would have the Court draw impermissible inferences from these extra-pleading materials in order to conclude (erroneously) that Plaintiffs' claims are implausible because the Plan's recordkeepers had no profit motivation, despite the extensive factual allegations contained in the Complaint showing exactly the opposite. *See e.g.*, AC ¶¶ 70–79, 180, 210, 226, 240, 243. Even if the Court were to consider a select few of these materials to be judicially noticeable, these documents "may properly be considered only for 'what' they contain, 'not to prove the truth' of their contents." *Roth*, 489 F.3d at 511 (citation omitted). Thus, for example, even if the CREF Notice Application, *see* Doc. 62-1 at 44 n.62, is properly subject to judicial notice, the document still *cannot* be relied upon for the truth of the matters asserted therein, *e.g.*, to confirm the purported organizational status of CREF in order to contend a §1101(b)(1) exception applies which is precisely what Yale seeks to use the extraneous document to establish.

All the extraneous materials specified in the table above should be excluded from the Court's consideration in ruling on the pending motion to dismiss because none of them fall under any of the limited exceptions.

**B. Documents Sufficiently Relied Upon in the Amended Complaint So As To Be Incorporated by Reference Can be Considered for Their Contents, But Not For the Truth Thereof.**

The Court may consider the contents of certain documents sufficiently referenced in the Complaint so as to be incorporated by referend, but cannot take judicial notice of the truth of such contents. *Kramer*, 937 F.2d at 773–74. Thus, although the Court may consider Exhibits B,

11

C, D, and I, as possibly being incorporated by reference or integral to the Complaint, none of these documents may be judicially noticed as true.

### C. Documents Filed with the SEC or DOL Should Not Be Judicially Noticed for the Truth of Their Contents.

Documents required by law to be filed with the SEC or DOL can be considered merely "to determine what the documents sated," and "not to prove the truth of their contents." *Kramer*, 937 F.2d at 774; *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.,* 99 F. Supp. 3d 1110, 1126 (C.D. Cal 2015)(taking judicial notice of the *existence* of certain Form 5500 filings, but emphasizing that it "could not take judicial notice of one party's opinion of how a matter of public record should be interpreted.")(citation omitted). Relevant here, the *Almont* court expressly disclaimed that in taking judicial notice of the Form 5500 documents it "in no way intends to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents themselves." 99 F. Supp. 3d 1110, 1126 (citation omitted). The court explained that this was appropriate because "[i]t would be improper for the Court to rely upon these documents to determine disputed factual issues[.]" *Id.* (citation omitted).

Yale is not seeking to introduce the Plan's 5500 filings (Exhibit I) for points that are not subject to dispute, such as to establish the *existence* of such filings. Instead, Yale asks the Court to draw improper inferences from these documents—directly contrary to the allegations in the Complaint—to conclude that Yale must have acted prudently by negotiating certain rebates. *See* Doc. 62-1 at 28–29. However, this approach is not permitted as the Court must draw all reasonable inferences in favor of *plaintiffs* as the non-moving party. *Taylor v. United Techs. Corp.*, 2007 U.S. Dist. LEXIS 57807, at *6 (D. Conn. Aug. 9, 2007). Moreover, as with the improper and extraneous documents related to share class changes addressed above, Plaintiffs

12

vehemently dispute the factual inferences that Yale asks the Court to draw regarding the purported rebates indicated in the Form 5500 fillings. *See* Part IV of Pls.' Memorandum in Opposition to Defendants' Motion to Dismiss. Thus, the "facts" Yale seek to impermissibly use these 5500 exhibits for directly conflict with Plaintiffs' allegations in the Complaint (*see e.g.*, AC ¶¶ 57, 128, 122–38, 225) and are thus in dispute. While the Court may take judicial notice of the fact that these exhibits were filed with the DOL and that the documents state what they state, the Court cannot take judicial notice of the truth of these documents' contents or draw the type of inferences that Defendants seek to use them for so as to resolve disputed issues of fact.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grants Plaintiffs' motion to exclude from consideration Exhibits A, E, F, G, H, and J, and all the extra-pleading internet source materials specified in the table above, in addition to all arguments Yale makes in reliance upon these documents and extraneous materials. The contents of Exhibits B, C, D, and I may be considered, but not for the truth of the matters asserted therein and should not be relied upon by the Court to resolve issues of factual dispute.

Dated: March 27, 2017                    Respectfully submitted,

                                                      By: /s/ Jerome J. Schlichter
                                                Jerome J. Schlichter (phv01476)
                                                SCHLICHTER BOGARD & DENTON, LLP
                                                Michael A. Wolff (phv08418)
                                                Troy A. Doles (phv02336)
                                                Heather Lea, (phv08416)
                                                Kurt C. Struckhoff (phv08417)
                                                Sean E. Soyars (phv08419)
                                                100 South Fourth Street, Suite 1200
                                                St. Louis, Missouri 63102
                                                Telephone: (314) 621-6115
                                                Facsimile: (314) 621-5934
                                                jschlichter@uselaws.com

                            mwolff@uselaws.com
                            tdoles@uselaws.com
                            hlea@uselaws.com
                            kstruckhoff@uselaws.com
                            ssoyars@uselaws.com

                            Stuart M. Katz (ct12088)
                            Cohen and Wolf, P.C.
                            1115 Broad Street
                            Bridgeport, CT 06604
                            Telephone: (203) 368-0211
                            Facsimile: (203) 337-5505
                            skatz@cohenandwolf.com

                            *Attorneys for Plaintiffs*