IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*, <br><br>                            *Plaintiffs*, <br><br>v. <br><br>YALE UNIVERSITY *et al.*, <br><br>                            *Defendants*. | No. 3:16-cv-01345-AWT <br><br> Hon. Alvin W. Thompson |

**[PROPOSED] SUPPLEMENTAL BRIEF REGARDING ADDITIONAL
AUTHORITIES SUPPORTING DENIAL OF MOTION TO DISMISS [DOC. 62]**

    Plaintiffs submit this supplemental brief to inform the Court of two recent decisions denying, in substantial part, motions to dismiss ERISA fiduciary breach and prohibited transaction claims regarding excessive fees and imprudent investments in multi-billion dollar university 403(b) plans. *Henderson v. Emory Univ.*, No. 16-2920, Doc. 61 at 1–3, 5–18, 21–22, 25–26 (N.D. Ga. May 10, 2017)(Ex. 1); *Clark v. Duke Univ.*, No. 16-1044, Doc. 48 at 1, 3, 5 (M.D.N.C. May 11, 2017)(Ex. 2). Because Plaintiffs' claims here are similar, these decisions further support Plaintiffs' opposition to Yale's motion to dismiss.

    **1.** *Henderson v. Emory Univ.***, No. 16-2920, Doc. 61 (N.D. Ga. May 10, 2017).** The court found that Counts I through VI of the plaintiffs' amended complaint stated plausible claims, in whole or in part. *Id*. at 4–18, 21–22, 25–26. Counts I through VI of Plaintiffs' Amended Complaint here assert similar claims. Doc. 57 at 114–127 (¶¶207–50).

    As to Count V (breach of fiduciary duty based on unreasonable and unnecessary investment management fees and performance losses), the court found that plaintiffs stated plausible claims:

- "that choosing retail-class shares over institutional-class shares is imprudent," based on allegations that defendants included "close to 100" such retail-class shares in the plan (Order at 5–6 & n. 1);

- "the defendants' process for choosing and analyzing certain funds was flawed,"

> based on allegations that the recordkeepers "required the defendants to include their preferred investment lineup" in the plan, the options were not included based on the best interest of participants but to benefit the recordkeepers, that a prudent analysis would have revealed that actively managed funds were unlikely to outperform comparable passively managed funds, and the defendants' agreement with the recordkeepers required retention of certain funds (*id*. at 7–9);

- the CREF and TIAA annuities charged layers of fees "that were excessive and/or provided a benefit to TIAA but not to the benefit of participants" (*id*. at 9–11); and

- "the defendants acted imprudently by retaining" the underperforming CREF Stock and TIAA Real Estate Accounts, noting that the parties' dispute as to the proper benchmark to measure the funds' performance "can be more appropriately determined on summary judgment" (*id*. at 11–13).

Because Plaintiffs' allegations here are similar, *Henderson* further supports Plaintiffs' arguments that Yale breached its duties by choosing 74 higher-cost retail-class mutual fund shares instead of available institutional-class shares of the same funds (Doc. 69 at 25–33);[1] Yale's process for selecting investments was flawed and allowed the recordkeepers to include their preferred lineup in the Plan for the recordkeepers' benefit rather than the best interests of participants (*id*. at 12, 25–27); Yale included TIAA and CREF annuities charging layers of fees that were excessive and benefited TIAA but not participants (Doc. 69 at 25 & n.12, 43 n.31); and Yale acted imprudently by retaining the underperforming, actively managed CREF Stock and TIAA Real Estate Accounts (*id*. at 40–43).

Regarding Count III (breach of fiduciary duty based on unreasonable and excessive administrative fees), the *Henderson* court found that plaintiffs stated plausible claims that:

- defendants failed to monitor the amount of revenue sharing paid to the recordkeepers and to ensure "that the recordkeepers charged appropriate fees and did not receive overpayment for their services" (Order at 14–15);

- "a prudent fiduciary would have chosen one recordkeeper instead of three," noting that defendants' contrary arguments about the benefits of multiple recordkeepers

---

[1] "Doc." page citations refer to the page numbers shown on the ECF header.

>
> presented "issues of fact" that could not be resolved at the motion to dismiss stage (*id*. at 15–16); and
>
> - "the absence of competitive bidding for the recordkeeping services was imprudent," based on *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 798–99 (7th Cir. 2011) (*id*. at 16–17).

*Henderson* further supports Plaintiffs' similar arguments here regarding Count III. Doc. 69 at 34–39 (Part IV).

The *Henderson* court found that Count I stated a claim "that the defendants acted imprudently by 'locking in' to the CREF Stock Account and TIAA Recordkeeping" while having "no process" to prudently monitor and remove imprudent investments as required by *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1829 (2015). Order at 17–18. This further supports Plaintiffs' argument regarding Count I here. Doc. 69 at 26, 39–40.

