IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>YALE UNIVERSITY *et al.*,<br><br>      *Defendants*. | No. 3:16-cv-01345-AWT<br><br>Hon. Alvin W. Thompson |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL
BRIEF REGARDING ADDITIONAL AUTHORITY [DOC. 86]**

  The decision in *White v. Chevron Corp*. (*Chevron II*), No. 16-793, Doc. 63 (N.D. Cal. May 31, 2017), *appeal docketed*, No. 17-16208 (9th Cir. June 9, 2017),[1] is not a "supplemental" authority. Yale's motion to dismiss already heavily relied upon the same court's order regarding the first complaint in that case. *See* Doc. 62-1 at 23, 26, 29 n.40, pp. 30, 36 n.47, pp. 43, 46;[2] Doc. 73 at 6 n.1, p. 12 (citing *White v. Chevron Corp. (Chevron I)*, No. 16-793, 2016 U.S. Dist. LEXIS 115875 (N.D. Cal. Aug. 29, 2016)). The second order, which addressed an amended complaint, mostly readopts the first order. *Chevron II*, Order at 10 (treating opposition as a "motion for reconsideration"); *id*. at 18, 19, 20, 23, 25, 37 (relying on reasons stated in "August 29, 2016 order" or "prior order"). Thus, *Chevron II* offers nothing new for this Court to consider. It is unpersuasive and factually distinguishable for the same reasons as the first decision. *See* Doc. 69 at 27, 28 n.15, p. 37 n.24, p. 41 n.27.

  Yale argues *Chevron II* is relevant because the court dismissed claims due to a lack of allegations regarding the fiduciary's process for selecting investments, including a claim based on the use of higher-cost retail-class mutual funds instead of available institutional-class shares.

---

[1] A copy of the *Chevron II* order was attached to Yale's supplemental brief. *See* Doc. 86-1.
[2] "Doc." page citations refer to the page numbers shown on the ECF header.

Doc. 86 at 1–3. The court adhered to its prior ruling that using the higher-cost shares did not raise an inference of imprudence, because "fiduciaries have latitude to value investment features other than price," and "ERISA does not require fiduciaries to 'scour the market to find and offer the cheapest possible funds.'" *Chevron II*, Order at 20:13–21, 25:26–26:2 (quoting *Chevron I*, 2016 U.S. Dist. LEXIS 115875, at *31–32). That reasoning is unpersuasive for several reasons.

*First*, by merely readopting its prior order, the court failed to acknowledge the intervening decision in *Tibble v. Edison International (Tibble IV)*, 843 F.3d 1187 (9th Cir. 2016), in which the *en banc* Ninth Circuit, on remand from the Supreme Court, analyzed the issue of mutual fund share classes at length and unanimously held that fiduciaries have a duty to minimize costs and to avoid wasting participants' money on unnecessary retail fees. *Id.* at 1197–98.

*Second*, the court's discussion of "investment features other than price" overlooks that the different share classes of a given mutual fund *have no different features* other than price. *See* Doc. 69 at 28 (citing *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015));[3] *id*. at 33 n.20 (Yale informed participants that "[t]here is no difference" between share classes other than lower expenses). That is precisely *why* courts have readily concluded that when a large plan with the bargaining power to obtain available lower-cost shares fails to do so, it is at least plausible that the fiduciary's process for selecting the funds was flawed. Doc. 69 at 10 n.2, pp. 24–25, 28–31.

*Third*, it is unnecessary to "scour the market" to find a lower-cost share class of a mutual fund. *See* Doc. 69 at 28 & n.15. With even a minimal investigation, the available share classes of

---

[3] *See also Tibble IV*, 843 F.3d at 1198 (institutional-class shares "are substantially identical—*other than their lower cost*—to" retail-class shares)(emphasis added); *Tibble v. Edison Int'l*, No. 07-5359, 2010 U.S. Dist. LEXIS 69119, at *53 n.14 (C.D. Cal. July 8, 2010)(finding fiduciaries liable for "imprudent decision to invest in *more expensive, but otherwise identical*, retail share classes when cheaper institutional share classes were available.") (emphasis added), *aff'd*, 729 F.3d 1110, 1137 (9th Cir. 2013)("[C]rucially … there were no salient differences in the investment quality or management."), *vacated on other grounds*, 135 S. Ct. 1823 (2015).

a given fund would be readily apparent to an investment professional. *Id*. at 28–29. Under Second Circuit law, the failure to use such a readily available, superior alternative raises a plausible inference of a flawed process. *Id*. at 16–17 (citing *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Co*., 712 F.3d 705, 719 (2d Cir. 2013) (complaint sufficient if it alleges "that a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative.")).[4]

*Fourth*, the *Chevron* court relied on facts that are not present here. Within the first two years of the class period, 10 of the 13 retail share classes at issue were removed and the use of revenue sharing to pay for recordkeeping was replaced with a flat, $23 per-participant fee, and the remaining three retail funds were removed by the end of the class period. *Chevron II*, Order at 13:9–11, 25:2–5, 30:7–11; *Chevron I*, 2016 U.S.Dist. LEXIS 115875, at *26, 34; *Chevron* Am. Compl., Doc. 41 ¶¶79–85, 123. Here, Yale has included a total of 74 retail share class funds in the Plan since 2010, including 40 that remained in the Plan for at least three years of the class period, over 30 for at least four years, and a number that still have not been removed, well over six years into the class period. Doc. 69 at 9, 25, 32–34 & n.21. As a result of Yale retaining higher-cost share classes which pay more in revenue sharing to the Plan's recordkeepers, the Plan continued to pay excessive recordkeeping fees of up to $300 per participant per year—an amount over eight times higher than the reasonable market rate. *Id*. at 12, 35–36.

In sum, *Chevron II* does not support Yale's arguments for dismissal.

---

[4] That flawed process includes a plausible failure of prudence *or* loyalty. *See* Doc. 69 at 25–27. The disloyalty claim in *Chevron* was based in part on allegations that the company favored the recordkeeper because of its policy of "voting securities in favor of management positions." *Chevron II*, Order at 14:18–27, 23:10–13. Plaintiffs here do not rely on such a policy.

July 28, 2017                               Respectfully submitted,

           By: /s/ Jerome J. Schlichter
           Jerome J. Schlichter (phv01476)
           SCHLICHTER BOGARD & DENTON, LLP
           Michael A. Wolff (phv08418)
           Sean E. Soyars (phv08419)
           100 South Fourth Street, Suite 1200
           St. Louis, Missouri 63102
           Telephone: (314) 621-6115
           Facsimile: (314) 621-5934
           jschlichter@uselaws.com
           mwolff@uselaws.com
           ssoyars@uselaws.com

           Stuart M. Katz (ct12088)
           Cohen and Wolf, P.C.
           1115 Broad Street
           Bridgeport, CT 06604
           Telephone: (203) 368-0211
           Facsimile: (203) 337-5505
           skatz@cohenandwolf.com

           *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2017, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

              By: /s/ Jerome J. Schlichter
               Jerome J. Schlichter