**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH VELLALI, NANCY S. LOWERS, JAN M. TASCHNER, AND JAMES MANCINI, individually and as representatives of a class of participants and beneficiaries on behalf of the Yale University Retirement Account Plan, | |
| *Plaintiffs*, | No. 3:16-cv-01345-AWT |
| v. | Hon. Alvin W. Thompson |
| YALE UNIVERSITY, MICHAEL A. PEEL, AND THE RETIREMENT PLAN FIDUCIARY COMMITTEE, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

# CONTENTS

Introduction ........................................................................................................ 1

Background ......................................................................................................... 3

    I.   Parties and the Plan. ......................................................................... 3

    II.  Plaintiffs' claims............................................................................... 5

    III. The proposed class definition ......................................................... 6

Argument ........................................................................................................... 6

    I.   Plaintiffs meet the requirements of Rule 23(a) ............................... 7

        A.  Numerosity ............................................................................. 7

        B.  Commonality........................................................................... 7

        C.  Typicality ............................................................................. 11

        D.  Adequacy .............................................................................. 14

    II.  Plaintiffs meet the requirements of Rule 23(b) ............................. 18

        A.  The class should be certified under Rule 23(b)(1) ................... 18

        B.  In the alternative, the class should be certified under Rule 23(b)(3)..... 21

Conclusion ....................................................................................................... 25

# AUTHORITIES

## Cases

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................ 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................. 14, 19, 23

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
133 S. Ct. 1184 (2013)................................................................................................ 7

*Baffa v. Donaldson*,
222 F.3d 52 (2d Cir. 2000) ............................................................................... 15, 16

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009).................................................................................... 9

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) .................................................................................. 22

*Caridad v. Metro-N. Commuter R.R.*,
191 F.3d 283 (2d Cir. 1999) .................................................................................. 11

*Cassell v. Vanderbilt Univ.*,
No. 16-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018)................................ 12

*Clark v. Duke Univ.*,
No. 16-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .................................. 13

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) ................................................................................ 2, 6

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ...................................................................................... 7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .................................................................................... 22

*Crabill v. Trans Union, L.L.C.*,
259 F.3d 662 (7th Cir.2001)................................................................................... 24

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .................................................................................. 14

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) .................................................................................. 1

*Gen Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................................... 8

*Henderson v. Emory Univ.*,
    No. 16-2920, 2018 WL 6332343 (N.D. Ga. Sep. 13, 2018)................................... 13

*In re Beacon Assocs. Litig.*,
    282 F.R.D. 315 (S.D.N.Y. 2012)................................................................... 2, 7, 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ......................................................................... 11, 14, 15

*In re Northrop Grumman Corp. ERISA Litig.*,
    No. 06-6213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ................................. 18

*In re Omnicom Grp., Inc. Sec. Litig.*,
    No. 02-4483, 2007 U.S.Dist.LEXIS 31963 (S.D.N.Y. Apr. 30, 2007) .................... 8

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017) ................................................................................ 6

*In re Prudential Sec. Inc. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995)............................................................................ 8

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ........................................................................ 2, 8, 18

*In re US FoodServ. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ................................................................................. 7

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008)................................................................... 12, 18

*Katsaros v. Cody*,
    744 F.2d 270 (2d Cir. 1984) ........................................................................... 1, 13

*Krueger v. Ameriprise Fin., Inc.*,
    304 F.R.D. 559 (D.Minn. 2014) ......................................... 10, 11, 12, 15, 18, 20, 21

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Council of
    Suffolk, Inc.*,
    710 F.3d 57 (2d Cir. 2013) .................................................................................. 1

*La Scala v. Scrufari,*
    479 F.3d 213 (2d Cir. 2007) ................................................................. 1

*LaRue v. DeWolff, Boberg & Assocs.,*
    552 U.S. 248 (2008) ........................................................................... 1

*Leber v. Citigroup 401(k) Plan Inv. Comm.,*
    323 F.R.D. 145 (S.D.N.Y. 2017), *petition for permission to appeal*
    *denied*, No. 17-3978 (2d Cir. Feb. 13, 2018)............................. 2, 7, 9, 10, 11, 18, 21

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir. 1997)................................................................. 24

*Mass Mut. Lif. Ins. Co. v. Russell,*
    473 U.S. 134 (1985)............................................................................ 6

*Moreno v. Deutsche Bank Ams. Holding Corp.,*
    No. 15-9936, 2017 WL 3868803 (S.D.N.Y Sept. 5, 2017), *petition for*
    *permission to appeal denied*, No. 17-2911 (2d Cir. Sept. 19, 2017) . 2, 10, 15, 18, 21

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,*
    No. 08-5310, 2016 U.S.Dist.LEXIS 153804 (S.D.N.Y. Nov. 4, 2016) ................... 15

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999)........................................................................... 21

*Piazza v. EBSCO Indus. Inc.,*
    273 F.3d 1341 (11th Cir. 2001)................................................... 12, 20, 21

*Roach v. T.L. Cannon Corp.,*
    778 F.3d 401 (2d Cir. 2015) ................................................................. 6

