## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI, NANCY S. LOWERS, JAN M. TASCHNER, and JAMES MANCINI, individually and as representatives of a class of participants and beneficiaries on behalf of the Yale University Retirement Account Plan, *Plaintiffs*, v. YALE UNIVERSITY, MICHAEL A. PEEL, and THE RETIREMENT PLAN FIDUCIARY COMMITTEE, *Defendants*. | Civil Action No. 3:16-cv-01345-AWT  Hon. Alvin W. Thompson |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Nancy G. Ross (ct14373)
James C. Williams (ct23292)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Brian D. Netter (phv08476)
  bnetter@mayerbrown.com
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    The named Plaintiffs lack standing to challenge funds in which they did not
      invest. ............................................................................................................. 2

II.   The named Plaintiffs will not adequately protect the interests of the class. .................... 11

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS, Inc.*,
   465 F.3d 1123 (9th Cir. 2006) ...................................................................8

*Alexander v. Price*,
   275 F. Supp. 3d 313 (D. Conn. 2017).......................................................11

*American Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016).......................................................................3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000).........................................................11, 13, 14

*Baker v. Carr*,
   369 U.S. 186 (1962)....................................................................................6

*Bendaoud v. Hodgson*,
   578 F. Supp. 2d 257 (D. Mass. 2008) ........................................................7

*Cates v. Trs. of Columbia Univ. in the City of N.Y.*,
   No. 16-cv-6524 (S.D.N.Y. Nov. 15, 2018)..............................................5, 6

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
   Managed Care, LLC*,
   433 F.3d 181 (2d Cir. 2005)........................................................2, 3, 4, 10

*Cornell Univ. v. Cunningham*,
   No. 19-324 (2d Cir. Feb. 5, 2019)..............................................................5

*Cunningham v. Cornell Univ.*,
   No. 16-cv-6525 (S.D.N.Y. Jan. 22, 2019) ...............................................5, 6

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)....................................................................................3

*Davis v. FEC*,
   554 U.S. 724 (2008)....................................................................................3

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
   2017 WL 2909714 (D. Conn. July 6, 2017) ...............................................4

*Donoghue v. Bulldog Inv'rs Gen. P'ship*,
   696 F.3d 170 (2d Cir. 2012)........................................................................4

## TABLE OF AUTHORITIES
### (continued)

<strong>Page(s)</strong>

*Doyle v. Mastercard Int'l Inc.*,
   700 F. App'x 22 (2d Cir. 2017) ......................................................................1, 10

*Evans v. Akers*,
   534 F.3d 65 (1st Cir. 2008)...........................................................................7

*Faber v. Metro. Life Ins. Co.*,
   2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009) ..........................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)............................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000).....................................................................................3

*Gollust v. Mendell*,
   501 U.S. 115 (1991).....................................................................................8

*Gordon v. Kaleida Health*,
   847 F. Supp. 2d 479 (W.D.N.Y. 2012) .................................................................4

*Graden v. Conexant Sys., Inc.*,
   496 F.3d 291 (3d Cir. 2007)...........................................................................7

*Harley v. Minn. Min. & Mfg. Co.*,
   284 F.3d 901 (8th Cir. 2002) ..........................................................................9

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)...................................................................................6, 7

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009)........................................................................3, 4

*Klein v. Qlik Techs., Inc.*,
   906 F.3d 215 (2d. Cir. 2018)........................................................................6, 8

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty.*,
   710 F.3d 57 (2d Cir. 2013).......................................................................6, 7, 9

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ..................................................................6, 9

*Loren v. Blue Cross & Blue Shield of Mich.*,
   505 F.3d 598 (6th Cir. 2007) ..........................................................................8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................2, 3

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)...........................................................................................6

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995)........................................................................11, 15

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)..............................................................................9

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)...........................................................................................3

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)...........................................................................................3

*In re Priceline.com Inc.*,
    236 F.R.D. 89 (D. Conn. 2006).........................................................................14

*Rand v. Monsanto Co.*,
    926 F.2d 596 (7th Cir. 1991) ............................................................................14

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)..............................................................................10

*Sacerdote v. N.Y. Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018)...............................................................10

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976).............................................................................................3

*In re SLM Corp. ERISA Litig.*,
    2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010).....................................................4

