## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JOSEPH VELLALI *et al.*,

      *Plaintiffs*,

v.

YALE UNIVERSITY *et al.*,

      *Defendants*.

Civil Action No. 3:16-cv-01345-AWT

Hon. Alvin W. Thompson

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Local Rule 37, Defendants Yale University, Michael A. Peel, and the Fiduciary Committee on Investments (collectively, "Defendants") submit this Memorandum of Law in support of their Motion for Protective Order. For reasons set forth in the motion and in greater detail below, good cause exists for a protective order to prohibit the burdensome, duplicative, and unnecessary deposition of Peter Salovey, noticed for March 7, 2019.

## I.   INTRODUCTION

Peter Salovey is the President of Yale University. *See* Declaration of Caroline Hendel (Hendel Decl.) ¶ 2. Plaintiffs wish to depose President Salovey because of his three-meeting tenure on the Fiduciary Committee on Investments when he was Provost of Yale University. *Id.* ¶ 6. President Salovey's tenure on the Committee ended six years ago—on March 1, 2013. *Id.* ¶ 16.

A substantial body of case law recognizes that depositions of top-level executives—so-called "apex depositions"—should not be available as a matter of

course.  Indeed, "'[a]pex depositions' are disfavored in this Circuit 'unless [the executives] have personal knowledge of relevant facts o[r] some *unique knowledge* that is relevant to the action.'"  *Alliance Indus., Inc. v. Longyear Holding, Inc.*, 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010) (quoting *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006)) (emphasis added).

President Salovey does not have unique knowledge to offer.  To the contrary, President Salovey served briefly on a committee with two other members that was also staffed by three other university employees.  Hendel Decl. ¶¶ 7, 10, 12, 14. Plaintiffs have noticed depositions of all five of those individuals.  *Id.* ¶¶ 8–15.  To date, Plaintiffs have completed the depositions of two of the staff members (Hugh Penney and Julie Kimball), but none of President Salovey's colleagues on the Committee.  *Id.*

Because Plaintiffs have ample opportunities to obtain all relevant information about the actions of the Committee during President Salovey's tenure, good cause exists to issue a protective order to quash Plaintiffs' deposition notice.  This motion must be resolved on an emergency basis because, after representing to the Court on February 1 that they were "considering their ... position[]" with respect to President Salovey's deposition, Plaintiffs noticed a March 7 deposition for President Salovey just two days ago.

## II.    BACKGROUND

This case is part of a wave of lawsuits filed against universities, alleging that the universities breached their fiduciary duties under the Employee Retirement Income Security Act (ERISA) in the administration of the retirement plans that they sponsor for their faculty and staff.  At issue here is the Yale University Retirement Account Plan (the "Plan"), a retirement plan for faculty and professional staff at Yale University.  *See* Amended Complaint (Dkt. 57).

The documents governing the Plan designate Yale University as the named fiduciary and Plan administrator.  *Id.* ¶ 18.  In 2012, exercising authority delegated from the University, defendant Michael Peel (then Yale's Vice President for Human Resources) chartered the Fiduciary Committee on Investments to exercise portions of the University's authority to oversee the Plan.  Hendel Decl. ¶ 4. Mr. Peel appointed himself to the Committee, as well as Shauna King (then Yale's Vice President for Finance and Business Operations) and President Salovey (then Yale's Provost).  *Id.* ¶ 5.  The Committee met three times before President Salovey resigned from the Committee and assumed his position as Yale University President; he was replaced by Yale's new Provost, Dr. Benjamin Polak.  *Id.* ¶¶ 6, 16.

This action was filed on August 9, 2016.  Dkt. 1.  Fact discovery is set to close on April 1, 2019.  Dkt. 119.  On January 10, 2019, Plaintiffs' counsel sought deposition availability for 11 current and former Yale employees and officers, including President Salovey.  *See* Declaration of Richard Nowak (Nowak Decl.) Ex. A.   On January 18, Defendants' counsel sent Plaintiffs' counsel a proposed schedule for

depositions in this action.   Nowak Decl. Ex. B.  The proposed schedule included dates for each of the individuals identified by Plaintiffs' counsel except for President Salovey. Defendants' counsel explained:

> Our expectation is that, given [President Salovey's] short tenure on the committee, the amount of time that has elapsed since that tenure, and the availability of the other committee members from his tenure, you will realize that deposing President Salovey is unnecessary.  Because that discussion can be based on facts once you have taken other depositions, we propose tabling Salovey for the time being.

*Id.*

On January 28, 2019, Plaintiffs' counsel served a notice of deposition for Peter Salovey, setting the deposition at 9:00 a.m. on March 8, 2019.  Nowak Decl. Ex. C.

