**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH VELLALI *et al*., | |
| *Plaintiffs*, | No. 3:16-cv-01345-AWT |
| v. | |
| YALE UNIVERSITY *et al*., | Hon. Alvin W. Thompson |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION**
**TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants seek to avoid a deposition of Peter Salovey, one of just three individual

fiduciaries on Yale's Fiduciary Committee on Investments ("Committee") during the critical

2012 period in which the Committee was formed and held its first meetings. However, the

central allegation of this lawsuit is that the Yale University Retirement Account Plan ("Plan")

fiduciaries – *specifically including Salovey as a member of the three-person Committee* – failed

to ensure that only reasonable administrative fees were charged to Plan participants and that only

prudent investments were included in the Plan. Salovey's individual fiduciary decisions and

process are indisputably relevant to this case.

Defendants have not, presumably because they cannot, offered any evidence of any undue

burden imposed by the taking of Salovey's deposition. This alone is fatal to their motion.

Moreover, even if the "apex deposition" doctrine were applicable – which it is not, because

Plaintiffs merely seek to depose Salovey in connection with his role on the three-person

Committee – Plaintiffs are entitled to Salovey's deposition because he unquestionably possesses

unique, relevant knowledge regarding his own activities with respect to the fiduciary duties he

owed to the Plan and its participants. For these reasons, and for the additional reasons set forth below, the Court should deny Defendants' motion.[1]

## BACKGROUND

**A.     Plaintiffs' Breach of Fiduciary Duty Claims on Behalf of Plan Participants**

This is an action for Defendants' breach of ERISA's fiduciary duties to the Plan and its participants. Plaintiffs allege, among other things, that Defendants imprudently managed the Plan by allowing participants to be charged excessive fees for administrative and recordkeeping services, including higher-fee share classes of funds, selecting and retaining unnecessarily expensive and underperforming investment options for the Plan, and engaging in transactions prohibited under ERISA. Doc. 57.

Plaintiffs commenced this action on August 9, 2016. Doc. 1. On December 12, 2016, Plaintiffs filed an Amended Complaint (Doc. 57), which included additional allegations and added as Defendants the Committee and Yale's Vice President for Human Resources Michael Peel. On March 30, 2018, the Court entered an Order largely denying Defendants' motion to dismiss. Doc. 113.

**B.     Peter Salovey**

When the Committee was formed in early 2012, Salovey was one of its three members. Declaration of Alexander L. Braitberg ("Decl.") at ¶ 2, Ex. 1. He attended every Committee meeting in 2012. *Id*. Salovey appears to be the only Committee member who served on Yale's Investments Committee, which oversees Yale's endowment. Decl. at ¶ 3; Ex. 2.

---

[1] On March 5, 2019, this Court entered an order postponing the deposition of Peter Salovey, pending Plaintiffs' response to Defendant's Motion. Doc. 163.

The Committee's 2012 meetings covered topics that are *critical* to this case. Decl. at ¶ 2, Ex. 1.  Among other things, the Committee discussed, for the first time, the reasonableness of the Plan's fees and the question of whether to engage a consultant to assist in overseeing the Plan. *Id.*; Decl. at ¶ 4; Ex. 3, at 159:15-163:1. Salovey attended all 2012 meetings at which these topics were discussed.

Salovey's name appears on more than 1,400 documents produced by Defendants, including 107 *unique* documents on which no other deponent's name appears. Decl. at ¶ 5. Many of the documents on which Salovey's name appears are the most critical documents in the case – including meeting minutes and documents related to the formation of the Committee, such as its charter. Decl. at ¶¶ 2, 6; Ex. 1, 4.

On January 15, 2019, Plaintiffs requested leave to file a Second Amended Complaint, naming Salovey, among others, as an individual defendant. Doc. 136-3. The Parties subsequently stipulated to the withdrawal of Plaintiffs' Second Amended Complaint and Yale's agreement to "assume and be responsible for any [fiduciary] liability" of any of the proposed individual defendants, including Salovey. Doc. 140. Defendants additionally agreed that the seven proposed additional individual defendants, including Salovey, "agree[d] not to challenge any subpoena for their appearance at trial in this matter on any ground not available to a party to the litigation." Doc. 140.

