```
                                                              Page 1
 1           IN THE UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF CONNECTICUT

 3    -------------------------)

 4    JOSEPH VELLALI et al.,    )

 5             Plaintiffs,      )

 6       v.                     ) No.:16-cv-01345-AWT

 7    YALE UNIVERSITY et al.,   )

 8             Defendants.      )

 9    -------------------------)

10

11

12         VIDEOTAPED DEPOSITION OF:  JULIE KIMBALL

13               DATE:  FEBRUARY 15, 2019

14                      HELD AT:

15    YALE UNIVERSITY OFFICE OF THE GENERAL COUNSEL

16                  2 Whitney Avenue

17                New Haven, Connecticut

18                       - - -

19

20

21

22

23    Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

24
```

JULIE KIMBALL                                                February 15, 2019

Page 159

1                        (Pause.)
2              THE WITNESS:  How do I get that?  I
3    don't see that far.
4              MR. NOWAK:  Can you see that?
5              THE WITNESS:  Yeah, that would be
6    fine.
7              MR. BRAITBERG:  Do you need some help
8    with the iPads?
9              MR. NOWAK:  She is just zooming at
10   the bottom because it cuts off a little bit, but I
11   think I got it.
12             THE WITNESS:  Okay, got it.  Okay.
13                       (Pause.)
14       A.   Okay, I'm with you now.
15       Q.   Okay.  So what started this whole chain of
16   events was TIAA's offer of a revenue credit account;
17   right?
18       A.   Yes.
19       Q.   And so the time pressure was to make sure
20   that the fees proposed in the amended recordkeeping
21   agreement that also set up the Revenue Credit
22   Account were reasonable; is that right?
23       A.   Yes.
24       Q.   And so the pressure was to make sure that

JULIE KIMBALL                                              February 15, 2019

```
                                                              Page 160
 1    the fees proposed by TIAA were reasonable; is that
 2    true?
 3        A.    Yes.
 4        Q.    And you felt that you needed to hire a
 5    consultant in order to determine whether or not the
 6    fees were reasonable; is that true?
 7              MR. NOWAK:  Objection to form.
 8        A.    Yes.
 9        Q.    So up to that point, Yale didn't know
10    whether or not the fees were reasonable; is that
11    true?
12              MR. NOWAK:  Objection, form.
13        A.    I don't know.  I mean, I wasn't, you
14    know -- I wasn't as involved in that thought
15    process, so I'm not -- I'm not sure.
16        Q.    Well, that was what the consultant was
17    hired to assess, right, the reasonability of the
18    fees?
19        A.    Yes.
20        Q.    And that was necessary because Yale
21    couldn't be confident at that point that the fees
22    were reasonable; is that true?
23              MR. NOWAK:  Objection, form.
24        A.    Yeah.  I mean, you could say that.
```

JULIE KIMBALL                                              February 15, 2019

```
                                                              Page 161
1     Q.    There would be no reason to hire a
2  consultant to assess the reasonability of the fees
3  if Yale knew whether the fees were reasonable;
4  right?
5              MR. NOWAK:  Objection to form.
6     A.    Well, I think the committee just thought
7  that it was a good idea to have an independent
8  review.
9     Q.    Okay.  An independent review of whether or
10 not the fees were reasonable?
11    A.    Yeah.  I mean, that's what I believed.
12    Q.    In order to have the consultant's expert
13 advice on whether or not the fees were reasonable;
14 right?
15             MR. NOWAK:  Objection, form.
16    A.    Yes.
17    Q.    Yale didn't have any in-house experts who
18 were able to assess the reasonability of the fees at
19 that point; is that right?
20             MR. NOWAK:  Objection, form.
21    A.    I am not an expert in this.  I mean, Hugh
22 Penney definitely has a lot of experience in this
23 area, so I don't know if saying that we didn't have
24 any experts in the office -- I think that there is
```

