**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

JOSEPH VELLALI, NANCY S.
LOWERS, JAN M. TASCHNER, AND
JAMES MANCINI, individually and as
representatives of a class of participants
and beneficiaries on behalf of the Yale
University Retirement Account Plan,

          *Plaintiffs*,

  v.

YALE UNIVERSITY, MICHAEL A.
PEEL, AND THE RETIREMENT PLAN
FIDUCIARY COMMITTEE,

          *Defendants*.

No. 3:16-cv-01345-AWT

Hon. Alvin W. Thompson

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION [DOC. 137]**

**CONTENTS**

Introduction ........................................................................................................................ 1

    I.    Article III does not require the named Plaintiffs to have invested in every fund in the Plan in order to seek plan-wide relief. ........................................................ 1

    II.   The named Plaintiffs are adequate class representatives. .................................. 7

Conclusion ....................................................................................................................... 10

## INTRODUCTION

Defendants make no effort to distinguish the overwhelming weight of authority granting class certification of similar ERISA fiduciary breach claims, including numerous cases within the Second Circuit. *See* Pls.' Mem. at 2, 18–21 (Doc. 137-1). Defendants also concede that Plaintiffs satisfy three of the four Rule 23(a) prerequisites, as well as Rule 23(b)(1). And the two arguments raised in Defendants' opposition—(1) that Plaintiffs had to invest in all 115 of the Plan's investment options to have "standing" to seek plan-wide relief and (2) are too ignorant to adequately protect the interests of the class, Fed.R.Civ.P. 23(a)(4)—have repeatedly been rejected by the courts. *Taylor v. United Techs. Corp.*, No. 06-1494, 2008 WL 2333120, *2–3, 5 (D.Conn. June 3, 2008) (rejecting both standing and adequacy arguments); *Sacerdote v. N.Y. Univ.*, No. 16-6284, 2018 WL 840364, *5, *7 (S.D.N.Y. Feb. 13, 2018) (same); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-9936, 2017 WL 3868803, *7, *10 (S.D.N.Y. Sep. 5, 2017) (same); *Cunningham v. Cornell Univ.*, No. 16-6525, 2019 WL 275827, *3–4 (S.D.N.Y. Jan. 22, 2019) (rejecting standing argument); *Cates v. Trs. of Columbia Univ.*, No. 16-6524, Doc. 218 (S.D.N.Y. Nov. 15, 2018) (same); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155–56 (S.D.N.Y. 2017) (same).[1] This Court should do the same, for the following reasons.

**I.    Article III does not require the named Plaintiffs to have invested in every fund in the Plan in order to seek plan-wide relief.**

During the class period, the Plan included as many as 115 options for participants to invest

---

[1] *Cassell v. Vanderbilt Univ.*, No. 16-2086, 2018 WL 5264640, *2–5 (M.D. Tenn. Oct. 23, 2018) (rejecting both standing and adequacy arguments); *Henderson v. Emory Univ.*, No. 16-2920, 2018 WL 6332343, *2–3, *6–7 (N.D. Ga. Sep. 13, 2018)(same); *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, *4, *9 (M.D.N.C. Apr. 13, 2018) (same); *Cryer v. Franklin Templeton Res., Inc.*, No. 16-4265, 2017 WL 4023149, *4, *6 (N.D.Cal. July 26, 2017) (same); *Tussey v. ABB, Inc.*, No. 06-4305, 2007 WL 4289694, *2, *8 (W.D. Mo. Dec. 3, 2007)(same); *Marshall v. Northrop Grumman Corp.*, No. 16-6794, 2017 WL 6888281, *8–9 (C.D. Cal. Nov. 2, 2017)(rejecting adequacy argument by same lawyers); *McDonald v. Edward D. Jones & Co.*, No. 16-1346, 2017 WL 372101, *2 (E.D.Mo. Jan. 26, 2017)(rejecting standing argument); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-1614, 2016 WL 4507117, *5 (C.D.Cal. Aug. 5, 2016)(same); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 566–67 (D.Minn. 2014)(same); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D.Mass. 2012)(same).

their accounts. *See* Pls.' Mem. at 4–5 (Doc. 137-1);[2] Am. Compl. (AC) ¶105 (Doc. 57).

