UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------- x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
          Plaintiffs,            :   Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
          Defendants.            :
------------------------------- x
```

## ORDER RE PLAINTIFFS' MOTION TO COMPEL

For the reasons set forth below, Plaintiffs' Motion to Compel Additional Testimony from Defendants' Expert Glenn Poehler (ECF Nos. 236 and 237) is hereby GRANTED in part and DENIED in part.

### Legal Standard

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires disclosure of "the facts or data" considered by an expert witness in forming his or her opinion. "[F]acts or data [is] to be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any

facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." 2010 Advisory Committee Note; see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 293 F.R.D. 568, 577 (S.D.N.Y. 2013) ("[T]he 2010 Amendment to Rule 26 requires disclosure of 'material of a factual nature' considered by testifying experts. . . . Attorneys' theories or mental impressions are protected, but everything else is fair game.") (internal quotations and citations omitted). This includes information explicitly relied upon in an expert report irrespective of claims of confidentiality. See Lugosch v. Congel, 219 F.R.D. 220, 250 (N.D.N.Y. 2003) (disclosure of work papers required by Rule 26, notwithstanding work product protection, because expert considered and specifically referred to the work papers in his expert report).

Where an expert acknowledges relying on or otherwise considering facts or data in forming an opinion, that material has been placed directly in issue. In U.S. Surgical Corporation v. Orris, Inc., 983 F. Supp. 963, 970 (D. Kan. 1997), the plaintiff argued that its expert should not have been compelled to reveal to the defendants the identities of individuals who participated in a survey conducted by its expert because the expert "promised the individuals that their identities would remain confidential." The court concluded that the "plaintiff should not be able to conduct a survey for litigation and subsequently protect the survey from

scrutiny by promising confidentiality to the participants. Plaintiff has placed the survey's underlying data directly in issue by relying on the survey in plaintiff's motion for partial summary judgment." Id.

One Source Environmental, LLC v. M + W Zander, Inc., No. 12-cv-145, 2015 WL 4663851 (D. Vt. Aug. 6, 2015), provides a helpful example of the distinction between the type of situation where material has been considered for purposes of Rule 26(a)(2)(B) and the type of situation where it has not. There, the plaintiff used a damages expert who "relied on many sources of information in forming his opinions on industry custom and practice, including his own library of more than 275 representative agreements." Id. at *1. In his report, the expert stated:

> In my history of dealing with representative agreements, dating back to the 1970s, I remember dealing with no agreements that allowed a manufacturer to retain a portion of the manufacturers' representative's commissions for itself. I sampled my library of over 275 representative agreements and could find no example of an agreement whereby a manufacturer could trim the commissions it pays out by claiming that the manufacturer performed activity during the selling process.

Id. The defendants sought to obtain all of the agreements in the expert's professional library. The court denied the motion to compel. It stated:

> The question is whether the 275 agreements contain factual ingredients. At first blush it seems that they do because the contents of each agreement are a small piece of the puzzle informing [the expert's] overall

-3-

>opinion regarding common practice in the industry. However, the content of any single agreement has little significance on its own. It is the aggregate impression [the expert] took away from his library and his familiarity with other agreements that represent the crux of his conclusions.
>
>The contents of the sample of agreements [the expert] specifically consulted, however, are more significant. It is possible that those particular agreements do not support [the expert's] opinion in every respect. The Defendants are entitled to understand what the agreements in the sample say in case they provide fodder for cross examination.

Id. at *2.

Federal Rule of Civil Procedure 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."

## Discussion

The plaintiffs move for an order compelling the defendants' expert witness, Glenn Poehler, to answer certain questions he refused to answer during his deposition. The plaintiffs maintain that those questions were "aimed at obtaining the information on which he acknowledges his opinions depend." Pls.' Mem. In Support of Pls.' Mot. to Compel ("Pls.' Mem.") at 1, ECF No. 237-2. Ty Minnich, an expert witness for the plaintiffs, gave "opinions concern[ing] the price for recordkeeping services that the Plan could have obtained had it followed basic fiduciary due diligence principles." Id. at 2. "In demonstrating how the Plan paid

excessive recordkeeping fees, [] Minnich used . . . an example of a plan that paid more reasonable fees." Id. at 3.

The defendants assert that "[a]lthough Poehler relied on his overall experience in the industry to form his opinions in this case, his opinions do not rely on the specific recordkeeping fees that either of these [two plans] paid." Defs.' Mem. In Opp'n to Pls.' Mot. to Compel ("Defs.' Opp'n") at 3, ECF No. 249.  The two plans are referred to below as the "First Plan" and the "Second Plan".

With respect to the First Plan, Poehler's report states:

> Using publicly available data, I calculated a conservative estimate of the [First] Plan's administrative fees to be around $[] on a per participant basis in 2010. This estimate, which is consistent with my recollection, is similar to the $[] per account fee paid by the Yale Plans in 2010 (see Exhibit 3). In my experience working with the [First Plan], I also recall that [the First Plan's] administrative fees followed a similar trajectory as the Yale Plans' . . . administrative fees.

Defs.' Ex. A: Expert Report of Glenn Poehler ("Defs. Ex. A") at ¶ 128, ECF No. 249-2. During his deposition, Poehler was asked about the First Plan's administrative fees and responded, "I can't disclose that confidential information." Poehler Dep. at 262:408, ECF No. 237-4.

Although Poehler did use publicly available data to calculate an estimate of the First Plan's administrative fees, he went further in his report and, in addition, based his opinion on his

-5-

recollection of the First Plan's administrative fees in his experience working with that plan. Thus, in his expert report, Poehler placed in issue his recollection of the First Plan's administrative fees based on his experience working with that plan.

The defendants argue that no further deposition testimony is appropriate because Poehler has submitted a declaration stating that he does not recall pricing for either of the two plans. The court agrees with the plaintiffs that they are entitled to further depose Poehler as to the First Plan, rather than simply accept a declaration, "because his declaration is fundamentally inconsistent with statements in [] his report." Pls.' Reply at 5, ECF No. 257.

With respect to the Second Plan, however, Poehler did not place in issue his knowledge of administrative fees based on his experience. It appears that the defendants are correct that "Poehler only mentioned [the Second Plan] once in his report, where he lists several [plans] that engaged him to assist with their compliance efforts." Defs.' Opp'n at 4-5 n. 2. This is reflected in paragraph 3 of Poehler's report. See Defs.' Ex. A at ¶ 3. Therefore, the plaintiffs' motion is being denied with respect to further questioning concerning the Second Plan.

It is so ordered.

Dated this 28th day of September 2020, at Hartford, Connecticut.

                                                      /s/AWT
                                   Alvin W. Thompson
                           United States District Judge