UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------- x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
        Plaintiffs,              :    Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
        Defendants.              :
------------------------------- x
```

**ORDER RE DEFENDANTS' MOTION TO COMPEL AND**
**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

For the reasons set forth below, Defendants' Motion to Compel Plaintiffs' Experts Al Otto and Daniel Alexander to Answer Certain Deposition Questions ("Defs.' Mot. to Compel") (ECF Nos. 219 and 220) is hereby DENIED, and Plaintiffs' Motion for Protective Order Regarding Discovery of the Identities and Data of Their Experts' Clients (ECF Nos. 229 and 230) is hereby GRANTED.

**Legal Standard**

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires disclosure of "the facts or data" considered by an expert witness in forming his or her opinion. "[F]acts or data [is] to be interpreted broadly to require disclosure of any material

considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." 2010 Advisory Committee Note; see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 293 F.R.D. 568, 577 (S.D.N.Y. 2013) ("[T]he 2010 Amendment to Rule 26 requires disclosure of 'material of a factual nature' considered by testifying experts. . . . Attorneys' theories or mental impressions are protected, but everything else is fair game.") (internal quotations and citations omitted). This includes information explicitly relied upon in an expert report irrespective of claims of confidentiality. See Lugosch v. Congel, 219 F.R.D. 220, 250 (N.D.N.Y. 2003) (disclosure of work papers required by Rule 26, notwithstanding work product protection, because expert considered and specifically referred to the work papers in his expert report).

Where an expert acknowledges relying on or otherwise considering facts or data in forming an opinion, that material has been placed directly in issue. In U.S. Surgical Corporation v. Orris, Inc., 983 F. Supp. 963, 970 (D. Kan. 1997), the plaintiff argued that its expert should not have been compelled to reveal to the defendants the identities of individuals who participated in a survey conducted by its expert because the expert "promised the individuals that their identities would remain confidential." The

court concluded that the "plaintiff should not be able to conduct a survey for litigation and subsequently protect the survey from scrutiny by promising confidentiality to the participants. Plaintiff has placed the survey's underlying data directly in issue by relying on the survey in plaintiff's motion for partial summary judgment." Id.

One Source Environmental, LLC v. M + W Zander, Inc., No. 12-cv-145, 2015 WL 4663851 (D. Vt. Aug. 6, 2015), provides a helpful example of the distinction between the type of situation where material has been considered for purposes of Rule 26(a)(2)(B) and the type of situation where it has not. There, the plaintiff used a damages expert who "relied on many sources of information in forming his opinions on industry custom and practice, including his own library of more than 275 representative agreements." Id. at *1. In his report, the expert stated:

> In my history of dealing with representative agreements, dating back to the 1970s, I remember dealing with no agreements that allowed a manufacturer to retain a portion of the manufacturers' representative's commissions for itself. I sampled my library of over 275 representative agreements and could find no example of an agreement whereby a manufacturer could trim the commissions it pays out by claiming that the manufacturer performed activity during the selling process.

Id. The defendants sought to obtain all of the agreements in the expert's professional library. The court denied the motion to compel. It stated:

> The question is whether the 275 agreements contain factual ingredients. At first blush it seems that they do because the contents of each agreement are a small piece of the puzzle informing [the expert's] overall opinion regarding common practice in the industry. However, the content of any single agreement has little significance on its own. It is the aggregate impression [the expert] took away from his library and his familiarity with other agreements that represent the crux of his conclusions.
>
> The contents of the sample of agreements [the expert] specifically consulted, however, are more significant. It is possible that those particular agreements do not support [the expert's] opinion in every respect. The Defendants are entitled to understand what the agreements in the sample say in case they provide fodder for cross examination.

Id. at *2.

Federal Rule of Civil Procedure 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."

Rule 26(c) provides that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery; . . .
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . .
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; . . .

## **Discussion**

The defendants move to compel the plaintiffs' experts Daniel Alexander and Al Otto to answer certain deposition questions they

-4-

declined to answer. The defendants argue that "Plaintiffs' experts refused to answer a number of questions regarding their prior work experience, despite relying on that experience to determine their opinions in this case." Defs.' Mot. to Compel at 1.

With respect to Alexander, the defendants maintain that "Alexander expressly stated that the opinions in his report are 'based on [his] review and analysis of documents produced in this case, testimony, other information provided to [him], and [his] years of experience providing administrative and financial services in the retirement plan industry." Defs.' Mem. at 2-3, ECF Nos. 219-1 and 220-1. The pertinent part of Alexander's report states:

> The opinions in this report are based on my review and analysis of documents produced in this case, testimony, other information provided to me, and my years of experience providing administrative and financial services in the retirement plan industry. The documents, testimony, and other materials that I have considered in formulating my opinions are listed in Exhibit 1. I reserve the right to amend, supplement, or revise my opinions if additional facts are presented in discovery or otherwise.

Defs.' Ex. A: Expert Report Daniel Alexander at 2, ECF No. 220-3.

With respect to Otto, the defendants maintain that:

> Otto's report explicitly states that his opinions are 'based on [his] knowledge and experience in the defined contribution plan industry' and 'in the engagement and compensation received by recordkeepers for such plans.'" [Defs.' Ex. E: Expert Report of Al Otto] at ¶¶ 2-3; see also id. [at] ¶ 207 (stating that Otto relied on his knowledge of the recordkeeping industry and experience advising defined contribution plans when he adopted the

> views of another of Plaintiffs' experts regarding "reasonable" recordkeeping fees).

