# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*, | |
| *Plaintiffs*, | Civil Action No. 3:16-cv-01345-AWT |
| v. | Hon. Alvin W. Thompson |
| YALE UNIVERSITY *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' LOCAL RULE 56(a)(1)
## STATEMENT OF UNDISPUTED MATERIAL FACTS

Nancy G. Ross (ct14373)
James C. Williams (ct23292)
Richard E. Nowak (phv09930)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Brian D. Netter (phv08476)
Michelle N. Webster (phv08475)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

## I. THE YALE UNIVERSITY RETIREMENT ACCOUNT PLAN ("PLAN")[*]

1. The Plan, organized under Section 403(b) of the Internal Revenue Code, is the primary retirement program for non-unionized managerial and professional staff employed by Yale University ("Yale"). Each participant in the Plan has an individual account, funded by voluntary contributions as well as contributions by Yale, which contributes 5 percent of each participant's eligible compensation (7.5 percent of the amount exceeding the social-security wage base) and also matches 100% of employee contributions up to 5% of eligible compensation.[1]

2. The Plan identifies Yale as the named fiduciary and gives Yale, acting through the Vice President for Human Resources and Administration, discretionary authority to administer and oversee the Plan. At the start of the class period (August 2010), Yale's Vice President for Human Resources and Administration was Michael Peel. Mr. Peel delegated day-to-day Plan administration to Yale's Benefits Department, led by Senior Director of Benefits Hugh Penney.[2]

3. In early 2012, Peel chartered the Fiduciary Committee on Investments ("Committee"), which has met periodically starting February 2012. Initially, the Committee had three members: (1) Provost Peter Salovey; (2) VP for Finance and Business Operations Shauna King; and (3) Mr. Peel. Subsequently, Benjamin Polak has replaced Mr. Salovey; Stephen Murphy has replaced Ms. King; and Janet Lindner has replaced Mr. Peel. In addition, Alex Hetherington (Director, Yale Investments Office) joined as a fourth member in early 2017. Yale's Benefits Department continues to provide day-to-day administration and support.[3]

---

[*] This document is submitted pursuant to Local Rule 56(a)(1). "Ex. __" cites refer to exhibits attached to the Declaration of Brian D. Netter in Support of Defendants' Motion for Summary Judgment and Motions to Exclude Plaintiffs' Expert Witnesses, filed concurrently .

[1] Ex. 52, YALE00139236 (2009 Plan) Art. I, IV; Ex. 48, YALE00096713 (2015 Am. Plan) Art. I, IV.
[2] Ex. 52, YALE00139236 (2009 Plan) Art. XII; Ex. 22, Peel Tr. 73:21-22; Ex. 23, Penney Tr. 60:5-21.
[3] Ex. 41, YALE00040872 (Establishment of Committee); Ex. 113, Compiled Minutes at CM-7 (Polak: Mar. 2013), CM-20 (Murphy: July 2015), CM-33 (Hetherington: Feb. 2017), CM-40 (Lindner: June 2017).

1

**II.     RECORDKEEPER CONSOLIDATION**

4. Since the start of the class period, the Plan has offered investment options from TIAA (fixed and variable annuities and mutual funds) and Vanguard (mutual funds). Historically, TIAA and Vanguard provided recordkeeping for their respective investment options.[4]

5. In June 2010, approximately 83% of the Plan's $2.15 billion was held in TIAA investments. The remainder was invested in roughly 80 Vanguard funds.[5]

6. Until 2006, all TIAA annuities were structured as bilateral agreements between TIAA and individual Plan participants. None of TIAA's 15,000 institutional clients has succeeded in directing TIAA to liquidate individual-contract annuities without participant consent.[6]

7. No entity other than TIAA has served as the sole recordkeeper to a Plan that includes TIAA fixed annuities subject to individual contracts. Of the 200 largest TIAA 403(b) clients in 2010, all 200 continue to pay TIAA for recordkeeping today—including those plans that have frozen future contributions to TIAA annuities.[7]

---

[4] Ex. 42, YALE00041509 (2006 TIAA Agmt.); Ex. 37, YALE00020185 (2010 Vanguard Agmt.); *see also* Ex. 23, Penney Tr. 41:1-42:18 (noting that the Plan brought Vanguard on as recordkeeper to gain access to mutual fund options and that is was "very common" for 403(b) plans to have multiple recordkeepers).

