IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> YALE UNIVERSITY *et al.*, <br><br> *Defendants*. | Civil Action No. 3:16-cv-01345-AWT <br><br> Hon. Alvin W. Thompson |

**DEFENDANTS' REPLY TO THEIR MOTION TO PROVISIONALLY SEAL PORTIONS OF THEIR SUMMARY JUDGMENT AND *DAUBERT* PAPERS**

On December 4, 2020, Defendants Yale University et al. ("Yale") submitted a motion for summary judgment and three motions to exclude Plaintiffs' putative experts. In support of these motions, Yale submitted (among other exhibits) Plaintiffs' expert reports and deposition transcripts. Based on Plaintiffs' assertion that it would be "unfair" to make any of these expert materials public, Yale agreed to move to seal these materials on a provisional basis so that Plaintiffs could explain to this Court why they felt permanent sealing was appropriate. Dkt. 282 ("Mot."); *see also* Dkt. 283 (Declaration of Brian D. Netter, attaching sealed exhibits).

In its motion for provisional sealing, Yale reserved the right to dispute the permanent sealing of some or all of the materials once Plaintiffs had explained the basis for their position to the Court. Mot. 3. On December 28, 2020, Plaintiffs filed their Response. Dkt. 291 ("Resp."). On January 8, 2021, the Court granted the motion to provisionally seal the documents, Dkt. 293, but Yale does not understand the Court's minute order to have resolved the appropriateness of permanently sealing the materials.

As explained below, Plaintiffs' Response requests permanent sealing of nearly all of the substantive analyses of their experts—a request that is wholly groundless under Second Circuit

1

law. However, there may be discrete *third-party* information in the expert reports and deposition that does meet the sealing standard. Yale takes no position on whether such third-party information should be filed under seal, but believes the most efficient course is to give interested third parties two weeks to file position statements on what portions of the materials, if any, should be filed under seal.

**I.      The Second Circuit's *Lugosch* decision governs sealing of the materials in question.**

In this Circuit, a strong presumption of public access attends to judicial documents that are filed in court. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121, 124-25 (2d Cir. 2006). This principle, which is grounded in constitutional and common-law norms, reflects the interests of non-litigants in understanding the decisions of federal courts and the evidence and arguments that precipitated those decisions. The *Lugosch* standard does not apply to court filings on procedural matters, for which the public interest is less weighty, or to documents that are never filed in court, as to which protective orders routinely require confidential treatment.

Plaintiffs do not dispute that the documents at issue here are judicial documents—nor could they, as documents filed in support of summary judgment are, under *Lugosch*, quintessential judicial documents.

Plaintiffs do not dispute that there is a strong public interest in accessing these documents. In fact, Plaintiffs' argument is premised on a supposed fear that nonparties have relevant uses for the documents at issue.

Plaintiffs do not dispute that they have the burden to demonstrate a strong countervailing interest in maintaining their expert materials under seal that overcomes the interests of the public. They acknowledge that "[t]he party seeking to maintain judicial records under seal bears the burden of proof." Resp. 4.

**II.     Plaintiffs' request for sealing does satisfy *Lugosch* and should be denied.**

Plaintiffs' primary argument is that it would be "unfair" for the expert reports submitted into evidence to be filed publicly on the Court's docket unless every one of the documents considered by the experts is made public under the protective order. As Plaintiffs put it, unless "Yale and the third parties are willing to de-designate all the underlying documents upon which our experts rely," "our position is that [the reports and deposition transcripts] should be filed under seal *in their entirety*." Resp. 2-3 (emphasis added). Although that may be Plaintiffs' position, it is without support in this Circuit or elsewhere. Indeed, the position is so plainly indefensible that Plaintiffs make no efforts to defend it.

Instead, Plaintiffs pivot to a supposed compromise—agreeing to "consent" to the filing of immaterial portions of their experts' reports, like the experts' biographies or background, but almost none of their substantive analyses. Plaintiffs continue to maintain that the Court still should "seal those portions of their experts' reports and testimony that incorporate materials Defendants have designated confidential." Resp. 2; *see generally* Dkt. 291-1 (Resp. Ex. 1).

For a variety of reasons, Plaintiffs' fallback position does not come close to meeting the *Lugosch* standard.

### A.     Counsel's desire to prevent their experts from being impeached in unspecified future cases is not sufficient to overcome the strong presumption of access.

Plaintiffs argue that public reports will place their experts in the "untenable" position of having to defend their opinions "in other forums without having the ability to discuss the materials that form the basis of those opinions." Resp. 4. But that hardly helps Plaintiffs. For one thing, Plaintiffs have no interest in how their experts' opinions are used in other "forums." In any event, Plaintiffs have not identified where they expect their experts' opinions to be utilized. Either the opinion will not be deployed elsewhere (in which case Plaintiffs' concern is speculative, *see In re*

3

*Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test")), or the opinion is so relevant to another proceeding that Plaintiffs would need to demonstrate an interest that would overcome the relevance of these opinions to other lawsuits.

