IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> YALE UNIVERSITY *et al.*, <br><br> *Defendants*. | No. 3:16-cv-01345-AWT <br><br> Hon. Alvin W. Thompson |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO STAY BRIEFING ON DEFENDANTS' MOTIONS TO EXCLUDE**

Defendants do not, because they cannot, dispute that the argument they make in their Motions to Exclude[1] is fundamentally inconsistent with the relief they have represented to this Court they will seek. Specifically, Defendants argue that the exclusionary standard applicable in jury-tried cases should apply to their Motions to Exclude, even though Defendants have represented to this Court they will file a motion to strike Plaintiffs' jury demand. But Defendants' tactical attempt to withhold their motion to strike until after this Court decides their Motions to Exclude would impose unnecessary burdens on this Court and is contrary to the interests of efficiency and judicial economy. Those interests strongly favor deciding Defendants' motion to strike Plaintiffs' jury demand prior to Defendants' Motions to Exclude. Defendants' contrary arguments fail for several reasons:

*First*, the fact that the Court *may* wait until trial to decide the validity of Plaintiffs' jury demand does not in any way mean the Court should delay that decision, because such a delay would be contrary to the interests of efficiency and would cause unnecessary burden.

---

[1] Capitalized terms are given the same definitions as in Plaintiffs' Memorandum of Law in Support of Their Motion to Stay Briefing of Defendants' Motions to Exclude. Doc. 290.

1

*Second*, simply because a court should not consider inadmissible evidence at summary judgment does not mean courts cannot find fact issues that defeat summary judgment without reaching expert opinion. Indeed, courts regularly do so in ERISA cases.

*Third*, Defendants attempt to distinguish numerous cases around the country that have rejected similar motions to exclude solely on the basis that those cases were heard via bench trials. Defendants therefore cannot argue that the status of Defendants' motion to strike does not affect the adjudication of their Motions to Exclude.

*Fourth*, Defendants misrepresent the courts' holdings in both *Cunningham v. Cornell University* and *Sacerdote v. New York University*—neither of which support their position.

For these reasons, and those set forth below and in Plaintiffs' opening brief, the Court should stay briefing on Defendants' Motions to Exclude until after adjudicating Defendants' forthcoming motion to strike Plaintiffs' jury demand.

**I.      Nothing in the Federal Rules of Civil Procedure Prevents the Court from Deciding Whether There Will Be a Jury Trial Prior to Deciding the Motions to Exclude**

While it is true that under Federal Rule of Civil Procedure 39(a) Plaintiffs' jury demand remains in effect unless stricken, that fact is irrelevant to the question of whether the interests of efficiency and judicial economy favor adjudicating the jury issue prior to the Motions to Exclude. Doc. 295 at 3–4. They unequivocally do. Indeed, Defendants admit that "a court has the discretion to permit a motion to strike a jury demand *at any time*." Doc. 295 at 4 (quoting 8 Moore's Federal Practice - Civil § 39.13 (2020)) (emphasis added).

Because Defendants have stated that they intend to move to strike Plaintiffs' jury demand, while *at the same time* arguing that the Court may not consider authority from bench-tried cases in deciding the Motions to Exclude, the interests of efficiency and judicial economy

strongly favor adjudicating Defendants' forthcoming motion to strike Plaintiffs' jury demand prior to deciding Defendants' Motions to Exclude. *See* Doc. 290 at 4–7.

