| | |
|---|---|
| **From:** | NYSD_ECF_Pool@nysd.uscourts.gov |
| **To:** | CourtMail@nysd.uscourts.gov |
| **Subject:** | Activity in Case 1:16-cv-06525-PKC-JLC Cunningham v. Cornell University et al Transcript |
| **Date:** | Wednesday, January 15, 2020 3:33:51 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Southern District of New York

**Notice of Electronic Filing**

The following transaction was entered on 1/15/2020 at 4:32 PM EST and filed on 1/15/2020
**Case Name:** Cunningham v. Cornell University et al
**Case Number:** 1:16-cv-06525-PKC-JLC
**Filer:**
**Document Number:** 397

**Docket Text:**
**TRANSCRIPT of Proceedings re: CONFERENCE held on 12/19/2019 before Judge P. Kevin Castel. Court Reporter/Transcriber: Elizabeth Chan, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/5/2020. Redacted Transcript Deadline set for 2/18/2020. Release of Transcript Restriction set for 4/14/2020.(McGuirk, Kelly)**

**1:16-cv-06525-PKC-JLC Notice has been electronically mailed to:**

Alexander L. Braitberg    abraitberg@uselaws.com

Alison Irene Stein    astein@jenner.com, aamert@jenner.com, aschumacher@jenner.com, docketing@jenner.com, pcordova@jenner.com

Amanda Susan Amert    aamert@jenner.com, docketing@jenner.com

Andrew Dickens Schlichter    aschlichter@uselaws.com, SBDocket@uselaws.com

Andrew W. Stern    astern@sidley.com, andrew-stern-8481@ecf.pacerpro.com, nyefiling@sidley.com

Exhibit 4

Angelo Anthony Stio , III      stioa@pepperlaw.com, balaa@pepperlaw.com, brownlp@pepperlaw.com

Ankur Mandhania      amandhania@mayerbrown.com, wdc.docket@mayerbrown.com

Brian D Netter      bnetter@mayerbrown.com, 8270713420@filings.docketbird.com, ebrooks@mayerbrown.com, wdc.docket@mayerbrown.com

Charles Dyke      cdyke@nixonpeabody.com

Eric S. Mattson      emattson@sidley.com, efilingnotice@sidley.com, eric-mattson-7944@ecf.pacerpro.com, nyefiling@sidley.com

Heather Lea      hlea@uselaws.com

Jean-Marie L. Atamian      jatamian@mayerbrown.com, jmarsala@mayerbrown.com

Jennifer Sokoler      jsokoler@omm.com, jennifer-sokoler-8125@ecf.pacerpro.com

Jerome J Schlichter      jschlichter@uselaws.com, rfreisinger@uselaws.com, sbddocket@uselaws.com, ssoyars@uselaws.com

Joel D. Rohlf      jrohlf@uselaws.com

Joel S. Feldman      jfeldman@sidley.com, dvelkovich@sidley.com, efilingnotice@sidley.com, joel-feldman-8377@ecf.pacerpro.com

Joseph Ryan Dosch      jdosch@sidley.com, efilingnotice@sidley.com, joseph-dosch-2702@ecf.pacerpro.com

Lori Ann Martin      lori.martin@wilmerhale.com, alexandra.hiatt@wilmerhale.com, Brad.Konstandt@wilmerhale.com, charles.bridge@wilmerhale.com, ryanne.perio@wilmerhale.com, WHDocketing@wilmerhale.com

Matthew A. Waring      mwaring@mwe.com

Michael A. Wolff      mwolff@uselaws.com

Michelle N Webster      mwebster@mayerbrown.com, 2367142420@filings.docketbird.com, asaslaw@mayerbrown.com, asiebert@mayerbrown.com, jancone@mayerbrown.com, kcivitello@mayerbrown.com, rrude@mayerbrown.com, smyler@mayerbrown.com, wdc.docket@mayerbrown.com

