**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

JOSEPH VELLALI *et al*.,

    *Plaintiffs*,

v.

YALE UNIVERSITY *et al*.,

    *Defendants*.

Civil Action No. 3:16-cv-01345-AWT

Hon. Alvin W. Thompson

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS WENDY DOMINGUEZ & GERALD BUETOW

Nancy G. Ross (ct14373)
James C. Williams (ct23292)
Richard E. Nowak (phv09930)
Jed W. Glickstein (phv09543)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Brian D. Netter (phv08476)
Michelle N. Webster (phv08475)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

**PUBLIC VERSION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT.................................................................................................................... 1

I.      Dominguez's Testimony Is Based On A Premise Already Rejected By This Court........... 2

II.     Dominguez's Testimony Does Not Follow A Reliable Methodology................................. 6

III.    Buetow's Derivative Testimony Should Also Be Excluded................................................. 9

CONCLUSION.............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Gen. Grp., Inc.*,
    2013 WL 5771166 (D. Conn. Oct. 24, 2013) ..........................................................................10

*Cunningham v. Cornell Univ.*,
    2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019)..........................................................3, 4, 5, 7

*Ebbert v. Nassau County*,
    2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) .......................................................................10

*Ironshore Ins. v. W. Asset Mgmt. Co.*,
    2013 WL 2051863 (S.D.N.Y. May 15, 2013) ........................................................................10

*Kumho Tire v. Carmichael*,
    526 U.S. 137 (1999)..................................................................................................................9

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
    232 F. Supp. 3d 558 (S.D.N.Y. 2017).....................................................................................10

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
    982 F.3d 113 (2d Cir. 2020)......................................................................................................5

*NIC Holding Corp. v. Lukoil Pan Americas*,
    2009 WL 996408 (S.D.N.Y. Apr. 14, 2009)..........................................................................10

## CITATION FORMAT

| Citation | Description | Docket No. |
|---|---|---|
| Mem. | Memorandum of Law in Support of Defendants' Motion to Exclude Plaintiffs' Experts Wendy Dominguez and Gerald Buetow, December 4, 2020 | Dkt. 277 |
| Opp. | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude Plaintiffs' Experts Wendy Dominguez and Gerald Buetow, February 2, 2021 | Dkt. 306 |
| Ex. 1 – Ex. 120 | Exhibits to the Declaration of Brian D. Netter in Support of Defendants' Motion for Summary Judgment and Motions to Exclude Plaintiffs' Expert Witnesses, December 4, 2020 | Dkt. 281 & Dkt. 283 |
| Ex. 121 – Ex. 127 | Exhibits to the Supplemental Declaration of Brian D. Netter in Support of Defendants' Motion for Summary Judgment and Motions to Exclude Plaintiffs' Expert Witnesses, March 4, 2021 | Filed simultaneously |
| Ex. P__ | Exhibits to the Declaration of Joel Rohlf, February 2, 2021 | Dkt. 309 |

PUBLIC VERSION

## INTRODUCTION

The problem with Plaintiffs' putative investment expert, Wendy Dominguez, is straightforward. In her professional practice, Dominguez subscribes to the belief that retirement plan participants should be offered no more than 15 investment options. In preparing her expert opinion in this case, Dominguez started from the premise that Yale could prudently offer no more than 15 investment options. But Plaintiffs alleged at the outset of this case that Yale offered too many choices—*and this Court dismissed those allegations*.

Plaintiffs are trying to use Dominguez's testimony to reintroduce that failed theory, which is plainly improper. For that reason alone, Dominguez's testimony should be excluded even if her methodology were pristine. As it happens, however, Dominguez's analysis is not pristine. It suffers from serious defects that render it entirely unreliable. Because it fails both *Daubert* prongs—relevance and reliability—Dominguez's analysis should be excluded in full.

The situation surrounding Plaintiffs' other investment expert, Dr. Buetow, is even simpler. Every paragraph related to Buetow's damages methodology in his opening report explicitly refers to, and relies on, Dominguez's report. The sole paragraph in Buetow's report that references Yale's process simply states that Buetow "██████████████████████████████████████ ██████████████████████████████████████" Ex. 3, Buetow Rpt. ¶ 22. That is the definition of a derivative expert report. Accordingly, there is no basis to admit Buetow's testimony once Dominguez's testimony is excluded.

