```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
            Plaintiffs,          :    Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
            Defendants.          :
-------------------------------- x
```

**ORDER RE NON-PARTY AON'S MOTION TO SEAL**

For the reasons set forth below, non-party Aon Investments USA Inc. ("Aon")'s cross-motion to permanently seal (ECF No. 326) is hereby GRANTED.

In <u>Lugosch v. Pyramid Co. of Onondaga</u>, the court discussed the "common law presumption of access" to judicial documents and the "qualified First Amendment right of access to certain judicial documents." 435 F.3d 110, 119, 120 (2d Cir. 2006) (citations omitted). "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment."

1

Id. at 121. The reasoning that applies to documents submitted to a court for its consideration on a summary judgment motion also applies to documents submitted to a court in its consideration of a Daubert motion.

Under either construct, there are countervailing factors that compete with the presumption of access. In the common law context, "after determining the weight of the presumption of access, the court must balance competing considerations against it. Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id. at 120 (citations omitted). In the First Amendment context, "[a] court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry. [D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (citations omitted).

"The 'privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation' between the presumption of access and a request to seal." United States Sec. Exch. Comm'n v. Ahmed, No. 3:15cv675, 2018 WL 4266079, at *2 (D. Conn. Sept. 6, 2018) (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)). "Both 'financial records' and

2

'family affairs' are among those 'privacy interests' which may support sealing of documents." Id. (quoting Amodeo, 71 F.3d at 1051). "Records which could aid '[c]ommercial competitors seeking an advantage over rivals' may also properly be sealed." Id. (quoting Amodeo, 71 F.3d at 1051). See also Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing."); Sec. Exch. Comm'n v. Telegram Grp. Inc., 19-cv-9439, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020) ("The demonstration of a valid need to protect the confidentiality of proprietary business information, such as internal analyses, business strategies, or customer negotiations, may be a legitimate basis to rebut the public's presumption of access to judicial documents.").

    Under Local Rule 5(e):

> No judicial document shall be filed under seal, except upon entry of an order of the Court either acting sua sponte or specifically granting a request to seal that document. Any such order sealing a judicial document shall include particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.

D. Conn. L. Civ. R. 5(e)3.

    Aon moves to keep under seal eleven Aon documents. The plaintiffs originally moved to provisionally seal this information when they submitted it in support of their

opposition to the defendants' motion for summary judgment, and the court granted their motion.

Aon has established that the material it requests remain under seal is proprietary and confidential information. Two of the documents (Exhibits P69 and P103) are email chains which include Aon's analysis of Yale's vendor structure and Aon's commentary and advice regarding specific investments, respectively. See Non-Party Aon Investments USA Inc.'s Mem. of Law in Supp. of its Mot. to Seal ("Aon's Mem.") at 3–4, ECF No. 327. Exhibit P97 is the confidential master consulting agreement between Aon and Yale, which contains the details of Aon's consulting services and the fees it charges. See id. at 3. Four of the documents (Exhibits P34, P66, P67, and P99) are proprietary and confidential slide decks that contain Aon's advice and analysis regarding Yale's investment selections and fees. See Non-Party Aon Investments USA Inc.'s Reply Mem. in Further Supp. of its Mot. to Seal ("Aon's Reply") at 2, ECF No. 356-1. One of the documents (Exhibit P90) is a proprietary and confidential proposal by Aon to become Yale's investment consultant that includes Aon's specific offerings and proprietary investment analysis process. See id.

Three of the documents are deposition testimony to which the plaintiffs cite. Diane Improta's testimony (Exhibit P6) includes "an explanation of Aon's advice regarding investment

4

options for it [sic] clients, why it made those decisions, and how Aon analyzes its clients' complex investments." Aon's Mem. at 3. David Swallow's testimony (Exhibit P13) "recounts Aon's advice regarding the intervals between requests for proposals ("RFPs") and how the RFP process should be conducted, Aon's confidential work for other universities, details regarding Aon's proprietary database, and the specific confidential advice Aon gave to its clients regarding vendor consolidation, fees, pricing models, and investment ratings." Id. William Ryan's testimony (Exhibit P40) has "discussion of Aon's investment advice and the reasoning behind those recommendations." Id.

    The plaintiffs contend that "Aon's published opinions and general methodology are not confidential because they are already public." Pls.' Opp. to Non-Party Aon's Cross-Mot. to Permanently Seal ("Pls.' Opp.") at 4, ECF No. 348. However, Aon points out that the information discussed by the plaintiffs in their opposition is "generic information" on Aon's website. Aon's Reply at 2. It is apparent that the categories of information that Aon seeks to seal are not the type of information that would be placed on its website.

    Aon has met its burden of showing that the documents it requests remain under seal would be valuable to Aon's competitors by providing them with a competitive advantage. It explains that the way Aon provides services differentiates it

5

from its competitors and that the documents at issue "reveal aspects of Aon's pricing model that it uses to obtain and retain business." Aon's Mem. at 5. Disclosure of such details and other aspects of Aon's proprietary and confidential methodology would harm Aon by giving its competitors insight into its confidential practices and strategies. The plaintiffs assert that Aon fails to provide any "specific examples" of how it would be put at a competitive disadvantage. Pls.' Opp. at 7. However, the court agrees with Aon that "[t]he law does not require that a non-party seeking sealing fabricate a step-by-step example of how a competitor might use these documents, providing a roadmap for capitalizing on its newly disclosed proprietary information." Aon's Reply at 3-4.

It is so ordered.

Dated this 30th day of September 2021, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge