IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> YALE UNIVERSITY *et al.*, <br><br> *Defendants.* | No. 3:16-cv-01345-AWT <br><br> Hon. Alvin W. Thompson |

**[PROPOSED] RESPONSE TO DEFENDANTS'
SUPPLEMENTAL BRIEF REGARDING *SACERDOTE* [DOC. 381]**

Yale's arguments fundamentally misunderstand civil procedure and appellate review. By Yale's account, one would think that the Second Circuit itself conducted the trial *de novo* and concluded as a matter of law that no ERISA fiduciary had a duty to consolidate recordkeepers before 2018 and the CREF Stock and TIAA Real Estate accounts are substantively prudent investments for all plans. But the court of appeals specifically cautioned against such "overreliance" on facts from other cases. *Sacerdote v. New York Univ.*, 9 F.4th 95, 108 (2d Cir. 2021) (*Sacerdote II*). In reality, the Second Circuit held merely that the district court's findings that NYU used "appropriate methods" under the particular circumstances facing the plans' fiduciaries were not *clearly erroneous*, meaning they had at least minimal evidentiary support and thus did not leave the appellate court "with the definite and firm conviction that a mistake has been committed." *Id*. at 107, 119.

Judge Forrest did not decide the case based on the fiduciaries' affidavits and expert reports submitted at summary judgment, as Yale asks the Court to do here. Indeed, the *Sacerdote* district court assumed that such materials "were written by

lawyers." *See* Trial Tr. 475:16–24, Doc. 330 in S.D.N.Y. No. 16-6284 (May 31, 2018). Instead, the outcome turned on the court observing the witnesses' demeanor and finding them credible after being tested through the crucible of cross-examination: the terms "credible" or "credibly" appear 14 times in the trial decision. *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 282–83 nn.11–12, 16, 21–22, 24, 296, 304–06 & nn.67, 76, 309–10 & nn.106, 108 (S.D.N.Y. 2018) (*Sacerdote I*). Those credibility findings were virtually immune from appellate review. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

Viewed through the proper lens, Yale's claim-specific arguments collapse.

### I. *Sacerdote* does not address a "duty to consolidate recordkeepers" or other aspects of the recordkeeping claim here

Yale claims that *Sacerdote II* stands for the proposition that "Yale had no duty to consolidate recordkeepers" sooner than 2015 because NYU was found to have not breached its duty by waiting until 2018. Doc. 381 at 2. The Second Circuit did not address a recordkeeper-consolidation duty as a matter of law. It upheld a *factual* finding that NYU was "prevented" and "precluded" from consolidating due to technological hurdles. *Sacerdote II*, 9 F.4th at 119–20. The technical problems were corroborated by several members of the fiduciary committee whose testimony the district court "credited." *Id.* at 119; *Sacerdote I*, 328 F. Supp. 2d at 296 (finding CFO's "testimony on [technical] issue was detailed, thorough, consistent, and credible"). But because the Second Circuit *did* recognize a legal duty to avoid unnecessary fees in reversing dismissal of a mutual fund claim—and "[c]onsolidation may lead to lower recordkeeping fees"—the outcome may well have

changed but for NYU's technical roadblock. *Sacerdote II*, 9 F.4th at 109, 119.

Yale claims that it has "materially similar and undisputed evidence" of technological problems, citing the December 2020 declaration of a Yale executive, Hugh Penney. Doc. 381 at 3–4. In light of the 2018 *Sacerdote* decision "crediting NYU's belief that 'any recordkeeper switch could not be completed without risk of significant errors or additional changes prior to completion of this global update of NYU's systems and technology,'"[1] it is unsurprising that Yale's lawyers attached a declaration setting forth Yale's uncannily similar belief that "there was too much risk and uncertainty to transition from our existing multiple recordkeeping arrangement until the payroll/benefits project was completed." Doc. 381 at 3–4.[2] But Yale's "contemporaneous" 2014 records do not corroborate this story of "risk and uncertainty"; they show only that the topics were discussed at the same time. Doc. 381 at 4 & n.3. While Penney in 2020 alleged "risk and uncertainty," in 2015 he said the exact opposite: the sole recordkeeper (SRK) transition "is *not* dependent on Workday" and it "actually is *less risky* to implement SRK independent of Workday" to *avoid* complications. Doc. 309-15 (emphasis added).

