```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
          Plaintiffs,            :   Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
          Defendants.            :
-------------------------------- x
```

## RULING ON PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE

The plaintiffs request leave to file the Supplemental Declaration of Daniel Alexander, ECF No. 360-2; the Office of the Attorney General ("OAG") of the State of New York's July 13, 2021 Assurance of Discontinuance ("Assurance of Discontinuance"), which contains the findings of the OAG's investigation and relief agreed to by the OAG and TIAA-CREF Individual & Institutional Services, LLC ("TIAA Services"), ECF No. 360-3, Ex. A; and the Securities and Exchange Commission's July 13, 2021 "Order Instituting Administrative and Cease-and-Desist Proceedings . . . Making Findings and Imposing Remedial Sanctions and a Cease-and-Desist Order" ("SEC Order"), which

1

contains findings by the SEC and relief agreed to by the SEC and TIAA Services. ECF No. 360-4, Ex. B. For the reasons set forth below, the plaintiffs' motion is being granted.

I

The court agrees with the plaintiffs that the Assurance of Discontinuance and the SEC Order are relevant. "Plaintiffs allege, among other things, that Defendants, fiduciaries of the Yale University Retirement Account Plan ("Plan"), failed to monitor and control TIAA's excessive compensation for Plan recordkeeping and administrative services." Pls.' Mem. in Supp. of Mot. for Leave to File Suppl. Evid. in Opp'n to Defs.' Mot. for Summ. J. and Mot. to Exclude Daniel Alexander ("Pls.' Mem.") at 2-3, ECF No. 360-1. Also, Alexander opined that "TIAA's excessive compensation for Plan services included revenue generated through cross-sales of TIAA products and services to Plan participants." Id. at 3. The defendants maintain that with respect to whether "TIAA was engaged in impermissible 'cross-selling[,]' . . . [p]laintiffs have no evidence." Mem. of Law in Supp. of Defs.' Mot. for Summ. J. at 12-13, ECF No. 268. However, as the plaintiffs point out, "the OAG . . . found, integral to TIAA's sales process were sales representatives' (referred to by TIAA as wealth management advisors) cold-call[s to] preselected participants in TIAA-administered employer-sponsored retirement plans, such as the Plan, to offer free

financial planning services, . . . which were often described as included in, or a benefit of, the investor's retirement plan." Pls.' Mem. at 4 (alteration in original) (citations omitted).

The defendants assert that Alexander's opinions "make no sense on their own terms" because "TIAA operates without profit and regularly disburses excess revenue (minus expenses) to participants and retirees." Mem. of Law in Supp. of Defs.' Mot. to Exclude Pls.' Expert Daniel Alexander at 2, ECF No. 273. But as the plaintiffs point out, the SEC identified as materially misleading statements emphasizing "TIAA's non-profit heritage in marketing materials, including training [salespeople] to include this fact in promoting its free financial planning services to [plan] participants approaching rollover eligibility. . . . As the SEC found, these statements misled clients into believing that [TIAA Services] and [its salespeople] operated without motivation, financial or otherwise, to promote particular products." Pls.' Mem. at 4 (alteration in original) (citations omitted)

The findings in the Assurance of Discontinuance and the SEC Order support the plaintiffs' positions in the briefing before the court. Thus the court finds unpersuasive the defendants' contention that the Assurance of Discontinuance and SEC Order "are not relevant to any issue in the case." Defs.' Opp'n to

Pls.' Mot. for Leave to File Suppl. Evid. ("Defs.' Opp'n") at 9, ECF No. 361.

## II

Nor is the court persuaded by the defendants' arguments that the documents are inadmissible hearsay. "Hearsay means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). The plaintiffs maintain that the orders themselves are not hearsay:

> Plaintiffs do not offer the orders to prove the truth of the SEC's and N.Y. Attorney General's findings that TIAA committed fraud. Plaintiffs need not prove that *TIAA* violated the securities laws to prove that *Yale* violated its ERISA fiduciary obligation to monitor all sources of TIAA's Plan-related revenues.

