IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>YALE UNIVERSITY *et al.*,<br><br>    *Defendants*. | Civil Action No. 3:16-cv-01345-AWT<br><br>Hon. Alvin W. Thompson |

**DEFENDANTS' [PROPOSED] SUPPLEMENTAL BRIEF REGARDING**
*HUGHES v. NORTHWESTERN UNIVERSITY*

On January 24, 2022, the Supreme Court issued its opinion in *Hughes v. Northwestern University*. The Court did not decide whether the allegations in that case stated a plausible claim for breach of fiduciary duty. Instead, the Court remanded the case so that the Seventh Circuit could "reevaluate" the allegations under *Twombly* and *Iqbal*. Ex. A, *Hughes* slip op. at 6.

Several aspects of *Hughes*, however, provide strong support for Yale's pending motion for summary judgment (Dkt. 267). As the Supreme Court explained, "[a]t times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," and courts accordingly "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." Ex. A, *Hughes* slip op. at 6. Requiring Yale to stand trial simply because Plaintiffs disagree with Yale's judgments would be directly contrary to these principles. *Hughes* thus provides additional reasons why the Court should grant summary judgment to Yale on all claims.

**Recordkeeping**. Plaintiffs challenge the amounts the Plan paid for recordkeeping, claiming that Yale's use of multiple recordkeepers at the start of the class period caused the Plan to incur excessive fees. However, making decisions about recordkeepers is a complex undertaking. Fiduciaries must consider various types of arrangements, ensure that a recordkeeper can offer all

desired and support all desired investments, negotiate contracts, manage participant expectations, coordinate other projects, and more. All of these questions implicate a host of "difficult tradeoffs" and require fiduciaries to apply their "experience and expertise." Ex. A, *Hughes* slip op. at 6.

The record shows that Yale consistently evaluated these factors as part of its decisionmaking process. For example, Yale asked TIAA about sole recordkeeping in 2010 but was told that TIAA was not "comfortable" providing those services at the time, and Yale concluded that it did not wish to jettison valued TIAA annuity options simply so it could switch to another recordkeeper. Dkt. 270 at 7-8; Dkt. 338 at 3-5. As another example, counsel for the *Hughes* plaintiffs conceded before the Supreme Court that "having two [recordkeepers] might be prudent had they ever gone to Fidelity and TIAA and said, we are one of the very largest plans; we want you to reduce your fees." Ex. B, *Hughes* Tr. 33:13-17. The record shows that Yale did just that here prior to consolidation. *E.g.*, Dkt. 270 at 3-4; Dkt. 338 at 3, 6-7; Dkt. 271 ¶¶ 15-18, 20, 37-38.

Once TIAA told Yale that it had the capability to serve as sole recordkeeper, Yale issued a request for proposal and engaged a third-party consultant, becoming one of the first large private universities to switch to a sole recordkeeping arrangement in 2015, well before this lawsuit was filed. Dkt. 270 at 8-9; Dkt. 381 at 2-5. Thus, while Plaintiffs have asserted that Yale could have decided to move even faster to consolidate recordkeepers, the record in this case shows that Yale's approach was—at the very least—reasonable. *Hughes* requires the Court to give "due regard" to these determinations. Ex. A, *Hughes* slip op. at 6.

**Plan Investments**. Plaintiffs challenge Yale's monitoring of Plan investment options, claiming that a prudent fiduciary would have removed 22 supposedly underperforming investment options. However, Yale regularly reviewed the Plan's investment options. Indeed, Yale's plan consultants called Yale's process "second to none." Dkt. 270 at 2, 18-19; Dkt. 338 at 9-10.

At most, Plaintiffs' purported criticisms show only that Yale *could* have taken other steps to monitor plan investments, such as hiring additional third parties, preparing an investment policy statement, or reviewing additional materials. But it is undisputed that ERISA does not require any of these steps, and there is no evidence that most, or even many, comparable fiduciaries felt that it was obligatory to take these steps under the circumstances (much less that substantial numbers of fiduciaries who followed these steps removed any of the 22 challenged funds). Dkt. 270 at 19-21; Dkt. 338 at 9-11; Dkt. 381 at 8-9. Further, it is irrelevant whether Plaintiffs or their expert would have removed the 22 funds from the Plan, given the latitude ERISA gives fiduciaries to make "reasonable judgments." Ex. A, *Hughes* slip op. at 6.

**Share Classes**. Plaintiffs challenge the share-classes Yale selected for certain investments offered to plan participants. It is undisputed that Yale asked about lower-cost share classes throughout the relevant period. In some cases, Yale was told that lower-cost share classes were not available; in others, Yale was offered and selected lower-cost share classes. Dkt. 270 at 31-32; Dkt. 338 at 11-12. Yale eventually negotiated a revenue credit account that rebated excess revenue generated from investment fees back to the Plan, making the share class of the investments a moot point. Dkt. 270 at 32-33. This again shows fiduciaries making "reasonable judgments" based on their experience and expertise. Ex. A, *Hughes* slip op. at 6.

**"Cross-Selling**." Plaintiffs finally argue that Yale had a fiduciary obligation to restrict TIAA from marketing non-Plan products to participants. Plaintiffs did not separately plead this theory in their complaint. But other district courts, including the district court in *Hughes*, have found that "cross-selling" claims fail as a matter of law. Dkt. 338 at 12; *Divane v. Northwestern Univ.*, 2018 WL 2388118, at *12-13 (N.D. Ill. May 25, 2018) (denying leave to amend to add a cross-selling claim and noting that the plaintiffs had not "cited a single case in which a court has

held that releasing confidential information or allowing someone to use confidential information constitutes a breach of fiduciary duty under ERISA"), *aff'd*, 953 F.3d 980 (7th Cir. 2020). The *Hughes* plaintiffs, represented by the same counsel as Plaintiffs here, notably did not ask the Supreme Court to review that determination in their petition for certiorari. *See* Ex. A, *Hughes* slip op. at 4 n.* (expressing "no view on the propriety of the District Court's denial of leave to amend").

But even if Plaintiffs' "cross-selling" theory in this case did not fail as a matter of law, *Hughes* shows that it fails at summary judgment. That is because Plaintiffs have no evidence that other prudent fiduciaries acted differently with regard to supposed "cross-selling" than Yale did at the time. Plaintiffs' own expert conceded that Yale was the first university he could recall that had taken steps to limit TIAA's ability to market to plan participants; the year after Yale did so, Plaintiffs' expert predicted that what he called "cross-selling" might soon become the "*next* fiduciary frontier." Dkt. 338 at 12-13. As *Hughes* reiterates, the duty of prudence "turns on 'the circumstances . . . prevailing' *at the time* the fiduciary acts." Ex. A, *Hughes* slip op. at 6 (emphasis added). Plaintiffs' hindsight criticisms about "cross-selling" are thus insufficient.

Dated: January 28, 2022

Michelle N. Webster (phv08475)
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Respectfully submitted,

/s/ Nancy G. Ross
Nancy G. Ross (ct14373)
Jed W. Glickstein (phv09543)
James C. Williams (ct23292)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Attorneys for Defendants*

-4-

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2022, a copy of foregoing document was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the CM/ECF system.

/s/ *Nancy G. Ross*
Nancy G. Ross