IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH VELLALI *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> YALE UNIVERSITY *et al.*, <br><br> *Defendants.* | No. 3:16-cv-01345-AWT <br><br> Hon. Alvin W. Thompson |

## [PROPOSED] RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING *HUGHES* [DOC. 394-1]

Yale strains to portray *Hughes*—in which the Supreme Court held that similar claims were *improperly* dismissed—as somehow supporting its motion for summary judgment. In reality, *Hughes* abrogates the basis for Yale's legal arguments. By explicitly disapproving the reasoning of *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020), *Hughes* also necessarily disapproved the earlier Seventh and Third Circuit precedents on which *Divane* relied. *Hughes v. Nw. Univ.*, 595 U.S. ___, No. 19-1401 (Jan. 24, 2022), slip op. at 5 ("The Seventh Circuit erred in relying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by respondents.") (Doc. 394-2); *see Divane*, 953 F.3d at 985–86, 988–92 (repeatedly endorsing *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), and *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011)). *Hughes* also undermines *Cunningham v. Cornell University*, No. 16-6525, 2019 U.S. Dist. LEXIS 167868 (S.D.N.Y. Sep. 27, 2019), *appeal pending*, No. 21-88 (2d Cir.), in which the district court granted summary judgment based on "[p]articipant choice" among a "range of investment

options," *id.* at *43—the precise reasoning that *Hughes* rejects. Because Yale relies on these abrogated authorities throughout its brief, *Hughes* has obliterated the legal basis for Yale's claimed entitlement to judgment as a matter of law. *See* Doc. 270 at 7, 9, 13, 19–20, 23, 25–26, 28–30, 34–36 (citing *Divane*, *Loomis*, *Hecker*, *Renfro*, *Cunningham*).

*Hughes* thus reinforces Plaintiffs' position that Yale had an independent duty to monitor each investment in the Plan, which it violated by relying on conflicted recordkeepers to vet their own proprietary funds. Doc. 394-2 at 8 (slip op. at 5) ("In *Tibble*, this Court explained that, even in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct *their own independent evaluation* to determine which investments may be prudently included in the plan's menu of options.") (emphasis added); *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (holding that a fiduciary breached its duty by "relying exclusively on the representations" of a service provider that an investment was appropriate). Here, Yale admittedly relied entirely on conflicted reports from TIAA and Vanguard to monitor the Plan's funds until after this lawsuit was filed and "had a lot of catching up to do" to meet its fiduciary obligations. Doc. 302 ¶¶ 52, 73.

Yale's quote from page 6 of *Hughes*, beyond being dicta, is not groundbreaking. The Second Circuit has long acknowledged that fiduciaries who conduct a prudent investigation have latitude to choose among reasonable alternatives. *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006). Reasonableness is a factual issue; here, the prudence of Yale's administration of the Plan and the

reasonableness of its decisions is genuinely disputed. Yale's out-of-context snippet from the *Hughes* oral argument obviously was not dispositive there. What counsel may have argued in another case is completely irrelevant here.

Yale's supplemental brief improperly repeats prior factual arguments. Yale continues to distort the record, relying entirely on litigation-driven testimony while ignoring contradictory contemporaneous evidence.

## I. Excessive Recordkeeping

Contrary to Yale's claims, compelling evidence demonstrates that Yale failed to consider consolidation to a single recordkeeper until 2014. Yale claims that TIAA was not "comfortable" being the Plan's sole recordkeeper until 2014, based upon testimony and declarations from 2019 and 2020, so it faced the choice of having two recordkeepers or dropping TIAA investment options. Doc. 394-1 at 2. However, contemporaneous documents demonstrate that this is not true. Between 2010 and 2014, TIAA representatives repeatedly pitched becoming the Plan's sole recordkeeper to Yale. Doc. 302 ¶ 62 (citing 6 different instances in which TIAA approached Yale regarding sole recordkeeping between 2010 to 2014). Moreover, the additional services Yale claims that TIAA was not "comfortable" providing were not being provided in the Plan's multiple recordkeeper arrangement, so they were not a hindrance to consolidating recordkeepers. Doc. 302 ¶ 11 (citing Doc. 309-14, Campbell Dep. 36:18–37:9, 46:14–23, 46:20–47:2). Yale did not belatedly explore recordkeeper consolidation because TIAA was ready, but because Yale discovered in 2014 that using a single recordkeeper "would make managing" its retirement plans

3

"significantly easier" under its new human resources software. Doc. 302 ¶ 63. It was only after Yale discovered consolidation would be in its own interest, in addition to obviously benefiting Plan participants, that it considered using a single recordkeeper.

