```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

-------------------------------- x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
          Plaintiffs,            :   Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
          Defendants.            :
-------------------------------- x
```

### ORDER RE DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS WENDY DOMINGUEZ AND GERALD BUETOW

For the reasons set forth below, Defendants' Motion to Exclude Plaintiffs' Experts Wendy Dominguez and Gerald Buetow (ECF No. 275) is hereby DENIED.

This motion is one of three motions by the defendants to exclude the plaintiffs' experts in this case. The factual background is summarized in the Ruling on Motion to Exclude Plaintiffs' Expert Daniel Alexander. See ECF No. 408.

The plaintiffs offer Dominguez as an expert to "address[] the prudence of Defendants' investment monitoring, the prudence of the share classes of investments in the Plan, and the prudence of 22 investment options in Plan." Pls.' Mem. Opp.

1

Defs.' Mot. Exclude Pls.' Experts Wendy Dominguez & Gerald Buetow ("Pls.' Mem.") at 3, ECF No. 306. The defendants object to Dominguez's testimony with respect to her evaluation of the prudence of 22 investment options in the Plan. The defendants do not address her other opinions. The defendants object to Buetow's testimony because it is derivative of Dominguez's.

### I.  WENDY DOMINGUEZ

The defendants argue that Dominguez's testimony should be excluded because it is based on a premise already rejected by the court. They also argue that there is not a sufficiently reliable foundation for her proffered testimony because she did not follow a reliable methodology.

#### A. Dominguez's Opinion With Respect to the 22 Investment Options Is Relevant

Federal Rule of Evidence 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591 (1993) (quoting Fed. R. Evid. 702). "An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Id. (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The "[a]dmission of expert testimony based on speculative

2

assumptions is an abuse of discretion." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (alteration in original) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)).

In her report, Dominguez "discuss[ed] specific investments and how their retention in the Plan was incompatible with a sufficient and prudent investment due diligence process . . . ." Expert Rep. Wendy Dominguez ("Dominguez Rep.") at ¶ 217, ECF No. 283-5. The plaintiffs' claim for breach of the duty of prudence based on the Plan offering too many investment options has been dismissed. See Vellali v. Yale Univ., 308 F. Supp. 3d 673, 686-87 (D. Conn. 2018). Consequently, at the beginning of the section of her report where Dominguez analyzed 22 specific investments, after observing that "[m]y usual practice when working with a defined contribution client is to assess the investment menu from the ground up, filling each style box with a best-in-class investment," Dominguez Rep. at ¶ 213, she wrote:

> My understanding is that legal rulings in this case may have an effect on the ability to discuss a consolidated lineup. Therefore, I have assessed certain investments within the Yale Plan lineup individually using the criteria defined above.

Id. at ¶ 216.

Based on the fact that the court dismissed the claim for breach of the duty of prudence based on the Plan offering too many investment options, the defendants argue that Dominguez's

3

testimony is based on a premise already rejected by the court. See Defs.' Mot. Exclude Pls.' Experts Wendy Dominguez & Gerald Buetow ("Defs.' Mem.") at 2, ECF No. 277; see also Reply Supp. Defs.' Mot. Exclude Pls.' Experts Wendy Dominguez & Gerald Buetow ("Defs.' Reply") at 2, ECF No. 340. The defendants rely on Dominguez's deposition testimony. In their reply brief, they quote the following portion of that testimony:[1]

> Q   Is your analysis in this report designed to be consistent with the process that is outlined in Exhibit 4?
>
> A   Exhibit 4 is about investment menus simplification and really the reason why menus should be created that are simple and easy for participants to use that's a core belief of mine and that's what that reference is to.
>
> Q   Was it your objective in this report to follow the mindset of menu simplification and to apply it to Yale's plan?
>
>     MR. BRAITBERG: Objection
>
> A   My objective was to review the 22 funds that I was given to review and to offer an alternative if one existed that was similar or in the cases where I don't believe that sector funds, for example, should belong in an investment menu. I have mapped those to a different alternative that I believe is similar. So as far as my approach, I would say that was my approach.

---

[1] The defendants did cite Dominguez's deposition testimony in their opening memorandum, but they relied on shorter excerpts of that deposition testimony, to which the plaintiffs responded as follows: ". . . Defendants resort to distortion. Defendants splice together two questions 29 pages apart and present them as if they were a single colloquy." Defs.' Reply, at 2-3 (citing Defs.' Mem. at 5). The defendants do ignore the context of the two quotes they combine into one.

4

> Q     But the question is that you were asking with respect to those 22 funds was whether or not they would appear on your 10 to 15 10 fund lineup, right?
>
> A     The approach was are they -- I evaluated their performance and then also said whether they, well, evaluated their performance. Whether they should be removed and where those assets should be mapped to.
>
> Q     Right. And the question with respect to whether they should be removed is whether they would have been eligible for your 10 to 15 fund lineup under Innovest's standard methodology, right?
>
>     MR. BRAITBERG: Objection.
>
> A     Yes, I believe in that simplified streamline investment menu.

