```
                          UNITED STATES DISTRICT COURT
                            DISTRICT OF CONNECTICUT

-------------------------------- x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
          Plaintiffs,            :
                                 :
                                 :   Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
          Defendants.            :
                                 :
                                 :
-------------------------------- x
```

## RULING ON MOTION TO STRIKE JURY DEMAND

The defendants have moved to strike the plaintiffs' jury demand. For the reasons set forth below, the defendants' motion is being denied.

### I.   FACTUAL BACKGROUND

Plaintiffs Joseph Vellali, Nancy S. Lowers, Jan M. Taschner and James Mancini, individually and as representatives of a class of participants and beneficiaries in Yale University's 403(b) Retirement Account Plan (the "Plan"), bring this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plan against defendants Yale University, Michael A. Peel, and the Retirement

Plan Fiduciary Committee for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). The class is all participants and beneficiaries of the Yale University Retirement Account Plan from August 9, 2010, through the date of judgment, excluding the defendants.

The plaintiffs allege in their Amended Complaint (ECF No. 57) that the defendants violated ERISA in three ways: (1) by breaching their fiduciary duties of prudence and loyalty (Counts I, III, and V), (2) by engaging in transactions prohibited by ERISA (Counts II, IV, and VI), and (3) with respect to Yale and Peel, by failing to monitor members of the Retirement Plan Fiduciary Committee to ensure compliance with ERISA's standards (Count VIII). (There is no Count VII.)

At this stage in the case, the remaining claims are those in Counts I, III, and V that the defendants breached their fiduciary duty of prudence.

In the prayer for relief, the plaintiffs request that the court, inter alia:

- Find and declare that Defendants have breached their fiduciary duties as described above;
- Find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;
- Determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;
- Order the Defendants to pay the amount equaling

- all sums received by the conflicted recordkeepers as a result of recordkeeping and investment management fees;
- Order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under §1109(a);
- Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;
- Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;
- Reform the Plan to include only prudent investments;
- Reform the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses;

. . .

- Order the payment of interest to the extent it is allowed by law; and
- Grant other equitable or remedial relief as the Court deems appropriate.

Am. Comp. at 131.

## II. DISCUSSION

In Pereira v. Farace, the court reviewed the two-step process that must be followed in determining whether a party has a right to a jury trial. 413 F.3d 330 (2d Cir. 2005). "In deciding whether a particular action is a suit at law that triggers this important protection, we are instructed to apply the two-step test set forth in Granfinanciera, 42 U.S. at 42, 109 S.Ct. 2782." Id. at 337 (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)). "First, we ask whether the action would have been deemed legal or equitable in 18th century

England." Id. (emphasis in original) (internal citations and quotation marks omitted). "Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Id. (emphasis in original) (internal citations and quotation marks omitted). Finally, "[w]e then balance the two, giving greater weight to the latter." Id. (internal citations and quotation marks omitted).

As to the first step of the analysis, in Pereira the court "accept[ed] the district court's statement that as a 'general rule' breach of fiduciary duty claims were historically within the jurisdiction of equity courts." Id. at 338 (citing Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567 (citing 2 J. Story, Commentaries on Equity Jurisprudence § 960, at 266 (13th ed. 1886) and Restatement (Second) of Trusts § 199(c) (1959))). The court rejected an argument by the defendants there, based on Ross v. Bernhard, 396 U.S. 531 (1970), that the general rule did not apply and held that the claims for breach of fiduciary duty "would have been equitable in 18th century England and thus that step one of Granfinanciera weighs against a jury trial." Id. at 339; see also Cunningham v. Cornell University, 2018 WL 4279466 at *2 ("Here, the breach of the fiduciary duty of prudence derives from the law of trusts that was heard in equity." (citing Cent. States, Se. & Sw. Areas Pension Fund v/ Cent. Transp., Inc., 472

U.S. 559, 570 (1985); see also Restatement (First) of Trusts § 174 (1935) (duty to exercise care and skill that a person of ordinary prudence would in dealing with his own property))).

