**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
JOSEPH VELLALI, NANCY S. LOWERS, :
JAN M. TASCHNER, and JAMES       :
MANCINI, individually and as     :
representatives of a class of    :
participants and beneficiaries   :
on behalf of the Yale University :
Retirement Account Plan,         :
                                 :
        Plaintiffs,              :
                                 :
                                 :  Civil No. 3:16-cv-1345(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY, MICHAEL A.      :
PEEL, and THE RETIREMENT PLAN    :
FIDUCIARY COMMITTEE,             :
                                 :
        Defendants.             :
                                 :
                                 :
------------------------------ x
```

**ORDER RE PLAINTIFFS' MOTION IN LIMINE**
**TO EXCLUDE DATA REGARDING TIAA'S 200 LARGEST RECORDKEEPING**
<u>**CLIENTS**</u>

**(ECF NO. 477)**

For the reasons set forth below, Plaintiffs' Motion in Limine to Exclude Charts Summarizing Data Regarding TIAA's "200 Largest" Recordkeeping Clients (ECF No. 477) is hereby **DENIED** as to the testimony of the expert witnesses and **DENIED without prejudice** with respect to facts or data that would otherwise be inadmissible. As discussed below, the court will make a determination at trial as to probative value versus prejudicial effect and the appropriateness of a limiting instruction.

-1-

**Background**

In October 2019, defense experts Glenn Poehler and Conrad Ciccotello disclosed their reports. In those reports, Poehler and Ciccotello considered the declarations of TIAA employees Glenn Friedman and Jennifer Reilly that are the subject of this motion. The declarations contained "various summary charts related to 'TIAA's 200 largest clients.'" Pls.' Mem. L. Supp. Mot. in Limine (ECF No. 478) at 2. "Reilly and Friedman purportedly used 'data . . . maintained by TIAA' to create charts, which summarized statistics about the recordkeeping fees and the prevalence of various investments and practices among 'TIAA's 200 largest clients." Id.

Glenn Friedman was TIAA's Senior Director, Institutional Retirement Business Management. In his declaration, Friedman "provided information on the popularity of two key challenged investment options among TIAA's 200 largest 403(b) clients for the years 2010 to 2018 and information on how those 200 clients structured their recordkeeping arrangements (i.e., TIAA as a single recordkeeper, TIAA as one of several recordkeepers, or a non-TIAA recordkeeper). Defs. Mem. L. Opp. Pls.' Mot. in Limine (ECF No. 500) at 1. Friedman's declaration recites that his "responsibilities include internal management reporting and metrics." Decl. Glenn Friedman at ¶ 1. In addition, it recites that "[t]he investment and plan structure data referenced below

is maintained by TIAA and available to [him] in the usual course of business." Id. Friedman also declares that he has "personal knowledge of the facts set forth herein and, if called as a witness to testify to their truth, could and would do so completely." Id. at ¶ 2. Friedman declared under penalty of perjury that his statements were true and correct.

Reilly was TIAA's Vice President, Institutional Finance. In her declaration, "Reilly provided information about the recordkeeping fees of TIAA's 200 largest 403(b) clients." Defs. Mem. L. Opp. Pls.' Mot. in Limine at 1. Reilly's declaration recites that her "responsibilities include institutional strategic pricing." Decl. Jennifer Reilly at ¶ 1. In addition, it recites that "[t]he recordkeeping fee data discussed below is maintained by TIAA and used by [her] team in the usual course of business." Id. Reilly also declares that she has "personal knowledge of the facts in this declaration." Id. at ¶ 2. Reilly declared under penalty of perjury that her statements were true and correct.

## Discussion

The plaintiffs move "to exclude evidence and expert testimony concerning charts that purportedly summarize data for TIAA's '200 largest' recordkeeping clients." Pls.' Mem. L. Supp. Mot. in Limine at 1. The charts were prepared for this litigation, and Friedman and Reilly will not be testifying at

trial. Although the plaintiffs demanded that the defendants produce the underlying information for the charts in the declarations, the defendants have not produced the underlying data. The plaintiffs contend that "[t]he Court should exclude the declarations as inadmissible hearsay and the charts as improper summary exhibits under Rules 802 and 1006 of the Federal Rules of Evidence." Id. The plaintiffs also contend that the court should "preclude Defendants' experts from offering any testimony or evidence about the declarations and charts at trial, as they do not meet the requirements of Rule 703." Id.

Federal Rule of Evidence 703 provides in pertinent part:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. . . .

Fed. R. Evid. 703.

Here, the defendants "do not seek to introduce the declarations, but instead have disclosed them as reliance materials for experts." Defs. Mem. L. Opp. Pls.' Mot. in Limine at 3. Thus, the plaintiffs' motion is **DENIED as moot** with respect to their arguments based on Fed. R. Evid. 802 and 1006, and the issue that must be resolved is whether under Rule 703 experts in the particular field would reasonably rely on these declarations in forming an opinion. See Southland Sod Farms v.