As to the prohibited transaction claims, the court found that Count II stated a plausible claim that defendants caused prohibited transactions by "lock[ing]" the plans "into an arrangement that required the Plans to include the CREF Stock Account and to use TIAA as a recordkeeper, even though the fees were unreasonable for the services provided." Order at 21. The court also found that Counts IV and VI stated a claim based on the Plan by paying recordkeeping and investment management fees to TIAA, Fidelity, and Vanguard, finding that defendants' claimed exemption under §1108(b)(2) involved an affirmative defense. *Id*. at 21–22). *Henderson* further supports Plaintiffs' arguments here regarding Counts II, IV, and VI. Doc. 69 at 45 n.33, 46–47.

Finally, the *Henderson* court found that plaintiffs stated a plausible claim that defendants breached their duty of loyalty, based on allegations that they "did not act for the benefit of the Plans' participants." Order at 25; *id*. at 7–9 (discussing allegations that options were included to benefit the recordkeepers rather than participants). This further supports Plaintiffs' argument here that such allegations show a plausible breach of the duty of loyalty. Doc. 69 at 25–27.

3

**2.** *Clark v. Duke Univ.*, **No. 16-1044, Doc. 48 (M.D.N.C. May 11, 2017).** Like *Henderson*, the court in *Clark* denied the motion to dismiss plaintiffs' breach of fiduciary duty claim based on unreasonable administrative fees (Count III), prohibited transaction claim based on administrative services and fees (Count IV), and breach of fiduciary duty claim based on unreasonable and unnecessary investment management fees and performance losses (Count V). Order at 1, 3, 5; *see Clark* Am. Compl., Doc. 24 at 136–43 (¶¶236–63) (Ex. 3). *Clark* therefore further supports Plaintiffs' arguments against dismissal of Counts III–V here, which assert similar theories and allegations. Doc. 69 at 27–44, 46–47. By denying the motion to dismiss these Counts, the court necessarily rejected Duke's argument—similar to Yale's argument here—that the claims were time-barred under ERISA's three-year "actual knowledge" limitations period based on notices purportedly sent to participants with basic information about fees and investments. *See Clark* Doc. 35 at 27 (Ex. 4); *cf.* Yale Mem., Doc. 62-1 at 46–48.

Although the court in *Clark* found the "lock in" claim time-barred under ERISA's six-year limitations period (Order at 1–3), the *Henderson* court reached the opposite conclusion, finding the claim timely to the extent plaintiffs challenged the decision to "maintain[] the arrangement and the failure to monitor and remove CREF Stock within the six years preceding the complaint" (Order at 18–19). As noted in Plaintiffs' opposition, *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015), imposes a continuing duty to monitor and remove imprudent investments, regardless of when they were first put in a plan. Doc. 69 at 18–19, 28, 39–40. In finding the "lock in" claim timely, *Henderson* specifically references *Tibble*. Order at 18–19. Accordingly, Plaintiffs submit that *Henderson* is more persuasive on this point.

Finally, while the courts in both *Henderson* and *Clark* found that the plans' mutual funds were exempt from "party in interest" status for purposes of prohibited transaction Count VI

(*Henderson* at 22–23, *Clark* at 4), Yale admitted that the Plan's mutual funds do not qualify for that exemption, informing the Department of Labor that each of the Plan's mutual funds managed by TIAA and Vanguard is a "party-in-interest." Doc. 69 at 45 (citing Doc. 69-4); Doc. 69-4 at 2–6, 8–11, 13–16, 18–21, 23–26. While those statements are not considered for their truth at the pleading stage, the very fact that Yale repeatedly made such a statement to DOL shows that it is at least plausible that these mutual funds do not qualify for the exemption under 29 U.S.C. §1002(21)(B).

Plaintiffs respectfully request that the Court consider *Henderson* and *Clark*.

May 17, 2017                                          Respectfully submitted,

                                                                   By: /s/ Jerome J. Schlichter
                                                                   Jerome J. Schlichter (phv01476)
                                                                   SCHLICHTER BOGARD & DENTON, LLP
                                                                   Michael A. Wolff (phv08418)
                                                                   Sean E. Soyars (phv08419)
                                                                   100 South Fourth Street, Suite 1200
                                                                   St. Louis, Missouri 63102
                                                                   Telephone: (314) 621-6115
                                                                   Facsimile: (314) 621-5934
                                                                   jschlichter@uselaws.com
                                                                   mwolff@uselaws.com
                                                                   ssoyars@uselaws.com

                                                                   Stuart M. Katz (ct12088)
                                                                   Cohen and Wolf, P.C.
                                                                   1115 Broad Street
                                                                   Bridgeport, CT 06604
                                                                   Telephone: (203) 368-0211
                                                                   Facsimile: (203) 337-5505
                                                                   skatz@cohenandwolf.com

                                                               *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 17, 2017, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

                                            By: /s/ Jerome J. Schlichter
                                                   Jerome J. Schlichter