*Robertson v. Nat'l Basketball Ass'n,*
    556 F.2d 682 (2d Cir. 1977) ............................................................... 21

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993) ............................................................... 11

*Sacerdote v. N.Y. Univ.,*
    No. 16-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018).. 2, 8, 9, 10, 12, 15, 16, 18, 19, 21

*SAS Inst., Inc. v. Iancu,*
    138 S. Ct. 1348 (2018)......................................................................... 1

*Stanford v. Foamex L.P.,*
    263 F.R.D. 156 (E.D. Pa. 2009) .......................................................... 20

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966) ................................................................................. 15

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ....................................................................... 23

*Tatum v. R.J. Reynolds Tobacco Co.*,
254 F.R.D. 59 (M.D.N.C. 2008) ....................................................... 18, 21

*Taylor v. United Techs. Corp.*, No. 3:06CV1494(WWE), 2008 WL
2333120 (D. Conn. June 3, 2008) ......................................................... 2, 18

*Tibble v. Edison Int'l*,
135 S. Ct. 1823 (2015) ....................................................... 10, 13, 17, 24

*Tibble v. Edison Int'l*,
No. 07-5359, 2009 WL 6764541 (C.D. Cal. June 30, 2009) ............... 10, 20

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013) .................................................................. 10

*Tracey v. MIT*,
No. 16-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) ................... 12

*Tussey v. ABB Inc.*,
850 F.3d 951 (8th Cir. 2017) .................................................................... 20

*Tussey v. ABB Inc.*,
No. 06-4305, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ...................... 18

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) .................................................................... 13

*Tussey v. ABB, Inc.*,
No. 06-4305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) ................... 20

*Tussey v. ABB, Inc.*,
No. 06-4305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ................... 17

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S.Ct. 1036 (2016) .............................................................................. 22

*Wal-Mart Stores, Inc., v. Dukes*,
564 U.S. 338 (2011) ......................................................................... 8, 9, 13

**Statutes**

29 U.S.C. §1002(34) ............................................................................................. 3

29 U.S.C. §1102(a) .............................................................................................. 4

29 U.S.C. §1104(a)(1) ...................................................................................... 9, 19

29 U.S.C. §1104(a)(1)(B) ..................................................................................... 5

29 U.S.C. §1106(a)(1) .......................................................................................... 5

29 U.S.C. §1109(a) ........................................................................................... 1, 6

29 U.S.C. §1132(a)(2) ....................................................................................... 1, 6

**Rules**

Fed.Civ.P. 23(g) ................................................................................................ 16

Fed.R.Civ.P. 23 ............................................................................................. 6, 21

Fed.R.Civ.P. 23(a)(1) .......................................................................................... 7

Fed.R.Civ.P. 23(a)(2) .......................................................................................... 7

Fed.R.Civ.P. 23(a)(3) ........................................................................................ 11

Fed.R.Civ.P. 23(a)(4) ........................................................................................ 14

Fed.R.Civ.P. 23(b)(1) ........................................................................................ 19

Fed.R.Civ.P. 23(b)(1)(B) ................................................................................... 21

Fed.R.Civ.P. 23(b)(3) .................................................................................... 22, 23

## INTRODUCTION

As fiduciaries of the Yale University Retirement Account Plan ("Plan"), Yale University and its co-defendants are subject to ERISA's prudent person standard, which is "the highest duty known to the law." *La Scala v. Scrufari*, 479 F.3d 213, 219–21 (2d Cir. 2007) (citing *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) and *Donovan v. Bierwirth*, 680 F.2d 263, 271–72 & n.8 (2d Cir. 1982)).

Plaintiffs' claims in this action—which arise from Defendants' plan-level conduct regarding the Plan's fees and investments—assert that Yale breached ERISA's strict fiduciary standard, resulting in millions of dollars in Plan losses due to excessive fees and underperformance. As participants in the Plan, Plaintiffs have an express statutory right to bring an action on behalf of the Plan to recover "*any* losses to the plan resulting from *each*" of Defendants' breaches of fiduciary duties. 29 U.S.C. §1109(a)(emphases added), §1132(a)(2). "On their face," these provisions "permit recovery of *all* plan losses caused by a fiduciary breach." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) (emphasis in original); *see also SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353–54 (2018) (the word "any" in federal statute "naturally carries 'an expansive meaning'" and usually means "every" or "all").

The Second Circuit recognizes that a §1132(a)(2) action is inherently a representative action on behalf of a plan. *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Council of Suffolk, Inc.*, 710 F.3d 57, 65–66 (2d Cir. 2013). Accordingly, in a case such as this seeking plan-wide relief, the Second Circuit requires plaintiffs

1

to "employ procedures to protect effectively the interests" of the other plan participants, usually through class certification under Rule 23. *Coan v. Kaufman*, 457 F.3d 250, 259–62 (2d Cir. 2006).