*Smyth v. Carter*,
    168 F.R.D. 28 (W.D. Va. 1996).........................................................................15

*Spokeo v. Robins*,
    136 S. Ct. 1540 (2016)....................................................................................3, 8

*Taveras v. UBS AG*,
    612 F. App'x 27 (2d Cir. 2015) .................................................................4, 5, 9

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Trs. of Columbia Univ. in the City of N.Y. v. Cates*,
    No. 18-3559 (2d Cir. Nov. 29, 2018)...................................................................5

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ...........................................................................10

*In re UBS ERISA Litig.*,
    2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014)....................................................5

*Vitrano v. United States*,
    2008 WL 1752221 (S.D.N.Y. 2008)..................................................................11

*Warth v. Seldin*,
    422 U.S. 490 (1975)............................................................................................8

*Wilcox v. Georgetown Univ.*,
    2019 WL 132281 (D.D.C. Jan. 8, 2019)..........................................................5, 9

**Statutes, Rules and Regulations**

29 U.S.C. § 1132(a)(2)...............................................................................................8

Fed. R. Civ. P. 23(a)(4).....................................................................................2, 11, 15

**Other Authorities**

7A Charles Alan Wright *et al.*, Federal Practice & Procedure § 1766 (3d ed. 2018)....................14

5 Moore's Federal Practice § 23.25[2][c][ii] (2018 ed.)...............................................11

## INTRODUCTION

In this case, Plaintiffs—participants in the Yale University Retirement Account Plan (the Plan)—allege that Defendants (collectively, Yale) breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), in part by offering certain allegedly underperforming investment options as part of the Plan. *See* Am. Compl., Dkt. 57, at ¶¶ 244-47 (Count V). Importantly, the Plan is a participant-directed defined contribution plan, meaning that the participants get to decide how they invest their money; Yale selects the investment *options*, but participants choose *among* the options.

Plaintiffs have now asked this Court to certify a class of all participants and beneficiaries of the Plan for the period covered by their claims. *See* Dkt. 137. But class certification is inappropriate, for two reasons:

*First*, with respect to Plaintiffs' claim that Defendants acted imprudently by offering supposedly underperforming funds, the named Plaintiffs lack Article III standing to challenge any funds in which they did not personally invest, because any underperformance by such funds could not possibly have harmed them. Although some district courts have permitted class representatives to challenge funds in which they did not invest, the Second Circuit has emphasized that "[s]tanding is generally a prerequisite to class certification." *Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22, 25 (2d Cir. 2017) (summary order). And Article III requires the named plaintiffs to demonstrate an individual injury with respect to each challenged fund. Applying this reasoning, other courts have correctly dismissed similar claims brought by class representatives challenging funds that they did not invest in. Class certification is therefore precluded with respect to any funds that Plaintiffs did not personally elect.

*Second*, with respect to all claims, Plaintiffs have not carried their burden to demonstrate that the named Plaintiffs will adequately protect the diverse interests of absent class members in

this attorney-directed litigation. *See* Fed. R. Civ. P. 23(a)(4). Class certification should therefore be denied.

## ARGUMENT

### I.    The named Plaintiffs lack standing to challenge funds in which they did not invest.

Plaintiffs have disclosed to Yale that they intend to seek damages pertaining to two allegedly imprudent investment options offered on the Plan's investment lineup—the CREF Stock Account and the TIAA Real Estate Account. Plaintiffs' motion, however, seeks certification that appears to sweep broader than the claims for which Plaintiffs are pursuing damages. Indeed, Plaintiffs' complaint lists fifty-seven supposedly underperforming funds offered by the Plan (Am. Compl. ¶ 168). But Plaintiffs do not allege—much less prove—that they personally invested in more than a handful of those funds (*see* Am. Compl. ¶ 8(d)). Because the named Plaintiffs cannot possibly have been harmed by the alleged underperformance of funds in which they did not invest, they lack Article III standing to challenge any such funds.

Article III standing is, of course, a prerequisite to this Court's jurisdiction. *See, e.g.*, *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As the Second Circuit has explained:

> Constitutional standing requires (1) that the plaintiff have suffered an 'injury in fact'—that is, 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) that there is 'a causal connection between the injury and the conduct' of which the plaintiff complains and (3) that it is 'likely … that the injury will be redressed by a favorable decision.'