On January 29, 2019, Defendants' counsel responded and explained that given "[President] Salovey's limited role in connection with the issues in the case, and the redundant nature of any testimony by him given the depositions you have requested of the two other members of the committee who sat with him . . . . we will not and cannot agree to present him for his deposition as requested in the Notice you have sent."  Nowak Decl. Ex. D.  The response reiterated that Defendants' counsel "are happy to explore the matter after all other depositions have been taken, and hear your position, should it remain, as to why his deposition is still needed.  However, you should not expect President Salovey to appear on the date noticed, nor any certain date at this time."  *Id.*

On February 1, 2019, the parties filed a Joint Status Report on Discovery, explaining:

> Plaintiffs have noticed the deposition of Yale President, and former member of the Fiduciary Committee on Investments, Peter Salovey for

4

> March 8. Defendants have stated they will not produce [President] Salovey on that date or any other until depositions of other defense witnesses are complete. The parties are still considering their respective positions and have not met and conferred on the issue, so it is not yet ripe for adjudication.

Dkt. 153.  This Court subsequently approved this Joint Status Report. Dkt. 155.

Plaintiffs provided no subsequent update to their position on President Salovey until Defendants provided a list of remaining deposition times and locations on February 25, 2019.  Nowak Decl. ¶¶ 8–9, Ex. E.  In response, on February 26, 2019, Plaintiffs served an amended notice of deposition for Peter Salovey, for a new, earlier date: March 7, 2019.  Nowak Decl. Ex. F, Ex. G.

Defendants immediately apprised Plaintiffs that they could not produce President Salovey on March 7 and asked to meet and confer.  *See* Nowak Decl. Ex. H. On February 27, the parties met and conferred.  *See* Nowak Decl.  ¶¶ 12.  During the meet and confer, Defendants asserted that President Salovey is an apex witness and that Plaintiffs had not identified any unique knowledge within his possession— particularly given Plaintiffs' refusal to wait until the other Committee members were deposed to evaluate the necessity for President Salovey's deposition.  *Id.* ¶ 13. Defendants also explained that only the Committee's actions—not its individual member's subjective opinions—are potentially at issue in the litigation.  *Id.*  Plaintiffs insisted that only President Salovey could testify about his own subjective knowledge and his experience on the Committee.  *Id.*  Plaintiffs also insisted that they are entitled to President Salovey's deposition regardless of the other Committee members' and witnesses' testimony in this matter.  *Id.*  The parties then reached an impasse, requiring this Court's emergency intervention.  *Id.* ¶ 14.

5

### III.   ARGUMENT

Good cause exists for the Court to enter a Protective Order preventing Plaintiffs from deposing President Salovey on March 7, 2019. Pursuant to Federal Rule of Civil Procedure 26(c), this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

It is settled that courts acting pursuant to Rule 26(c) may "restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." *Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) (quoting *Cardenas v. Prudential Ins. Co. of Am.*, 2003 WL 21293757, at *1 (D. Minn. May 16, 2003)).[1]

President Salovey is a quintessential apex witness. As Yale University's chief executive, President Salovey is responsible for a sprawling institution with more than

---

[1]     *See also Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *2 (N.D. Cal. Sept. 19, 2017) ("When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), the court may exercise its discretion under the federal rules to limit discovery . . . . In deciding whether an apex deposition may proceed, courts consider: (1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted less intrusive discovery methods.") (internal quotation marks omitted); *Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.*, 1995 WL 6259, at *2 (S.D.N.Y. Jan. 9, 1995) ("[P]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation. Accordingly, where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive.") (internal quotation marks omitted).

10,000 students and more than 10,000 faculty and staff employees.  *See Alliance Indus.*, 2010 WL 4323071, at *4 ("An '[a]pex' deposition is one in which the party seeks to depose the highest level, or 'apex,' of the corporate opponent, whether that officer has personal knowledge of the matters at issue in the case or not"); *see also Gerber Scientific Int'l Inc. v. Roland DGA Corp.*, 2012 WL 13019000, at *3 (D. Conn. Jan. 12, 2012) (applying the doctrine to the defendant's President), *Rodriguez*, 2010 WL 1286989, at *1 (applying the doctrine to senior-level executives who reported directly to the defendant's CEO).  Because President Salovey is an apex witness, Plaintiffs' notice of deposition should be quashed unless Plaintiffs can establish "that [he] has some unique knowledge pertinent to the issues in the case" and that there is no way to "obtain the same information through a less intrusive means." *Rodriguez*, 2010 WL 1286989, at *2.

Plaintiffs cannot satisfy that standard; indeed, Plaintiffs do not even try. Plaintiffs' position is that President Salovey should be deposed because there were only three members of the Committee during his three-meeting tenure.  But that assertion effectively establishes that President Salovey does *not* have evidence uniquely within his position.  Plaintiffs have noticed depositions for the other two Committee members—Mr. Peel and Ms. King—and will have every opportunity to explore the meetings that President Salovey attended.  Moreover, Plaintiffs have already conducted a seven-hour deposition of Hugh Penney (then the Senior Director of Benefits and Compensation), who attended all three of President Salovey's meetings; and Julie Kimball (then the Director of Benefits), who attended two of the

three meetings.  Hendel Decl. ¶¶ 10–13.   And they have noticed the deposition of Caroline Hendel, Senior Associate General Counsel, who also attended all three meetings.  *Id.* ¶ 14–15.  Finally, to the extent there could be any Provost-specific questions, Plaintiffs are set to depose President Salovey's successor as Provost, Dr. Benjamin Polak.  *Id.* ¶ 16–17.  Plaintiffs obviously cannot insist that President Salovey has unique information about his tenure on the Committee before deposing the other members of the Committee.