**C.     Defendants' Refusal to Provide Any Date for Salovey's Deposition**

On January 10, 2019, Plaintiffs requested that Defendants provide deposition dates for several witnesses, including Salovey. Decl. at ¶ 7; Ex. 5. On January 18, 2019, defense counsel offered deposition dates for most witnesses, but refused to provide any date for Salovey, because his schedule was "extraordinarily difficult." Decl. at ¶ 8; Ex. 6. Plaintiffs offered to agree to a

date at the end of fact discovery, so that Salovey's deposition would take place after other fact witnesses were deposed, and could be cancelled as appropriate. Plaintiffs additionally pointed out that if Salovey's schedule was "extraordinarily difficult," it was better to set a date than rush to schedule it late in discovery. Decl. at ¶ 9; Ex. 7. However, Defendants did not provide a deposition date for Salovey.

On January 28, 2019, Plaintiffs served a notice to depose Salovey on March 8, 2019. Decl. at ¶ 10; Ex. 8. Defendants stated their intention to refuse to comply with the deposition notice, this time omitting any mention of any scheduling difficulty, instead claiming that Salovey's testimony would be "redundant." Decl. at ¶ 11; Ex. 9. Defendants took no other action to challenge the validly noticed deposition, until, on February 26, 2019, Plaintiffs' counsel served an amended notice of deposition.

On February 27, 2019 counsel for the parties met and conferred regarding Salovey's deposition, at Defendants' request. Decl. at ¶ 12. During this conference, Plaintiffs' counsel again explained that the deposition of Salovey, as one of just three fiduciaries on the Committee during a critical period of time, whose action (or inaction) is directly at issue in this case, was necessary, and that only Salovey has the personal knowledge of what he did or did not do. Decl. at ¶ 13. Plaintiffs' counsel also pointed out that Salovey's name appears on over 1,400 documents produced in this case[2] including numerous documents upon which no other deponent's name appears. *Id*. Defendants' counsel made no attempt to explain whether or how producing Salovey for deposition would disrupt Yale's operations or otherwise pose an undue burden pursuant to this doctrine. Decl. at ¶ 14. Plaintiffs' counsel again expressed willingness, both during this conference and via email, to discuss other possible dates for Salovey's

---

[2] All of which, presumably, Defendants would agree are relevant to the issues in this case.

deposition. Decl. at ¶¶ 15, 16, Ex. 10. Defendants refused, and instead filed their "emergency" motion.

## ARGUMENT

It is fundamental that a plaintiff is entitled to discover critical facts that underlie his claims, particularly from witnesses who may testify at trial. It is likewise fundamental that in order to avoid producing a properly noticed deponent, a defendant must provide some evidence of undue burden or prejudice. *Croom v. W. Connecticut State Univ.*, 218 F.R.D. 15, 17 (D. Conn. 2002); Fed. R. Civ. P. 26(c)(1). Yet Defendants have made no attempt to do so. Even if the deposition of Salovey posed a burden, moreover, the importance of his testimony to this case would outweigh it because of Salovey's unique knowledge regarding critical issues, including his own fiduciary decision-making process.

### I.    Defendants' failure to attempt to show burden or prejudice defeats their motion.

Defendants' failure to attempt to make *any* showing of burden or prejudice is fatal to their motion. When considering whether to allow the deposition of a corporate executive, courts must "begin with the proposition that *plaintiffs have no burden* to show that the deponents have any relevant knowledge." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (quoting *In re Garlock*, 463 F.Supp.2d 478, 481 (S.D.N.Y. 2006) (emphasis added). "Absent the argument that the discovery sought is irrelevant" a defendant must establish undue burden or that the likely benefit of the deposition would be exceeded by the burden. *Croom,* 218 F.R.D. at 17 (denying motion to quash subpoenas for the depositions of the Chancellor and the human resources executive officer of the Connecticut State University System), *citing* Fed. R. Civ. P. 26(b)(2)(iii); *accord Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012) (reversing grant of protective order where magistrate "failed to analyze, as required by Rule 26(c)(1), what harm

[the executive] would suffer by submitting to the deposition"). A party must establish "good cause" for a protective order under Rule 26(c) by making a "*particular and specific demonstration of fact*, as distinguished from stereotyped or conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, n.16 (1981) (citations and internal quotation marks omitted, emphasis added). "Granting a protective order that totally prohibits a deposition is considered a drastic action that will not be taken absent extraordinary circumstances." *Van Den Eng v. Coleman Co., Inc*., 2005 WL 3776352, at *2 (D.Kan. Aug. 22, 2005); *see also Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("[S]enior executives are not exempt from deposition, and, because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony *only in compelling circumstances*."  (citations and internal quotation marks omitted, emphasis added)).