JULIE KIMBALL                                    February 15, 2019

```
                                                      Page 162
 1   general -- you know, Hugh certainly has advanced
 2   knowledge of a lot of this, so I'll kind of just
 3   leave it at that.
 4       Q.   You recall the language we looked at from
 5   Caroline Hendel earlier in the sequence where she
 6   mentioned that she thought the whole point of the
 7   consultant was to do the advising on negotiating a
 8   better fee; do you recall that?
 9       A.   Yes.
10       Q.   And so Yale felt that it was necessary to
11   have a consultant to help advise on negotiating a
12   better fee; is that accurate?
13            MR. NOWAK:  Objection, form.
14       A.   Yes.
15       Q.   And part of the reason for engaging the
16   consultant was to do a reasonableness check.
17            Do you recall that language?
18       A.   Yes.
19       Q.   And those were your words; right?
20       A.   Correct.
21       Q.   And so you felt it was necessary in order
22   to check the reasonableness of fees to engage a
23   consultant for that purpose; is that right?
24            MR. NOWAK:  Objection to form.
```

JULIE KIMBALL                                           February 15, 2019

```
                                                           Page 163
 1      A.    That's correct.
 2      Q.    Let's take a look at the minutes again.
 3   Let's go to the October 2 of 2012 minutes.
 4              MR. NOWAK:  These are YALE00231943.
 5              MR. BRAITBERG:  Thank you.
 6      Q.    Did you attend this meeting?
 7      A.    Yes, I did.
 8      Q.    And do you believe the minutes, this
 9   two-page document, to be an accurate reflection of
10   what occurred at that meeting?
11              MR. NOWAK:  Objection to form.
12      A.    Yes.  I believe so.
13      Q.    All right.  Do you see the paragraph
14   beginning, At the May 16, 2012 meeting, the
15   committee had approved engaging an outside
16   consultant?
17      A.    Yes.
18      Q.    Now, at this point in time, Aon's
19   involvement was on a per project basis; right?
20              MR. NOWAK:  Objection, form.
21      A.    What do you mean by "per project basis"?
22      Q.    In other words, it wasn't
23   all-encompassing.  You had to engage them for the
24   specific purpose of reviewing the reasonableness of
```

```
                                                              Page 238
 1                   C E R T I F I C A T E

 2    STATE OF CONNECTICUT

 3              I, SANDRA SEMEVOLOS, a Registered Merit
      Reporter and Notary Public within and for the State
 4    of Connecticut, do hereby certify that I reported
      the deposition of JULIE KIMBALL on FEBRUARY 15,
 5    2019, at the YALE UNIVERSITY OFFICE OF THE GENERAL
      COUNSEL, 2 Whitney Avenue, New Haven, Connecticut.
 6
                I further certify that the above-named
 7    deponent was by me first duly sworn to testify to
      the truth, the whole truth and nothing but the truth
 8    concerning her knowledge in the matter of the case
      of JOSEPH VELLALI et al., vs. YALE UNIVERSITY et
 9    al., now pending IN THE UNITED STATES DISTRICT
      COURT, FOR THE DISTRICT OF CONNECTICUT.
10
                I further certify that the within
11    testimony was taken by me stenographically and
      reduced to typewritten form under my direction by
12    means of COMPUTER ASSISTED TRANSCRIPTION; and I
      further certify that said deposition is a true
13    record of the testimony given by said witness.

14              I further certify that I am neither
      counsel for, related to, nor employed by any of the
15    parties to the action in which this deposition was
      taken; and further, that I am not a relative or
16    employee of any attorney or counsel employed by the
      parties hereto, nor financially or otherwise
17    interested in the outcome of the action.

18
                WITNESS my hand this 27th day of February,
19    2019.

20
                    [signature: Sandra Semevolos]
21

22    _____
      Sandra Semevolos, RMR, CRR, CRC, CSR #74
23    Notary Public
      My Commission Expires:  September 30, 2020
24
```