Defendants have "a continuing duty to monitor" each of those 115 investments and to "remove

imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015). The gravamen of Count V

is that Defendants systematically failed to monitor *any* of the Plan's investment options on an

ongoing basis and to remove imprudent ones. AC ¶¶167–69, 244. As a result, the Plans included

many investment options that a prudent fiduciary would have removed. *Id*. As of the filing of the

original complaint, 57 of the Plan's investment options had underperformed their benchmarks

over the previous five years. *Id*. ¶168.

Yale contends that the named Plaintiffs lack "standing" to pursue their claim that

Defendants failed to monitor the Plan's investments because they did not invest in all of the 57

underperforming funds. Opp. at 1–10 (Doc. 157). This argument fails for multiple reasons.

*First*, the basic premise of Yale's argument—that Plaintiffs could not possibly have suffered

an injury-in-fact unless they personally invested in each fund (Opp. at 1, 5)—misunderstands

what Article III requires. "Injury in fact is a low threshold[.]" *Ross v. Bank of Am., N.A.*, 524

F.3d 217, 222 (2d Cir. 2008). The requisite injury "differs from a legal interest" and "need not be

capable of sustaining a valid cause of action" or to support "a claim for damages[.]" *Denney v.

Deutsche Bank AG*, 443 F.3d 253, 264–65 (2d Cir. 2006). "[F]orgone … opportunities" for

savings, *id*. at 265, and "reduced choice and diminished quality" of financial services, *Ross*, 524

F.3d at 223, are sufficient to satisfy Article III.

All Plan participants were exposed to an investment lineup with dozens of imprudent funds.

Even though the named Plaintiffs were savvy enough to avoid some of those options, they

suffered a cognizable Article III injury by having their choices constrained and losing the

---

[2] "Doc." page citations refer to the page number on the PDF header.

opportunity to invest in prudent options that would have been available had Defendants fulfilled their duty. *Sacerdote*, 2018 WL 840364, *7 ("[W]hile not every member of the class participated in the challenged fund options, the alleged foregone opportunities from funds that were not included and the alleged reduction in choice that resulted is an alleged injury in fact.") (citing *Ross*, 524 F.3d at 223). Yale's argument should be rejected for this reason alone.

*Second*, because Plaintiffs bring this action "in a representative capacity" on behalf of the Plan under 29 U.S.C. §1132(a)(2), the relevant injury for Article III purposes is a loss to the Plan. *Coan v. Kaufman*, 457 F.3d 250, 257 (2d Cir. 2006) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)). Under Second Circuit law, plaintiffs who bring a §1132(a)(2) action "to recover for injuries to the Plan" have an "injury-in-fact sufficient for constitutional standing." *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Council of Suffolk, Inc.*, 710 F.3d 57, 66–67 n.5 (2d Cir. 2013).

Accordingly, the question is not whether there was an "*individualized* injury to the plan participant" as Yale contends (Opp. at 9), but whether Plaintiffs have alleged an injury to the *Plan*. *Sacerdote*, 2018 WL 840364, at *7 ("[P]laintiffs need not prove individualized damages in an ERISA class action case; rather, an injury *to the Plans* suffices.") (citing *L.I. Head Start*, 710 F.3d at 67); *Leber*, 323 F.R.D. at 155 ("Plaintiffs have standing to assert all of the claims brought in this action even though they did not invest in each of the [funds] at issue.") (citing *L.I. Head Start*, 710 F.3d at 65); *Cates*, Doc. 218 at 1 (adopting analysis in *Leber*); *Cunningham*, 2019 WL 275827, *3 (adopting "the reasoning laid out in detail in" *Sacerdote*, *Leber*, and *Cates*). Plaintiffs allege that Yale's failures to monitor the Plan's investments "caused massive losses to the *Plan*" of "tens of millions of dollars." AC ¶¶167, 169, 247 (emphasis added). "The fact that only some of these alleged losses manifested themselves in the named plaintiffs' individual accounts does

not deprive plaintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred." *Leber*, 323 F.R.D. at 156 (collecting cases).