Defs.' Mem. at 9. The pertinent parts of Otto's report state:

> In particular, based on my knowledge and experience in the defined contribution plan industry, I have been asked to apply the standard of care, skill, prudence, and diligence that a knowledgeable and prudent fiduciary would have applied in the administration and recordkeeping for plans like the Plan, including immediately preceding 2010 to the present. I also applied my knowledge and expertise in the engagement and compensation received by recordkeepers for such plans and provided my opinion as to whether the Plan's fiduciaries discharged their duties to the Plan with that same level of care, skill, prudence, and diligence from 2010 to present.
>
> . . . .
>
> A list of the materials considered in this matter is attached hereto as Exhibit 1.
>
> . . . .
>
> Based on my knowledge of the recordkeeping industry and experience advising defined contribution plans regarding recordkeeping fees, I adopt Ty Minnich's reasonable fees in his August 19, 2019 Expert Report . . .

Defs.' Ex. E: Expert Report of Al Otto at ¶¶ 2, 4, 207.

The court concludes, with respect to each of Alexander and Otto, that his reference to his years of experience in a specific field is in substance merely part of the explanation as to why he is qualified to give the opinions set forth in his report. See Fed. R. Evid. 702. More is needed to show that either of these experts considered any particular experience he had during the course of an extensive career in forming his opinions in this case.

The collection of the individual professional experiences over the years for these two experts is akin to the expert's professional library in One Source Environmental.

Alexander avers that he did not consider discrete client work or data in forming his opinions. See Decl. of Alexander at ¶ 17 ("In preparing the Report and Rebuttal Report, I did not review any documents or data obtained from any previous engagement. . . . I did not review any client lists, prior client assignments, or confidential conversations. I did not review any documents or data from any other source not specifically identified in the Report or Rebuttal Report, or specifically discussed during my deposition on November 20, 2019.").

Otto avers that while his "general professional experience . . . provided a significant basis for [his] opinions", he did not rely on specific client work or consider "distinct client data" in forming his opinions in this case. See Decl. of Otto at ¶ 5. See also id. at ¶ 6 ("In preparing the Report, I did not review or otherwise consider any documents or data obtained from any of my clients, from the files of Shepherd Kaplan, Veriphy Analytics, Verity Asset Management, from the files of an related entity, or from any other source not specifically identified in the Report.").

The defendant asserts that "Otto confirmed that he intended to rely on his experience with those clients to formulate his

opinion in this case". Def.'s Mem. at 11. They cite to the following testimony during Otto's deposition:

> Q. And are you intending to rely on your experience with those clients as part of your experience in formulating your opinions for this case?
> A. Yes.

Id. At 1l. However, this answer merely confirmed that Otto's experience with those clients was part of his general professional experience. Otto did not say that any particular experience with such a client had been considered in forming his opinions in this case.

The plaintiff seeks an order protecting from disclosure the identities of clients of Alexander and Otto and information about those clients; this information was not considered by those experts in forming their opinions in this case. The defendants argue that they are entitled to discovery into the qualifications of Alexander and Otto. The court agrees. The defendants also argue that "Confidential information is not inherently privileged. *See Fed. Opn Mkt. Comm. V. Merrill*, 443 U.S. 340, 362 (1979) (noting that 'there is no absolute privilege for trade secrets and similar confidential information'). Def.'s Mem. at 15. The court agrees but that is not the plaintiff's position.

"A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a

Case 3:16-cv-01345-AWT   Document 263   Filed 09/28/20   Page 9 of 10

competitor, provided the information it contains is not otherwise readily ascertainable." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (internal quotes and citation omitted). To qualify as a trade secret, information cannot be "[m]atters of public knowledge or of general knowledge in an industry" and "a substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means." Garden Catering-Hamilton Avenue, LLC v. Wally's Chicken Coop, LLC, 30 F.Supp.3d 117, 138 (D. Conn. 2014) (citing Town & Country House & Homes Serv., Inc. v. Evans, 150 Conn. 314, 318-19).

Here the declarations of Alexander and Otto demonstrate that the identities of their clients are confidential and proprietary and that disclosing client identities would violate those clients' expectations of confidentiality and potentially adversely affect those clients in other ways. Considerable effort, including requiring confidentiality agreements, has been made by entities employing Alexander and Otto and clients of those entities to preserve the confidentiality of client identities and client data.

The defendant's assert that they would like to be able to investigate the representations made by Alexander and Otto about their experience and qualifications. The defendant's desire for discovery to gather information that may turn out to be useful for purposes of impeachment does not outweigh the interest of

the plaintiff's experts and their clients in preserving the confidential information at issue here.  The defendant's own expert, Glenn Poehler took the same position during his deposition, asserting that such information was confidential and should not be disclosed.  <u>See</u> Poehler Depo. at p. 108, ll. 14-20.

    Accordingly, the motion for a protective order should be granted.

    It is so ordered.

    Dated this 28th day of September 2020, at Hartford, Connecticut.

                                              /s/AWT
                                    Alvin W. Thompson
                          United States District Judge