[5] Each year, the Plan files a Form 5500 with the Department of Labor, which lists Plan assets (as of the period ending June 30) on Schedule H. *See* Ex. 62, YALE00242102 at -122 (2009 Form); Ex. 49, YALE00110145 (2014 Form). The remaining forms during the class period are: Ex. 59, YALE00221422 (2010 Form); Ex. 58, YALE00209652 (2011 Form); Ex. 47, YALE00090491 (2012 Form); Ex. 50, YALE00110794 (2013 Form); Ex. 64, YALE00243029 (2015 Form); Ex. 63, YALE00243002 (2016 Form); Ex. 65, YALE00243073 (2017 Form); Ex. 104, 2018 Form; Ex. 105, 2019 Form.

[6] Ex. 27, TIAA 30(b)(6) (Sutherland) Tr. 20:20-21:25 (describing annuity contract structure); Ex. 31, YALE00011016 ("Understanding TIAA-CREF Contracts" presentation); Ex. 23, Penney Tr. 52:7-54:5, 316:15-317:7 (describing individual versus group annuities); Ex. 107, *Sacerdote* Chittenden Decl. ¶¶ 22-43 (same); Ex. 99, *Sacerdote* Trial Tr. 597:20-598:16 (The Court: "Let me just ask, are you familiar with any instance when an educational institution has, against the wishes of a participant in the RA, altered that arrangement?" Chittenden: "[T]o my knowledge it has never happened.").

[7] Ex. 109, Friedman Decl. ¶¶ 8-9 (describing recordkeeping arrangements and noting that clients for clients that have consolidated to a vendor other than TIAA, "TIAA continues to provide recordkeeping services for legacy contributions made to TIAA products"); Ex. 99, *Sacerdote* Trial Tr. 595:24-596:10 (Chittenden: TIAA is "the only firm that record-keeps TIAA annuities"—"[I]t's a question of who else can do this. And so far, the answer has been nobody."); Ex. 25, Vanguard 30(b)(6) (Rux) Tr. 52:9-52:17 ("the TIAA annuity

8.      Yale felt that annuities were a valuable part of its investment lineup. In any event, because TIAA's legacy annuities were structured as individually-owned contracts, Yale understood that it could not withdraw funds from those annuities without the consent of all of the individual Plan participants.[8]

9.      Pepperdine University was an active client of TIAA until 2009, when Pepperdine decided to retain Transamerica as sole recordkeeper. To do so, Pepperdine froze contributions to the TIAA annuities in its plan. TIAA continued to collect a fee to recordkeep the legacy annuity investments and would not negotiate lower fees as long as the investments were closed to new contributions. As of the third quarter of 2015, Pepperdine was paying Transamerica $106 per participant for administrative services—while also paying TIAA to recordkeep legacy accounts.[9]

10.     Given the need to use TIAA to recordkeep the Plan's TIAA annuities, the Committee did not requesting sole recordkeeping bids from anyone other than TIAA made sense.[10]

11.     Beginning in 2010, Yale inquired as to TIAA's ability to serve as the sole recordkeeper for the Plan. TIAA responded that it could not serve as Yale's sole recordkeeper for

---

I know we can't recordkeep"); Ex. 15, Otto Tr. 28:9-17 (███████████████████████████████████████████████████████████████████████████).

[8] Ex. 23, Penney Tr. 39:4-40:7, 180:2-181:9 ( one of the "important elements in the design of a retirement plan . . . from Yale's perspective is to maintain annuities in the lineup"; "they provide something mutual funds couldn't, which is the option for lifetime income in retirement"); Ex. 43, YALE00057798 at -798 (Sept. 2012 email stating that contracts are "solely enforceable by the faculty member"); Ex. 31, YALE00011016 (presentation on TIAA annuity options); Ex. 22, Peel Tr. 145:7-16, 146:9-15, 150:7-151:3 (describing understanding of individual annuity contracts).

[9] Ex. 90, Pepperdine Investment Review (Sept. 2015) at 70 (recordkeeping costs); Ex. 91, Pepperdine Meeting Minutes (Sept. 2013) at 1 ("TIAA-CREF is currently making 19.5 bps on Plan Assets of approximately $150 million. The TIAA-CREF portion of the Plan is frozen to new investment . . . . If the Plan were to open the TIAA-CREF portion of the Plan to contributions, they would lower the revenue requirement to 17.0 bps."); Ex. 10, Poehler Rpt. ¶ 45.