Presumably, Plaintiffs' concern is that their experts will be impeached in other lawsuits with inconsistencies in their reports and testimony. They say that it would be "unfair" (Resp. 2) to their experts to have to answer for their testimony without being able to introduce information that was not significant enough to appear in their reports but that, nonetheless, might dull the blow of the impeachment. But Plaintiffs offer no reason why supposed "unfairness" to a paid expert—who agreed in advance to be bound by the protective order (Dkt. 11 ¶ 5(c))—overcomes the public's presumptive right of access to judicial documents that are relevant to judicial proceedings. That an expert does not wish to have his or her opinions questioned in other cases is simply not a legitimate reason to hide the expert's report from public scrutiny when it is directly relevant to a summary judgment motion or motion to exclude. *Cf. Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. Pub. Co. Ltd. (Thailand)*, 2009 WL 959639, at *2 (S.D.N.Y. Apr. 8, 2009) ("Delta's primary concern appears to be that the documents contain information damaging to its reputation, a concern that, without more, does not warrant judicial protection.").

### B. Plaintiffs' proposal is wildly overbroad.

Even if Plaintiffs (or Plaintiffs' experts) had some cognizable interest here, Plaintiffs seek a remedy that is dramatically overbroad in three ways.

*First*, if Plaintiffs fear that particular unfiled evidence will be relevant in future proceedings, they could ask the Court to permit the use of that evidence in the future, if and when it becomes relevant. The First Amendment does not permit overbroad remedies. *See Lugosch*, 435 F.3d at 124 (sealing order must be "narrowly tailored" to preserve specific higher values). Thus, it

4

makes no sense to completely bar nonparty access to relevant information just because an ancillary aspect *might* necessitate a future modification to a protective order.

*Second*, Plaintiffs' proposal for widespread sealing is dramatically more restrictive than the degree of sealing courts have deemed appropriate in earlier ERISA cases brought by Plaintiffs' counsel. In *Cates v. Columbia University*, for instance, Ms. Dominguez's expert report was made almost entirely public, with only ***four*** discrete redactions related to details about Ms. Dominguez's consulting firm. *See* Expert Report of Wendy Dominguez ¶¶ 10, 11, 13, 16 & Ex. 2 at 1, *Cates v. Columbia Univ.*, No.16-cv-6524 (S.D.N.Y.), Dkt. 258-2 (Apr. 29, 2019). In *Cunningham v. Cornell University*, Ms. Dominguez's expert report is public with no redactions. Expert Report of Wendy Dominguez, *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (S.D.N.Y.), Dkt. 355-2 (Oct. 4, 2019). Yet here Plaintiffs seek to seal hundreds of paragraphs of Ms. Dominguez's reports on the basis that they "incorporate" confidential-designated information. Plaintiffs cannot claim that it is "unfair" to make public any details of Dominguez's opinions in this case when significant information on Dominguez's similar opinions are already public in other matters.

*Third*, Plaintiffs' proposal seek to redact many parts of their expert reports that do not meaningfully "incorporate" confidential material—or even cite confidential material at all. *See Broadspring, Inc. v. Congoo, LLC*, 2014 WL 4100615, at *23 (S.D.N.Y. Aug. 20, 2014) (concluding that there is "no reason" why papers that "contain only general descriptions of the [confidential] documents rather than the confidential information itself" should be filed under seal). For example, Plaintiffs contend that ¶¶ 39-166 of the report by their "cross-selling" expert (Daniel Alexander) must be filed under seal. *See* Dkt. 291-1 (Resp. Ex. 1). But these 100+ paragraphs include many that cite only public documents, like Form ADVs filed with the SEC and FTC notices, or that simply assert Alexander's supposed understanding of the industry.

*E.g.*, Expert Report of Daniel Alexander (Dkt. 283-1) ¶¶ 41-43, 45, 78, 89, 142-45. As another example, Plaintiffs contend that hundreds of paragraphs of Ms. Dominguez's report must be sealed, even those that simply analyze public information. *E.g.*, Expert Report of Wendy Dominguez (Dkt. 283-5) ¶¶ 220-226 (analyzing the Vanguard Diversified Equity Fund against various benchmarks and peer groups); *id.* ¶¶ 370-374 (same for the CREF Global Equities Account). There is no conceivable basis for sealing these parts of the expert reports.