## II.     Courts Routinely Decide Summary Judgment in ERISA Cases Without Reaching Expert Testimony

The fact that the Court may not consider admissible evidence at summary judgment does not mean that the Court cannot decide summary judgment without reaching expert testimony. Plaintiffs agree that the Court cannot consider inadmissible testimony in deciding summary judgment. Plaintiffs intend to object to the clearly inadmissible evidence that Defendants cite in support of their motion. *See, e.g.*, Doc. 271 ¶ 9. However, courts routinely decide summary judgment without reaching challenged evidence when factual issues clearly exist. For example, the Court in *Cunningham v. Cornell University*, No. 16-CV-6525 (PKC), 2019 WL 4735876, at *1 n.2, *10 n.10 (S.D.N.Y. Sept. 27, 2019), *reconsideration denied*, No. 16-CV-6525 (PKC), 2020 WL 1165778 (S.D.N.Y. Mar. 11, 2020), *appeal docketed* No. 21-88 (2d. Cir. Jan. 15, 2021), which Defendants cite repeatedly, deferred ruling on multiple evidentiary motions until after deciding summary judgment because the evidence at issue was not necessary to its decision. 2019 WL 4735876, at *1 n.2, *10 n.10. Similarly, while ultimately denying nearly identical motions to Defendants' Motions to Exclude, the Court in *Cates v. Trustees of Columbia University in City of New* York, No. 16-06524-GBD-SDA, 2019 WL 8955333 (S.D.N.Y. Oct. 25, 2019), *report and recommendation adopted*, No. 16-6524-GBD-SDA, 2020 WL 1528124 (S.D.N.Y. Mar. 30, 2020), held it did not have to consider expert evidence to find issues of fact requiring denial of summary judgment sought by counsel for Defendants. *Cates*, 2019 WL 8955333, at *11 ("As set forth above, the Court finds that there are issues of material fact as to Plaintiffs' theories of liability regarding recordkeeping fees. In making these findings, the Court does not rely on the opinions of Minnich or Otto."), *id.* at *14 n.20 ("Here, however, I find that

3

the data and recommendations from Columbia's investment advisors are sufficient to create factual issues as to whether a prudent fiduciary should have removed certain funds from the Plans.").

To be clear, Plaintiffs do not ask the Court to give Plaintiffs "two bites at the apple," as Defendants argue, or to decide summary judgment twice. Doc. 295 at 6.[2] Even a cursory review of the summary judgment briefing will show that a "myriad" of factual issues exist without reaching expert opinions. *Cates*, 2019 WL 8955333, at *7. In fact, Defendants had no response to half the evidence Plaintiffs offered as examples. *Compare* Doc. 295 at 7–8 *with* Doc. 290 at 7–8.

Moreover, Defendants' attempts to rebut the clear evidence of their liability even absent expert testimony fail. Defendants argue that Aon Hewitt's sell rating on the CREF Stock Account is not relevant because Aon Hewitt was not advising the Plan at the time, but this misses the point entirely. Doc. 295. The Aon Hewitt sell rating demonstrates that knowledgeable fiduciaries found the CREF Stock Account an inappropriate investment for a retirement plan. *Cates*, 2019 WL 8955333, at *13 (holding this report and similar reports were "sufficient evidence for a factfinder to conclude that a prudent fiduciary would have removed the funds at an earlier date").[3] Defendants inexplicably highlight the fact that Yale failed to hire a consultant to help evaluate the Plan's neglected investment lineup until August 17, 2016—approximately one week after this case was filed. Doc. 295 at 7. But that failure is completely irrelevant to whether professional advisors, such as Aon Hewitt, were recommending removal of the CREF

---

[2] If the Court believes it needs to consider the expert opinions, it can simply wait to rule on summary judgment until after the jury trial issue is decided. Given counsel for all parties have briefed this issue multiple times in this Circuit, extensive time should not be required to fully brief Defendants' Motion to Strike the Jury Demand.

[3] Defendants' arguments that it had a sufficient process because it received reports from investment providers has been rejected by the Second Circuit. *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (holding relying "exclusively on the representations" of the investment provider regarding the soundness of an investment was "wholly inadequate inquiry and deliberation").

4

Stock Account and other TIAA-CREF annuities in the Plan *years* before Yale took any oversight action.[4] *See* Doc. 290-4 (sell ratings for CREF Bond, CREF Stock, CREF Growth and CREF Global).

Furthermore, Defendants contend that the Court should disregard their failure to accept fee reductions *unilaterally* offered by Vanguard for years, because that specific failure does not establish all of the tens of millions of dollars of damages that Defendants' imprudence caused the Plan. Doc. 295 at 8. But because Defendants seek summary judgment on Plaintiffs' entire recordkeeping claim, a single issue of fact is sufficient to deny Defendants' motion. Moreover, Defendants ignore that this is just one of many pieces of evidence presented by Plaintiffs showing that Plan participants paid excessive recordkeeping fees. *See* Doc. 290 at 8.

### III.     The Only Argument Defendants Offers to Distinguish the Abundance of Authority Denying Similar Motions Is That Those Cases Were Bench Trials

Defendants' assertion, for purposes of opposing this motion, that Rule 702 is applied in the same way in bench and jury trials directly contradicts arguments they have made in support of their motions to exclude and is unsupported.