Nancy G. Ross      nross@mayerbrown.com, 7958995420@filings.docketbird.com, courtnotification@mayerbrown.com, jmarsala@mayerbrown.com

Samuel P. Myler      smyler@mayerbrown.com, courtnotification@mayerbrown.com

Scott Apking      sapking@uselaws.com

Exhibit 4

Scott A. Bumb      sbumb@uselaws.com

Troy A. Doles     tdoles@uselaws.com

**1:16-cv-06525-PKC-JLC Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=1/15/2020] [FileNumber=23409378-0] [8460c930dcb299d962c71ace94971f2ad72cbc9bbf36381554a2034265edeeee41405480e8187c61a34ff2b108fa3640143eb9a674c69dacd298da58e623f6dd]]

Exhibit 4

JCJECORC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    CASEY CUNNINGHAM, et al.,

4                    Plaintiffs,

5            v.                          16 Civ. 6525 (PKC)

6    CORNELL UNIVERSITY, et al.,

7                    Defendants.         Conference

8    ------------------------------x
                                        New York, N.Y.
9                                       December 19, 2019
                                        2:00 p.m.
10
     Before:
11
                         HON. P. KEVIN CASTEL
12
                                        District Judge
13
                            APPEARANCES
14
     SCHLICHTER BOGARD & DENTON, LLP
15        Attorneys for Plaintiffs
     BY:  JEROME S. SCHLICHTER, ESQ.
16          JOEL D. ROHLF, ESQ.

17

18   MAYER BROWN LLP
          Attorneys for Defendants
19   BY:  NANCY G. ROSS, ESQ.
            BRIAN D. NETTER, ESQ.

20

21

22

23

24

25

Exhibit 4

JCJECORC

```
1              (Case called)

2              THE COURT:  Please be seated.

3              DEPUTY CLERK:   Appearance for the plaintiff?

4              MS. ROSS:  Good afternoon, your Honor.  Jerry

5    Schlichter and Joel Rohlf of Schlichter Bogard & Denton for the

6    the plaintiffs.

7              THE COURT:  All right.  Good afternoon.

8              And for the defendants?

9              MS. ROSS:  Good afternoon, your Honor.  Nancy Ross

10   with my partner, Brian Netter, for the defendants.

11             THE COURT:  All right.  Good afternoon to you both.

12             I thank you for your final pretrial submissions.

13             Are there any amendments or changes to the joint

14   pretrial order from the plaintiff?

15             MR. ROHLF:  Other than what we previously gave to the

16   Court in the letter a few weeks ago, none at this time.

17             THE COURT:  When you say in the letter you gave me, in

18   the letter there was a stipulation that I recall.  Is that what

19   you're referring to?

20             MR. ROHLF:  Yes, that's what we're referring to.

21             MR. SCHLICHTER:  And, your Honor, there is the matter

22   we filed on Tuesday, which is the --

23             THE COURT:  I'm aware of that.

24             MR. SCHLICHTER:  OK.

25             THE COURT:  Any changes from the defendant?
```

Exhibit 4

JCJECORC

| | |
|---|---|
| 1 | MS. ROSS:  Your Honor, we are not quite certain about |
| 2 | some of our witnesses so we would like the ability to |
| 3 | potentially amend with respect to one or more of our witnesses |
| 4 | who we have identified. |
| 5 | THE COURT:  What do you have in mind? |
| 6 | MS. ROSS:  Well, we are -- |
| 7 | THE COURT:  What page are you on? |
| 8 | MS. ROSS:  I'm on page, I guess, defendants' witness |
| 9 | list, which is seven. |
| 10 | THE COURT:  Yes, I see it. |
| 11 | MS. ROSS:  OK. |
| 12 | THE COURT:  Obviously, the motions in limine as to |
| 13 | Wendy Dominguez and Glenn Poehler, but go ahead. |
| 14 | MS. ROSS:  Certainly.  There are two other |
| 15 | contingencies.  One is whether or not defendants will be |
| 16 | calling Patrick Gallagher.  He's listed under plaintiffs, but |
| 17 | with asterisks, which means both parties intend to offer him. |
| 18 | I don't -- |
| 19 | THE COURT:  Oh, I see.  He's on the plaintiffs' |
| 20 | may-call list. |
| 21 | MS. ROSS:  Yes, that's correct. |
| 22 | THE COURT:  And what's the other? |
| 23 | MS. ROSS:  The other one is Barron Schmidt, who is |
| 24 | with CAPTRUST.  Defendants will be calling a representative of |
| 25 | CAPTRUST, but we have recently learned that there may be a |