## ARGUMENT

In its opening brief, Yale argued that, because this Court dismissed Plaintiffs' claim that Yale imprudently offered too many investment options, Plaintiffs cannot offer witness testimony that Yale acted imprudently that is premised on Yale supposedly having offered too much choice. Plaintiffs do not dispute the premise of this argument. They offer no reason for this Court to accept

testimony premised on reducing the size of the Plan's investment lineup. Rather, they deny that Dominguez's testimony is premised on a plan to reduce the size of the investment lineup.

This is, then, an ideal issue to be summarily adjudicated. Dominguez's testimony either *is* premised on reducing the lineup, in which case both parties agree that it is irrelevant; or it is not, in which case the Court should proceed to Yale's reliability challenges (discussed in Part II *infra*). As shown in Part I, this first question is not a particularly close call.

**I.      Dominguez's Testimony Is Based On A Premise Already Rejected By This Court.**

Dominguez testified that the process she uses for her investment advisory firm "is designed to get client[s] to 10 to 15 funds." Ex. P111, Dominguez Tr. 49:19-21. She attached to her expert report an exhibit showing how only 10-15 funds are available in her model lineup. Ex. 5, Dominguez Rpt. at Ex. 4. At her deposition, Dominguez confirmed that "investment menus simplification" is her "core belief" and that her work in this case was designed to follow that belief:

> Q.      Is your analysis in this report designed to be consistent with the process that is outlined in Exhibit 4?
>
> A.      Exhibit 4 is about investment menus simplification and really the reason why menus should be created that are simple and easy for participants to use that's a core belief of mine and that's what that reference is to.
>
> Q.      Was it your objective in this report to follow the mindset of menu simplification and to apply it to Yale's plan?
>
> A.      My objective was to review the 22 funds that I was given to review and to offer an alternative if one existed that was similar or in the cases where I don't believe that sector funds, for example, should belong in an investment menu. I have mapped those to a different alternative that I believe is similar. So as far as my approach, I would say that was my approach.
>
> Q.      But the question … that you were asking with respect to those 22 funds was whether or not they would appear on your 10 to 15 fund lineup, right?
>
> A.      The approach was are they – I evaluated their performance and then also said whether they, well, evaluated their performance. Whether they should be removed and where those assets should be mapped to.

Q.      Right. And the question with respect to whether they should be removed is whether they would have been eligible for your 10 to 15 fund lineup under Innovest's standard methodology, right?

A.      Yes, I believe in that simplified streamline investment menu.

Ex. P111, Dominguez Tr. 77:11-78:24 (objections omitted).

Dominguez's acknowledgment at her deposition that she was following a methodology designed to identify a "10 to 15 fund lineup" is confirmed by her written report. Experts are required to disclose their methodology, and Dominguez explicitly based her methodology— "evaluat[ing] the investments at issue using the following list of accepted performance criteria"— on the following sources: ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See*

Ex. 5, Dominguez Rpt. ¶¶ 53-54 & nn.23-24.

In *Cunningham v. Cornell University*, another case in this Circuit in which the same Plaintiffs' lawyers retained the same expert witness, Plaintiffs acknowledged forthrightly that Dominguez's proposed expert testimony was based on her process "to create a new investment menu," *not* the process for "evaluating 'an existing product that has already been through a due diligence process.'" Ex. 127, *Cunningham* Opp. to Mot. to Exclude Dominguez and Buetow at 3-4. The *Cunningham* plaintiffs insisted that Dominguez was entitled to offer a litigation opinion in which she "creates a consolidated line-up" and "removes all investments not included in the consolidated line-up." *Id.* at 6. Plaintiffs even invoked *The Management of Investment Decisions*

as the authority for Dominguez's construction of a brand new lineup. *See id.* at 5. Dominguez's testimony was ultimately deemed irrelevant in *Cunningham*, precisely because the plaintiffs could not demonstrate that any fiduciary was using Dominguez's process to monitor a fund lineup. *See Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *12 (S.D.N.Y. Sept. 27, 2019). Dominguez followed the same process in this case.