Again, the critical distinction is that *Sacerdote* found NYU's belief credible after cross-examination at trial, not pre-trial affidavits from inherently biased NYU executives. Although Yale complains that failure to credit the fiduciaries' evidence even when it is disputed "would render the summary judgment vehicle meaningless

---

[1] *Sacerdote II*, 9 F.4th at 119 (quoting *Sacerdote I*, 328 F. Supp. 3d at 298).
[2] Penney refers to the payroll/benefits system as "Workday." Doc. 309-15.

3

in breach of fiduciary duty cases," (Doc. 381 at 8), Yale has it backwards. If a fiduciary facing personal liability for plan losses could obtain summary judgment merely by submitting an affidavit claiming to have used a "process" of some sort or that he had "uncertainties," summary judgment would be automatic. That is why the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe," crediting the movant's evidence only if it is "*uncontradicted* and unimpeached" *and* "comes from *disinterested* witnesses." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000)) (emphasis added).

Mr. Penney is not disinterested, and his affidavit is contradicted by his prior admission that it was "*less risky*" to move to one recordkeeper independent of Workday. Doc. 309-15 (emphasis added). While Yale disputes this interpretation (Doc. 381 at 4–5), the record must be construed in *Plaintiffs'* favor at this stage, which compels disregarding Penney's *post hoc*, post-*Sacerdote* justification.

Yale's arguments about viewing TIAA as "entrenched" and attacks on Plaintiffs' experts are improper because they have nothing to do with the appellate opinion. Doc. 381 at 2–3, 6–7. They simply present new contentions based on the 2018 trial decision, which is not the proper subject of a supplemental brief.

Even if Yale's self-serving "view[]" of its inability to jettison TIAA could support summary judgment (it cannot), TIAA's purported "entrenchment" was no obstacle to consolidating to *TIAA* as sole recordkeeper, as TIAA repeatedly proposed but Yale ignored. Doc. 302 at 31 ¶62. In that regard, Yale's contention that it was "more

4

aggressive in pursuing recordkeeper consolidation than NYU" (p.2) ignores that a second NYU plan which did *not* have technology problems *completed* a consolidation to TIAA as sole recordkeeper in 2013,[3] further undermining the credibility or prudence of Yale's claim that it did not "learn" of this possibility until 2013. Doc. 302 at 7, ¶12. In fact, the evidence shows that Yale never *investigated* the issue until years into the class period. Pls.' Opp. at 17 (Doc. 300); Doc. 302 at 31–32 ¶¶61–65. And the fact that by 2013 the NYU Medical School plan consolidated to TIAA only from an arrangement including TIAA and Vanguard further undermines the credibility of Yale's claim that the same was not possible for Yale's Plan. Doc. 302 at 7, ¶11 response & n.28; *Sacerdote II*, 9 F.4th at 119.

Consolidation aside, Plaintiffs' evidence also shows Yale's imprudence in failing to obtain competitive bids and failing to monitor the reasonableness of the recordkeepers' asset-based compensation, including millions in cross-selling revenue. Pls.' Opp. at 13–16; Doc. 302 ¶¶53–60, 66–71, 100–12. The Second Circuit addressed none of those points. *See Sacerdote*, 9 F.4th at 104, 119 (three recordkeeping theories survived motion to dismiss but appeal concerned only "the recordkeeper-consolidation claim"). Accordingly, even accepting Yale's strained interpretation that *Sacerdote* addressed a legal duty to consolidate recordkeepers, that still would not control the outcome here.

## II. Yale's new loss argument is tardy and incorrect

Regarding loss, Yale now abandons the sole argument from its brief, which

---

[3] *Sacerdote II*, 9 F.4th at 119; *Sacerdote I*, 328 F. Supp. 3d at 293–94, 296.

5

relied on the *Sacerdote* trial decision. Doc. 381 at 5; *see* Opening Mem. at 13 (Doc. 270). It is too late to raise new arguments at this stage. To be clear, while *Sacerdote* emphasized the distinction between loss and damages, it did not *change* the law regarding the general loss standard, citing the same binding 1985 *Bierwirth* case cited in Plaintiffs' opposition. *See* Pls.' Opp. at 4–5, 22, 34 (citing *Bierwirth* and "would have earned" more standard); *Sacerdote II*, 9 F.4th at 112 & n.64 (same). There is no justification for Yale to present new loss arguments now.