Reply in Supp. of Pls.' Mot. for Leave to File Suppl. Evid. ("Pls.' Reply") at 3, ECF No. 367 (citations omitted). The plaintiffs contend that "regardless of the truth of the government's findings, the *fact* of the investigations further supports Plaintiffs' position that there are genuine disputes as to whether Yale adequately monitored the reasonableness of TIAA's compensation for its services to the Plan." Id. at 4. The court agrees.

Moreover, at the summary judgment stage, the question is not whether an exhibit would be admissible at trial, but whether the content of the exhibit could be presented in an admissible

4

form. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). See also Smith v. City of New York, 697 Fed.Appx. 88, 89 (2d Cir. 2017) ("We need not resolve whether the documents fall within either the business-records exception or the public-records exception to the hearsay rule because, in any case, material relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment.") (citations omitted); Kennedy v. Caruso, No. 3:19-CV-260, 2020 WL 1515672, at *2 (D. Conn. Mar. 30, 2020) ("At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible.") (quoting Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005)); Ava Realty Ithaca, LLC v. Griffin, No. 5:19-CV-123, 2021 WL 3848478, at *4 (N.D.N.Y. 2021) ("FRCP Rule 56(c)(2) focuses on the admissibility of the evidence's content, not its form.").

### III

The defendants argue that "Rule 408 similarly precludes Plaintiffs' efforts to introduce these third-party settlements." Defs.' Opp'n at 6. However, a leading treatise, Weinstein's

Federal Evidence, recognizes that "[i]f none of the litigants was a party to the compromise, Rule 408 should not bar evidence of the settlement." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.04 (Mark S. Brodin, ed., Matthew Bender 2d ed. 2021). In the section of The New Wigmore discussing the applicability of Rule 408 to compromise conduct of a nonparty the treatise states:

> In such a case, the key question is whether the policy of the exclusionary rule—to encourage compromise and the frank discussions necessary to achieve it—requires exclusion of the conduct of persons not related to the immediate suit. Certainly, there is a reasoned position that there is no need to exclude evidence of such conduct. This was McCormick's view. After setting forth the policy or privilege rationale for the rule, he wrote that "a compromise in which the party now objecting was not involved would not be privileged on this ground. The persons who made the settlement are not imperiled by any evidence that may be received in the present litigation." And another treatise provides that "where the person who made the offer of settlement is a stranger to the litigation, there is no reason to exclude the offer as evidence of his negligence or of the negligence of a defendant in the action."

3 David P. Leonard, The New Wigmore: A Treatise on Evidence: Selected Rules of Limited Admissibility § 3.7.1 (3d. ed. 2021) (footnotes omitted). See also 2 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:59 (4th ed. 2021) ("It is harder to say whether settlements and underlying negotiations should be excluded when they involve *exclusively* nonparties to the present suit. Rule 408 appears by its terms to apply, but here the risk of discouraging or distorting the settlement

6

process is reduced, and the case for admitting is stronger. Arguably it would be better to resolve the question of admissibility by reference to Rule 401 to 403. Fortunately, instances of this sort rarely appear in the cases.").

The interpretation of Rule 408 in <u>Weinstein's Federal Evidence</u> is consistent with the language of the rule, the Advisory Committee Notes, and pertinent caselaw.

The rule reads as follows:

> (a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering— or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . . .

Fed. R. Evid. 408(a)(1)-(2). Thus, conditions of the use of such evidence being prohibited are that the evidence would be used to prove or disprove the validity or amount of a disputed claim or for impeachment, and that the evidence in question be the act of furnishing, promising, or offering, etc. a valuable consideration in compromising or attempting to compromise "the claim" or be conduct or a statement made during compromise negotiations about "the claim"—the claim being the "disputed claim." Fed. R. Evid. 408(a)(1), (2). As the plaintiffs explain, "evidence of TIAA's settlement is not admissible to prove the

7

validity of *that* claim," Pls.' Reply at 6, and there is no claim being asserted against TIAA Services in this case so no party here is seeking to prove or disprove such a claim. If Rule 408 was intended to apply to an attempt to use such evidence in any case whatsoever, as opposed to in connection with a claim against a party in the present case, there would be no need to have the limitations at the beginning of clause (a). The reference to a disputed claim signals that the pertinent claim is one being proven or disproven in the instant case. Also, if Rule 408 was intended to apply to an attempt to use such evidence in any case, the language in clauses (1) and (2) limiting their applicability to "the claim" would be rendered superfluous. Fed. R. Evid. 408(a)(1), (2).

The Advisory Committee notes for the 1972 proposed rules state: "While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises <u>when offered against a party thereto.</u> This latter situation will not, of course, ordinarily occur <u>except when a party to the present litigation</u> has compromised with a third person." Fed. R. Evid. 408 Advisory Committee Notes to 1972 Proposed Rules (emphasis added). The notes for the 1974 enactment read in pertinent part: "Under existing federal law evidence of conduct and statements made in compromise negotiations is admissible <u>in subsequent litigation</u>

between the parties. The second sentence of Rule 408 as submitted by the Supreme Court proposed to reverse that doctrine in the interest of further promoting non-judicial settlement of disputes." Fed. R. Evid. 408 Advisory Committee Notes to 1974 Enactment (emphasis added). The language in both of these sections of the Advisory Committee Notes contemplates that at least one of the litigants was a party to the compromise and gives no indication that the prohibition extends to cases where none of the litigants was a party to the compromise.

In SEC v. Pentagon Capital Management PLC, the court recognized that "Rule 408 exists to protect a party that settles one claim from having that settlement used against it to establish liability (or the extent of liability) of that same party in another lawsuit for the same claim." SEC v. Pentagon Cap. Mgmt. PLC, No. 08 CIV. 3324, 2010 WL 985205, at *4 (S.D.N.Y. Mar. 17, 2010). There, the defendants sought admission of orders issued by the SEC in enforcement actions against individuals and entities who were not parties in that case. The court found that the "[d]efendants [were] not trying to use the settlements to establish liability against the parties who settled but to offer evidence as a shield because the SEC's findings that others were aware of, and facilitated, market timing and late trading tend to negate the Commission's allegation that the defendants in this action deceived those

9

parties." Id. The court concluded that "[s]uch evidence is not precluded by Rule 408 because it is being offered for a purpose other than to establish liability." Id.

In Option Resource Group v. Chambers Development Company, there was an SEC investigation of the defendant that proceeded concurrently with the proceedings before the court. "The SEC investigation concluded with settlements of the several separate administrative actions and accompanying administrative findings, conclusions and orders." Option Res. Grp. v. Chambers Dev. Co., 967 F. Supp. 846, 847 (W.D. Pa. 1996). The court concluded that "[c]learly, the Consent and Final Judgment in the civil proceeding and the Releases/settlements in the SEC proceedings, and evidence of conduct of the parties or statements made *in the course of* those settlement negotiations, must be excluded by the plain language of [Rule 408]." Id. at 849.

The defendants cite to Accident Insurance Company, Inc. v. U.S. Bank National Association for the proposition that "Rule 408's prohibition appears to be applicable even if the entity invoking the rule is not a party to the agreement at issue." Defs.' Opp'n at 6 (quoting Accident Ins. Co., Inc. v. U.S. Bank Nat'l Ass'n, No. 3:16-CV-02621, 2019 WL 2566950, at *3 (D.S.C. June 21, 2019)). However, Accident Insurance Company does not support the defendants' position here. First, in explaining its reasoning, the court stated: "the court finds that it cannot