Moreover, the record shows, contrary to Yale's claims, that it did not diligently pursue price reductions from TIAA and Vanguard in lieu of recordkeeper consolidation. Doc. 394-1 at 2. Contemporaneous documents demonstrate that TIAA told Yale that it could provide plan-specific pricing in August 2010, but Yale did nothing to reduce the Plan's recordkeeping fees until TIAA unilaterally approached Yale about a fee reduction in February 2012. Doc. 302 ¶ 16. Similarly, Vanguard told Yale that its revenue requirement for recordkeeping for all the Yale plans in 2011, but Yale did not explore a fee reduction—and the plans continued to pay over $100,000 per year more than Vanguard's stated revenue requirement until 2013. *Id.* ¶ 60. In short, Yale's post hoc justifications for its imprudence ring hollow.[1]

## II.  Imprudent Investment Options

The record evidence demonstrates that Yale imprudently relied on its recordkeepers to vet their own investments; Yale's claims to the contrary are distortions of the record or contradicted by more credible contemporaneous evidence. First, Yale's investment advisor never said its process for monitoring

---

[1] Additionally, Yale ignores that it wholly failed to evaluate recordkeeping fees prior to 2012, failed conduct competitive bidding for recordkeeping fees, and failed to evaluate pricing on a flat or per-participant fee basis. Doc. 302 ¶¶ 53–59; *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (holding similar failures were a breach of fiduciary duties under ERISA).

investments was "second to none." Doc. 394-1 at 2. Rather, he testified that he found the discussion at a meeting about Yale's post-lawsuit attempt to streamline the Plan's investment options "second to none." *See* Doc. 302 ¶ 23. That Yale may have begun taking its fiduciary duties at least somewhat seriously after it was sued for breach of fiduciary duty says nothing about the sufficiency of Yale's process during the relevant period. Moreover, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe," crediting the movant's evidence only if it is "uncontradicted and unimpeached" and "comes from disinterested witnesses." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000)). Yale's investment advisor is hardly disinterested.

Second, Plaintiffs' evidence is not limited to expert opinion regarding investment practices, contrary to Yale's erroneous assertion. Plaintiffs presented unrefuted evidence of (1) industry accepted practices, (2) practices Yale itself followed when managing its own money, and (3) recommendations made to other clients to remove the at-issue funds by Yale's belatedly hired investment advisory firm. Doc. 302 ¶¶ 75–87. Yale's "process"—deferring entirely to its recordkeepers to evaluate their own products—is imprudent under both *Hughes* and binding Second Circuit precedent. *See supra* at 2.

### III.  Failure to Adopt Available Lower-Cost Share Classes

Contrary to Yale's assertions (Doc. 394-1 at 3), lower fee share classes were available to the Plan prior to the class period, which Defendants did not include in

5

the Plan until 2011, 2013, 2014 and 2015. Doc. 302 ¶¶ 93–100. Yale's assertion that TIAA and Vanguard did not tell Yale that these share classes were available is irrelevant—it does not excuse Yale's failure to conduct any independent investigation into their availability. *Tibble v. Edison Int'l*, No. 07-5359, 2010 WL 2757153, at *25–26 (C.D. Cal. July 8, 2010), *aff'd*, 729 F.3d 1110 (9th Cir. 2013) (holding that a prudent fiduciary would have "review[ed] all available share classes and the relative costs for each" and "would have known that investment in the retail share classes would cost the Plan participants wholly unnecessary fees").

## IV. TIAA's Enormous Profits from Cross-Selling

Finally, *Hughes* says nothing about Plaintiffs' cross-selling allegations, as the propriety of a proposed amendment related to cross-selling was not before the Court. Doc. 394-2 at 7 (slip op. at 4 n*). For the reasons stated in Plaintiffs' Opposition, summary judgment must be denied on those allegations. Doc. 299 at 19–22.

Contrary to Yale's assertions (Doc. 394-1 at 4), Plaintiff *did* present evidence that other fiduciaries prohibited or considered cross-selling at the beginning of the class period. *See, e.g.*, Doc. 302 ¶ 42 ("The problem of additional indirect revenues being earned by recordkeepers through cross-selling has long been recognized, including by the GAO in January 2011.").

## CONCLUSION

Simply stated, *Hughes* confirms that the Court should deny Yale's motion for summary judgment.

6

February 4, 2022                           Respectfully submitted,

                                                     /s/      Joel D. Rohlf
SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter (phv01476)
Heather Lea, (phv08416)
Andrew D. Schlichter (phv09955)
Sean E. Soyars (phv08419)
Joel D. Rohlf (phv09849)
Alexander L. Braitberg (phv09929)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
aschlichter@uselaws.com
ssoyars@uselaws.com
jrohlf@uselaws.com
abraitberg@uselaws.com

Ari J. Hoffman (ct22516)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Telephone: (203) 368-0211
Facsimile: (203) 337-5505
arihoffman@cohenandwolf.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 4, 2022, a copy of foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

                                                       By: /s/ Joel D. Rohlf