Video Dep. Wendy Dominguez ("Dominguez Dep.") at 77:11-78:6, ECF No. 315-29.

The court agrees with the plaintiffs that it is clear from Dominguez's testimony that "she applied a due diligence removal process and not a streamlining process." Pls.' Mem. at 13. She repeatedly makes the point that she evaluated the performance of the 22 funds she was given to review to determine whether they should have been removed and, if so, to which alternative investments existing and future contributions should have been mapped.

### B. Methodology

"In fulfilling [its] gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it 'ha[s]

5

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (second alteration in original) (quoting Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 184 (2d Cir. 2001)). "Next, the district court must determine 'whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered.'" Id. (quoting Campbell, 239 F.3d at 184).

The defendants raise a series of objections to Dominguez's methodology. First, they contend that "she did not follow any methodology for selecting the funds that she evaluated." Defs.' Mem. at 7. They state that "Plaintiffs' counsel selected the funds for her. That does not make any sense. How can a process for reconfiguring a retirement plan be reliable if less than 20 percent of the funds are being evaluated?" Id. But Dominguez was not asked to reconfigure a retirement plan. She was only asked to evaluate the performance of the 22 funds she was given to review to determine whether they should have been removed and, if so, to which alternative investments existing and future contributions should have been mapped.

Second, the defendants contend that, as to the funds Dominguez evaluated, "she did not follow a methodology that is

6

deployed by professionals outside of the litigation context." Id. The plaintiffs point to persuasive evidence to the contrary. See Pls.' Mem. at 16-18 (noting, among other things, that "Innovest and Dominguez described their general methodology and principles in a 2012 RFP response." (citing Dominguez Rep., Ex. 3; Dominguez Dep. 48:7-49:24)).

Third, the defendants contend that Dominguez did not follow a consistent process. They assert that "[r]ather than articulating her procedure for analyzing investments, Dominguez just lists seven (mostly duplicative) 'criteria' that she considered." Defs.' Mem. at 11 (citing Dominguez Rep. at ¶ 53).

Dominguez states in her report:

> A well-functioning plan sponsor creates specific performance criteria used to select an investment for each asset class and corresponding criteria for review or removal of the well-vetted fund. Because Yale failed to create such a list for either purpose, I evaluated the investments at issue using the following list of accepted performance criteria over 3- and 5-year periods and other red flags that would lead a plan sponsor to eliminate funds from inclusion within a DC Plan during the initial due diligence process (or review/remove the investments from a thoroughly vetted menu).

Dominguez Rep. at ¶ 53. Dominguez explains the basis for her conclusion that each investment failed the criteria she was applying. The defendants object, inter alia, that "Dominguez neglects to explain how she analyzes investments that fail some criteria but pass others." Defs.' Mem. at 11. But the plaintiffs point out that "Dominguez performed an in-depth analysis of peer

7

group rankings, historical performance, risk metrics, expense ratios and other characteristics for every investment upon which she opines," Pls.' Mem. at 18-19, and that "Dominguez opines that 20 of those funds should have been removed because they failed multiple due diligence criteria." Id. at 8. Thus, this and similar objections to Dominguez's methodology go to weight, not admissibility. See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO, 313 F. Supp. 2d 213, 236 (S.D.N.Y. 2004) (citing Zuchowicz v. United States, 140 F.3d 381, 386 (2d Cir. 1998)) ("[O]bjections to purported inconsistencies in [an expert's] methodology go to the weight, not the admissibility of [their] testimony.").

Fourth, the defendants contend that Dominguez "does not apply the methodology she advocates in this litigation to her own clients—or anything like it." Defs.' Mem. at 12. The plaintiffs point to evidence to the contrary. See Pls.' Mem. at 23-25. The court concludes that this objection goes to weight, not admissibility.

## II. GERALD BUETOW

The defendants argue that Buetow's testimony is derivative of Dominguez's testimony, so it should also be excluded. The entirety of their argument is as follows:

> Buetow's opinions are just an extension of Dominguez's. He purports to calculate damages "using the funds identified for removal and the corresponding funds

8

>identified for replacement in the Dominguez Report."
>Thus, his opinions are helpful only to the extent that
>Dominguez's opinions are admissible. Because Dominguez's
>opinions should be excluded, so too should Buetow's.

Defs.' Mem. at 23 (quoting Expert Report of Gerald Buetow, at ¶ 23, ECF No. 283-3).

The court has not excluded Dominguez's testimony, so this argument is unavailing.

It is so ordered.

Signed this 30th day of March 2022, at Hartford, Connecticut.

>/s/ AWT
>Alvin W. Thompson
>United States District Judge