Similarly, the court concludes here that this step of the analysis weighs against a jury trial.

"The second step of the Granfinanciera test focuses on the nature of the relief sought. It calls upon us to decide whether the 'type of relief [sought] was available in equity courts as a general rule.'" Pereira, 413 F.3d at 339 (alteration in original) (internal citations omitted) (quoting Rego v. Westvaco Corp., 319 F.3d 140, 145 (4th Cir. 2003)).

In Pereira, the district court had "determine[d] that the Trustee had, in fact, actually 'limited his relief to restitution,' which is equitable in nature." Id. (emphasis in original). "In so doing the district court concluded that the fact that the officers and directors never personally possessed any of the disputed funds [does] not militate that the relief [is] not equitable." Id. (alteration in original) (internal citations and quotation marks omitted). "On appeal, defendants . . . emphasize[d] that, because they never possessed the funds in question and thus were not unjustly enriched, the remedy sought against them cannot be considered equitable." Id. The court agreed and concluded that "the remedy sought was legal and thus [the defendants] were entitled to a jury trial." Id.

In reaching this conclusion in Pereira, the court placed great weight on the Supreme Court's decision in Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204 (2002). There, the Supreme Court stated that "'for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.'" Id. at 340 (quoting Great-West, 534 U.S. at 214). The court observed: "Nor can we ignore the Supreme Court's inclusion of footnote 2, highlighting a single exception to its rule that a defendant must possess the funds at issue for the remedy of equitable restitution to lie against him." Id. (quoting Great-West 534 U.S. at 214 n. 2 (That "limited exception" is for "an accounting of profits," which, of course, is not relevant to this case. Id.)). "Finally, Justice Ginsburg's dissent in Great-West offers further guidance by pointing out that restitution is measured by a defendant's 'unjust gain, rather than [by a plaintiff's] loss.'" Id. (quoting Great-West, 534 U.S. at 229 (Ginsburg, J., dissenting) (citing 1 D. Dobbs, Law of Remedies § 12.1(1), at 9)).

Consequently, the court held in Pereira "that the district court improperly characterized the Trustee's damages as restitution. Plaintiff's claim is for compensatory damages—a legal claim." Id.

Here, the prayer for relief in the Amended Complaint includes requests that are clearly requests for equitable relief, but it also includes a request that the court find and adjudge that the defendants "are personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty . . . ." Am. Compl. at 131. When "a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" Tull v. U.S., 481 U.S. 412, 425 (quoting Curtis v. Loether, 415 U.S. 189, 196 (1974)); see also Cunningham, 2018 WL 4279466 at *4 (holding that "The beneficiaries' claim for money damages against the fiduciaries—a legal claim— . . . will be tried to a jury. The beneficiaries' claims for . . . equitable relief will be tried to the Court.").

Based on the analysis in Pereira, this particular remedy, i.e., compensatory damages for which the defendants would be personally liable as opposed to restoring to the plaintiffs' particular funds or property that is in the defendants' possession, is legal in nature. This legal remedy is requested with respect to all of the plaintiffs' claims.

Because greater weight is accorded to the second step of the Granfinanciera test, and the plaintiffs seek a remedy that is legal in nature, the court concludes that the plaintiffs have

-7-

the right to a jury trial in this case on their claims for money damages. See Pereira, 413 F.3d at 340-41.

In support of their argument that all the plaintiffs' requested remedies are equitable in nature, the defendants maintain that Great-West is not applicable in a case brought against a fiduciary. The defendants argue: "Great-West did not consider an action against a fiduciary for breach of fiduciary duty. It involved a completely different type of ERISA claim: a claim by a fiduciary against a beneficiary for what, in essence, was a breach of contract." Defs.' Mem. Supp. Mot. Strike Jury Demand (ECF No. 416) at 4 (emphasis in original). This position was considered and rejected in Pereira. There, the court stated:

> The Trustee contends that the holding of Great-West is inapplicable here because Great-West involved only non-fiduciary defendants. In Callery, the Tenth Circuit rejected this same argument. 392 F.3d at 409. That court found that, while the "distinction made in Strom ... based on the status of the defendant as a fiduciary ... may have been compelling before Great-West, [it is] not so now."