Stover Seed Co., 108 F.3d 1134, 1142 (9th Cir. 1997) ("The fact
that Engelke's opinions are based on data collected by others is
immaterial; Federal Rule of Evidence 703 expressly allows such
opinion testimony."). See Mac Sales v. E.I. Dupont De Nemours
and Co., 1992WL396864 (E.D.La. 1992) at *5 ("Company records and
statements by company personnel are types of data reasonably
relied upon by accountants, and opinions based on those types of
information are typically admissible under Rule 703."); Colonial
Pipeline Co., Inc. v. Ceco., Inc. 2022 WL4283098 at *10 (N.D.
Ala. 2022) ("Rule 703 permits experts to rely on facts and data
supplied by third parties.")

Poehler and Ciccotello reasonably relied on the
declarations and the information set forth in them. At the time
of their respective declarations, Friedman was a Senior Director
at TIAA and Reilly was a Vice President. Each had
responsibilities that included areas for which the data that was
referenced in the declaration was maintained by TIAA and
available and/or used for that declarant's work in the regular
course of TIAA's business. Friedman stated that he had personal
knowledge of the facts set forth in his declaration and stated
further that if called as a witness, he would testify to the
truth of the contents. Reilly also stated that she had personal
knowledge of the facts in the declaration. Both of the
declarants stated that they were giving the declaration under

penalty of perjury.

The remaining issue is whether Poehler and Ciccotello can "disclose the inadmissible evidence to the jury to help explain their opinions." Pls.' Reply Supp. Mot. in Limine (ECF No. 513) at 1. Fed. R. Evid. 703 provides in pertinent part:

> . . . But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Citing to Poehler's report at ¶¶ 59, 82, 101-02, 114, and Exh. 6, the plaintiffs argue that "Poehler simply conveyed the hearsay information in the Reilly declaration." Pls.' Reply Supp. Mot. in Limine at 5. Citing to Ciccotello's report at 44, Table 7 and at 73, ¶ 289, the plaintiffs argue that "Ciccotello did the same with the Friedman declaration, albeit to a lesser extent." Id. The plaintiffs assert that "[b]oth experts are merely 'repeating hearsay evidence without applying any expertise whatsoever[.]" Id. (alteration in original) (quoting U.S. v. Dukagjini, 326 F.3d 45, 59 (2d Cir. 2003)).

With respect to Poehler, the court does not agree that he simply conveyed the information in the Reilly declaration. As the defendants point out, citing to ¶ 87 of Poehler's report, Poehler "perform[ed] independent calculations that matched the administrative fee data in Reilly's declaration." Defs. Mem. L.

Opp. Pls.' Mot. in Limine at 6. The defendants maintain, citing to ¶¶ 286-290, that "Ciccotello mentions the Friedman declaration as one data point in a broader discussion of the prominence of multiple recordkeeper arrangements in 403(b) plans and universities in particular." Id.

In light of the foregoing, the court concludes that a determination as to whether the probative value of the evidence at issue in helping the jury evaluate each expert's opinion substantially outweighs the prejudicial effect is a determination that will be best made at trial. See Bernhard-Thomas Bldg Sys, LLC v. Weitz Co., LLC, where the court observed:

> Because Gordon will be allowed to testify as an expert witness . . . these proposed exhibits are governed in part by Rule 703 of the Federal Rules of Evidence, which states that if the facts or data upon which an expert relies are otherwise inadmissible, they shall not be disclosed to the fact-finder unless the court determines that "their probative value in assisting the [fact-finder] to evaluate the expert's opinions substantially outweighs their prejudicial effect." Fed. R. Evid. 703. The Court can best make that determination during trial if there is an objection to one of the exhibits or an objection to Gordon's testimony.

Bernhard-Thomas, 2010 WL4929029 at *2 (D.Conn. 2010).

Also, the court notes that in some instances, admission of disputed evidence for a limited purpose is the most appropriate approach. See Wilson By and Through Wilson v. Merrell Dow Pharmaceuticals Inc., 893 F.2d 1149, 1153-54 (10th Cir. 1990).

There the court observed:

> We have interpreted Rule 703 as allowing an expert to reveal the basis of his testimony during direct examination, even if this basis is hearsay, provided that the facts or data underlying his conclusions are of a type reasonably relied upon by others in his field of expertise. The hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not for proving the truth of the matter asserted.

Wilson, 893 F.2d at 1153.

Accordingly, prior to disclosing the evidence at issue in this motion to the jury, **the defense will notify the court** so that it can make a determination as to whether the conditions set forth in the last sentence of Fed. R. Evid. 703 are satisfied and/or whether it would be appropriate to admit the evidence at issue for a limited purpose only. In addition, to the extent **the plaintiffs** have any similar evidence, **they will follow the same procedure.**

It will be helpful if **counsel can send to chambers prior to trial** a list of the expert witnesses and documents as to which the parties have not come to an agreement about whether the conditions set forth in the last sentence of Fed. R. Evid. 703 are satisfied and/or it would be appropriate to admit the evidence at issue for a limited purpose only.

It is so ordered.

Dated this 26th day of May 2023, at Hartford, Connecticut.

_____
/s/AWT

Alvin W. Thompson
United States District Judge