Because of the derivative nature of such actions, involving plan-wide conduct and remedies for the benefit of the plan as a whole, courts in similar cases have consistently held that "ERISA actions alleging breach of fiduciary duty affecting a large class of beneficiaries 'presents a paradigmatic example'" of claims appropriate for class certification under Rule 23(b)(1). *Taylor v. United Techs. Corp.*, No. 3:06CV1494(WWE), 2008 WL 2333120, *6 (D. Conn. June 3, 2008); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (citing cases); *Sacerdote v. N.Y. Univ.*, No. 16-6284, 2018 WL 840364, *6 (S.D.N.Y. Feb. 13, 2018) (granting Rule 23(b)(1) certification); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 165 (S.D.N.Y. 2017) (same), *petition for permission to appeal denied*, No. 17-3978 (2d Cir. Feb. 13, 2018); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-9936, 2017 WL 3868803, *8–10 (S.D.N.Y Sept. 5, 2017)(same), *petition for permission to appeal denied*, No. 17-2911 (2d Cir. Sept. 19, 2017); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012).

This case is no exception. Plaintiffs are pursuing these claims on behalf of their Plan to obtain remedies due their Plan. The Plan's injuries, and hence the losses to participants' individual accounts, resulted from the same course of plan-level conduct. All participants share a common interest in establishing Defendants' liability and obtaining a remedy for the Plan. The evidence needed to establish

Defendants' liability and the Plan's losses is exclusively common proof. For these reasons, and as explained further below, the Court should certify this action as a class action under Rule 23(b)(1).

## BACKGROUND

### I.   Parties and the Plan.

The Plan is an ERISA-governed, individual account, defined contribution plan under 29 U.S.C. §1002(34). Am. Compl. (AC) ¶9 (Doc. 57);[1] Answer ¶9 (Doc. 117). The Plan provides retirement income benefits to eligible employees of Yale University and their beneficiaries. Ex. 1 at 1 (Plan document, Article 1.1).[2] Each of the four named Plaintiffs is a current or former Yale employee and a participant in the Plan. AC ¶¶13–16; Answer ¶¶13–16; Vellali Declaration, ¶1; Lowers Declaration, ¶1; Mancini Declaration, ¶1; Taschner Declaration, ¶1.

Throughout the proposed class period (since August 9, 2010), the Plan has had at least 14,000 participants, and approximately 18,000 participants as of year-end 2017. AC ¶12; Exhibits 2–9 (Forms 5500, 2010 through 2017, Page 2, Line 6g of each). In terms of asset size, the Plan is among the largest 0.02% of defined contribution plans in the United States, with over $4.8 billion as of year-end 2017. AC ¶¶3, 12; Ex. 9, Schedule H, lines 1(l) and 4(i).

---

[1] Plaintiffs have filed a motion for leave to file a second amended complaint, which would add certain members of the Defendant Retirement Plan Fiduciary Committee as defendants but no new claims. Because the proposed amendment does not change the substance of Plaintiffs' claims, the resolution of that motion does not affect class certification.

[2] All cited exhibits are attached to the Declaration of Sean E. Soyars filed herewith.

Yale University is the Plan's Administrator and "named fiduciary" with authority to control and manage the operation and administration of the Plan. Ex. 1 at 48–49 (Articles 12.1–12.3); AC ¶18; *see* 29 U.S.C. §1102(a). Yale administers the Plan through its Vice President for Human Resources and Administration, which was Defendant Michael A. Peel until 2017. Ex. 1 at 48 (Article 12.2); Answer ¶21. In accordance with his authority under the Plan, Defendant Peel established the Fiduciary Committee on Investments,[3] which is responsible for selecting, monitoring, and removing the Plan's investment options. Ex. 1 at 49–50 (Article 12.4); Answer ¶22. Thus, the defendants collectively were responsible for determining the available investment options in which participants can invest, hiring the Plan's administrative service providers, and negotiating their compensation. *See* Ex. 1 at 48–50 (Articles 12.1–12.4); AC ¶¶18–23, 34, 41. Because Plaintiffs' claims concern Plan-level decisions made by the Defendants collectively and individual defendant liability does not affect class certification, Plaintiffs refer to the defendants collectively as "Yale" or "Defendants."

During the class period, the Plan has had over 100 investment options, including mutual funds managed by Vanguard and mutual funds and annuities managed by TIAA. AC ¶¶102, 105–110; Answer ¶¶102, 105–110; Doc. 62-6 at 5–21.[4] The same menu of options was provided to all Plan participants. *See id.*; Doc. 62-5

---

[3] The amended complaint refers to this committee as the Retirement Plan Fiduciary Committee. *See* Answer at 1 & n.1.

[4] Previously filed documents are cited as "Doc. ___." Page citations for such documents are to the numbers at the top of the page appended by the ECF system.

4

at 8, 30–31 (Summary Plan Description). The returns of each investment option are reduced by the fund's "expense ratio." *See, e.g.*, 62-5 at 31; Doc. 62-6 at 3, 5–20. Each participant's account is based on the value of contributions and investment earnings, less expenses. Ex 1 at 2 (Art. 2.1); Ex. 5 (Note 1 to Financial Statements at 6); 29 U.S.C. §1002(34). The Plan's recordkeepers are paid primarily through asset-based revenue sharing paid out of the expense ratio of the Plan's investment options. Doc. 62-6 at 3; Exhibits 2–9 (Schedule C of each, showing "Indirect Compensation"); Answer ¶129. Yale acknowledges that these administrative expenses "are allocated to each participant in a uniform way." Doc. 62-6 at 3.