*American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560-61; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

Plaintiffs bear the burden to demonstrate standing "for each claim" and "for each form of relief that is sought." *Davis v. FEC,* 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements … with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Because standing is a jurisdictional requirement, it can be challenged at any time, and may be raised by the Court *sua sponte*. *Cent. States*, 433 F.3d at 198.

In a class action, the *named* plaintiffs must demonstrate that they have constitutional standing (*O'Shea v. Littleton,* 414 U.S. 488, 494 (1974)), measured at the time the complaint was filed (*Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 830 (1989)). In other words, "[t]hat a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo v. Robins*, 136 S. Ct. 1540,  1547 n.6 (2016) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

In an action to recover monetary compensation for a breach of fiduciary duty under ERISA, plaintiffs "cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009). That is, ERISA "does not confer a right to every plan partici-

pant to sue the plan fiduciary for alleged ERISA violations without a showing that *they* were injured by the alleged breach of the duty." *Id.* at 120 (emphasis added); *see also Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012) ("[In *Kendall*,] we held that an ERISA plaintiff bringing a disgorgement claim could not satisfy the injury requirement of standing by alleging defendant's general 'breach of fiduciary duty under ERISA without a showing of *individualized* harm.'") (emphasis added); *Cent. States*, 433 F.3d at 200 ("Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury-in-fact.") (internal quotation marks, alteration, and citations omitted).

Thus, the Second Circuit has maintained that "[a]n ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant." *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (summary order). In *Taveras*, as here, plan "participants … directed their own investment choices from a menu of options selected by [plan] fiduciaries," meaning that "it was possible that [the plan] lost value while [the plaintiff's] individual account did not." *Id.* In such a situation, the court explained, "[f]ailure to allege *individualized* harm goes directly to constitutional standing and is fatal." *Id.* (emphasis added). Based on this line of cases, courts within this Circuit have dismissed ERISA claims when the plaintiffs assert injuries to other participants in the plan but not to themselves.[1]

---

[1] *See, e.g.*, *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at *6 (D. Conn. July 6, 2017) ("Because Ms. Dezelan did not own any general account stable value funds, she cannot show that any of Voya's alleged misdeeds concerning those funds caused her to suffer a distinct and palpable injury, and therefore lacks standing to bring all three causes of action to the extent that they relate to those products.") (internal quotation marks omitted); *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 487 (W.D.N.Y. 2012) ("It is well-settled that ERISA … does require allegations of some individualized injury or deprivation of a right, even if that right is statutorily created."); *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010) ("[B]ecause Patel and Cordero have not shown that a favorable decision on the Retirement Plan claims would redress any injury suffered by them, those claims are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."), *aff'd sub nom. Slaymon*

That principle dooms Count V to the extent Plaintiffs seek to challenge the prudence of investment options in which no named Plaintiff actually invested. Even if Plaintiffs could prove that Yale should have removed certain of those investment options and thereby caused "injury to [the] plan" (*Tavares*, 612 F. App'x at 29), Plaintiffs still could not show "individualized injury to the plan participant" (*id.*)—that is, to themselves—if they never elected those investment options. And without individualized injury, standing is lacking. *See In re UBS ERISA Litig.*, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014) ("Plaintiff can only demonstrate a constitutionally sufficient injury by pointing to her *individual account's specific losses*."), *aff'd sub nom. Taveras*, 612 F. App'x 27; *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *10 (D.D.C. Jan. 8, 2019) ("Since Mr. Wilcox did not invest in the TIAA Real Estate Account, he has no standing to complain about its performance because he has no injury to show.").

In conflict with these authorities, two district courts in related actions have recently concluded that a named plaintiff may challenge *any* funds offered by his defined contribution plan, notwithstanding that the plaintiff himself could not possibly have been harmed by the performance of funds he did not elect. *See* Order, *Cates v. Trs. of Columbia Univ. in the City of N.Y.*, No. 16-cv-6524 (S.D.N.Y. Nov. 15, 2018), Dkt. 218 (*Cates* Order); Opinion and Order, *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (S.D.N.Y. Jan. 22, 2019), Dkt. 219 (*Cunningham* Order). Respectfully, those decisions are wrong.[2]

---

*v. SLM Corp.*, 506 F. App'x 61 (2d Cir. 2012); *Faber v. Metro. Life Ins. Co.*, 2009 WL 3415369, at *4 (S.D.N.Y. Oct. 23, 2009) ("Plaintiffs' claims that they were injured … fail to articulate any cognizable injury or anything that Plaintiffs would get if they succeeded, other than the moral satisfaction of a declaration that they were justified in their allegations. Under the clear holding in *Kendall,* this is simply not enough."), *aff'd on other grounds*, 648 F.3d 98 (2d Cir. 2011).