Because of this dynamic, when discovery is required from apex witnesses, it typically occurs at the *end* of the deposition cycle, not toward the beginning.  *See Mendillo v. Prudential Ins. Co. of Am.*, 2013 WL 6511944, at *3 (D. Conn. Dec. 12, 2013) (authorizing the deposition of an apex witness only *after* other depositions revealed that he "may possess information that cannot be obtained from lower level employees or other sources" and limiting that deposition to "no more than two (2) hours' time"); *Gerber*, 2012 WL 1301900, at *3 (instructing plaintiffs to first depose lower-level executives and then to determine whether it is necessary to depose the corporate defendant's President); *Rodriguez*, 2010 WL 1286989, at *3 ("Once [the defendant's 30(b)(6) witness] or others identified as knowledgeable by defendants have been questioned, plaintiffs may renew their request to depose higher level executives upon a showing that there is reason to believe they have 'unique factual information and institutional knowledge'").[2]  After other discovery is complete, the

---

[2]     *See also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (upholding a district court order "requir[ing] plaintiff to depose the other employees that [the

nature of any unique information in President Salovey's possession will be known. Although Defendants doubt that President Salovey has any unique knowledge relevant to Plaintiffs' claims, even if Plaintiffs could establish that they had questions only President Salovey can answer, those questions could be narrowly tailored and submitted to President Salovey—ideally in writing—to reduce a burden that is otherwise disproportionate to the needs of this case.

It bears reinforcing that the facts at issue in this case involve the processes and decisions of the Committee.  There is no evidence that President Salovey had any decision making authority independent of the Committee's consensus.  Plaintiffs can obtain a wealth of information about the Committee's deliberative process from the ten other witnesses that have been deposed already or that are scheduled to be deposed shortly.  Plaintiffs have not offered any reason to believe that President Salovey possesses unique information about the Committee's actions that is not available through other members.

Additionally, Plaintiffs cannot establish that they must depose every single Committee member to uncover the information they seek.  Such an approach is likely to result in cumulative or duplicative testimony.  Courts confronted with this type of "shotgun" approach to discovery may limit the number of individuals to be deposed or instruct the parties to depose only some members first before deciding whether additional depositions are necessary.  *See Wei-Ping Zeng v. Marshall Univ.*, 2019 WL

---

defendant] indicated had more knowledge of the facts before deposing [the company's President]").

937328, at *3 (S.D. W. Va. Feb. 26, 2019) (denying as premature plaintiff's motion for leave to depose "every member of each committee that considered [plaintiff's] tenure application," noting that "[u]ndoubtedly, many of the proposed depositions will be cumulative or duplicative"); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 2017 WL 2266983, at *3 (S.D.N.Y. Apr. 26, 2017) (noting that it is "highly likely that the knowledge of the six witnesses [on a particular committee] who have been noticed overlaps to a large extent, so that their depositions would be cumulative" and thus approving the parties' plan to begin with a deposition of a single member before deciding whether additional depositions are necessary).  Indeed, in similar university ERISA cases brought by the same plaintiffs' attorneys, the plaintiffs did not depose every committee member.  *See, e.g.*, *Cunningham v. Cornell Univ.*, No. 1:16-cv-6525 (S.D.N.Y. filed Jan. 19, 2018), ECF No. 122 (noting that Plaintiffs had identified 29 individuals who had served on Cornell's fiduciary committee).  Thus, the conduct of other cases belies Plaintiffs' apparent assertion that a committee's actions can be tested through discovery only be questioning each committee member individually.

A protective order is particularly appropriate where, as here, Plaintiffs insist on deposing a chief executive before taking the opportunity to question other witnesses who may be able to provide the information they seek.  *See Rodriguez*, 2010 WL 1286989, at *2; *see also Gerber*, 2012 WL 13019000, at *3.  Plaintiffs cannot show that President Salovey possesses unique information without first assessing the knowledge of other witnesses. Accordingly, a protective order is warranted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue a Protective Order pursuant to Federal Rule of Civil Procedure 26(c) to prevent the deposition of President Salovey.


Dated:  February 28, 2019                          Respectfully submitted,

Nancy G. Ross (ct14373)                            _/s/ Brian D. Netter_
James C. Williams (ct23292)                        Brian D. Netter (phv08476)
MAYER BROWN LLP                                        bnetter@mayerbrown.com
71 South Wacker Drive                              MAYER BROWN LLP
Chicago, Illinois 60606-4637                       1999 K Street NW
Telephone: (312) 782-0600                          Washington, DC 20006-1101
Facsimile: (312) 701-7711                          Telephone: (202) 263-3000
                                                   Facsimile: (202) 263-3300

                          *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2019, a copy of foregoing document was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the CM/ECF system.

*/s/ Brian D. Netter*
Brian D. Netter