Here, Defendants have not even *attempted* to demonstrate burden or prejudice. Their motion accordingly fails, as courts in this Circuit routinely find. *See, e.g., AngioDynamics, Inc. v. Biolitec, Inc.*, No. 108-CV-004 LEK RFT, 2010 WL 11541925, at *3 (N.D.N.Y. Sept. 17, 2010) ("Finding no precedent in which a court unconditionally granted a protective order for the deposition of a corporate executive in the absence of a first-hand affidavit from that executive denying his or her unique knowledge of relevant issues, this Court finds the Magistrate Judge's determination erroneous."); *see also Digital Equipment Corp. v. System Industries, Inc*., 108 F.R.D. 742, 744 (D. Mass. 1986) ("[A] claimed lack of knowledge does not provide sufficient grounds for a protective order."); *Johnson v. Jung*, 242 F.R.D. 481, 486 (N.D. Ill. 2007) (rejecting the "I'm too busy" argument, and noting that "[i]f the President of the United States is not immune from responding to reasonably scheduled discovery, neither is the General Secretary

and CEO of the General Board of Pension and Health Benefits of the United Methodist Church."
(internal citation omitted)); *Kennedy v. Jackson Nat. Life Ins. Co.,* No. C07-0371 CW MEJ, 2010
WL 1644944, at *2 (N.D. Cal. Apr. 22, 2010) (finding assertions of the CEO's "lost productivity
and a disrupted schedule," without more, were insufficient to establish good cause).

## II.      Peter Salovey unquestionably possesses relevant and unique knowledge.

Defendants' motion also fails because, as Defendants do not and cannot dispute, Salovey
possesses unique and probative knowledge.

Courts routinely allow the deposition of senior executives where there is evidence that they
have unique knowledge of at least one of the issues in the case. *See, e.g.*, *Six W. Retail
Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001); *Gen. Star Indem. Co.
v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 84 (S.D.N.Y. 2002) ("Courts have allowed depositions
of high ranking corporate executives where questions have been raised regarding corporate
policies."). In *Trusz v. UBS Realty Inv'rs LLC*, No. 3:09 CV 268 JBA, 2011 WL 577331, at *6
(D. Conn. Feb. 8, 2011), for example, the court allowed the deposition of a senior executive
because "[d]espite defendants' protestations, the e-mails*, by themselves*, document that . . . [the
executive] possesses unique personal knowledge of relevant facts . . . ." (emphasis added).[3]
Similarly, in *Roberts v. Los Alamos Nat'l Sec.*, *LLC*, No. 11-CV-6206, 2015 WL 7444636

---

[3] *See also Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 123–24 (S.D.N.Y. 2015) (allowing deposition of
Chipotle's co-CEO based on evidence that he was an "engaged executive and has a role in, and deep understanding
of" the matters at issue in the litigation. The court "assume[d] that [he did] possess information relevant to the issues
in this case" including "unique information" based on this status as an engaged executive. Even granting that he had
a busy schedule and might "have very little to testify about on the relevant topics," given the "dearth" of documents
produced relating to these issues the court ruled that "it [was] unreasonable to also limit the plaintiffs' opportunity to
depose executives who plainly have relevant information, even if some of it may be cumulative."); *Weber v.
FujiFilm Med. Sys. U.S.A.*, Inc., No. 3:10-CV-401-JBA, 2011 WL 677278, at *3 (D. Conn. Jan. 24, 2011) ("The
personal involvement of [the executives] … distinguishes them from the executives in other cases, and [plaintiff] has
accordingly met his burden to establish that their depositions in this matter are necessary and not merely 'apex
depositions' intended to harass." (internal citation omitted)).

(W.D.N.Y. Nov. 23, 2015), the court allowed the deposition of the vice president and vice provost of the University of Rochester in a personal injury case, even though the executive did not personally participate in witness interviews related to the case and others had already testified about the report prepared by the university.

Here, the documents alone demonstrate Salovey's unique knowledge. As set forth above, Salovey's name is on more than 1,400 documents that Defendants have produced, including 107 documents on which no other deponent's name appears. Decl. at ¶ 5. Many of these documents are the most critical documents in the case. Decl. at ¶¶ 2, 6; Ex. 1, 4. Further, the Committee on which Salovey served as one of three members (and the only member who also served on the University's Investments Committee) is a named defendant, and Defendants avoided having Salovey named individually as a defendant only by agreeing to a stipulation accepting liability for his actions and to not challenge a trial subpoena. Doc. 140 at 2.