Defendants contend that *L.I. Head Start* "does not apply" here because it involved a defined benefit plan, and not a defined contribution plan like the Plan. Opp. at 6–7, 9. But "[n]othing in the *Long Island Head Start* decision indicates that the Court of Appeals relied on any unique characteristics of defined benefit plans to reach its conclusion about standing." *Leber*, 323 F.R.D. at 155. Rather, "the primary basis of *Long Island Head Start*'s reasoning" was "the derivative nature of the suit before it." *Id.*; *Cunningham*, 2019 WL 275827, *3 (agreeing with *Leber* "that *L.I. Head Start* remains binding precedent for all suits brought in a derivative capacity."). Because §1132(a)(2) does not authorize recovery of individualized relief distinct from plan relief, *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008), a §1132(a)(2) claim is a derivative claim in the defined contribution context just as it is in the defined benefit context.

The authorities cited by Defendants are inapposite. Unlike *L.I. Head Start*, *Kendall* involved a claim under 29 U.S.C. *§1132(a)(3)*, not §1132(a)(2). *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009). While §1132(a)(2) provides for recovery of a *plan's* remedies only, a §1132(a)(3) claim is not a derivative action. *See* 29 U.S.C. §1132(a)(2), §1109(a); *cf.* 29 U.S.C. §1132(a)(3). And the non-precedential *Taveras* decision relies on *Kendall* for its requirement of "individualized injury to the plan participant," which is inapposite for the reason just stated. *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015).[3]

*Third*, even accepting Yale's theory that individualized injury is required, each of the named Plaintiffs has shown an "actual injury to his own Plan account," which is sufficient for Article III

---

[3] Yale also cites *Donoghue v. Bulldog Investors General P'ship*, 696 F.3d 170 (2d Cir. 2012), which is a Securities Exchange Act case, not an ERISA case. *Id.* at 172. *Donoghue* did not follow *Kendall* as Yale suggests—it found *Kendall* "distinguishable." *Id.* at 178.

standing. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009); *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) (allegation that "retirement accounts were worth less than they would have been absent the breach of duty" satisfies Article III). As shown in Exhibit 1, the named Plaintiffs collectively invested in a total of approximately 40 of the Plan's investment options during the class period, including many of the 57 underperforming funds cited in the amended complaint. Exhibit 1;[4] *see* AC at 3–6 (¶8), 84–86 (¶168). Yale does not dispute that Plaintiffs have standing to challenge the funds in which they invested. *Cf.* Opp. at 2 (disputing standing only as to options in which Plaintiffs "did *not* invest") (emphasis added).

Because Plaintiffs have made the required "threshold jurisdictional showing" by alleging losses to their plan accounts (*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 242–43 (2d Cir. 2007)), whether they can pursue the full scope of the Plan's losses has nothing to do with standing, but rather depends on the relief available under §1132(a)(2). *Braden*, 588 F.3d at 593 (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D. Minn. 2014). The plain text of §1132(a)(2) and §1109(a) authorizes Plaintiffs to seek recovery of all of the Plan's losses. *Braden*, 588 F.3d at 593 (plaintiff could seek relief "that sweeps beyond his own injury" because §1132(a)(2) provides "a cause of action to seek relief *for the entire Plan*.") (emphasis added); *see also LaRue*, 552 U.S. at 261 (Thomas, J., concurring) ("On their face," §§1109(a) and 1132(a)(2) "permit recovery of *all* plan losses caused by a fiduciary breach.").