[10] Ex. 23, Penney Tr. 39:4-40:7 (open bidding "would not be particularly productive" due to "orphaned assets that would still need to be recordkept"); Ex. 22, Peel Tr. 56:4-13 ("by definition, if you were going to get a sole recordkeeper, it would be TIAA-CREF"); Ex. 20, King Tr. 39:13-40:10 ("TIAA-CREF was the only one who could do the job"); Ex. 24, Polak Tr. 113:16-114:17 ("An RFP at that point would be a very strange thing for us to do because there was only one person that could be . . . a sole recordkeeper."); Ex. 18, Castello Tr. 140:16-141:5 (similar); Ex. 19, Hendel Tr. 118:3-24 (similar).

two primary reasons: (i) administering the Plan required services that TIAA could not then provide; and (ii) TIAA's recordkeeping platform did not have the capacity to manage the number of investment funds and contribution characteristics required by Yale's Plan.[11]

12. Yale continued to stay abreast of TIAA's sole recordkeeping capabilities. In 2013, Yale learned that TIAA had developed the capabilities to serve as the Plan's sole recordkeeper. Yale subsequently put out a Request for Proposal ("RFP") and received a sole-recordkeeping proposal from TIAA and a master-recordkeeping proposal from Vanguard. Yale engaged Aon to evaluate the proposals and assist in conducting the negotiations.[12]

13. In the summer of 2014, Yale entered into an agreement with TIAA to transition to sole recordkeeping and apprised Vanguard that its recordkeeping services would be terminated. The transition was successfully completed in early 2015. *Pensions & Investments* magazine gave Yale a first-place "Eddy Award" in the Conversion category for its efforts.[13]

14. At the end of 2015, over half of the 200 largest TIAA 403(b) clients still used multiple recordkeepers. Of the 23 private universities with at least $1 billion in a 403(b) retirement plan in 2015, Yale was just the third to move to a sole recordkeeper. The two other universities (California Institute of Technology and University of Rochester) both offered substantially fewer

---

[11] Ex. 17, TIAA 30(b)(6) (Campbell) Tr. 30:21-33:4, 45:3-46:12, 49:7-50:21, 136:9-20; 139:8-10 (describing conversations and explaining "[w]e weren't comfortable with providing the sole recordkeeping for Yale, understanding Yale's arrangement back in 2010"); Ex. 22, Peel Tr. 159:23-161:10 ("a lot of reasons" why TIAA could not be sole recordkeeper in 2010); Ex. 23, Penney Tr. 165:6-169:22 (same).
[12] Ex. 79, TIAA_YALE_00060576 (Mar. 2011 call with TIAA re "sole recordkeeping"); Ex. 55, YALE00145429 (May 2013 TIAA Draft Proposal); Ex. 51, YALE00119889 (initial Jan. 2014 RFP); Ex. 68, Aon-Yale-014297 (June 2014 RFP-Vanguard); Ex. 71, Aon-Yale-019904 (June 2014 RFP-TIAA); Ex. 46, YALE00087197 at 6 (July 2014 Aon analysis recommending TIAA as sole recordkeeper).
[13] Ex. 46, YALE00087197 (July 2014 Aon presentation); Ex. 56, YALE00156557 (July 2014 recommendation); Ex. 113, Compiled Minutes, at CM-14 (Aug. 2014) (reaffirming choice of TIAA); Ex. 32, YALE00011053 (Aug. 2014 Vanguard termination letter); Ex. 18, Castello Tr. 55:7-20 (transition was "enormous project"); Ex. 23, Penney Tr. 170:3-173:7 (describing complexities of consolidation); Ex. 24, Polak Tr. 118:19-119:23 (same); Ex. 98, *Pensions & Investments* Article (p. 3, Vol. 44, Mar. 21, 2016).

investment options (41 and 40) than Yale's Plan (116).[14]

### III. RECORDKEEPING FEES

15. As of 2011, every one of TIAA's 200 largest 403(b) clients compensated TIAA for recordkeeping through asset-based fees charged to participants who invested in TIAA's investment options. Hugh Penney had repeatedly asked TIAA to provide a recordkeeping discount based on the size of Yale's Plan, but TIAA refused.[15]