### C. Plaintiffs' proposal lacks any support in case law.

Unsurprisingly, given the above defects, Plaintiffs do not cite a single case that holds that an expert's "rel[iance]" (Resp. 2) on material that is confidential under a protective order precludes the public filing of the expert's opinions in connection with a summary judgment motion or motion to exclude under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 2786 (1993). Indeed, the authority Plaintiffs single out as most "instructive" (Resp. 5) is not remotely on-point. In *Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, 1998 WL 35253496 (D. Minn. July 7, 1998), the court addressed a motion to amend a protective order to permit the disclosure of expert reports "to the Defendant's in-house engineers, scientists, and consultants" during discovery. *Id.* at *3-4. No party in *Intermedics* asked the court to seal information filed in support of a motion for summary judgment and thus keep that information from public access.[1]

---

[1] The other cases Plaintiffs cite (at Resp. 4) are equally inapposite. *Crossman v. Astrue*, 714 F. Supp. 2d 284, 287 (D. Conn. 2009), urges "district court judges to guard against overzealous or overbroad requests to seal records from public inspection." *Delta Air Lines, Inc. v. Bombardier, Inc.*, 462 F. Supp. 3d 354, 359 (S.D.N.Y. 2020), denied a motion to seal where the party opposing publicity "offer[ed] no legal citation in support of [its] airy statement" that sealing was required. *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 122 (S.D.N.Y. 2019), involved a request to de-designate material designated as confidential under a protective order. Like *Intermedics*, it has nothing to do with the filing of sealed information with a court. *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216 (D. Conn. 2019), and *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580 (S.D.N.Y. Jan. 10, 2108), hold merely that limited redactions of material necessary to preserve important interests are permissible. In fact, in *Royal Park*, the court

### D.      Yale has consistently applied confidentiality and sealing standards.

Contrary to Plaintiffs' assertion, Yale is not seeking to use confidentiality "as a sword and a shield." Resp. 4. Different standards apply to judicial documents and to documents that are exchanged in discovery but not filed with the Court. The Local Rules state that "[a] confidentiality order or a protective order entered by the Court to govern discovery shall not qualify as an order to seal documents for purposes of this rule." L.R. 5(e)(3). The protective order in this case likewise provides that material "which becomes part of an official judicial proceeding or which is filed with the Court is public" and "will be sealed by the Court only upon motion and in accordance with applicable law, including Rule 5(e) of the Local Rules of this Court." Dkt. 11 ¶ 14; *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015) ("even if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document").[2]

Plaintiffs' "sword and shield" accusation is also meritless because Yale submitted its *own* expert reports with its summary judgment motions with minimal redactions. Specifically, in its December 4 filings, Yale redacted its expert reports only insofar as they (1) referenced specific documents or data that meet the sealing standard (such as current pricing or competitively sensitive third-party information); or (2) referenced Plaintiffs' own expert reports (based on Plaintiffs' now-abandoned contention that their reports had to be filed *entirely* under seal). *See* Expert Report of

---

criticized the plaintiff for over-redaction of "passages that are not directly derived from business-sensitive documents." 2018 WL 739580, at *19.

[2] Although it is immaterial to this motion, Yale currently is reviewing more than 500 documents identified by Plaintiffs (see Resp. 3) to confirm whether any can be de-designated consistent with the protective order's requirements. Plaintiffs purport to base their sealing request on documents designated confidential by third parties, as well, but to the best of Yale's knowledge Plaintiffs not have asked third parties to de-designate any documents or sought their input on these issues.

John Chalmers (Dkt. 281-4); Expert Report of Glenn Poehler (Dkt. 281-11).Yale does not seek to use confidentiality concerns to protect its own experts from public scrutiny, and Plaintiffs should not do so either.

## III. The Court should give third parties an opportunity to state their position on sealing of third-party information.

Because Plaintiffs do not come close to satisfying their burden under *Lugosch* and Local Rule 5(e), their request to seal the bulk of their expert materials should be denied. Further, as demonstrated by Yale's decision to file much of its own expert reports publicly, Yale does not believe that any of its information in Plaintiffs' reports or transcripts warrants sealing.

However, there may be discrete *third-party* information in the expert reports and deposition transcripts that is competitively sensitive or otherwise meets the *Lugosch* standard. Accordingly, Yale believes the most prudent course is to give notice to the third parties whose information is contained in the reports and allow them two weeks to file statements as to what portions of the expert reports, if any, should be filed under seal.[3]

Dated: January 11, 2021

Nancy G. Ross (ct14373)
James C. Williams (ct23292)
Richard E. Nowak (phv09930)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Respectfully submitted,

*/s/ Brian D. Netter*
Brian D. Netter (phv08476)
　bnetter@mayerbrown.com
Michelle N. Webster (phv08475)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

---

[3] As described in the accompanying certificate of service, Yale is serving a copy of this reply on counsel for TIAA, Aon, and Vanguard to ensure that those parties have notice of Yale's position and an opportunity to state their position to the Court.

## CERTIFICATE OF SERVICE

I hereby certify that, on January 11, 2021, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

In addition, I hereby certify that, on January 11, 2021, a copy of the foregoing was served via email on the following third-party counsel:

Amanda Amert
Willkie Farr & Gallagher LLP
300 North LaSalle
Chicago, IL 60654-3406
Aamert@willkie.com

*Counsel for Aon plc*

Lori A. Martin
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Lori.Martin@wilmerhale.com

*Counsel for TIAA*

Sandra D. Grannum
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey 07932
Sandra.Grannum@faegredrinker.com

*Counsel for The Vanguard Group*

By:   /s/ *Brian D. Netter*
          Brian D. Netter