*First*, Defendants' argument is based entirely on cases from other jurisdictions and is inconsistent with how courts in this Circuit apply Rule 702. *See* Doc. 290 at 5–6 (citing over seven cases from district courts within the Second Circuit).

*Second*, Defendants in their papers in support of their Motions to Exclude rely on the argument that otherwise applicable precedent is inapplicable because the cases in question involved bench trials. Doc. 280 at 11 n.2 (distinguishing *Cates* and *Sacerdote* because they were "bench trial[s]"). Indeed, *Cates* and the *Sacerdote* decisions are consistent with cases across the

---

[4] In fact, *Cates* considered the Aon Hewitt report even though Aon Hewitt was not advising Columbia when it first issued the sell rating. *Cates*, No. 16-CV-6525, Doc. 294 ¶ 45 (providing that it was undisputed that Columbia did not hire Aon Hewitt until October 2013).

country denying similar motions. *See Cates*, 2019 WL 8955333, at *11 (rejecting similar arguments from Defendants' counsel regarding Minnich and Otto); *id.* at *14 (rejecting similar argument from Defendants' counsel regarding Dominguez and Buetow); *Cates*, 2020 WL 1528124, at *6–*7 (adopting recommendation to deny similar motions regarding Minnich, Otto, Dominguez, and Buetow); *Sacerdote*, 16-6284, Doc. 270 ("While the parties have identified a wealth of material for cross-examination, the Court does not find that any expert is subject to exclusion based on the arguments presented by the parties."); *Tussey v. ABB, Inc.*, 746 F.3d 327, 337 (8th Cir. 2014) (affirming the denial of a similar motion to exclude Otto and holding that the Court did not err in relying entirely on his opinion to find recordkeeping damages); *Abbot v. Lockheed Martin Corp.*, No. 06-0701-MJR, Dec. 225 at 3–4 (S.D. Ill. Mar 31, 2009) (denying similar motions to exclude Otto and investment experts by Defendants' counsel) (attached as Exhibit 1); *Sims. v. BB& T Corp.*, No. 15-372, Doc. 386 (M.D.N.C. July 31, 2018) (denying a similar motion to exclude an experience-based recordkeeping expert) (attached as Exhibit 2); *Sims,* No. 15-372, Doc 370 (rejecting a motion to exclude Dr. Buetow) (attached as Exhibit 3). Defendants cannot have it both ways. Because Defendants argue that cases approving Plaintiffs' experts should be distinguished where they were heard via bench trial, Defendants' motion to strike Plaintiffs' jury demand should be adjudicated before Defendants' Motions to Exclude.

### IV.     Defendants Misrepresent the Holdings of *Cunningham* and *Sacerdote*

Additionally, Defendants' opposition and Motions to Exclude rely on fundamental misrepresentations of the holdings of *Cunningham* and *Sacerdote*. Defendants state that *Sacerdote* "summarily denied all dispositive motions" because the court "preferred to resolve all issues after a bench trial." Doc. 295 at 2. Not true. The court in *Sacerdote* never stated that it wanted to defer a decision on the motions to exclude until after a bench trial. *Sacerdote*, 16-6284, Doc. 270. In fact, the parties did not even argue in their briefing that the more deferential

standard for bench trials should apply to the motions to exclude filed there. *See Sacerdote*, 16-6284, Docs. 206, 232, 240, and 264. Rather, *Sacerdote* found that similar arguments to those Defendants make in in their motions to exclude were fodder for cross examination rather than disqualification under Rule 702. *Sacerdote*, 16-6284, Doc. 270 ("While the parties have identified a wealth of material for cross-examination, the Court does not find that any expert is subject to exclusion based on the arguments presented by the parties.").