Exhibit 4

JCJECORC

|   |   |
|---|---|
| 1 | personal issue with Mr. Schmidt in which case defendants would |
| 2 | call Mr. Stroedel, who is on the plaintiffs' will-call list. |
| 3 | THE COURT:  All right. |
| 4 | Any objection from the plaintiffs? |
| 5 | MR. SCHLICHTER:  Well, your Honor, we don't know what |
| 6 | it means.  When we hear of a problem with Mr. Schmidt, I don't |
| 7 | know if they want to substitute.  Granted, he's the other |
| 8 | person on our witness list.  I am not clear.  Maybe they can |
| 9 | clarify what they mean by his issues. |
| 10 | THE COURT:  Let's put it this way.  Let's say they |
| 11 | just said to me right now:  We want to swap out Stroedel for |
| 12 | Schmidt.  Stroedel is on the plaintiff's will-call list. |
| 13 | Do you have any problem with that? |
| 14 | MR. SCHLICHTER:  No.  He's on our list. |
| 15 | THE COURT:  So you have no problem with that, so I |
| 16 | don't need to get into what Mr. Schmidt's problem is. |
| 17 | Same question as to Gallagher.  If they want to call |
| 18 | him, is there a objection? |
| 19 | MR. SCHLICHTER:  No.  He's on our list. |
| 20 | THE COURT:  I don't think the joint pretrial order |
| 21 | requires an amendment, but we do have the transcript of this |
| 22 | proceeding. |
| 23 | MS. ROSS:  Thank you, your Honor. |
| 24 | THE COURT:  I'm going to get, of course, into the in |
| 25 | limine motions. |

Exhibit 4

JCJECORC

1        With regard to the verdict sheets, there's a lot of

2   work to be done.  I'm struggling now.  I was working with them

3   this morning, and I may have mislaid them, but I think I can

4   pull them up on the ECF.

5        I'm somewhere between the two sides on this.  The

6   general verdict doesn't quite do it for me, and I can tell you

7   for sure the separate verdict sheets for different defendants

8   definitely doesn't do it for me on the defendant's side, nor

9   does this rather, what I think is a convoluted approach:  If

10  you answer no to certain questions, then you go and you write

11  down zero, and then the dollar column.

12       I don't know where that came from, but that's not the

13  way I do it.

14       What I will do is I will have my law clerk email both

15  sides a couple of verdict sheets recently used.  They're not in

16  the ERISA area, but they kind give you an idea of what you

17  might want to do with multiple defendants and the level of

18  detail.  The idea is to get the verdict sheet down to a page or

19  two -- and that's it -- that can be worked on with regard to

20  the motions in limine.

21       Let me just find out.  What is Poehler going to be

22  testifying to in the trial as it's constituted?  I looked at

23  paragraph 149 and 150 of his report, but that's rather limited

24  testimony.  What is he going to say?

25       MR. NETTER:  I think you're right.  We are

Exhibit 4

1    anticipating limited testimony from Mr. Poehler.

2              THE COURT:  He's not going to be expressing opinions

3    on the reasonableness of recordkeeping, right?