In summary, Plaintiffs want to represent Dominguez's testimony as something that it isn't. But the report speaks for itself—and so does Dominguez's own sworn characterization of her report and the explanation of Dominguez's methodology signed by Plaintiffs' counsel in a parallel case. Permitting Dominguez to forswear the methodology in her report would be profoundly unfair to Yale, because it would mean that Dominguez had successfully hidden the nature of her methodology from Yale (in contravention of Rule 26), and was actually offering an opinion under a methodology (for monitoring funds in a large lineup) that she has specifically and repeatedly rejected as contrary to the "core belief" driving her professional practice. Admissible expert testimony must be rigorous and reliable, not capricious and inconsistent.

Plaintiffs offer two responses that merit reply. First, Plaintiffs cite places in Dominguez's deposition where she claims to have conducted a "review" of the at-issue funds to determine whether they "should be removed." Opp. 13. But the question is not whether Dominguez *intended* to conduct such a "review." It is whether the methodology she followed is reliable. The sources Dominguez cites treat monitoring and removal methodologies separately. Like a carpenter who uses a hammer to try to cut a piece of wood, Dominguez's use of a methodology designed to create a new investment menu to offer opinions about monitoring an existing menu is not a reason to admit her opinions. It shows that she does not understand the tools she is employing.

According to her report, moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5, Dominguez Rpt. ¶¶ 124,

213; *cf. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 123

(2d Cir. 2020) ( "an expert's methodology must be reliable at every step of the way"). Plaintiffs'

counsel has elsewhere explained that, when Dominguez creates a consolidated line-up, all of the

funds that don't make the final 10-15 are removed. Ex. 127, *Cunningham* Opp. to Mot. to Exclude

Dominguez and Buetow at 6. Even if Dominguez set out to conduct an investment review, by her

own admission the conclusions she reached cannot be separated from her 10-15 fund lineup

construction process, which is based on a premise this Court has already rejected.

Second, Plaintiffs argue that Dominguez is entitled to consider the number of investment

options in the Plan "in the process portions of her opinions." Opp. 14. This is true as far as it

goes—but it does not go very far. Yale has no objection to Dominguez taking note of the number

of funds offered by the Plan as part of her assessment of its process. But to evade summary

judgment on their claim for "failure to remove underperforming investments," Plaintiffs must

proffer evidence that some of the funds offered by Yale's plan were imprudent, and that Yale's

purportedly flawed process led to their retention. Dkt. 113 at 27 (summarizing surviving

investment claim). The "process portions" of Dominguez's opinions cannot satisfy this burden,

because they do not establish that any of the at-issue investments actually *were* imprudent; perhaps

for that reason, none of the damages calculated by any of Plaintiffs' experts stem from these

generic process opinions. In short, Plaintiffs' argument amounts to saying that they can admit those

of Dominguez's opinions which do not give rise to liability for Yale even if the ones relevant to

damages are rejected. Yale has no objection to providing Plaintiffs that Pyrrhic victory.

**II.      Dominguez's Testimony Does Not Follow A Reliable Methodology.**

As explained in Yale's opening brief, Dominguez's analysis also fails *Daubert*'s reliability prong. In her day job, Dominguez evaluates every fund in the context of a plan as a whole; here, she considered only the funds cherry-picked for her. There is no evidence that any fiduciary agrees with her extreme view that these funds were imprudent; in fact, they were incredibly popular with other similarly-situated fiduciaries. And she mechanically applied quantitative criteria to deem funds imprudent in a manner no real-world advisor ever would—even funds that she blesses for her out-of-litigation clients. *See* Mem. 6-16. Any of these is a reason to reject her report; collectively, they are overwhelming.

Plaintiffs have no serious response to any of these attacks. For example, they defend Dominguez's analysis of a cherry-picked set of funds on the grounds that they, not Dominguez, selected those funds. Usually, evidence that an expert is a lawyer's mouthpiece would counsel *against* admissibility. In any event, Plaintiffs miss Yale's point. Dominguez argues that all sector funds are *per se* imprudent, citing evidence that some of them underperformed the S&P 500, a broad index of stocks from companies in many different sectors. During any given period of time, however, some sector funds will beat the S&P 500 while others will underperform it. Mem. 7-8. Focusing only on the underperformers without considering sector funds that overperformed—even when done at the behest of counsel—does not provide a reliable basis for concluding whether Dominguez's blanket condemnation of sector funds is correct.