Even if the Court entertains Yale's new position, Yale still gets it wrong. It is not Plaintiffs' burden to prove a fee was "attainable." Doc. 381 at 6. It is *Yale*'s burden to prove that a lower fee identified by Plaintiffs was *not* attainable. *Sacerdote II*, 9 F.4th at 113 & n.68 ("The burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty.") (quoting *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)). To show a loss, Plaintiffs merely have to show that the Plan "would have earned" more if managed prudently. *Id*. at 112. A plaintiff meets that burden by showing "a prudent alternative," *i.e.*, an amount "that it would have been prudent to pay." *Id*. at 113; *see* Pls.' Opp. at 23. The Plan's own fee reductions upon consolidation show that the Plan would have earned more if Yale had pursued that prudent alternative action in a timely manner. Doc. 302 at 32 ¶65. Plaintiffs have presented ample evidence of lower fees achieved by other plans, which defeats summary judgment. Opp. at 24–25; Doc. 302 at 32–34 ¶¶65–70. Yale does not meet its burden.

### III. *Dicta* regarding CREF Stock and TIAA Real Estate is irrelevant

Yale incorrectly suggests that the result here is controlled by the Second

Circuit's statement that it "agree[s] with the district court that a hypothetical prudent fiduciary would have made similar choices" regarding CREF Stock and TIAA Real Estate. *Sacerdote II*, 9 F.4th at 121; Doc. 381 at 9. That characterization of the district court's ruling is *dicta*; the lower court did not make that finding.

The sole trial issue reached on appeal was whether there was "error in the district court's determinations after trial that NYU did not breach its fiduciary duties." *Id.* at 119 n.101. In making those determinations, the district court limited the inquiry to whether NYU used "appropriate methods" of investment monitoring under the circumstances. *Sacerdote I*, 328 F. Supp. 3d at 284; *see* 29 U.S.C. §1104(a)(1)(B). It concluded only that the plaintiffs "failed to carry their burden" of showing "that the Committee acted imprudently" or "failed to engage in a prudent process" in "how it monitored … certain investment options." *Id.* at 280, 283; *id.* at 309 (rejecting claim of "improper benchmarks"). The opinion did not suggest an intention to expand or rewrite that conclusion. *Sacerdote II*, 9 F.4th at 120–21.

The district court did refer to a "hypothetical prudent fiduciary" standard in the context of loss/damages. *Sacerdote I*, 328 F. Supp. 3d at 285–86; *see id.* at 306–07 (recordkeeping "damages" under "Objective Prudence" heading); *id.* at 311–12 & n.112, 316 (same for investments). The Second Circuit criticized the district court's "loss" analysis as "perplex[ing]" and "puzzl[ing]" on the fee claim. *Sacerdote II*, 9 F.4th at 112. The court *declined* to reach the issue on the investment claim. *Id.* at 119 n.101. Because "plaintiffs' argument about the district court's loss analysis," *id.*, was the same with respect to both claims, the Second Circuit likely would have

7

found the investment-loss analysis flawed for similar reasons. *See* Appellants' Br. 29, 82–84, *Sacerdote v. New York Univ.*, No. 18-2707 (2d Cir.), Doc. 100 ("The court's investment loss analysis was similarly flawed" because it conflated loss/damages, misallocated the burden of proof, and never analyzed whether "the Plans lost money compared to what they would have earned if the assets ... had instead been invested in" prudent alternatives); *cf. Sacerdote II*, 9 F.4th at 112 (finding district court conflated loss/damages, misallocated burden, and holding that "[l]oss is measured in this context by 'a comparison of what the [p]lan actually earned on the ... investment with what the [p]lan would have earned had the funds been available for other [p]lan purposes.'") (quoting *Bierwirth*, 754 F.2d at 1056).

In any event, adjudications regarding *NYU's* conduct or decisions have no preclusive effect here. *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008). These Plaintiffs are entitled to have their own "'day in court,' and, through time-honored methods, test the accuracy of [Defendants'] submissions and introduce evidence of [their] own." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998) (rejecting judicial notice of "[f]acts adjudicated in a prior case"). As noted, Plaintiffs' evidence of deficient methods is far stronger and the claim much broader than the two *Sacerdote* funds. Doc. 379-1 at 4–5.