10

ignore that 'Rule 408 exists to protect a party that settles one claim from having that settlement used against it to establish liability (or the extent of liability) of that same party in another lawsuit for the same claim.'" Accident Ins. Co., Inc., 2019 WL 2566950, at *3 (quoting Pentagon Cap. Mgmt., 2010 WL 985205, at *4). Second, in supporting its statement that "Rule 408's prohibition appears to be applicable even if the entity invoking the rule is not a party to the agreement at issue," id., the court cites Kennon v. Slipstreamer, Inc. 794 F.2d 1067, 1069 (5th Cir. 1986). In Kennon, the plaintiff and three of the four defendants settled after the jury was selected but before evidence began. The judge informed the jury that these three defendants were out of the case and that the plaintiff had not received substantial monies as a result. The remaining defendant objected to the court's disclosure of the amount of the settlement, even though the remaining defendant had not been a party to the settlement. Counsel for the remaining defendant argued that the disclosure constituted an impermissible comment on the weight of its third-party claims against two of the settling defendants and moved for a mistrial. On appeal, the court of appeals concluded that the district court did not abuse its discretion in revealing the fact of the settlement but that disclosing the amount of the settlement had no proper purpose in the circumstances of the case and violated Rule 408. It reasoned

11

that "disclosure of the 'nominal' ten dollar settlement in this case suggests to the jury that [the remaining defendant] alone was liable. Furthermore, the willingness of the plaintiff to settle for a pittance with the other defendants could be taken by the jury as a reflection of the strength of the plaintiffs' case against [the remaining defendant]." Kennon, 794 F.2d at 1070. In that context, the court stated

> [Federal Rule of Evidence] 408 provides that evidence of a settlement is not admissible to prove liability for or invalidity of the claim or its amount. While a principal purpose of Rule 408 is to encourage settlements by preventing evidence of a settlement (or its amount) from being used *against* a litigant who was involved in a settlement, the rule is not limited by its terms to such a situation. Even where the evidence offered favors the settling party and is objected to by a party not involved in the settlement, Rule 408 bars the admission of such evidence unless it is admissible for a purpose other than to prove liability for or invalidity of the claim or its amount.

Id. at 1069 (citations omitted). Thus, Kennon is consistent with the conclusion in Weinstein's Federal Evidence that if none of the litigants was a party to the compromise, Rule 408 should not bar evidence of the settlement. It merely makes it clear that Rule 408 may be invoked by any party in the case, not just one who was also a party to the settlement.

The defendants also cite to Buescher v. Baldwin Wallace University as "rejecting the argument that 'Rule 408 does not apply to non-parties.'" Defs.' Opp'n at 6 (quoting Buescher v. Baldwin Wallace Univ., 86 F. Supp. 3d 789, 796 (N.D. Ohio

2015)). However, the language quoted by the defendants appears in the following context:

> Plaintiffs argue that the Consent Agreement must be considered for a couple reasons. First, plaintiffs contend that Rule 408 does not apply to non-parties, and because plaintiffs were not parties to the Consent Agreement, it cannot be excluded. But, plaintiffs cite no authority to support this argument. Rather, cases have excluded consent agreements where plaintiffs were not parties to the agreement.

Buescher, 86 F. Supp. 3d at 796. In Buescher, the defendant was a party to the consent agreement, and the argument for which the plaintiffs there could cite no authority was that because the plaintiffs were not parties to the consent agreement, it could not be excluded under Rule 408. Thus, Buescher is also consistent with the statement "[i]f none of the litigants was a party to the compromise, Rule 408 should not bar evidence of the settlement." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.04 (Mark S. Brodin, ed., Matthew Bender 2d ed. 2021).

                                IV

Accordingly, Plaintiffs' Motion for Leave to File Supplemental Evidence in Opposition to Defendants' Motion for Summary Judgment and Motion to Exclude Daniel Alexander (ECF No. 360) is hereby GRANTED.

It is so ordered.

Dated this 28th day of October 2021, at Hartford, Connecticut.

                                                /s/ AWT
                                          Alvin W. Thompson
                                  United States District Judge