Pereira, 413 F.3d at 340 (quoting Callery v. U.S. Life Ins. Co. in City of New York, 392 F.3d 401, 409 (2004)).

The defendants argue further, however, that Pereira should not be followed in light of subsequent decisions in Cigna Corp. v. Amara, 563 U.S. 421 (2011), and New York State Psychiatric Ass'n, Inc. v. United Health Group, 798 F.3d 125 (2d Cir. 2015).

The defendants assert that "[i]n Amara, the Supreme Court explained that 'the fact that the defendant in this case . . . is analogous to a trustee' made 'a **critical difference**' to whether 'make-whole' monetary relief was equitable or legal in nature." Defs.' Mem. Supp. Mot. Strike Jury Demand at 5-6 (emphasis added) (quoting Amara, 563 U.S. at 442). In light of the discussion leading up to the language in Amara relied upon by the defendants, the court does not agree with their reading of Amara.

In Amara, the Court stated that Mertens v. Hewitt Associates, 508 U.S. 248 (1993), involved "a claim seeking money damages brought by a beneficiary against a private firm that provided a trustee with actuarial services." Amara, 563 U.S. at 439. The Court "found that the plaintiff sought nothing other than compensatory damages against a nonfiduciary. And [it] held that such a claim, traditionally speaking, was legal, not equitable in nature." Id. (internal citations and quotation marks omitted).

The Court stated that "[i]n Great-West, we considered a claim brought by a fiduciary against a tort-award-winning beneficiary seeking monetary reimbursement for medical outlays that the plan had previously made on the beneficiary's behalf." Id. The Court observed: "But we noted that the money in question was not the 'particular' money that the tort defendant had paid.

And, traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" Id. (quoting Great-West, 534 U.S. at 213).

In Amara, the Court stated that there, "the District Court injunctions require the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed. But the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." Id. at 441. The reference to "this relief" is thus a reference to the payment of money owed the beneficiaries under the plan. The Court explained that the fact that there would be a money payment did not remove this relief from the category of traditionally equitable relief because "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." Id. The Court explained further that "prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'" Id. at 441-42 (citations omitted). Thus, the point being made by the Court was that this kind of remedy was sometimes called a surcharge and was exclusively equitable.

It was in this context that the Court stated the following, portions of which are relied upon by the defendants here:

> The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in Mertens, is analogous to a trustee makes a critical difference.

Id. at 442 (internal citations omitted). Two points are noted with respect to what the Court actually said (and did not say) in Amara. First, while the Court stated that the surcharge remedy extended to a breach of trust committed by a fiduciary, it did not say that a surcharge was the only remedy for a breach of trust committed by a fiduciary. Second, the reason the fact that the defendant in Amara was analogous to a trustee, while the defendant in Mertens was not, was a "critical difference" is that a surcharge remedy extended to the breach of trust committed by the fiduciary defendant in Amara but did not extend to the breach of trust committed by the nonfiduciary defendant in Mertens.

With respect to New York State Psychiatric Ass'n, the defendants argue that "the Second Circuit has explicitly recognized that a request for 'monetary compensation' for 'any losses resulting' from a defendant's alleged violations of ERISA 'closely resembles' the surcharge remedy and is 'true equitable

relief.'" Defs.' Mem. Supp. Mot. Strike Jury Demand at 6 (quoting New York State Psychiatric Ass'n, 798 F.3d at 135). However, New York State Psychiatric Ass'n was also a suit for a breach of fiduciary duty relating to the terms of a plan. Thus, the court stated that "where, as here, a plan participant brings suit against a 'plan fiduciary (whom ERISA typically treats as a trustee)' for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with 'surcharge'—'monetary "compensation" for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment'—constitutes equitable relief under § 502(a)(3)." New York State Psychiatric Ass'n, 798 F.3d at 134 (emphasis added)(quoting Amara 563 U.S. at 439).