## II.   Plaintiffs' claims

On March 30, 2018, the Court granted and denied in part the Defendants' motion to dismiss. Doc. 113 at 40. Plaintiffs' remaining claims concern the Plan's administrative fees and investment options. Count III asserts that Defendants breached their duty of prudence under 29 U.S.C. §1104(a)(1)(B) by failing to monitor and control the Plan's administrative and recordkeeping fees (AC ¶¶122–38, 222–30), while Counts I and V assert that Defendants breached their duty of prudence by providing imprudent investment options which charged excessive fees and underperformed prudent alternatives (*id.* ¶¶111–21, 139–49, 167–201, 207–14, 237–50). Counts II, IV, and VI assert that substantially the same conduct caused the Plan to engage in prohibited transactions with a party in interest in violation of 29 U.S.C. §1106(a)(1). AC ¶¶215–21, 231–36, 251–56. Count VII alleges that Yale

5

and Defendant Peel failed to monitor the Committee to ensure that it prudently discharged its investment-related duties. AC ¶¶257–64.

## III.  The proposed class definition

As noted, ERISA authorizes any plan participant to bring an action on behalf of a plan to enforce ERISA's fiduciary duties and to recover all losses to a plan caused by a breach of fiduciary duty. 29 U.S.C. §§1132(a)(2), 1109(a). Plaintiffs bring this action "in a representative capacity on behalf of the plan" as a whole to recover losses to their Plan caused by Defendants' breaches, and to obtain equitable remedies. *Coan*, 457 F.3d at 257 (quoting *Mass Mut. Lif. Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)); AC ¶¶1, 5. Plaintiffs seek to represent and to certify the following class:

> All participants and beneficiaries of the Yale University Retirement Account Plan from August 9, 2010, through the date of judgment, excluding the Defendants.

AC ¶203.

## ARGUMENT

To obtain class certification, a proposed class must meet the four requirements of Rule 23(a) and one of the requirements of Rule 23(b). Fed.R.Civ.P. 23; *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).[5] Although courts must conduct

---

[5] Implicit in Rule 23 is a "modest threshold requirement" of ascertainability, which asks if the "proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017). Here, the class is indisputably defined using objective criteria: status as a participant or beneficiary of the Plan during the proposed class period. AC ¶203.

a "rigorous" analysis to ensure that these requirements are met, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466.

## I.   **Plaintiffs meet the requirements of Rule 23(a)**

Rule 23(a) requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *In re US FoodServ. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). The proposed class satisfies these requirements.

### A.   **Numerosity**

"[T]he class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "In this Circuit, numerosity is 'presumed at a level of 40 members.'" *Leber*, 323 F.R.D. at 159; (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). When a proposed class has "thousands of members," joinder "would obviously be impracticable." *In re Beacon*, 282 F.R.D. at 339.

Here, the Plan had at least 14,000 participants throughout the proposed class period, and over 18,000 participants as of year-end 2017. Answer ¶12; Exhibits 2–9, p.2, Line 6(g) of each. Joinder is unquestionably impracticable.

### B.   **Commonality**

"[T]here are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen*

*Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Those requirements [ ] also tend to merge with the adequacy-of-representation requirement …." *Id.*

Commonality involves "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)(internal quotations omitted). Commonality is satisfied when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[E]ven a single common question will do." *Id.* at 359 (quotation, citation, and editing marks omitted). The commonality test is "generally considered a 'low hurdle' easily surmounted." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-4483, 2007 WL 1300781, *3  (S.D.N.Y. Apr. 30, 2007) (quoting *In re Prudential Sec. Inc. P'ships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995)).

Because an ERISA fiduciary breach action is an action on behalf of a plan regarding duties owed at the plan level, "commonality is quite likely to be satisfied." *Schering*, 589 F.3d at 599 n.11. "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries." *Sacerdote*, 2018 WL 840364, *3 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004); *see also Taylor*, 2008 WL 2333120, at *3 (noting in similar ERISA fiduciary breach case that it was undisputed "that common questions of fact and law are at the core of this action.").

Here, Defendants owed duties to the *Plan* and made decisions at the Plan level affecting the Plan as a whole, and hence, all participants. *See* 29 U.S.C. §1104(a)(1)("a fiduciary shall discharge his duties with respect to *a plan*") (emphasis added). The same menu of options, the same fee structures, and the same fiduciary actions and omissions applied to *all* participants. *See, e.g.*, Doc. 62-5 at 30–31; Doc. 62-6 at 3, 5–21. Therefore, each element of Plaintiffs' claims—whether "the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)—involves common questions rather than individualized questions.