[2] The defendants in both cases have petitioned the Second Circuit for interlocutory review of the standing issue. *See* Petition, *Trs. of Columbia Univ. in the City of N.Y. v. Cates*, No. 18-3559 (2d Cir. Nov. 29, 2018), Dkt. 1; Petition, *Cornell Univ. v. Cunningham*, No. 19-324 (2d Cir. Feb. 5, 2019), Dkt. 1. Those petitions are currently pending.

Both orders largely rely on a single district court opinion—*Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155 (S.D.N.Y. 2017)—and its misinterpretation of Second Circuit precedent, namely *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty.*, 710 F.3d 57, 65 (2d Cir. 2013). *See Cates* Order at 1 (citing *Leber* and *L.I. Head Start*); *Cunningham* Order at 5-6 (citing same). But fundamental Article III principles explain why *L.I. Head Start*—which did not purport to apply its holding to defined contribution plans— is inapplicable here, and why *Leber*'s mechanical expansion of that holding (adopted by *Cates* and *Cunningham*) is thus wrongly decided. *See generally Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999) (explaining the distinction between defined contribution and defined benefit plans).[3]

The core of Article III's injury-in-fact requirement is a concern for the adversarial nature of litigation: "At bottom, 'the gist of the question of standing' is whether [plaintiffs] have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Without such a "personal stake," jurisdiction is lacking. *See, e.g.*, *Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 220 (2d. Cir. 2018) ("We may, in short, only entertain complaints from a complainant with a concrete stake—and not just a keen interest—in the outcome of the litigation.") (quotation marks omitted).

The plaintiffs in *L.I. Head Start* had such a stake—but the distinction between defined contribution plans and other types of ERISA plans is critical to understanding why. In *L.I. Head Start*, the Second Circuit held that participants in "an ERISA welfare benefits plan" had Article

---

[3] *Leber* itself acknowledged that "the applicability of [*L.I. Head Start*] to actions involving defined contribution plans has been called into question." 323 F.R.D. at 155.

III standing to seek "recoupment of funds the Trustees should have collected to keep the Plan financially solvent." 710 F.3d at 61, 65, 67 n.5. This holding makes perfect sense in context: As with defined benefit pension plans, the welfare benefit plan in *L.I. Head Start* "consist[ed] of a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft*, 525 U.S. at 439; *see L.I. Head Start*, 710 F.3d at 62 (noting that the relevant plan required employers to "make the necessary contributions to provide the benefits expected to become payable under th[e] Trust"). The participants in the *L.I. Head Start* plan thus had a concrete financial interest in the continued solvency of the plan as a whole, because they were contractually entitled to benefits that an insolvent plan would be unable to provide.

By contrast, under a defined contribution plan like Yale's, "there can never be an insufficiency of funds to cover promised benefits, since each beneficiary is entitled to whatever assets are dedicated to his individual account." *Hughes Aircraft*, 525 U.S. at 439 (quotation marks and citation omitted). Because a participant's financial interest in a defined contribution plan is limited to the funds allocated to his own personal account, diminution in plan assets allocated to *other* accounts results in no harm at all to the participant. As one court succinctly put it, "[o]ne defined contribution plan participant has no pecuniary interest in the accounts of another." *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008).

Tellingly, the named Plaintiffs here would receive no financial benefit whatsoever from succeeding in their prudence challenges against investment options that none of them elected. This is because "recovery made on behalf of a defined contribution plan must be allocated to the individual accounts injured by the breach." *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008); *see also Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 296 n.6 (3d Cir. 2007) ("[A]ny recovery made 'on behalf of [a defined contribution] plan' must be paid out to the injured participant in the form

of augmented benefit payments."). Any recovery here would therefore be allocated to the accounts of plan participants who actually *did* invest in the challenged funds; the named Plaintiffs would gain nothing. This utter lack of a concrete stake is fatal to the named Plaintiffs' standing to challenge funds beyond their own portfolios. *See Klein*, 906 F.3d at 220.