The rules of discovery are broad and are intended to allow the development of the evidence and testimony for trial. *Engl v. Aetna Life Ins. Co*., 139 F.2d 469, 472 (2d Cir. 1943). Plaintiffs are entitled to explore activities (or lack thereof) that may have occurred but either were not recorded in the minutes or were outside the meetings – particularly where membership on the three-member Committee came with broad personal fiduciary obligations, including monitoring investment performance and Plan expenses. Decl. at ¶ 6; Ex. 4. Plaintiffs are entitled to collect evidence regarding whether Salovey made any efforts to ensure the Plan acted in the best interests of its participants beyond the haphazard and occasional attempts at fiduciary due diligence reflected in the Committee's records.

Defendants rely on *Alliance Indus., Inc. v. Longyear Holding, Inc.*, No. 08-CV-490 S 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010) for the proposition that apex depositions are

disfavored unless the deponent has "personal knowledge of relevant facts *o[r]* some unique knowledge that is relevant to the action." (Mem. at 2, emphasis added). But here, *Defendants have not disputed* that Salovey has relevant knowledge – and cannot, because Salovey was personally and individually responsible for the ongoing fiduciary due diligence that ERISA requires as one of the Committee's three members. *See, e.g.*, 29 C.R.F. §2509.75-5.[4]

### III.    The impending close of fact discovery, and Defendants' lack of action for more than one month after Salovey's deposition was properly noticed, outweigh any potential concerns regarding deposition sequencing.

Because fact discovery will close on April 1, 2019, and because Defendants took no action for over a month to challenge Salovey's properly noticed deposition, any sequencing concern is outweighed by the imminent need for his deposition.

---

[4] Defendants' other cases are similarly inapposite. *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. MDL 1428(SAS)THK, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006), the plaintiffs sought to depose senior executives of the defendant, despite conceding that they were unlikely to have unique knowledge. Here, only Salovey possesses unique knowledge regarding his compliance with his personal fiduciary obligations. Similarly, *Rodriguez v. SLM Corp.*, No. 3:07-CV-1866 WWE, 2010 WL 1286989, at *1 (D. Conn. Mar. 26, 2010), involved two executives who lacked unique personal knowledge because the conduct at issue was handled exclusively by lower-level employees. In this case, Salovey was a fiduciary with individual duties to the Plan. In *Gerber Sci. Int'l, Inc. v. Roland DGA Corp.*, No. 3:06-CV-2024 AVC, 2012 WL 13019000, at *3 (D. Conn. Jan. 18, 2012), a party sought the deposition of a foreign executive in a patent infringement case without "any unique or superior knowledge regarding the research, development and launch of the products accused of infringement in this case." Again, Salovey was individually a fiduciary and directly involved in decision making regarding the Plan. Likewise, the plaintiff in *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG KAW, 2017 WL 4127992, at *3 (N.D. Cal. Sept. 19, 2017), did "not specify what . . . issues" the executive knew. Here, Plaintiffs have specified the knowledge Salovey has – his own activities  as a member of the three-person Committee.

Defendants also cite *Wei-Ping Zeng, v. Marshall University et al.*, No. 3:17-CV-03008, 2019 WL 937328, at *3 (S.D.W. Va. Feb. 26, 2019) for the proposition that depositions of multiple committee members may result in cumulative testimony. However, Defendants do not mention that the issue in *Wei-Ping Zeng* was whether to allow depositions in excess of the ten provided by the Federal Rules – not whether to permit an apex deposition. Defendants also cite *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 2590, 2017 WL 2266983, at *3 (S.D.N.Y. Apr. 26, 2017), for the proposition that knowledge of members of a committee may be overlapping. But that case did not in any way preclude depositions of multiple committee members.

In *Chevron Corp.*, the court allowed an "apex deposition" to proceed, despite the fact that it was unclear whether it might be duplicative, because of the importance of the case and the impending discovery deadline:

> Under other circumstance, it might be prudent to defer [an executive's] deposition until it could be determined whether his testimony would likely be redundant to that of other witnesses. Here, however, we do not have that luxury, as discovery is to be completed by the end of this month. Finally, this is far from a trivial case. Enough is at stake to justify the deposition of an apex witness . . . . Chevron's motion to quash his deposition is therefore denied.