That the named Plaintiffs here have suffered an individualized injury further distinguishes the cases cited by Yale, which involved claims that it was imprudent to retain a *specific* investment in a plan—such as an unduly risky single-stock fund—even though the plaintiff

---

[4] Exhibit 1 is a Federal Rule of Evidence 1006 summary of the named Plaintiffs' account statements, which shows the investment options in which each named Plaintiff invested during the class period.

suffered no loss related to that option. *See, e.g., Taveras*, 612 F. App'x at 29 (claim challenged the UBS Company Stock Fund only). The reasoning of those cases is inapplicable to claims, as here, challenging "management of the Plan as a whole." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-1614, 2016 WL 4507117, *4–5 (C.D.Cal. Aug. 5, 2016). To the extent Plaintiffs' claim is construed as challenging specific funds such as the CREF Stock and TIAA Real Estate accounts, multiple named Plaintiffs invested in those options. Ex. 1; AC ¶8(c); *cf. Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, *10 (D.D.C. Jan. 8, 2019) (dismissing claim because named plaintiff did *not* invest in TIAA Real Estate Account). Even Yale's case recognizes that a plaintiff who invested in one fund has standing to represent a class challenging other funds implicating the same concerns. *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 16-1251, 2017 WL 2909714, *7 (D. Conn. July 6, 2017).[5]

*Finally*, the Second Circuit's "class standing" doctrine, as well as general class action principles, Plaintiffs may represent a class of the Plan's participants who invested in different options that are flawed for similar reasons. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, *4 (M.D.N.C. Apr. 13, 2018); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D.Minn. 2014); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D.Mass. 2012). Under *NECA*, the named Plaintiffs have "class standing" because all of the Plan's investments were subject to the "same set of concerns"—Yale's flawed or non-existent process for monitoring

---

[5] Several of Yale's cases do not even involve challenges to investment options in defined contribution plans. *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 486 (W.D.N.Y. 2012) (claim involved "fail[ure] to keep accurate records"); *In re SLM Corp. ERISA Litig.*, No. 08-4334, 2010 WL 3910566, *12 (S.D.N.Y. Sep. 24, 2010) (plaintiffs lacked standing because they "have neither participated in nor been beneficiaries of the Retirement Plan."); *Faber v. Metro. Life Ins. Co.*, No. 08-10588, 2009 WL 3415369, *1 (S.D.N.Y. Oct. 23, 2009) (claim for death benefits under 29 U.S.C. §1132(a)(3)).

investments. AC ¶¶167–69, 244; *NECA*, 693 F.3d at 162; *Cunningham*, 2019 WL 275827, *4

*Moreno*, 2017 WL 3868803, *10; *Leber*, 323 F.R.D. at 156–57.

Yale's attempt to defeat class standing is unavailing. Opp. at 9–10. Yale cites *Retirement*

*Board*, which is not an ERISA case, for the point that class standing does not exist when there

are "'significant differences in the proof that will be offered' between the conduct that injured

the named plaintiff and that which harmed other class members" undermines class standing. *Id*.

(quoting *Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 775

F.3d 154, 163 (2d Cir. 2014)). But there, the defendant did not manage each of the separate trusts

in the same manner. *See* 775 F.3d at 162–63. Here, the same Fiduciary Committee was

responsible for monitoring and removing investment options for the Plan, and used the same

allegedly flawed process for the Plan as a whole. Pls.' Mem. at 4; AC ¶¶167–69, 244.

## II.     The named Plaintiffs are adequate class representatives.

Defendants' argument that the named Plaintiffs—Yale's own staff members—are

inadequate representatives should also be rejected.

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests

are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette*

*Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted). A lack of knowledge of the details

of the case is irrelevant; as long as the plaintiff "understood the nature of his proposed role in the

litigation and demonstrated his willingness to carry it forward," adequacy was satisfied. *Id.* at 62.

Indeed, the Supreme Court has "expressly disapproved of attacks on the adequacy of a class

representative based on the representative's ignorance"—Yale's exact strategy here. *Baffa*, 222

F.3d at 61 (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–374 (1966)).