16. In early 2011, TIAA began discussing pricing with its largest clients. TIAA initially proposed lowering the asset-based fee from 20 bps to 12 bps. Yale engaged a consultant (Aon) to assess the reasonableness of TIAA's proposal. TIAA ultimately agreed to an asset-based rate of 9.5 bps and applied a rebate retroactive to January 2011, resulting in a $1.9 million refund.[16]

17. In 2014, Yale engaged Aon to re-assess the reasonableness of the Plan's recordkeeping fees. Following negotiations, TIAA agreed to a $61 per unique participant fee, equivalent to an asset-based fee of 2.4 bps, effective January 1, 2015.[17]

18. In 2017, Yale reevaluated its TIAA recordkeeping fee. After negotiations, TIAA ultimately agreed to a rate of ▮▮▮▮▮▮▮▮.[18]

---

[14] Ex. 109, Friedman Decl. ¶¶ 8–9; Ex. 10, Poehler Rpt. ¶ 172 n. 428 & Ex. 1.

[15] Ex. 108, Reilly Decl. ¶ 5; Ex. 110, Penney Decl. ¶ 9; Ex. 17, TIAA 30(b)(6) (Campbell) Tr. 342:19-22 (shortly before August 2010, "Yale was asking us about the share classes," but "we only had retirement share classes on the menu").

[16] Ex. 29, YALE00000008 at -009 (initial TIAA proposal); Ex. 81, TIAA_YALE_00066437 & TIAA_YALE_00066442 at Item 16 (Apr. 2012 proposed 12 bps rate), Ex. 117, TIAA_YALE_00069210 (July 2012 Aon requests to TIAA); Ex. 70, Aon-Yale-014774 (Oct. 2012 Aon email re TIAA counterproposal); Ex. 69, AON-Yale-014694 (Oct. 2012 Aon email approving latest offer); Ex. 61, YALE00222947 at -947 (Nov. 2012 email from benefits counsel calling the 9.5 bps rate "great" and "the lowest I've seen so far"); Ex. 23, Penney Tr. 235:17-236:3 (discussing negotiations); Ex. 35, YALE00013595 (Amendment to Recordkeeping Agmt.); Ex. 10, Poehler Rpt. Ex. 3 (administrative fee summary).

[17] Ex. 118, YALE00187204 (Dep. Ex. 191) (Apr. 2014 engagement letter); Ex. 57, YALE00157329 at -330 (2016 amendment setting fees at $61 per unique participant); Ex. 10, Poehler Rpt. Ex. 3 (2.4 bps).

[18] Ex. 82, TIAA_YALE_00076813 at -815 (Feb. 2017 Aon email re Hugh Penney requests for fee information); Ex. 72, Aon-Yale-049435 (Oct. 2018 email transmitting TIAA's proposal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 113, Compiled Minutes at CM-77 (Dec. 2018) (discussing

5

19.     From 2010–2014, the Plan's per-participant fees fell between the 25th and 75th percentile of the top 200 TIAA clients. From 2015–2018, the Plan's per-participant fees fell in the lowest quartile. In addition, the Plan's per-participant fees were comparable to or lower than those of NYU's faculty plan from 2010–2018.[19]

20.     As of 2010, Vanguard used asset-based fees for 403(b) plans and did not negotiate per-participant pricing. Prior to 2013, when Yale negotiated for a lower share class for certain Vanguard funds, Yale paid the same rate as other university clients who used Vanguard to recordkeep Vanguard funds.[20]

## IV.    INVESTMENT REVIEWS

21.     Prior to the Committee's formation in 2012, Hugh Penney reviewed the Plan's fund lineup. Penney and Peel also held annual investment review meetings with TIAA and Vanguard to ask questions about fund performance and strategy and, as necessary, solicited the advice of Dean Takahashi, the second-in-command at Yale's Investments Office.[21]

22.     Beginning in 2012, the Committee reviewed the Plan's investment lineup at annual review meetings, which often lasted several hours. The Committee's members studied fee and performance disclosure statements for each of the Plan's investments. They also reviewed Morningstar evaluations and, where necessary, requested additional information from the Plan's vendors or from the Yale Investments Office. In addition to reviewing individual investments, the