Moreover, the *Sacerdote* court chose not to rely on expert testimony after a full trial for reasons that Defendants do not raise in their Motions to Exclude. *Sacerdote* rejected the recordkeeping expert in that case because he lacked experience with 403(b) plans, annuities, and recordkeeper consolidation. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 283 n.19 (S.D.N.Y. 2018), *appeal pending* No. 18-2707 (2d Cir.). Defendants do not, because they cannot, argue that Minnich or Otto lack such experience. *See* Doc. 280; *Cunningham*, 2019 WL 4735876, at *7–*8 (rejecting similar challenges to Minnich's and Otto's experience); *Cates*, 2020 WL 1528124, at *6 (same). Similarly, the *Sacerdote* court decided not to rely on an investment expert because of issues with that expert's benchmark choices, not because of the supposed methodological concerns Defendants raise in their Motion to Exclude Dominguez and Buetow. *Compare Sacerdote*, 328 F. Supp. 3d at 311–12 n. 110, n. 112 *with* Doc. 277. In short, *Sacerdote* in no way supports Defendants' opposition to this motion or their Motions to Exclude.

Contrary to Defendants' assertions, the summary judgment decision in *Cunningham*, which is currently subject to appeal, did not "discredit[]" four of Plaintiffs' experts in this case. Doc. 295 at 2.

*First*, *Cunningham* did not mention Dr. Buetow, other than to note that it need not decide the motion to exclude his testimony. *Cunningham*, 2019 WL 4735876, at *1 n.2, *18.

7

*Second*, *Cunningham* recognized that Minnich and Otto were experts in pricing and prudent practices for recordkeeping fees for defined contribution plans and only held that they did not adequately explain how their experience led to their opinions in that case. *Cunningham*, 2019 WL 4735876, at *7–*10.[5] Here, Minnich explained in detail in both his opening and rebuttal reports the factors that he considered in developing his pricing opinion for the Plan: participant count, enhanced services beyond core recordkeeping, and anticipated ancillary revenue from non-recordkeeping sources. Doc. 283-7, Minnich Report ¶¶ 35, 53–55, 87; Doc. 283-8, Minnich Rebuttal Report ¶¶ 5–35. In short, Minnich spent roughly 20 pages of his reports explaining the factors he uses for pricing recordkeeping and how they led to his conclusion in this case. Additionally, he graphed his pricing examples onto an exponential curve similar to those he used and that other recordkeepers use in practice to price plans. Doc. 283-8, Exhibit B (p. 44).

*Third*, *Cunningham* deferred ruling on the motion to exclude Wendy Dominguez and ultimately held her testimony was admissible on the issues remaining for trial. 2019 WL 4735876, at *1 n. 2, *18; *Cunningham*, No. 16-6525, Doc. 397, Tr. of Pretrial Hr'g at 8:20–9:10 (denying a motion to exclude Dominguez) (attached as Exhibit 4). The portions of *Cunningham* criticizing Dominguez's opinions argued that she should have identified other fiduciaries that removed the at-issue investments from their plans and considered "additional characteristics such as 'peer group rankings,' 'historical performance,' 'risk metrics,' 'expenses,' and 'other quantitative and qualitative measures.'" *Cunningham*, 2019 WL 4735876, at *12. Here, the evidence, including as presented in Dominguez's report, is that other fiduciaries recommended removal of the at-issue investments for similar performance issues, such as the Aon Hewitt

---

[5] Plaintiffs do not agree with the characterizations of the expert reports in *Cunningham*, but any persuasive value of that decision is limited to those characterizations.

8

report discussed above. *See, e.g.*, Doc. 283-6, Dominguez Rebuttal ¶¶ 118–19. Additionally, Dominguez performed an in-depth analysis of peer group rankings, historical performance, risk metrics, expense ratios and numerous other characteristics in forming her opinion regarding every single investment upon which she opines. *See* Doc. 283-5, Dominguez Report ¶ 53 (discussing the factors she considered in evaluating funds).

## CONCLUSION

For these reasons and those in Plaintiffs' opening memorandum, the Court should stay briefing of Defendants' Motions to Exclude until Defendant's motion to strike is decided.

Dated: January 20, 2021             Respectfully Submitted,

/s/     Andrew D. Schlichter
SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (phv01476)
Heather Lea, (phv08416)
Andrew D. Schlichter (phv09955)
Sean E. Soyars (phv08419)
Joel D. Rohlf (phv09849)
Alexander L. Braitberg (phv09929)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
aschlichter@uselaws.com
ssoyars@uselaws.com
jrohlf@uselaws.com
abraitberg@uselaws.com

Ari J. Hoffman (ct22516)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Telephone: (203) 368-0211
Facsimile: (203) 337-5505
arihoffman@cohenandwolf.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 20, 2021, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ Andrew D. Schlichter