4              MR. NETTER:  He's not, no.

5              THE COURT:  All right.

6              MR. NETTER:  Paragraph 150, he says:  In the end,

7    regardless of what share classes of funds they were invested

8    in, the plans pay the same amount in administrative fees.

9              He also discusses how share classes work in paragraph

10   60, and 77 through 80 of this report.

11             He is going to be offered to explain the background of

12   what different share classes are and how the mechanics of those

13   work.

14             THE COURT:  Right.  All right.  Thank you.

15             Look.  I have looked at his testimony, and I know he

16   was asked the question at page 44 of this deposition:  Are you

17   offering any opinion on the propriety -- excuse me -- of any

18   investment in the plans?

19             Answer, I am not.

20             Well, you have a similar situation that comes up in

21   the case of Wendy Dominguez.  Are you testifying: Oh, I'm not

22   offering an opinion as to loss.

23             The testimony has to be taken in the context of the

24   report that the individual issued, and it seems to me that that

25   is something that would be dealt with on cross.

Exhibit 4

1          You can certainly bring it up on cross-examination if
2     you want to, but I'm not going to construe the testimony at
3     page 43 and 44 as withdrawing the opinions expressed in 149 and
4     150, which is the way I read plaintiffs' submissions.
5          Is there is some other objection to Poehler testifying
6     or is that it?
7          MR. SCHLICHTER:  Yes, your Honor.  The only thing
8     left, given that they have conceded that he's not going to be
9     testifying about the reasonableness of recordkeeping fees --
10    and given that what is in the case -- the issue in the case
11    that you have preserved for trial is the difference between the
12    losses resulting from the high-cost share classes versus
13    institutional share classes.
14         Wendy Dominguez has testified, and I know just on the
15    issue of losses, that is to your point, very much out of
16    context.
17         The question before it she says:  $336,000 I
18    calculated as a loss.
19         She made it clear in the next sentence she's not
20    calculating any rebates, and there is no evidence, your Honor,
21    from Mr. Poehler -- or anyone in this case -- and there are no
22    documents about any rebates from these funds, so Mr. --
23         THE COURT:  I think you fell victim to something that
24    many, many advocates fall victim to.  You have an argument as
25    to the context, and I'm inclined to agree with your argument.

Exhibit 4

JCJECORC

```
 1   I don't agree that she made it clear though.  I don't think so.

 2              MR. SCHLICHTER:  I would agree, your Honor.  But to

 3   say there are no loss calculations when they give the number --

 4              THE COURT:  But she did not make it clear because, if

 5   that's the case, we wouldn't be having a discussion, but with

 6   regard to Poehler --

 7              MR. SCHLICHTER:  The objection is he has never --

 8   there is nothing in his testimony about any calculation of any

 9   amount of rebates from these particular funds, and you have

10   said in your summary judgment ruling that this is a matter

11   that -- the whole idea of any offsets is a matter of expert

12   opinion.

13              THE COURT:  So when Mr. Poehler gets up here and tries

14   to slide in the calculation he did three days ago on what the

15   rebates are, you're going to stand up and say objection and I'm

16   going to say sustained.

17              MR. SCHLICHTER:  Well, I appreciate that, your Honor.

18   He may stand up and say something short of that.

19              THE COURT:  Then I'll hear your objection at the time.

20              MR. SCHLICHTER:  All right.

21              THE COURT:  I'm going to let that stand; and

22   similarly, in the case of Wendy Dominguez, I get it:  She

23   doesn't calculate the effect of the rebates, and that's a fair

24   ground for cross-examination.  But the balance of her testimony

25   I see no reason to exclude.  She updated her calculations, and
```

Exhibit 4

JCJECORC

1    to the net benefit of the defendants, and it seems to me that

2    it's perfectly wonderful for the defendant to say:  But you

3    didn't say that in your initial report.  Your initial report

4    said something different and now you've changed your story.