Plaintiffs' defense of the process Dominguez followed is even worse. As Yale argues— and Plaintiffs do not contest—it is Plaintiffs' burden to show that no prudent fiduciary could have made the investment decisions Yale made. Mem. 8. Plaintiffs cite as justification for Dominguez's opinion a series of 2015 documents from other investment advisors, apparently to show that the process used in her report was "industry standard" in 2010. Opp. 6, 18; *but see* Opp. 23

(complaining about use of 2018 analysis to evaluate Dominguez's 2010 opinion). It is true that some of those documents suggest using similar criteria to *flag* an investment for further analysis. Even in 2015, however, it is not the case that any of these documents apply Dominguez's "one strike and you're out" approach. Mem. 10-11; *see also* Opp. 22 (confirming that "according to Dominguez's process … failure to meet *any* of these metrics can justify removal of a fund from a plan") (emphasis added).

As explained in Yale's opening brief, when actual fiduciaries evaluated the funds Dominguez criticizes, the funds proved to be wildly popular. Similarly-situated prudent fiduciaries recognized that even if these funds had occasional performance blips, they were nonetheless worth offering because short-term performance is much less significant for investments meant to be held over decades. Mem. 9. Dominguez purports to come to different conclusions than these fiduciaries—but that is not evidence that hers is the only prudent conclusion, or even a prudent conclusion at all. It is simply her assessment of a fund using one set of criteria.

Next, Yale pointed out that Dominguez's process is unexplained and inconsistent because she ignores mountains of highly relevant data at her disposal; to wit, the positive performance markers for these funds, which—as Judge Castel found in rejecting her testimony in *Cunningham*—any reasonable investment advisor would account for in their performance analysis. Mem. 11-12. Plaintiffs agree that Dominguez did not consider this evidence, but claim that her failure to do so is consistent with the Trone book and her out-of-litigation process. Even if that were true, it would not salvage Dominguez's testimony. As Judge Castel found, it is not the case that *every* prudent fiduciary adopts Dominguez's overly-restrictive approach, which is what Plaintiffs need to show here. In addition, Plaintiffs are mistaken. Trone identifies the criteria

Dominguez uses as ones that *may* require review, depending on other factors; they are not automatic grounds for removal as Plaintiffs claim. Ex. P36 at 116-117.

Third, Dominguez's application of her "review" methodology in this case is totally different than the way she applies these criteria in the real-world for her Innovest clients. For example, Plaintiffs concede that Dominguez did not suggest immediate removal of at least 3 actively-managed funds for her paying client, even though all three failed one of the ¶ 53 criteria. Opp. 23. Only her litigation opponents, apparently, are to be held to this unrealistic standard.

Similar inconsistencies emerge when examining Dominguez's analysis of other at-issue funds outside of litigation. In litigation, Dominguez considers every real estate fund, including the TIAA Real Estate Account, verboten. ███████████████████████████████ ███████████████████████████████████████████████████████ Outside of litigation, Dominguez has no problem with her client, the University of Colorado, including a real estate fund on its plan. Mem. 13-14. Outside of litigation, Dominguez evaluates TIAA Real Estate's performance by taking into account its unique liquidity structure; in litigation, Dominguez thinks taking that structure into account is imprudent. *Id*. Outside of litigation, Dominguez notes that the unique qualitative features of the TIAA Real Estate Account "may be attractive" enough to replace a REIT, performance issues notwithstanding; in litigation, Dominguez ignores those very same qualitative features completely. *Id*.[1]

These are not quibbles with Dominguez's method or disagreements with her conclusions: these are indications that the process Dominguez uses here, and the conclusions she generates,

---

[1] Plaintiffs object that Dominguez's qualitative assessment of TIAA Real Estate for the University of Colorado happened in 2018, not 2010. But neither Dominguez's process nor the qualitative features of TIAA Real Estate—including the "liquidity guarantee," its "strong diversification benefits," and "management's extensive research team" that Dominguez championed in 2018—changed during that time period. Mem. 14.

bear no relationship to the track record that supposedly qualifies her as an expert. Her opinions are precisely the kind of results-oriented "expertise" that *Daubert* is designed to exclude. *See Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999) (an expert must employ "the same level of intellectual rigor" in the courtroom as in practice in the relevant field).