The no-clear-error holding as to the two funds turned on expert credibility determinations. *Sacerdote II*, 9 F.4th at 120–21; *Sacerdote I*, 328 F. Supp. 3d at 316 (crediting NYU's expert); *see Anderson*, 470 U.S. at 575 (trial judge's "decision to credit the testimony of one of two or more witnesses ... can virtually never be clear

error"). Yale asserts that the Court should adopt Judge Forrest's credibility assessments to pre-judge a *different* expert's credibility in this case (in which Plaintiffs demand a jury) before a single witness takes the stand. Doc. 381 at 6–7. Yale's invitation is patently improper on its face and the Court should reject it.

### IV.     *Sacerdote* does not endorse Yale's deficient fiduciary process

Yale contends that Plaintiffs take "entirely out of context" the Second Circuit's holding that "the presence of a deliberative process" does not automatically satisfy ERISA's duty of prudence. Doc. 381 at 7. To the contrary, Plaintiffs included an entire block quote showing the full context. Doc. 379-1 at 3. That the relevant inquiry is not merely whether there were any methods *whatsoever*, but *appropriate* methods, is a broadly applicable rule of law and not limited to "underdeveloped" claims as Yale asserts. Doc. 381 at 7. Indeed, that principle derives directly from the statute, which requires the "care, skill, prudence, and diligence" of a hypothetical prudent fiduciary "*familiar* with such matters"—not merely *any* minimal amount of care or diligence. 29 U.S.C. §1104(a)(1)(B) (emphasis added); *see Sacerdote II*, 9 F.4th at 111 ("Deliberative processes can vary in quality or can be followed in bad faith."). Yale's processes, to the extent they existed, were sorely lacking in quality. Pls.' Opp. at 7–11, 30–33, 37–38. That is exactly why Yale now asserts that *any* type of "deliberative" process should be deemed sufficient. Doc. 381 at 8.

*Sacerdote II* forecloses Yale's contention that "a defendant's deliberative process *specifically with respect to a challenged decision*" establishes prudence as a matter of law. *Id.* (emphasis added). Yale's argument is identical to the dissenting view that the panel majority rejected. *See Sacerdote II*, 9 F.4th at 123 (Menashi, J.,

9

dissenting) (dismissal harmless because "NYU followed a deliberative process" in making challenged decision to use retail shares).

In that regard, it is Yale that omits the relevant context from its quotes regarding the share-class claim. Doc. 381 at 8–10. The Second Circuit did not suggest that share-class claims *in general* should be "dispensed with" "on summary judgment" after "minimal" discovery as Yale misleadingly suggests. *Id*. 8, 10. The court was responding to the dissent's point that dismissal was harmless because one piece of evidence in the trial record suggested a deliberative process. *Sacerdote II*, 9 F.4th at 111. In that context, *if* additional discovery confirmed what the dissent believed to be a foregone conclusion, the claim *might* be "dispensed with" at summary judgment. But the majority did not suggest that it believed the claim to be doomed. If the court had such a belief, there would have been no reason to remand for further proceedings. Nor did the court say anything about similar claims in other cases being "dispensed with" at summary judgment.

The Second Circuit did not hold that to be actionable, retail shares must be "so pervasive as to 'taint' the plan 'as a whole'" as Yale asserts. Doc. 381 at 9. In fact, the district court's reasoning to that effect was *not* a "persuasive" ground for dismissal. *Sacerdote II*, 9 F.4th at 109. While a "holistic assessment" of the overall plan is *relevant*, the court did not require the entire plan to be "tainted." *Id*. at 109–10. Plaintiffs' evidence here shows Yale's deficient process and related losses, material disputes of fact precluding summary judgment. Pls.' Opp. at 37–38.

## CONCLUSION

Summary judgment should be denied.

October 1, 2021                               Respectfully submitted,

/s/     Sean E. Soyars
SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (phv01476)
Heather Lea, (phv08416)
Andrew D. Schlichter (phv09955)
Sean E. Soyars (phv08419)
Joel D. Rohlf (phv09849)
Alexander L. Braitberg (phv09929)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
aschlichter@uselaws.com
ssoyars@uselaws.com
jrohlf@uselaws.com
abraitberg@uselaws.com

Ari J. Hoffman (ct22516)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Telephone: (203) 368-0211
Facsimile: (203) 337-5505
arihoffman@cohenandwolf.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on October 1, 2021, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ Sean E. Soyars