After considering Pereira and Amara in light of the decisions in Mertens v. Hewitt Associates, 508 U.S. 248 (1993), Great-West Life & Annuity Ins. Co. v. Knudson, 234 U.S. 204 (2002), Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006), US Airways, Inc. v. McCutchen, 569 U.S. 88 (2013), and Montanile v. Board of Trustees of Nat. Elevator Industry health Benefit Plan, 577 U.S. 136 (2016), the court concludes that the critical distinction is whether the plaintiff is seeking to recover specifically identifiable funds or other property within the defendant's control or is seeking recovery out of the defendant's general assets.

Mertens involved "a claim seeking money damages brought by a beneficiary against a private firm that provided a trustee with actuarial services." Amara, 563 U.S. at 439. The Supreme Court "found that the plaintiff sought nothing other than compensatory damages against a nonfiduciary. And [it] held that such a claim, traditionally speaking, was legal, not equitable in nature." Id. (internal citations and quotation marks omitted).

The Court also discussed Great-West in Amara. The Court stated that "[i]n Great-West, we considered a claim brought by a fiduciary against a tort-award-winning beneficiary seeking monetary reimbursement for medical outlays that the plan had previously made on the beneficiary's behalf." Id. "But [the Court] noted that the money in question was not the 'particular' money that the tort defendant had paid. And, traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" Id. (quoting Great-West, 534 U.S. at 213).

"In Sereboff, [the Court] held that both the basis for the claim and the remedy sought were equitable. The plan there sought reimbursement from beneficiaries who had retained their settlement fund in a separate account." Montanile, 577 U.S. at 143 (citing Sereboff, 547 U.S. at 359-60). "The underlying

remedies that the plan sought . . . were equitable, because the plan 'sought specifically identifiable funds that were within the possession and control' of the beneficiaries—not recovery from the beneficiaries' 'assets generally.'" Montanile, 577 U.S. at 144 (quoting Sereboff, 547 U.S. 362-363).

US Airways, Inc. v. McCutchen involved a claim by a plan administrator against a beneficiary to enforce a reimbursement provision of the plan. The Court concluded that "as in Sereboff, '[t]he nature of the recovery requested' by the plan 'was equitable because [it] claimed specifically identifiable funds within the [beneficiaries'] control—that is, a portion of the settlement they had gotten.'" Montanile, 577 U.S. at 144 (alteration in original)(quoting US Airways, 569 U.S. at 95).

In Montanile, the plan had "an equitable lien by agreement that attached to Montanile's settlement fund when he obtained title to that fund." Montanile, 577 U.S. at 144. The Court observed:

> [T]he nature of the Board's underlying remedy would have been equitable had it immediately sued to enforce the lien against the settlement fund then in Montanile's possession. That does not resolve this case, however. Our prior cases do not address whether a plan is still seeking an equitable remedy when the defendant, who once possessed the settlement fund, has dissipated it all, and the plan seeks to recover out of the defendant's general assets.

Id. (emphasis in original). The Court concluded that:

> Absent specific exceptions not relevant here, "where a person wrongfully dispose[d] of the property of another but the property cannot be traced to any product, the other . . . cannot enforce a constructive trust or lien upon any part of the wrongdoer's property." The plaintiff had "merely a personal claim against the wrongdoer"──a quintessential action at law.

Id. at 145-46 (quoting Restatement of Restitution § 215(1) at 866).

Thus, these cases reflect that the material distinction in this context, for purposes of determining whether a remedy is equitable or legal in nature, is between those situations where a plaintiff seeks to recover "particular funds or property in the defendant's possession," and those situations where the plaintiff seeks to recover damages out of the defendant's assets generally. Great-West, 534 U.S. at 213.

### III. CONCLUSION

For the reasons set forth above, the defendants' Motion to Strike the Jury Demand (ECF No. 415) is hereby DENIED.

It is so ordered.

Dated this 17th day of March 2023, at Hartford, Connecticut.

                                                           /s/AWT
                                          Alvin W. Thompson
                                United States District Judge