Accordingly, there are "numerous" common questions upon which all class members' claims depend, including: (1) whether Defendants are fiduciaries; (2) whether Defendants breached their fiduciary duties in each respect alleged by Plaintiffs; (3) whether the Plan suffered resulting losses; (4) how to calculate the Plan's losses; and (5) what equitable relief should be imposed to remedy such breaches and to prevent future ERISA violations. *Sacerdote*, 2018 WL 840364, *3. These "core questions … are common to all participants." *Id*. The evidence needed to answer these contentions are Plan-level facts, and thus the same for all the Plan's participants. *Id*. ("the discovery at issue in this case will 'generate common <u>answers</u> apt to drive the resolution of the litigation'")(quoting *Wal-Mart*, 564 U.S. at 350). If the evidence shows that Defendants "failed to monitor [plan] investments" or fees, "it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber*, 323 F.R.D. at 160.

9

These answers do not depend on particular circumstances of any one participant. That is because, in ERISA fiduciary breach actions, Defendants' "centralized administration of [the Plans] is common to all class members," *Sacerdote*, 2018 WL 840364, *3, and because "[l]iability is determined based on Defendants' not Plaintiffs' decisions," *Moreno*, 2017 WL 3868803, *5 (citation omitted). Thus, as numerous federal courts in similar cases have recognized, the questions of law and fact in this action are common to each class member:

> [T]he questions of whether Defendants breached their fiduciary duties by causing the Plan to select imprudent investment options or pay excessive record-keeping fees, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims and, therefore, will generate answers common to all of the putative class members.

*Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014); *Sacerdote*, 2018 WL 840364, *3 (finding "commonality must be satisfied" "because the fiduciaries allegedly owed and breached duties to the Plans—not to individuals"); *Moreno*, 2017 WL 3868803, *5 (finding commonality because claims regarding allegedly imprudent funds and excessive recordkeeping fees involved common questions to "be resolved with respect to the Plan as a whole"); *Leber*, 323 F.R.D. at 160 (finding commonality where common questions include "whether defendants failed to prudently and loyally monitor the Plan's investments"); *Tibble v. Edison Int'l*, No. 07-5359, 2009 WL 6764541, *3 (C.D. Cal. June 30, 2009), *aff'd*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015) (finding numerous common questions).

In sum, because Defendants owed identical fiduciary duties to all members of the class and made decisions at the Plan level as to the Plan as a whole, commonality is satisfied.

## C.   Typicality

The "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality is satisfied if "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Accordingly, "when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37. Indeed, the typicality element "does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). Thus, in the ERISA context, typicality does not require that all of the Plan's participants invested in the same funds at the same times. *Leber*, 323 F.R.D. at 162–63; *Krueger*, 304 F.R.D. at 573.

Because a §1132(a)(2) claim is inherently a representative claim, any participant's claim is necessarily typical of the claims of the class, since any participant is asserting *the Plan's* claim. For these reasons, courts routinely find

11

any participant's fiduciary breach claims to be typical of the claims of all participants in the plan. *Piazza v. EBSCO Indus.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (finding typicality because ERISA fiduciary breach claims on behalf of a plan "arise from precisely the same practice and the legal issues are identical"); *Krueger*, 304 F.R.D. at 573 (finding typicality satisfied for claims "alleging breaches of fiduciary duties Defendants owed to the Plan," because named plaintiffs and class members were "seeking redress of similar grievances under the same legal and remedial theories"); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) ("In light of the representative nature of a suit filed pursuant to [§1132](a)(2) … Plaintiffs' claims are sufficiently typical of those of other class members").

In a similar ERISA case in this district involving allegedly excessive administrative fees, the Court found typicality satisfied because "defendants' alleged acts to cause or allow excessive fees to be charged to the Plans as a whole affects all of the Plan participants[.]" *Taylor*, 2008 WL 2333120, *4. Courts addressing similar ERISA fiduciary breach allegations involving university plans have found typicality satisfied because each class member's claim arises from the same conduct, "is subject to the same proof," and "will not turn on any individual class member's circumstance." *Sacerdote*, 2018 WL 840364, *3; *Tracey v. MIT*, No. 16-11620, 2018 WL 5114167, *4 (D. Mass. Oct. 19, 2018) (following *Sacerdote*); *Cassell v. Vanderbilt Univ.*, No. 16-2086, 2018 WL 5264640, *5 (M.D. Tenn. Oct. 23, 2018) ("[T]he named Plaintiffs' claims arise from the same alleged misconduct by Defendants as the potential class members and are based upon the same legal

theories concerning alleged breaches of fiduciary duties and possible prohibited transactions."); *Henderson v. Emory Univ.*, No. 16-2920, 2018 WL 6332343, *6 (N.D. Ga. Sep. 13, 2018) ("The class members' claims are based on the same events and legal theories—breach of fiduciary duty in managing and monitoring the Plans. Proof of the defendants' alleged misconduct and the alleged harm would be the same for each class member rather than turning on individual circumstances."); *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, *5 (M.D.N.C. Apr. 13, 2018) ("[E]ach named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's recordkeepers and investments. The same is true of the remedial theory[.]") (citation omitted). The same reasoning applies here.