It is no answer to point to the derivative nature of an ERISA suit under 29 U.S.C. § 1132(a)(2), since "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547-48. Indeed, in the closely analogous context of *shareholder* derivative litigation, the Supreme Court has recognized that "if a security holder were allowed to maintain a [derivative] action after he had lost any financial interest in its outcome, there would be serious constitutional doubt whether that plaintiff could demonstrate the standing required by Article III." *Gollust v. Mendell*, 501 U.S. 115, 125 (1991). It made no difference to the Supreme Court that the suit would be on behalf of the corporation: "Although 'Congress may grant an express right of action … Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury *to himself*.'" *Id.* at 126 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (emphasis added). Just so here.

It should therefore be no surprise that other courts of appeals have come to the same conclusion reached by the Second Circuit in *Taveras*: The fact that an ERISA suit is brought in a derivative capacity does not excuse the named plaintiff from demonstrating individual injury in accordance with Article III. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing."); *Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS, Inc.*, 465 F.3d 1123, 1127 (9th Cir.

2006) (similar); *Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002) (similar). Article III requires more.

    *Leber* (and *Cates* and *Cunningham*) thus disregarded bedrock Article III principles when they extended the holding of *L.I. Head Start* from its own context (in which the plaintiffs had a personal stake in the outcome) to the defined contribution context (in which they do not). *See Leber*, 323 F.R.D. at 155-56. *L.I. Head Start* does not—and could not, consistent with Article III—apply to defined contribution plans like Yale's. In the defined contribution context, the rule is that announced by the Second Circuit in *Taveras*: "An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant." 612 F. App'x at 29; *see also Wilcox*, 2019 WL 132281, at \*8 (holding that, in arguing to the contrary, "Plaintiffs mistake the difference between a defined benefit plan and a defined contribution plan"). Because the named Plaintiffs here could not have been harmed by Yale's retention of investment options that they did not elect, they lack Article III standing to challenge the prudence of those investments.

    Nor does the Second Circuit's "class standing" doctrine rescue Plaintiffs here. Under that doctrine, "a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to the other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (quotation marks and citation omitted). But the Second Circuit has made clear that the second criterion is *not* satisfied where "the nature of the claims … unavoidably generates significant differences in the proof that will be offered" between the conduct that injured the named plaintiff and that which harmed other

class members. *Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014). That was the case in *Retirement Board* because the defendant's misconduct had to be "proved loan-by-loan and trust-by-trust," and the named plaintiff had invested in only some of the challenged trusts. *Id.* at 162.

That is exactly the situation presented here. While an ERISA prudence claim focuses on the process employed by the fiduciary (which could be common to multiple investments), even a procedurally defective fiduciary "is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway." *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014); *accord Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 285-86 (S.D.N.Y. 2018). Thus, whether Yale was imprudent in offering each challenged investment option depends on whether a "hypothetical prudent fiduciary" would have done the same—which in turn depends on the innate characteristics, past performance, and future outlook of the specific investment in question. Just as in *Retirement Board*, "[w]e see no way in which answering these questions for the [funds] in which Plaintiffs invested will answer the same questions for the numerous [funds] in which they did not invest." *Retirement Board*, 775 F.3d at 162. Class standing is therefore lacking here.[4]

Because the named Plaintiffs lack standing to challenge funds in which they did not invest, class certification is impossible with respect to those funds. *Doyle*, 700 F. App'x at 25 ("[S]tanding is generally a prerequisite to class certification."). Indeed, to the extent Plaintiffs challenge funds they did not elect, the underlying claims must be dismissed.[5]

---

[4] If, in contravention of *Retirement Board*, the class standing doctrine were to be extended to cover the situation presented by this case, it would violate Article III, and would therefore be unconstitutional. *See* pp. 6-9, *supra*.

[5] When a concern about Article III standing is raised, the Court may dismiss the claim *sua sponte*. *Cent. States*, 433 F.3d at 198. In case a separate motion is deemed necessary, however, the Court should

## II.     The named Plaintiffs will not adequately protect the interests of the class.

Plaintiffs bear the burden of demonstrating that a proposed class action meets the requirements of Rule 23, including Rule 23(a)(4)'s adequacy standard. *See, e.g.*, *Alexander v. Price*, 275 F. Supp. 3d 313, 318 (D. Conn. 2017). Thus, in order to obtain class certification, plaintiffs must prove that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Under this standard, "class representative status may properly be denied 'where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995)); *see also* 5 Moore's Federal Practice § 23.25[2][c][ii] (2018 ed.) ("[T]o satisfy the adequacy-of-representation requirement, the class representative must possess at least a minimal degree of knowledge regarding the class action.").