2013 WL 1896932, at *1 (citing *Treppel v. Biovail Corp.,* No. 03 Civ. 3002, 2006 WL 468314, at *2 (S.D.N.Y. Feb. 28, 2006)). Fact discovery is set to close on April 1, 2019. Despite the fact that Plaintiffs requested Salovey's deposition on January 15 and noticed it on January 28, 2019 after Defendants refused to provide a date, Defendants did nothing to challenge the notice until the filing of this motion.

Moreover, requiring Plaintiffs to wait to take a high-level executive's deposition until after taking lower-level depositions is only appropriate where the high-level executive did not have any independent knowledge regarding the facts at issue in the case. *See In re Google Litig*., No. C 08-03172 RMW PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (granting motion to depose executive Larry Page based on his unique and first-hand knowledge of the case that could not be secured by other means of discovery, including the depositions of other employees). *See also First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.,* No. C03-02013 RMW RS, 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) ("The mere fact, however, that other witnesses may be able to testify as to what occurred at a particular time or place does not mean that a high-level corporate officer's testimony would be 'repetitive.' Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred."); *DR Sys., Inc. v. Eastman Kodak Co.,* No. 08-CV-669-H (BLM), 2009 WL 2973008, at *3 (S.D. Cal. Sept. 14,

2009) ("[T]he mere fact that one person testified about a conversation does not make any additional testimony about the conversation repetitive."); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 142 (D. Mass. 1987) ("When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action.").

Here, Plaintiffs allege that actions (and inaction) of Defendants, including Salovey as a member of the three-person Committee, resulted in millions of dollars of losses to the Plan and its participants. Defendants cite *Mendillo v. Prudential Ins. Co. of Am.*, No. 3:12-CV-1383 WWE, 2013 WL 6511944, at *3 (D. Conn. Dec. 12, 2013) for the proposition that even when apex depositions are allowed, they should take place later in the deposition schedule. But the *Mendillo* decision in fact *allowed* the plaintiffs to proceed with the deposition of the apex deponent in question. *Id*. While the court did consider the testimony taken to date in reaching its decision, it did not hold that the depositions needed to be taken in any particular sequence.[5] *Id*. In any event, Salovey will not be deposed as an "apex" deponent, but rather will be deposed in connection with his role on the three-person Committee whose decisions are at issue in this case. The fact that Salovey was subsequently promoted should not preclude Plaintiffs from obtaining the critical information that he uniquely possesses.

---

[5] Defendants also cite *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) for the proposition that other employees may be required to testify prior to a company's President. Mem at 8-9. Notably, that court held that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Id*. Thus, the "trial judge was merely exercising the broad discretion that this court has long recognized he has in controlling the timing of discovery" and it was for that reason that the trial court's action in vacating plaintiffs' notice of deposition was not reversible error. *Id*.

## **CONCLUSION**

For the foregoing reasons, Defendants' "Emergency" Motion for Protective Order should be denied.


Dated: March 11, 2019                                     Respectfully submitted,

                                                          /s/ Andrew D. Schlichter
                                                          SCHLICHTER BOGARD & DENTON LLP
                                                          Jerome J. Schlichter (phv01476)
                                                          Heather Lea, (phv08416)
                                                          Andrew D. Schlichter (phv09955)
                                                          Sean E. Soyars (phv08419)
                                                          Joel D. Rohlf (phv09849)
                                                          Alexander L. Braitberg (phv09929)
                                                          100 South Fourth Street, Suite 1200
                                                          St. Louis, Missouri 63102
                                                          (314) 621-6115, (314) 621-7151 (fax)
                                                          jschlichter@uselaws.com
                                                          hlea@uselaws.com
                                                          aschlichter@uselaws.com
                                                          ssoyars@uselaws.com
                                                          jrohlf@uselaws.com
                                                          abraitberg@uselaws.com

                                                          Stuart M. Katz (ct12088)
                                                          Cohen and Wolf, P.C.
                                                          1115 Broad Street
                                                          Bridgeport, CT 06604
                                                          Telephone: (203) 368-0211
                                                          Facsimile: (203) 337-5505
                                                          skatz@cohenandwolf.com

                                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2019, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ Andrew D. Schlichter
          Andrew D. Schlichter