Plaintiffs amply meet this standard. Plaintiffs understand their claims—"to recover the Plan's losses" from imprudent investment options and excessive fees paid to the Plan's service providers—and are committed to representing the class, reviewing documents sent by counsel, and monitoring the progress of the case. *See* Plaintiffs' Declarations (Docs. 137-12 to 137-15). Plaintiffs have further demonstrated their commitment by responding to discovery and submitting to lengthy depositions. *See* Docs. 157-1 through 157-4; Exhibits 2–5 hereto.

Plaintiffs' deposition testimony—much of which Defendants selectively omit—further shows Plaintiffs' understanding of the case and commitment to its vigorous prosecution. Plaintiff Vellali understands that Defendants' conduct in managing the Plan is governed by ERISA, including the duty of loyalty and duty of prudence. *Id*. at 78:24–79:25. He decided to pursue the case because "Yale fell short in the management of our funds." Ex. 2 at 50:13–18. He has read the complaint and understands the allegations. *Id*. at 75:21–76:24, 77:7–15. Mr. Vellali knows that the Plan previously had "well over a hundred" investment options. *Id*. at 80:3–7. He understands that funds were available to the Plan which had the same investment but "the fees were much less." *Id*. at 50:21–51:10. The Plan should have been paying lower fees in light of "the volume of money that [Yale] as an institution" had invested in the CREF Stock Account. *Id*. at 51:18–52:13, 121:5–19. He further testified that a claim regarding institutional and retail shares of mutual funds is "a major basis of the Complaint." *Id*. at 56:3–25. Mr. Vellali also understands that the complaint includes claims regarding excessive recordkeeping fees and the TIAA Real Estate Account. *Id*. at 52:14–21, 110:6–112:1, 120:9–19, 123:3–124:9. Although he could not specifically identify which claims the Court dismissed, Mr. Vellali "look[ed] at them at the time," and understands that the case was "whittled down." *Id*. at 78:10–23. Mr. Vellali was personally harmed—paying fees that were too high and the effect of compounding have had a

"huge bearing on returns" in his account. *Id*. at 57:21–58:15, 58:20–24, 122:16–123:2. He is

seeking compensation "that would positively affect" his account, and to require Defendants to

"fulfill the responsibility and their obligation to the plan" going forward. *Id*. at 72:22–74:8.

Mr. Vellali "relied on the University to manage the plan on [his] behalf, and the behalf of all

[his] fellow employees that are in the same plan," and believes that Yale has not properly

managed the Plan. *Id*. at 58:16–19, 123:20–124:9. He knows that the Fiduciary Committee is the

Yale entity with responsibility for managing the Plan. *Id*. at 58:25–59:13. Mr. Vellali knows the

identities of the Committee members, including: Yale President Peter Salovey; Defendant

Michael Peel, Yale's former Vice President of Human Resources; Janet Lindner, Mr. Peel's

successor; Benjamin Polak, University Provost; Shauna King, Vice President of Finance and

Administration; and Steven Murphy, Vice President of Finance. *Id.* at 59:14–60:12, 66:20–67:6,

67:12–68:10, 68:16–69:9, 69:12–70:1

Regarding his role as a class representative, Mr. Vellali is seeking to obtain relief on behalf

of "anyone who is in the plan," and knows that the class includes about 17,000 individuals. *Id*. at

74:14–75:2, 81:6–15, 82:19–83:6. He understands his duty to "make sure that [he is] fairly

representing the people that would be affected by the suit." *Id*. at 83:7–17. He has reviewed

documents from his attorneys, including the complaint and amended complaint before they were

filed. *Id*. at 75:21–76:24, 77:21–78:9, 83:11–15, 88:17–89:5. He communicates "[f]airly often"

with counsel and provided Plan-related documents to counsel to assist in preparing the

complaint. *Id*. at 77:3–77:6, 87:10–88:5.