---

negotiations); Ex. 119, YALE00244166 at -166 (signed amendment); Ex. 10, Poehler Rpt. Ex. 3 (historical figures).
[19] Ex. 10], Poehler Rpt. Exs. 4-6 (comparing Plan fees to NYU fees and Top 200 TIAA clients); Ex. 108, Reilly Decl. ¶ 5.
[20] Ex. 25, Vanguard 30(b)(6) (Rux) Tr. 27:25-28:6 ("it was not practiced in the 403(b) space at that point in time"); Ex. 10, Poehler Rpt. ¶¶ 75-76 & Ex. 10.
[21] Ex. 23, Penney Tr. 72:18-73:2; 77:18-79:6, 158:13-19 (discussing review process); Ex. 110, Penney Decl. ¶ 7 (same); Ex. 22, Peel Tr. 44:12-45:9, 59:4-60:4, 65:3-66:13 (same); Ex. 76, TIAA_YALE_00059633 (Sept. 2010 email regarding evaluation of TIAA Traditional Annuity); Ex. 17, TIAA 30(b)(6) (Campbell) Tr. 310:25-314:3 (describing a 2010 presentation in connection with the review process).

6

Committee discussed other Plan-wide considerations, like diversification, benchmarking, and active versus passive investment strategies.[22]

23. Yale's outside consultants at Aon were impressed by Yale's process, ▓▓▓▓ ▓▓▓▓▓▓▓▓▓ Yale's senior relationship manager at TIAA said Yale was "always pushing the envelope" in supporting their plan and were "very actively involved," "[m]ore so than most."[23]

24. After the Plan transitioned to TIAA as sole recordkeeper in 2015, the Committee undertook a complex project to assess the Plan's investment options and develop a new qualified default investment alternative (QDIA) with a guaranteed annuity component. *Pensions & Investments* gave Penney and Castello an Innovation Award for Yale's innovative QDIA efforts.[24]

### A. TIAA Traditional Annuity

25. The TIAA Traditional Annuity is a fixed annuity product that has been available to

---

[22] Ex. 24, Polak Tr. 38:20-41:5 (describing review process); Ex. 19, Hendel Tr. 35:16-37:21, 46:24-47:15, 185:15-20 (same); Ex. 23, Penney Tr. 131:19-132:1, 134:18 (same); Ex. 21, Murphy Tr. 239:15-19 ("multiple conversations" about active versus passive management); Ex. 28, TIAA 30(b)(6) (Campbell) Tr. 321:25-322:17 ("it was routine for the committee to want to drill down on various issues . . . and ask us to provide follow-up information, and we did that"); Ex. 20, King Tr. 31:23-34:11 (discussions with the Investments Office); Ex. 66, YALE00243424 (Apr. 2010 TIAA review); Ex. 39, YALE00033171 (May 2012 Vanguard review); Ex. 78, TIAA_YALE_00060388 (Sept. 2013 CREF Stock information sheet); Ex. 40, YALE00036230 (July 2015 Polak email re TIAA presentation). Annual reviews are also noted throughout the Committee minutes. *E.g.*, Ex. 113, Compiled Minutes at CM-3, CM-13, CM-16.

[23] Ex. 28, Swallow Tr. 201:16-203:19 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); Ex. 17, TIAA 30(b)(6) (Campbell) Tr. 100:24-101:21, 103:23-104:15 ("Yale was always pushing the envelope in terms of they were very actively involved to support their retirement plan. More so than most other Plan sponsors. They – they would be engaged with their employees, ask what their needs were about retirement planning, make sure they understood the benefits . . . . [A]s an employer, they were very engaged, more so than almost any client that I have dealt with in my entire career, about getting the word out for their employees on the Retirement Plan. . . Yale was an engaged, an enthusiastic HR department that wanted to make sure Yale got the most out of its retirement program.").

[24] Ex. 113, Compiled Minutes at CM-27 (Aug. 2016) (QDIA and investment lineup review), CM-29 (Oct. 2016) (Aon presentation on investment structure review); Ex. 67, Aon-Yale-000464 (2016 statement of work); Ex. 18, Castello Tr. 79:24-81:2 (describing sequencing of decisions); Ex. 97, *Pensions and Investments* Excellence in Innovation Award (one judge stated "I hope to see investment managers look at what Yale has done when they innovate new products for corporate plan sponsors").