5            All of that, both sides have fun with it.  I'm sure

6    the jury will be very impressed, but I am inclined to allow

7    Wendy Dominguez to testify as well.  I don't see this as a

8    great challenge to the Court's gatekeeping role where there is

9    some methodology or opinion which has a serious flaw which

10   would cause me to preclude it.

11           That's where I am on the two experts.

12           What else?

13           MR. NETTER:  Your Honor, can I address one related

14   issue on Wendy Dominguez?

15           THE COURT:  Yes.

16           MR. NETTER:  Understanding what the Court is saying

17   with respect to the reliability of her testimony, one issue

18   that we raise in the briefing with respect to the update is

19   that she's changed the dates and --

20           THE COURT:  She extended it through March 2012, and

21   that's because in April 2012 your committee, your board,

22   changed its methodology.

23           What's the problem with that?

24           MR. NETTER:  The problem is a practical problem.

25           THE COURT:  You never had a deposition.  I'll give you

Exhibit 4

JCJECORC

1   some more latitude there.  We're talking about it's from year

2   end to March, which, as I think I recall the plaintiff said,

3   it's akin to conforming the pleadings to the evidence and here

4   just taking it out.  It's not a substantive point of issue.

5           MR. NETTER:  The substantive point of issue, your

6   Honor, we disclosed all the exhibits that show how the funds go

7   in and out for 2010 and 2011; but because 2012 wasn't part of

8   her opinion, I don't think we have all the same documents for

9   2012.

10          THE COURT:  So if you want to bring your documents

11  down to 2012, and that's the only change, I'm sure Mr.

12  Schlichter has no objection to that; is that correct?

13          Or should you be able to go to March 2012 but they

14  can't respond on it?

15          MR. SCHLICHTER:  They can obviously respond, Judge,

16  but I don't think Mr. Netter's stating the facts in the way

17  that they really are.

18          She reduced her number because she originally had

19  included all of 2012, and then after looking at and reviewing

20  the minutes in further detail saw the change was made after one

21  quarter of 2012, so she took out nine months.

22          THE COURT:  I see.  I didn't understand that.  I

23  thought she went through the end of 2011 and is now adding on

24  the beginning of 2012.  But she did through 2012 and she's

25  cutting it back?

Exhibit 4

JCJECORC

1          MR. SCHLICHTER:  Right.  That's why all this objection

2     is over a reduced number that our expert gives them.

3          THE COURT:  Well, I don't care whether that's a

4     reduced number, but is that fact factually accurate, Mr.

5     Netter, that she gave through 2012 and now she's cutting back

6     to the end of March?

7          MR. NETTER:  I think that that is incorrect in a very

8     significant way.  The report itself says:  I calculated damages

9     from August 2010 through the end of 2011, and then it provides

10     a number.  We didn't get the spreadsheet showing where that

11     number came from.

12          Now, it turns out she'd made a mistake that we had no

13     way to know about, and that she had also computed damages for

14     2012, but that wasn't disclosed to us so we didn't get that

15     disclosure until after the briefing cycle here after the

16     exhibits had already been --

17          THE COURT:  It seems to me that there is this quaint

18     notion of maybe -- I hope it's not outdated -- of a trial

19     sometimes trying to be a search for the truth; and since the

20     policy was changed in April of 2012, it's reasonable that both

21     sides be on the same page as to March 2012.  It's not like

22     that's a disputed issue, as I read the briefing.

23          I'm very much open to your readjusting your sheets

24     provided that you don't do what you wouldn't want the other

25     side to do, which is come up with a new theory, a new angle, a

Exhibit 4

JCJECORC

1  new approach.  If you're literally just taking down your

2  numbers to March 2012, that's a reasonable thing to do.

3           MR. NETTER:  Thank you, your Honor.

4           THE COURT:  OK.  Thanks for raising that.  I needed to

5  address that.

6           What else?

7           MR. SCHLICHTER:  Your Honor, as in any trial, when the

8  trial would be conducted -- and I don't know if you want to get

9  into that now -- but we have some scheduling issues that are

10  real for us and they will not agree to them.