## III.    Buetow's Derivative Testimony Should Also Be Excluded.

Buetow states that he was retained to offer ███████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Ex. 3, Buetow Rpt.

¶ 1. His entire opening report is 27 paragraphs—just six of which are substantive opinions. In the first substantive paragraph, █████████████████████████████████████████

████████████████. Ex. 3, Buetow Rpt. ¶ 22. The remaining five substantive paragraphs describe Buetow's damages calculations, all of which rely on Dominguez's report. *Id*. ¶¶ 23-27.

In short, Buetow admits that he was retained to calculate damages based on Dominguez's opinions and does not explain how he would calculate damages if Dominguez's report was excluded. His opinions should be excluded as irrelevant once Dominguez's opinions are excluded.

Plaintiffs resist this ironclad conclusion by claiming that Buetow offered an "independent opinion" on the process for monitoring and removing investment options. Opp. 24-25. In support, they cite Buetow's opening report, which is the exact opposite of "independent" analysis. ████████

██████████████████████████████████████ Ex. 3, Buetow Rpt. ¶ 22. Plaintiffs also cite 24 paragraphs in Buetow's *rebuttal* report, which address "background principles" before turning to criticisms of his damages opinions. Opp. 26 (citing Ex. P110, Buetow Rebuttal Rpt. ¶¶ 9-33).

To the extent Plaintiffs now seek to transform Buetow's "background" rebuttal discussion on damages into a substantive opinion on what monitoring process a prudent fiduciary would

follow, that is plainly improper. "[A] rebuttal expert report should be used solely to explain or rebut opinions offered by the other party, and should not raise new arguments or theories." *Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Gen. Grp., Inc.*, 2013 WL 5771166, at *2 (D. Conn. Oct. 24, 2013).[2] If Buetow had offered any such substantive opinions in his opening report, moreover, Yale would have moved to exclude them as duplicative of Dominguez's report, which opines about the same issues over scores of pages. *See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 577 (S.D.N.Y. 2017) (excluding expert testimony as "needlessly cumulative").

As with their efforts to re-characterize Dominguez's methodology in opposition to a motion to exclude, allowing Plaintiffs to turn their self-professed damages expert into a second process expert would be profoundly unfair. The Court should limit Buetow to opinions actually disclosed in his opening report, which are self-admittedly reliant on Dominguez's conclusions. Once Dominguez is excluded, therefore, Buetow should be, too.

## CONCLUSION

The Court should exclude both Wendy Dominguez and Gerald Buetow.

---

[2] *See also, e.g.*, *Ironshore Ins. v. W. Asset Mgmt. Co.*, 2013 WL 2051863, at *2 (S.D.N.Y. May 15, 2013) (plaintiffs cannot use rebuttal expert reports as "an opportunity for the correction of any oversights in the plaintiff's case in chief.") (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)); *NIC Holding Corp. v. Lukoil Pan Americas*, 2009 WL 996408, at *3 (S.D.N.Y. Apr. 14, 2009) (precluding use of rebuttal expert testimony in plaintiffs' case-in-chief); *Ebbert v. Nassau County*, 2008 WL 4443238, at *14 (E.D.N.Y. Sept. 26, 2008) (refusing to consider rebuttal report on summary judgment where material properly belonged in the initial report).

Dated: March 4, 2021                           Respectfully submitted,

Nancy G. Ross (ct14373)                        */s/ Brian D. Netter*
James C. Williams (ct23292)                    Brian D. Netter (phv08476)
Richard E. Nowak (phv09930)                        bnetter@mayerbrown.com
Jed W. Glickstein (phv09543)                   MAYER BROWN LLP
MAYER BROWN LLP                                1999 K Street NW
71 South Wacker Drive                          Washington, DC 20006-1101
Chicago, Illinois 60606-4637                   Telephone: (202) 263-3000
Telephone: (312) 782-0600                      Facsimile: (202) 263-3300
Facsimile: (312) 701-7711

*Attorneys for Defendants*

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 4, 2021, a copy of the foregoing was filed electronically

using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By:    */s/ Brian D. Netter* _____

         Brian D. Netter