Given that the commonality and typicality requirements "tend to merge," Plaintiffs' claims are typical for many of the same reasons that there are overwhelmingly common issues of fact and law. *Dukes*, 564 U.S. at 349 n.5. Because Defendants' actions were directed to and affected the Plan as a whole, the claims of Plaintiffs and class members all arise from the same events and course of conduct— Defendants' failures to prudently monitor and control the Plan's recordkeeping fees, and to monitor the Plan's investment options on an ongoing basis and remove imprudent ones. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014); *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015); *Katsaros*, 744 F.2d at 279. The Plaintiffs and all class members are bringing the same claims under the same legal

and remedial theory: enforcement through §1132(a)(2) of Defendants' obligations under §1109(a) to make good to the Plan the losses caused by Defendants' breaches of duty and to obtain appropriate equitable relief. Accordingly, typicality is satisfied.

### D.   Adequacy

The final prong of Rule 23(a) asks whether Plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement ensures that there are no potential "conflicts of interests between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Adequacy looks at both the adequacy of the class representatives and the adequacy of the class counsel. The class representatives "must have an interest in vigorously pursuing the claims of the class," with no "fundamental" conflicts of interest that would render them antagonistic to the class. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). In addition, class counsel must be "qualified, experienced, and able to conduct the litigation." *In re Flag Telecom Holdings*, 574 F.3d at 34 (internal quotations omitted). Here, both requirements are met.

### 1.   Plaintiffs have no conflicts with other class members and will vigorously prosecute this action on behalf of the class

Plaintiffs' interests are aligned with the class members' interests because they are all acting on behalf of the Plan in seeking to enforce the fiduciary duties that Defendants owed to the Plan and to recover damages and equitable relief that are due to the Plan. *See* 29 U.S.C. §1109(a); *Russell*, 473 U.S. at 142 n.9.

14

Because Plaintiffs are pursuing claims on behalf of the Plan, not individual claims, there are no conflicts between Plaintiffs' individual interests and the interests of the class. *Krueger*, 304 F.R.D. at 574–75.[6] To the contrary, the Plaintiffs and class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. Thus, the named Plaintiffs "have identical legal and effectively identical financial interests in this action as do the proposed class members." *Sacerdote*, 2018 WL 840364, *4.

Additionally, a class representative needs only a basic understanding of the claims and a willingness to participate in the case. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966); *see Baffa v. Donaldson*, 222 F.3d 52, 61 (2d Cir. 2000)("The Supreme Court in *Surowitz*[ ] expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance"). Thus, a representative need not have extensive knowledge of the law or facts underpinning the action to be adequate. In complex cases, "a great deal of reliance on expert counsel is to be expected." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08-5310, 2011 WL 3874821, *4 (S.D.N.Y. Nov. 4, 2016)(internal quotations omitted); *see Moreno*, 2017 WL 3868803, *7 ("The claims here involve technical financial decisions affecting billions of dollars in assets and Plan fiduciaries' compliance with the requirements of ERISA. It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may

---

[6] Mere hypothetical or minor conflicts among class members do not defeat class certification. "In order to defeat a motion for certification, [ ] the conflict must be fundamental." *Flag Telecom*, 574 F.3d at 35 (internal quotations omitted).

have had difficulty answering questions about the claims."). Thus, "if the plaintiff 'underst[ands] the nature of his proposed role in the litigation and demonstrated his willingness to carry it forward,' adequacy [is] satisfied." *Sacerdote*, 2018 WL 840364, \*4 (quoting *Baffa*, 222 F.3d at 61).

As set forth in their attached declarations, each of the named Plaintiffs understands the nature of their claims—"to recover the Plan's losses" from excessive fees and imprudent investment options in the Plan—and understands their duties to represent the class through the conclusion of this case. Vellali Declaration, ¶¶2–3, 5; Lowers Declaration, ¶¶2–3, 5; Mancini Declaration, ¶¶2–3, 5; Taschner Declaration, ¶¶2–3, 5. They have demonstrated their commitment to date by reviewing court documents sent to them by their attorneys, monitoring the progress of the action, and responding to discovery. Vellali Declaration, ¶¶3–4; Lowers Declaration, ¶¶3–4; Mancini Declaration, ¶¶3–4; Taschner Declaration, ¶¶3–4. Thus, Plaintiffs are adequate representatives.

### 2. Plaintiffs' counsel has no conflicts with the class, is qualified and experienced, and will vigorously prosecute this action on behalf of the class

Rule 23(g) provides factors for the Court to assess in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed.Civ.P. 23(g).

Plaintiffs' counsel—Schlichter Bogard & Denton LLP—has unparalleled experience in prosecuting ERISA fiduciary breach class actions and will fairly and adequately represent the interests of the class. Declaration of Jerome J. Schlichter, ¶¶2–28. The firm conducted a lengthy investigation of potential claims in this action. *Id.* ¶¶17–18. Plaintiffs' counsel is committed to devoting all necessary resources to representing the class and vigorously prosecuting this action, as it has done in many prior ERISA fiduciary breach actions. *Id.* ¶¶3–15. The firm's experience is shown by its appointment as class counsel in 29 large ERISA fiduciary breach class actions, where it obtained numerous multi-million dollar settlements and judgments on behalf of participants in defined contribution plans, as well as significant affirmative relief to benefit the plans' participants. *Id.* ¶¶6, 9–10. The firm was class counsel in *Tibble v. Edison, International*, 135 S. Ct. 1823 (2015)—the only defined contribution plan excessive fee case taken by the U.S. Supreme Court—in which the Court ruled unanimously that ERISA fiduciaries have an ongoing duty to monitor and remove imprudent plan participants, and which resulted in two trial judgments for plan participants. Schlichter Decl. ¶13. The firm is recognized as a "pioneer and the leader in the field" of defined contribution plan excessive fee litigation, *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, *1 (S.D. Ill. July 17, 2015), and "clearly experts in ERISA litigation," *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, *3 (W.D. Mo. Nov. 2, 2012). The Court should appoint Schlichter Bogard & Denton LLP as class counsel under Rule 23(g).