That is exactly the case here: As demonstrated by their deposition testimony, the proposed class representatives have such limited involvement in this attorney-directed litigation that they are in no position to protect the interests of absent class members against class counsel's potentially conflicting interests. The named Plaintiffs' lack of engagement is particularly troubling here, where Plaintiffs seek changes to the Plan that will contravene the expressed preferences of some class members. Plaintiffs ask this Court to "reform the Plan" to remove an unspecified number of investment options (Am. Compl. at p. 132)—but someone must look out for the interests of Plan participants who have planned their retirement around the availability of those very options. Different participants have different investment strategies and risk tolerances, and

---

construe this filing as a cross-motion to dismiss. *See, e.g.*, *Vitrano v. United States*, 2008 WL 1752221, at *2 (S.D.N.Y. 2008) ("[T]he Government's opposition will be treated as a motion to dismiss[.]").

those individual differences must be considered in fashioning relief. Class counsel, whose incentives are to obtain the largest possible monetary award, are in no position to do so. That responsibility therefore falls on the class representatives. But the lax approach to the litigation by these proposed representatives demonstrates that they are not up to the task.

The named Plaintiffs' passivity dates back even further than the inception of this lawsuit. None of the Plaintiffs independently determined that they had been harmed and sought to pursue litigation; instead, it was counsel who first reached out to the plaintiffs through an advertisement in the New Haven Register. *See* Ex. 1 (Vellali Dep.)[6] at 32:25-33:14 ("Basically, [the advertisement] said that there was a problem with the pension plan, and it wasn't governed well."), 33:15-17 ("Q: Prior to seeing that ad, did you have any concerns with [the] retirement plan at Yale? A: No."); Ex. 2 (Taschner Dep.) at 14:7-14 ("[T]here was an advertisement, asking or seeking people interested in potential issues with the universit[y']s retirement plan."), 15:19-25 ("Q: Before you saw this advertisement … had you thought about filing suit against Yale? A: No."); Ex. 3 (Lowers Dep.) at 37:5-17; Ex. 4 (Mancini Dep.) at 18:21-20:14.

Similarly, it was counsel who convinced the Plaintiffs that they had supposedly been wronged. Ex. 1 at 54:4-6 ("I basically rely on my attorneys to determine what has been done right and what hasn't been done right."), 80:25-81:1 ("And again, I rely on the advice of my attorneys as to whether there's wrongdoing."); Ex. 3 at 39:21-24 ("Q: You didn't have any independent knowledge outside of talking to your attorneys as to why you believed [the suit] had merit? A: No."); Ex. 4 at 22:2-13; Ex. 2 at 25:7-12 (concluding that she had been harmed "upon advice and discussion with the attorney").

---

[6] Defendants have not yet received the final version of each named Plaintiff's deposition transcript. Defendants are therefore attaching the "rough" versions of the transcripts as exhibits in order to comply with the deadline for this opposition.

Nor do the named Plaintiffs have any personal knowledge of the facts underlying this suit; instead, they rely on the "advice of [their] attorneys" regarding what happened as well. Ex. 1 at 59:3-7; *see also* Ex. 4 at 38:5-11 ("Q: And with respect to your allegations … do you have any independent knowledge as with respect to those things, or did that come from discussions with your attorneys? A. I have no independent knowledge of those."); Ex. 3 at 52:11-13 ("Q: And your understanding that employees and retirees were over charged, again, is that based solely on communications with your attorneys? A: Yes."); Ex. 2 at 26:2-20 ("Q: Okay. When did you come to believe that Yale had … done those things? A: After discussions with the attorney.").