The other named Plaintiffs demonstrated a similar understanding of their claims and their

responsibilities to the class, and a willingness to participate in discovery and to vigorously

pursue this action.[6] Courts in similar ERISA cases have consistently found such an ability to describe the claims in general terms sufficient to satisfy the adequacy requirement.[7]

While Defendants criticize Plaintiffs for having no concerns about the Plan before contacting counsel, "that is simply the nature of a claim of this type. The average person would have no reason to believe that the administrator of his 401(k) plan was acting imprudently." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008); *Sims v. BB&T Corp.*, No. 15-732, 2017 U.S.Dist.LEXIS 137738, *18–19 (M.D.N.C. Aug. 28, 2017) ("lack of concerns about the Plan" before consulting with counsel "does not make the investor an inadequate representative."); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 351 (N.D. Ill. 2008) (similar); *Tussey v. ABB, Inc.*, No. 06-4305, 2007 U.S.Dist.LEXIS 88668, *25 (W.D. Mo. Dec. 3, 2007) (similar). "Far from showing … ignorance of the litigation" or an inability to protect the interests of the class, reliance on counsel "demonstrates [plaintiff's] ability to appreciate the limits of his knowledge and rely on those with the relevant expertise." *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *16–17 (quoting *Baffa*, 222 F.3d at 62).

## CONCLUSION

The Court should grant Plaintiffs' motion in its entirety.

---

[6] Ex. 3 at 38:22–41:5, 41:14–42:12, 50:20–52:10, 53:15–57:18, 59:1–17, 65:16–68:18, 71:9–72:15, 73:1–19 (Mancini); Ex. 4 at 28:12–30:2, 30:20–34:22, 36:5–37:13, 40:7–20, 41:14–21, 42:14–43:18, 44:2–6, 44:19–47:13, 50:7–53:3, 54:15–55:8, 79:1–10, 81:24–82:13, 83:14–84:3, 85:13–20, 86:9–14 (Taschner); Ex. 5 at 55:7–58:14, 62:18–22, 63:16–65:8, 66:19–67:14, 73:23–74:7, 75:3–77:8, 78:13–82:9, 85:16–86:23, 87:21–88:22, 134:22–137:7, 140:8–15 (Lowers).

[7] *Sacerdote*, 2018 WL 840364, at *5; *Cryer v. Franklin Templeton Res., Inc.*, No. 16-4265, 2017 WL 4023149, *6 (N.D. Cal. July 26, 2017)(plaintiff understood case involved employer's proprietary funds in 401(k) plan); *Moreno*, 2017 WL 3868803, *7 (plaintiffs understood "the suit concerns allegations that Defendants' investment offerings were improper"); *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2011 WL 3505264, *14–15 (C.D. Cal. Mar. 29, 2011)(plaintiffs described allegations "that defendants' conduct caused them to pay excessive fees and caused the plans that they participated in to lose money"); *Tibble v. Edison Int'l*, No. 07-5359, 2009 WL 6764541, *6 (C.D. Cal. June 30, 2009), *aff'd*, 729 F.3d 1110, 1126–27 (9th Cir. 2013)(plaintiffs understood case was about reasonableness of the "administrative fees that are paid for a 401(k) plan"); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110–11 (N.D. Cal. 2008)(plaintiffs "demonstrated familiarity with the underlying theory" that "Defendants acted imprudently as guardians of the Plan's assets"); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 351 (N.D. Ill. 2008)(plaintiffs described claims alleging "unreasonable and undisclosed fees being charged to the Plan.").

January 15, 2019                    Respectfully submitted,

                                          /s/ Jerome J. Schlichter

SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (phv01476)
Heather Lea, (phv08416)
Sean E. Soyars (phv08419)
Joel D. Rohlf (phv09849)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115
jschlichter@uselaws.com
hlea@uselaws.com
ssoyars@uselaws.com
jrohlf@uselaws.com

Stuart M. Katz (ct12088)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Telephone: (203) 368-0211
Facsimile: (203) 337-5505
skatz@cohenandwolf.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2019, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ Jerome J. Schlichter
Jerome J. Schlichter