Plan participants since the inception of Yale's Plan in 1920. In June 2010 and June 2015, the Plan had $801 million and $942 million invested in the Traditional Annuity, respectively, making it the Plan's largest investment both years.[25]

### B. TIAA Real Estate Account ("TIAA Real Estate")

26. TIAA Real Estate is a variable annuity that investments approximately 80% of its assets directly in real estate or real-estate-related assets, with the remainder invested in publicly traded securities and high-quality liquid investments. In June 2010 and June 2015, the Plan had $37.5 million and $144.2 million invested in TIAA Real Estate, respectively.[26]

27. TIAA Real Estate is not a real estate investment trust ("REIT"). Because REITs invest mostly in public equities whereas TIAA Real Estate mostly does not, the performance of TIAA Real Estate is less correlated with the stock market than the performance of REITs.[27]

28. TIAA uses a custom benchmark for TIAA Real Estate: the REA Composite Index. However, TIAA Real Estate and the REA Composite Index are priced using different methodologies. Accordingly, to compare TIAA Real Estate's performance with the benchmark, "the Account's direct real estate property returns must first be calculated using [the appropriate] methodology" to generate "*TIAA REA-with NCREIF-Calculated Property Returns*." When its performance is computed using the appropriate methodology, TIAA Real Estate outperformed the REA Composite Index over three-, five- and ten-year windows ending December 31, 2009.[28]

29. Each year from 2010 to 2018, 196 or more of the 200 largest TIAA 403(b) clients

---

[25] Ex. 62, YALE00242102 at -102, -122; Ex. 49, YALE00110145 at -166; Ex. 4, Chalmers Rpt. Ex. 2a; Ex. 23, Penney Tr. 40:12-41:8 (discussing the history of the Plan).
[26] Ex. 92, TIAA Real Estate Account Prospectus (2010) at 3-5; Ex. 62, YALE00242102 at -122 (2009 Form 5500); Ex. 49, YALE00110145 at -166 (2014 Form 5500).
[27] Ex. 4, Chalmers Rpt. ¶¶ 97-98 & Exs. 10a, 10b, 11; Ex. 24, Polak Tr. 220:20-222:12 (discussing differences between TIAA Real Estate and REITs); Ex. 107, *Sacerdote* Chittenden Decl. ¶¶ 60-61.
[28] Ex. 114, TIAA Real Estate Quarterly Analysis (Dec. 2009) (Dep. Ex. 330) at 2-3 (index "should not be construed . . . as an accurate indication" of relative performance due to "differences in methodology")..

as of December 2010 held assets in TIAA Real Estate, and between 151 and 181 allowed active contributions. Of 40 higher education institutions with at least $1 billion in assets across all 403(b) plans, 37 offered TIAA Real Estate in in 2010 and 36 offered TIAA Real Estate in 2017.[29]

30.     In September 2014, Committee member Ben Polak asked TIAA for data demonstrating the correlation between the performance of the TIAA Real Estate Account and the Case-Shiller Home Price Index to assess whether Plan participants were able to effectively diversify risks. TIAA supplied the requested data, which showed that, because TIAA Real Estate invests mainly in commercial real estate, it had low correlation with residential real estate.[30]

### C.     CREF Stock Account ("CREF Stock")

31.     The CREF Stock Account is a variable annuity. It employs a diversified strategy that combines active and passive management in both domestic and foreign securities. In June 2010 and June 2015, the Plan had $553.0 million and $735.4 million invested in CREF Stock, respectively, making it the Plan's second largest investment both years.[31]

32.     The prospectus for CREF Stock uses a custom index, the CREF Stock Account Composite Index, as a benchmark. From 2009 to 2019, CREF Stock's ten-year annualized returns never trailed those of its prospectus benchmark by more than 38 basis points, even though CREF Stock, unlike the index, reports performance net of fees and expenses.[32]

33.     Each year from 2010 to 2018, 197 or more of the 200 largest TIAA 403(b) clients as of December 2010 held assets in CREF Stock, and between 163 and 185 allowed active

---

[29] Ex. 109, Friedman Decl. ¶¶ 5, 7; Ex. 4, Chalmers Rpt. ¶ 60, Ex. 5d.
[30] Ex. 33, YALE00013529 (Sept. 2014 email chain regarding request); Ex. 34, YALE00013531 (TIAA response showing low correlation); Ex. 24, Polak Tr. 45:21-46:16 (describing correlation inquiries).
[31] Ex. 120, CREF Prospectus (2010) (Dep. Ex. 295) at 16-18; Ex. 62, YALE00242102 at -122; Ex. 49, YALE00110145 at -166); Ex. 4, Chalmers Rpt. Ex. 2a.
[32] Ex. 120, CREF Prospectus (2010) (Dep. Ex. 295) at 49-50; Ex. 101, CREF Stock Account Prospectus (2011) at 54-55 (transition from four-index to two-index benchmark); Ex. 4, Chalmers Rpt. ¶¶ 79-82 & Ex. 8a.