11          We propose early May -- depending on the Court's

12  schedule, of course -- and the reason for that is that we have

13  three trials in this excessive fee space and we have two that

14  are in January.  One is in March.

15          Joel's schedule -- he and his wife are scheduled to

16  have a baby in the first week of March and he won't be able to

17  travel leading up to that.  That's not a scheduled birth.  It

18  is up in the air, as they are.

19          They won't accommodate that, and it's because they say

20  they have retired people who would be testifying.

21          THE COURT:  I don't want to flatter you, Mr.

22  Schlichter, with suggesting that I'm sitting here and I'm

23  saying:  You know, that just sounds so reasonable and perfect,

24  and of course I have a wide-open calendar, so somebody says

25  early May, that's when it's going to be.

Exhibit 4

JCJECORC

1           The reality is, that is when I can try this case.

2    That just happens to be coincidental with my availability.

3           Tell your clients that it was your eloquent advocacy

4    that persuaded me to go with your timing.

5           Is there a substantive problem with jury selection on

6    May 4th at 10 a.m.?   Hearing none from the defendants, sold.

7           MS. ROSS:  One of the problems is that, having to give

8    up our phones downstairs, we're all at a loss to look at our

9    calendars.

10          THE COURT:  But you do know that Mr. Schlichter was

11   suggesting that date so it's not a surprise date, and you do

12   know you're at the final pretrial conference, and you know

13   that -- at least when I was in private practice -- that might

14   have been one of the most important things that came out of a

15   final pretrial conference.

16          MS. ROSS:  That's correct, your Honor, and the only

17   thing that we would have would be the Jewish holidays, but I

18   don't believe that they run near there.

19          THE COURT:  No, I don't think they do, and what I'm

20   going to require is, with regard to updated charts, you'll have

21   until January 31st on that.  Turn them over to the other side.

22          I'm also going to suggest that we get together Friday,

23   April 24th at 2 p.m. for a conference to go over any

24   last-minute logistical issues, and that's fine.  We'll do that

25   at 2 p.m. on April 24th.

Exhibit 4

JCJECORC

1          What do you need to know about the trial that you

2   don't know?  You have your witness lists.  It's been estimated

3   as a four-day trial.

4          You will have your witnesses available.  If a party

5   doesn't have their witnesses available, then the Court may deem

6   that party to have rested.

7          This is going to go quickly, and that's about all I

8   can say.  I hope to have the jury instructions out in the first

9   or second day of trial so you can take a look at what I've come

10  up with, and I do want the parties to work the month of January

11  on a revised verdict sheet.

12         This is the time to get serious.  I am not going to

13  sit still for salting anything in for one side or the other in

14  the words of the verdict sheet.  If it smells in any way,

15  shape, or form as a tilt one way or the other, it's going to

16  come out; and of course, as you know, with a verdict sheet, I

17  tell the jury this is not something you read in the abstract.

18  This is governed by my instructions so you don't even have to

19  say what the burden of proof is.  "Has a party met its burden

20  of proof," you could also say: "or have they proven by a

21  preponderance of the evidence."  That's neutral enough.

22         The point of it is, the verdict sheet is a document

23  that is read with the jury instructions.  The jury will have

24  the jury instructions in the jury room with them.  We will,

25  generally speaking, start at 10 a.m., take one mid-morning

Exhibit 4

1    break, wrap up at 1 o'clock, lunch from one to two, pick up at

2    2 o'clock, and go to 5 o'clock.

3              If it gets to be 10 to 5:00 and you have finished a

4    witness, yes, I'll have you call your next witness.  I'm

5    jealous of the jury's time.  Those 10-minute periods mount up

6    over time, and the number one thought on typical jurors' minds

7    is how long is this going to take.