## II.     Plaintiffs meet the requirements of Rule 23(b)

Having satisfied all the requirements of Rule 23(a), Plaintiffs need only satisfy

one subsection of Rule 23(b). As noted, courts in similar ERISA fiduciary breach

cases have overwhelmingly granted certification under Rule 23(b)(1), because the

representative nature of ERISA fiduciary breach litigation "'presents a

paradigmatic example' for application of Rule 23(b)(1)." *Taylor*, 2008 WL 2333120,

\*6; *Schering*, 589 F.3d at 604 (collecting cases); *Sacerdote*, 2018 WL 840364, \*6;

*Leber*, 323 F.R.D at 165; *Moreno*, 2017 WL 3868803, \*9–10; *Krueger*, 304 F.R.D. at

575–78; *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2011 WL

3505264, \*15–18 (C.D. Cal. Mar. 29, 2011); *Kanawi*, 254 F.R.D. at 111; *Tatum v.

R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008); *Tussey v. ABB Inc.*,

No. 06-4305, 2007 WL 4289694, \*8 (W.D. Mo. Dec. 3, 2007).

In the alternative, if the Court were to somehow find Rule 23(b)(1) certification

inappropriate, Plaintiffs seek certification under Rule 23(b)(3) because Defendants'

actions and omissions on a Plan- and class-wide basis ensure that common

questions predominate over any individual issues, and resolving the Plan's claims

in a class-wide proceeding is vastly superior to individual adjudications.

### A.     The class should be certified under Rule 23(b)(1)

Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if … (1)
> prosecuting separate actions by or against individual class members
> would create a risk of:
> (A)    inconsistent or varying adjudications with respect to individual
>        class members that would establish incompatible standards of
>        conduct for the party opposing the class; or

18

      (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed.R.Civ.P. 23(b)(1). Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike … or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (citation omitted). "One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed.R.Civ.P.23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A). Defendants' fiduciary duties are owed to the Plan, and thus to all participants as a class. 29 U.S.C. §1104(a)(1). Defendants owed their fiduciary duties to *all* participants in the Plan, and hence to all class members. In discharging their duties to the Plan, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike.

    Allowing 18,000 individual class members to pursue this action on behalf of the Plan could result in varying adjudications over whether Defendants breached their duties as alleged, whether Defendants are liable for these actions, and how to measure damages to the Plan and other relief. *Sacerdote*, 2018 WL 840364, *6. As to the administrative and recordkeeping fees claim, the fact-finder will have to determine the Plan's losses by deciding—with the assistance of expert testimony—how much the recordkeepers were paid, whether the services of all recordkeepers

19

were necessary, and whether the fees were reasonable. For the imprudent investment options, the fact-finder will determine whether Defendants conducted a prudent and thorough investigation of Plan investments on an ongoing basis, whether the funds and options were prudent and reasonably priced, and the proper benchmark alternative to measure losses to the Plan. *See, e.g., Tussey v. ABB Inc.*, 850 F.3d 951, 959 (8th Cir. 2017) (where fiduciary breached its duty in replacing a fund with a fund that benefited the fiduciary and plan recordkeeper, the district court must measure the plans' resulting losses). Injunctive relief may be appropriate to require a removal of certain investment options or a bidding process regarding recordkeeping fees. *See, e.g., Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291, *39 (W.D. Mo. Mar. 31, 2012) (W.D. Mo. Mar. 31, 2012) (ordering breaching fiduciary to "utilize[] a competitive bidding process … to select a new recordkeeper"). Separate individual adjudications to resolve any one of these issues would create incompatible standards for Defendants in so far as losses or profits they must restore to the Plan under §1109(a), and what Defendants must do to the Plan's investment options and service providers. As numerous courts have recognized, these claims satisfy the requirements for certification under Rule 23(b)(1)(A). *Piazza*, 273 F.3d at 1352–53; *Sacerdote*, 2018 WL 840364, *6; *Krueger*, 304 F.R.D. at 576–77 (citing cases); *Tibble*, 2009 WL 6764541, *7–9; *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009).

Rule 23(b)(1)(B) asks whether one participant's action over these claims "as a practical matter, would be dispositive of the interests" of the other participants'

actions over the same claims because they concern the same actions, damages, and fiduciary duties owed to the Plan. Fed.R.Civ.P. 23(b)(1)(B). "[A]n action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is a typical Rule 23(b)(1)(B) action. Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Due to the trust-like nature of a defined contribution plan, with fiduciary duties owed to the *plan* and not to individual participants, many courts (including several in this Circuit) have found similar claims to be classic Rule 23(b)(1)(B) class actions. *E.g.*, *Sacerdote*, 2018 WL 840364, *6; *Leber*, 323 F.R.D. at 165 & n.17 (collecting cases); *Moreno*, 2017 WL 3868803, *8–10 (collecting cases); *In re Beacon*, 282 F.R.D. at 342; *Krueger*, 304 F.R.D. at 577–78; *Tatum*, 254 F.R.D. at 67.