Perhaps more importantly, Plaintiffs have been passive spectators when it comes to the conduct of this litigation itself. Every one of the four named Plaintiffs monitors the suit exclusively through the documents sent to them by counsel; none has any independent knowledge of the status or developments in the case. Ex. 4 at 27:11-18 ("Q: Do you keep track of the developments in this lawsuit? A: Just the briefs that I get from the attorneys, occasional phone call that we're going to do the next step, and then paperwork follows."); Ex. 1 at 79:13-23; Ex. 3 at 83:16-21 ("I rely on [the attorneys] to keep me informed"); Ex. 2 at 52:12-53:4 (Q: "Other than communications with your attorneys … do you read about the litigation or follow the litigation independently? A: No."). Nor have they discussed the suit with each other even once. Ex. 2 at 34:24-35:1, 35:21-23; Ex. 4 at 16:10-13; Ex. 3 at 70:5-12; Ex. 1 at 68:18-21. It is hard to see how class representatives can serve as an effective counterweight to the potentially divergent incentives of class counsel, *Baffa*, 222 F.3d at 61, if they receive their information about the suit exclusively through the filter of those very attorneys, and have no interest in communicating with one another independently.

13

As a final indication of the named Plaintiffs' level of interest in this lawsuit, not one of them even knows what claims remain in the case after this Court's partial grant of Yale's motion to dismiss. Ex. 4 at 54:10-20 ("Q: Judge Thompson in this case, ultimately ruled on the motion to dismiss. Did you review his ruling? A: No. … Q: Do you know what claims he dismissed and did not dismiss? A: No."); Ex. 2 at 42:18-20 ("Q: Do you know which things were dismissed in particular? A: In particular, no."); Ex. 1 at 37:22-38:2 ("Q: Do you know which [claims were dismissed]? A: Not off the top of my head, no."); Ex. 3 at 59:24-60:5 ("Q: And were you aware that [J]udge Thompson dismissed the claim relating to there being too many options, in the stock option funds? A: I wasn't clear about what motions he dismissed. Q: Did you read his opinion? A: No."). Ignorance of such basic facts must be disqualifying; the named Plaintiffs are simply not informed enough about their own case to protect the rights of absent class members.

Defendants recognize that the Second Circuit "general[ly] disfavor[s] [] 'attacks on the adequacy of a class representative based on the representative's ignorance.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009) (quoting *Baffa*, 222 F.3d at 61). But Defendants' objections here are not based on Plaintiffs' ignorance of mutual funds, recordkeeping, or the requirements of ERISA. Rather, if Rule 23(a)'s adequacy requirement is to mean anything, it must "ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney; the named parties must be adequate representatives in addition to having adequate counsel." 7A Charles Alan Wright *et al.*, Federal Practice & Procedure § 1766 (3d ed. 2018); *see also In re Priceline.com Inc.*, 236 F.R.D. 89, 100 (D. Conn. 2006) ("[T]he named plaintiff must have some commitment to the case, so that the 'representative' in a class action is not a fictive concept" and "must be able, at minimum, to make important nondelegable decisions about the course of the litigation.") (quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 598-

99 (7th Cir. 1991) and *Smyth v. Carter*, 168 F.R.D. 28, 33 (W.D. Va. 1996)). But that is what is happening here. As one of the named Plaintiffs frankly explained when asked about *her own* ability to represent absent class members, "I rely on my attorneys to ensure that we're all getting appropriate relief." Ex. 2 at 50:6-11.

In short, the named Plaintiffs "have so little knowledge of and involvement in the class action" that they are demonstrably "unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt*, 67 F.3d at 1077-78; they are merely "lending their names to a suit controlled entirely by the class attorney," Federal Practice & Procedure, *supra*; and they are thus inadequate representatives for purposes of Rule 23(a)(4). Class certification must therefore be denied.

## CONCLUSION

The Court should deny Plaintiffs' motion for class certification.


Dated: February 19, 2019                    Respectfully submitted,

Nancy G. Ross (ct14373)                     */s/ Brian D. Netter*
James C. Williams (ct23292)                 Brian D. Netter (phv08476)
MAYER BROWN LLP                               bnetter@mayerbrown.com
71 South Wacker Drive                       MAYER BROWN LLP
Chicago, Illinois 60606-4637                1999 K Street NW
Telephone: (312) 782-0600                   Washington, DC 20006-1101
Facsimile: (312) 701-7711                   Telephone: (202) 263-3000
                                            Facsimile: (202) 263-3300


*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 19, 2019, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By:    /s/ *Brian D. Netter*
             Brian D. Netter