contributions. Of 40 higher education institutions with at least $1 billion in assets across all 403(b) plans, 38 offered CREF Stock in 2010 and 37 offered CREF Stock in 2017.[33]

### D. Other Plan Funds

34. The CREF Global Equities Account is a variable annuity. It typically allocates 50 percent of its assets to domestic securities and the rest to foreign securities. Of 40 higher education institutions with at least $1 billion in assets across all 403(b) plans, 38 offered the CREF Global Equities Account in 2010 and 37 offered the CREF Global Equities Account in 2017.[34]

35. The CREF Inflation-Linked Bond Account is a variable annuity that typically invests 80% of its assets in U.S. Treasury inflation-indexed securities. Of 40 higher education institutions with at least $1 billion in assets across all 403(b) plans, 37 offered the CREF Inflation-Linked Bond Account in 2010 and 37 offered the CREF Inflation-Linked Bond Account in 2017.[35]

36. Of 40 higher education institutions with at least $1 billion in assets across all 403(b) plans, 39 offered sector funds in 2010 and 39 offered sector funds in 2017.[36]

### V. SHARE CLASSES

37. In June 2010, Yale requested a meeting with TIAA to discuss moving to lower share classes for certain Plan investments. In August 2010, TIAA agreed to move the Plan to "Institutional" shares of indexed mutual funds and "Premier" shares of certain actively managed funds. Yale's relationship manager at TIAA stated that this was "the best I could provide" in 2010, but "as soon as we can make institutional share class available for the actively managed funds, we would make that happen." In 2011, Yale obtained additional share class changes, moving actively managed funds from the "Premier" to the "Institutional" share class. Of twenty-three elite

---

[33] Ex. 109, Friedman Decl. ¶¶ 4, 6; Ex. 4, Chalmers Rpt. Ex. 5b.
[34] Ex. 120, CREF Prospectus (2010) (Dep. Ex. 295) at 18-20; Ex. 4, Chalmers Rpt. Ex. 5c.
[35] Ex. 120, CREF Prospectus (2010) (Dep. Ex. 295) at 26-27; Ex. 4, Chalmers Rpt. Ex. 5e.
[36] Ex. 4, Chalmers Rpt. Ex. 4.

universities with over $1 billion in retirement plan assets, only Yale and two others had switched all of their TIAA funds to the lower-cost shares by the end of 2010.[37]

38. In January 2011, Yale's benefits counsel informed Hugh Penney that TIAA was beginning to negotiate expense reimbursement accounts for plan sponsors to use to pay expenses for services not rendered by TIAA. Yale and TIAA entered into an expense reimbursement agreement in December 2012. TIAA agreed to "reconcile [its] actual revenue earned" against a negotiated recordkeeping fee and deposit any excess into a revenue credit account twice annually. TIAA also gave Yale a credit retroactive to January 1, 2011.[38]

39. Yale solicited guidance from its benefits counsel to determine how the revenue credit account should be administered. Counsel advised that the revenue credit account could be used to defray the Plan's expenses and (after those expenses were addressed) to provide rebates to participant accounts. Yale has used the revenue credit account to pay for the costs of the Plan's audit, its third-party consultants, and, during certain years, to reimburse Yale for a portion of the costs of Ms. Castello, a dedicated staffer for the Plan.[39]

40. Penney also had conversations with Vanguard about share classes. In 2013, the Plan upgraded the share classes of many of its Vanguard funds, reducing the Plan's Vanguard fees from 9 bps to 5.6 bps. In 2014, Yale negotiated additional share class changes, lowering its Vanguard

---

[37] Ex. 75, TIAA_YALE_00059404 (June 2010 Penney email); Ex. 77, TIAA_YALE_00059747 at -747 (Aug. 2010 email re share class transition); Ex. 80, TIAA_YALE_00062052 at -052 (Aug. 2011 email re institutional share-class pricing for actively managed funds); Ex. 23, Penney Tr. 329:1-15 (discussing "regular conversations" with TIAA); Ex. 110, Penny Decl. ¶¶ 9-11; Ex. 17, TIAA 30(b)(6) (Campbell) Tr. 81:18-82:10, 341:12-344:11, 352:17-354:4, 359:16-360:23 ("[w]hen we were starting to introduce reduced share classes in 2010, we immediately were engaged by Yale to have a discussion around what share classes could be made available"); Ex. 10, Poehler Rpt. ¶ 68 (only Yale, Harvard, and Caltech had transitioned all funds to Premier or Institutional class by the end of 2010).