8              There you have it.

9              MR. SCHLICHTER:  Your Honor, just a couple of

10   clarifications about the process of handling the trial.  I take

11   it that you are going to inquire of the jury on voir dire from

12   the questions that you decide are going to be submitted?

13             THE COURT:  Well, that is correct.  I will entertain

14   applications along the way for other questions, or for even a

15   lawyer question, as long as I know what it is.

16             Typically, in the typical civil case in this district,

17   the judge would conduct the voir dire.

18             I sometimes use what I'll call an aid-to-memory.  It's

19   not a questionnaire, but it lists the top-heading questions,

20   which, if it elicits a yes answer, I then bear down with

21   followup questions.

22             But I'm going to see you at sidebar, and if I didn't

23   get to the nub of the matter in my followup questions, you're

24   going to let me know.

25             MR. SCHLICHTER:  All right.  And judges, as we know,

Exhibit 4

JCJECORC

1    do the challenges for cause in different ways.  Sometimes

2    judges will say:  Because the party may be -- the juror may be

3    tainted -- we'll deal with those before we get into having them

4    responding to other questions.

5            In terms of challenges for cause, do you want us to

6    make them before --

7            THE COURT:  Yes, as they come up.  The first thing

8    that's going to happen is who can't serve in this case.  I

9    don't think I'm going to get too many people running for the

10   exits because they may be running back to the jury assembly

11   room for a longer trial.  But you never know.

12           Then there are for cause that come up along the way.

13   Usually, I conduct the followup questioning with counsel

14   present at the sidebar out of the hearing of the rest of the

15   jury.  Then I'll have the jurors stand aside and I will hear

16   what everybody has to say about whether there is or isn't a

17   for-cause objection.  Then sometimes I will have that juror

18   return to the box and not excuse them until the next break in

19   the case because there may have been five jurors who came to

20   the sidebar -- and you will know that I'm excusing three of

21   them and I'm not excusing two of them -- but I'll have all five

22   return and do my excusing of jurors at a good juncture.

23           Part of it is, experience shows you don't want to

24   haven't run on the bank where jurors think that you just come

25   to the sidebar and you're off jury duty.

Exhibit 4

JCJECORC

| | |
|---|---|
| 1 | That's what I do, but you will know that the juror has |
| 2 | been excused or hasn't been excused. |
| 3 | MR. SCHLICHTER:   Thank you.  That's very helpful. |
| 4 | THE COURT:  What else?  Anything else? |
| 5 | MR. SCHLICHTER:  Not on behalf of the plaintiffs, your |
| 6 | Honor. |
| 7 | THE COURT:  All right. |
| 8 | MS. ROSS:  I assume that we should work with your |
| 9 | deputy clerk as far as any wiring for the trial? |
| 10 | THE COURT:  Yes.  You are going to work with my deputy |
| 11 | clerk, who is also going to send you to the Court's AV |
| 12 | Department and you have a monitor system here. |
| 13 | As you can see in this courtroom, what you need to do |
| 14 | is to get your graphic interface, or whatever it is, plugged |
| 15 | into the court system.  You don't come in here with your own |
| 16 | monitors or projection equipment.  You figure out how you plug |
| 17 | in, and you'll be able to show an exhibit to the witness and to |
| 18 | the judge without the jury seeing it -- witness to the judge |
| 19 | and opposing counsel, for example -- and if it's received, you |
| 20 | or your paralegal will learn how to then display it to the |
| 21 | juror. |
| 22 | MS. ROSS:  OK. |
| 23 | THE COURT:  Anybody who wants to go old school, there |
| 24 | is an ELMO in the side of the podium that pulls out and you can |
| 25 | put a document there as well. |

Exhibit 4

JCJECORC

1          MS. ROSS:  Terrific.  Thank you.

2          THE COURT:  Good.  Well, thank you all, and I look

3    forward to getting the revised verdict sheet and also the

4    conference that we'll have on April 24th.

5          We're adjourned.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 4