Even if absent participants were not barred by res judicata from litigating the same claims on behalf of the Plan, as a "practical matter" a prior adjudication of whether the fiduciaries breached their duties to the Plan would influence a subsequent court's adjudication of the same claims. Thus, Plaintiffs satisfy both Rule 23(b)(1)(A) and (b)(1)(B).

## B. In the alternative, the class should be certified under Rule 23(b)(3).

When a class satisfies both Rule 23(b)(1) and Rule 23(b)(3), Rule 23(b)(1) controls. *Leber*, 323 F.R.D. at 165; *see Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977); *see also Piazza*, 273 F.3d at 1352 (abuse of discretion to

certify class for ERISA fiduciary breach claim under Rule 23(b)(3) rather than Rule 23(b)(1)). But if the Court were to reject certification under Rule 23(b)(1), certification is appropriate under Rule 23(b)(3) because common questions of law or fact predominate and a class action is the superior method of adjudicating the claims. Fed.R.Civ.P. 23(b)(3).

Rule 23(b)(3)'s requirement that common issues of law or fact predominate is closely related to the Rule 23(a)(2) "commonality" requirement. This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Common issues predominate "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).

Here, for the same reasons that commonality is satisfied, there are myriad issues of law and fact common to the members of the proposed class. The Plan's fiduciaries selected the investment options and contracted with service providers for the Plan as a whole; such decisions were not made by, or on behalf of, any individual participant. The evidence relevant to Plaintiffs' allegations involve Plan-level facts and are therefore the same for all participants. The common issues regarding Defendants' fiduciary breaches thus predominate in this case.

22

A class action is far "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The "superiority" requirement asks the Court to consider: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). Class certification is "superior" when the "class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem,* 521 U.S. at 615 (internal citations omitted).

As set forth above, litigation of 24,000 separate suits by individual participants is not feasible. The losses suffered by individual participants and beneficiaries are too small for individual members to enforce their rights through individual actions. No participants could economically pursue his individual claim on his own. Rule 23(b)(3) vindicates "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all …." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem*, 521 U.S. at 617); *see also id*. ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action prosecuting his or her rights.")(quotation omitted); *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 665 (7th Cir. 2001) ("the core function of [the class action] is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim"). Given the nature of the allegations seeking Plan-wide relief for the same Plan-level breaches of fiduciary duties, no class member has an interest in individually controlling the prosecution of this matter that seeks to recover losses on behalf of the Plan.

Moreover, the judicial process and the resources of the federal courts would be severely burdened if the Plan's participants pursued individual suits regarding the same conduct in potentially thousands of suits. Concentration of all litigation concerning the Plan's fiduciaries and their duties in one action would be more economical and ensure uniformity of decision. It would undeniably save the parties and the courts considerable resources and effort by resolving questions concerning the Plan's operation in a single litigation, rather than sorting out the disparate effects of many and possibly contradictory orders. Finally, because the common issues raised in this action predominate, the action will be manageable as a class action. Indeed, similar claims handled by Plaintiffs' counsel involving large 401(k) plans have proceeded to trial on a class-wide basis with no manageability issues. *See, e.g., Tibble*, 135 S. Ct. at 1826; *Tussey*, 746 F.3d at 336. Thus, Rule 23(b)(3) certification would also be proper.

24

## CONCLUSION

For these reasons, the Court should certify all of Plaintiffs' claims as a class action under Rule 23(b)(1), and appoint Joseph Vellali, Nancy S. Lowers, Jan M. Taschner, and James Mancini as class representatives. Under Rule 23(g), the Court should also appoint Schlichter, Bogard & Denton LLP as class counsel.

January 15, 2019                                     Respectfully submitted,

                                                     /s/ Jerome J. Schlichter
                                                     SCHLICHTER BOGARD & DENTON LLP
                                                     Jerome J. Schlichter (phv01476)
                                                     Heather Lea, (phv08416)
                                                     Sean E. Soyars (phv08419)
                                                     Joel D. Rohlf (phv09849)
                                                     100 South Fourth Street, Suite 1200
                                                     St. Louis, Missouri 63102
                                                     (314) 621-6115
                                                     jschlichter@uselaws.com
                                                     hlea@uselaws.com
                                                     ssoyars@uselaws.com
                                                     jrohlf@uselaws.com

                                                     Stuart M. Katz (ct12088)
                                                     Cohen and Wolf, P.C.
                                                     1115 Broad Street
                                                     Bridgeport, CT 06604
                                                     Telephone: (203) 368-0211
                                                     Facsimile: (203) 337-5505
                                                     skatz@cohenandwolf.com

                                                     *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2019, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ Jerome J. Schlichter
        Jerome J. Schlichter