[38] Ex. 60, YALE00221758 (Jan. 2011 email with benefits counsel); Ex. 35, YALE00013595 at Item 16 (amendment with 2011 and prospective revenue requirements).

[39] Ex. 54, YALE00143364 (Mar. 2012 email to counsel); Ex. 53, YALE00143093 (June 2013 memo).

11

fee rate to 4.4 bps.[40]

41.     The 2010 prospectuses for several of the Vanguard funds for which Yale negotiated lower rates in 2013 and 2014 expressly prohibited 403(b) plans from obtaining the cheapest share class. Even where prospectuses did not contain that express prohibition, both TIAA and Vanguard at times would not permit retirement plans to invest in the lowest-cost share classes or informed Yale that it would have to pay additional fees to offset the change in revenue.[41]

## VI.     "CROSS-SELLING"

42.     Plan participants are free to purchase products and services from TIAA outside of those available through the Plan. However, TIAA does not track at the plan level the revenue it receives from selling non-plan products or services to participants. TIAA also does not take into account revenue from non-plan products and services when pricing recordkeeping fees.[42]

43.     During the class period, Yale twice requested that TIAA not market certain non-plan products and services to Plan participants. In 2018, Yale amended its agreement with TIAA to place additional restrictions on non-plan product marketing to participants, including requiring Yale's consent before marketing a non-plan product to more than one participant and requiring TIAA to disclose that Yale does not review or endorse any non-plan products.[43]

---

[40] Ex. 110, Penney Decl. ¶ 9; Ex. 38, YALE00022495 at -495 (Apr. 2013 email to discuss "alternative share class options"); Ex. 45, YALE00078052 (Apr. 2013 share change); Ex. 30, YALE00004663 (July 2014 share change); Ex. 84, Vanguard_000044 (Dec. 2014 disclosure listing 4 bps "recordkeeping compensation"); Ex. 10, Poehler Rpt.¶ 75 (computing bps rates).

[41] Ex. 102, Vanguard Capital Opportunity Fund Prospectus (Jan. 2010) at 6 ("Admiral Shares are not available for . . . Section 403(b)(7) custodial accounts."); Ex. 103, Vanguard PRIMECAP Fund (Jan. 2010) at 6 (same); Ex. 94, Vanguard Windsor II Fund Prospectus (Feb. 2010) at 7 (same); Ex. 17, TIAA 30(b)(6) (Campbell) Tr. 351:18-352:16 ("my experience has been that those minimum investment limits do not apply when they're offered in conjunction with a retirement plan"); Ex. 25, Vanguard 30(b)(6) (Rux) Tr. 58:1-13 ("If there were lower share classes in 2010, . . . we would need to look at whether we needed some form of a discrete participant recordkeeping fee to offset our recordkeeping expenses.").

[42] Ex. 16, Porter Tr. 9:24-10:20, 151:2-152:3, 160:18-161:7; 166:8-167:3 (discussing TIAA practices).

[43] Ex. 16, Porter Tr. 37:14-40:9 (discussing suppression requests); Ex. 73, TIAA_YALE_00014595 at -615 (Amended Recordkeeping Agmt.).

12

**PUBLIC VERSION**

Dated: December 4, 2020                                             Respectfully submitted,

Nancy G. Ross (ct14373)                              */s/ Brian D. Netter*
James C. Williams (ct23292)                         Brian D. Netter (phv08476)
Richard E. Nowak (phv09930)                         bnetter@mayerbrown.com
MAYER BROWN LLP                                     Michelle N. Webster (phv08475)
71 South Wacker Drive                               MAYER BROWN LLP
Chicago, Illinois 60606-4637                        1999 K Street NW
Telephone: (312) 782-0600                           Washington, DC 20006-1101
Facsimile: (312) 701-7711                           Telephone: (202) 263-3000
                                                    Facsimile: (202) 263-3300

*Attorneys for Defendants*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 4, 2020, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By:   /s/ *Brian D. Netter*
        Brian D. Netter